No. 13-465C
(Judge Sweeney)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FAIRHOLME FUNDS, INC., *et al.*,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR DISCOVERY

STUART F. DELERY
Assistant Attorney General

JEANNE E. DAVIDSON
Director

OF COUNSEL:

PETER A. BIEGER
Assistant General Counsel
KATHERINE M. BRANDES
Attorney Advisor
Department of the Treasury
1500 Pennsylvania Avenue, N.W
Washington, D.C.  20220

KENNETH M. DINTZER
Acting Deputy Director
ELIZABETH M. HOSFORD
GREGG M. SCHWIND
Senior Trial Counsel
KATY M. BARTELMA
SETH W. GREENE
ERIC E. LAUFGRABEN
DANIEL B. VOLK
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480 Ben Franklin Station
(202) 616-0385
kenneth.dintzer@usdoj.gov

February 11, 2014

Attorneys for Defendant

# <u>TABLE OF CONTENTS</u>

**PAGE**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 3

    I.      Standards Of Review For Permitting Discovery In The Face
         Of A Motion To Dismiss ..................................................................................... 3

    II.     Plaintiffs Have Not Articulated A Valid Basis For The Court To
         Permit Discovery At This Early Stage Of The Litigation ..................................... 5

         A.     Plaintiffs Are Not Entitled To Jurisdictional Discovery ........................... 6

               1.    There Are No Jurisdictional Facts In Dispute Related
                  To The Legal Question Of Ripeness...................................................... 6

               2.    Plaintiffs Are Not Entitled To Discovery With Respect
                  To The Legal Question Of FHFA's Status When It Acts
                  As Conservator ................................................................................... 8

         B.     Plaintiffs Are Not Entitled To Discovery With Respect To
              Their Failure To State A Viable Takings Claim Under
              RCFC 12(b)(6) ....................................................................................... 12

               1.    The Government's Citation To A Press Release Does
                  Not Warrant Converting The Pending Motion To One
                  For Summary Judgment.................................................................... 12

                2.    The Government's RCFC 12(b)(6) Challenge To The
                  Sufficiency Of The Complaint Does Not Require The
                  Resolution Of Any Factual Disputes  .................................................. 15

                    a.    The Court Need Not Decide The Purpose Or
                       Voluntariness Of The Third Amendment In Order
                       To Dismiss Plaintiff' Claim Under Penn Central ....................... 16

                    b.    There Is No Material Dispute As To Whether The
                       Enterprises Were Placed Into Conservatorships At
                     A Time When They Were Facing Insolvency ............................. 18

         CONCLUSION.................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

## CASES

PAGE

*Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*,
    988 F.2d 1157, 1160 (Fed. Cir. 1993) ................................................................. 3

*Alaska Airlines, Inc. v. Johnson*,
    8 F.3d 791, 798 (Fed. Cir. 1993) ......................................................................... 15

*Ameristar Fin. Servicing Co. LLC v. United States*,
    75 Fed. Cl. 807, 812 (2007) ................................................................................. 9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................... 4, 11

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87, 98, n.2 (2d Cir. 2007) .................................................................... 5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................... 3, 4

*Bell/Heery v. United States*,
    106 Fed. Cl. 300, 307 (2012) ............................................................................... 4

*Branch v. United States*,
    69 F.3d 1571, 1575 (Fed. Cir. 1995) ................................................................... 15

*Clear Creek Cmty. Servs. Dist. v. United States*,
    100 Fed. Cl. 78, 81 (2011) ................................................................................... 4

*Coastal States Gas Corp. v. Dept. of Energy*,
    84 F.R.D. 278, 282 (D. Del. 1979) ...................................................................... 3

*DeKalb Cnty. v. United States*,
    108 Fed. Cl. 681, 692 (2013) ............................................................................. 5, 13

*Estes Express Lines v. United States*,
    108 Fed. Cl. 416, 420 (2013) ............................................................................... 5

*Forest Glen Props., LLC v. United States*,
    79 Fed. Cl. 669, 678–79 (2007) ........................................................................... 11

*Frazier v. United States*,
    67 Fed. Cl. 56, 59 (2005) ..................................................................................... 4

*Freeman v. United States*,
556 F.3d 326, 342 (5th Cir. 2009) .......................................................................... 4

*Golden Pac. Bancorp v. United States*,
15 F.3d 1066 (Fed. Cir. 1994) ................................................................ 16, 17, 19

*Hall v. Bed Bath & Beyond, Inc.*,
705 F.3d 1357, 1362 (Fed. Cir. 2013) .................................................................... 3

*Herron v. Fannie Mae*,
857 F. Supp. 2d 87 (D.D.C. 2012) .......................................................................... 9

*In re Take-Two Interactive Sec. Litig.*,
551 F. Supp. 2d 247, 262 (S.D.N.Y. 2008) .......................................................... 15

*Love Terminal Partners v. United States*,
97 Fed. Cl. 355, 378-79 (2011) .................................................................. 5, 13, 17

*Martin v. United States*,
96 Fed. Cl. 627, 629 (2011) .................................................................................... 4

*Marvel Worldwide, Inc. v. Kirby*,
756 F. Supp. 2d 461, 468-469 (S.D.N.Y. 2010) .................................................... 7

*Mass. Bay Transp. Auth. v. United States*,
21 Cl. Ct. 252 (1990) .............................................................................................. 8

*Newtech Research Sys. LLC v. United States*,
99 Fed. Cl. 193, 200 n.11 (2011) ........................................................................ 13

*North Hartland, L.L.C. v. United States*,
78 Fed. Cl. 172, 178 (2007) .................................................................................... 5

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
626 F.3d 1222, 1235-36 (Fed. Cir. 2010) .............................................................. 4

*O'Melveny & Myers v. Fed. Deposit Ins. Corp.*,
512 U.S. 79 (1994) .................................................................................................. 9

*Penn Central Transportation Co. v. City of New York*,
438 U.S. 104 (1978) .............................................................................................. 16

*Rutman Wine Co. v. E. & J. Gallo Winery*,
829 F.2d 729, 738 (9th Cir. 1987) .......................................................................... 3

*Sebastian v. United States*,
   185 F.3d 1368, 1374 (Fed. Cir. 1999) ...................................................................................... 13

*Smith v. United States*,
   495 Fed. App'x 44, 49 n.6 (Fed. Cir. 2012) ............................................................................ 8

*Starr Int'l Co. v. Fed. Reserve Bank of New York*,
   906 F. Supp. 2d 202, 216 (S.D.N.Y. 2012) ........................................................................... 11

*Terry v. United States*,
   103 Fed. Cl. 645, 652 (2012) ......................................................................................... 5, 13

*Texas v. United States*,
   523 U.S. 296 (1998) ......................................................................................................... 7

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| FAIRHOLME FUNDS, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 13-465C |
| v. | ) | (Judge Sweeney) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR DISCOVERY</u>

Defendant, the United States, respectfully submits this opposition to the motion for continuance to permit discovery filed by Fairholme Funds, Inc., et al. (plaintiffs). Plaintiffs ask this Court to grant discovery on two bases. Plaintiffs first request discovery into facts that they contend are relevant to the Government's jurisdictional arguments under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC). Plaintiffs then ask the Court to convert the United States' RCFC 12(b)(6) arguments into a RCFC 56 motion for summary judgment and, having done so, to allow discovery under RCFC 56(d).

Rule 12's fundamental purpose is to allow a court to take final action on legally flawed allegations without subjecting litigants to the burdens of discovery. As a result, delaying a plaintiff's obligation to respond to a motion to dismiss while permitting discovery is an exceptional action, appropriate only if the requested discovery is both necessary to decide the dispositive legal issues presented and narrow. The discovery plaintiffs seek here is neither. It is not necessary to the resolution of the motion to dismiss because the purported factual disputes plaintiffs cite are illusory, irrelevant to the grounds for dismissal, or both. And the motion is not narrow in that plaintiffs seek information covering almost every topic that conceivably could be relevant if this case were to proceed to trial – from the Government's expectations about the

Enterprises' profitability to the purpose and voluntariness of the Third Amendment – based on the most tenuous of connections to the Government's motion to dismiss arguments.  The Court should deny this extraordinary request.

*First*, there is no valid basis for the Court to permit jurisdictional discovery.  In the RCFC 12(b)(1) portion of our motion to dismiss, we raised a number of facial bases – statutory and otherwise – as to why this Court lacks jurisdiction over plaintiffs' complaint.  We noted that Congress, by statute, barred all challenges to the conservatorships after 30 days following the appointment of the conservator.  Also, we demonstrated that, by operation of the same statute, all shareholder rights, including the right to bring a shareholder suit, are vested in the conservator for the duration of the conservatorships.  Moreover, a regulator, once it steps into the shoes of a financial institution as conservator or receiver, loses its governmental status for purposes of Tucker Act jurisdiction.  These are facial challenges to the Court's jurisdiction.  They do not depend on assertions of fact.  Discovery – even the extraordinarily broad discovery proposed by plaintiffs – is wholly unnecessary for the Court to consider and resolve the motion.

*Second*, there is no basis to convert the RCFC 12(b)(6) portion of our motion into a motion for summary judgment.  Although we raised a number of grounds for dismissal for failure to allege a compensable takings claim, none relies on factual matters outside the allegations of the complaint.  We explained that, when a regulator exercises its conservatorship or receivership authority, shareholders of regulated financial institutions have no cognizable property interests or investment-backed expectations for purposes of the Fifth Amendment.  This legal rule is provided for in well-established, binding Federal Circuit precedent.  We also explained that, because any ultimate receivership of Fannie Mae and Freddie Mac (the Enterprises) is unknown, plaintiffs' claim for compensation is speculative.

In making these arguments, the Government did not rely upon impermissible, extra-record material, and none of these legal bases for dismissing the complaint depends upon resolving the purported "factual disputes" identified by plaintiffs.  Taking the well-pleaded factual allegations in the complaint as true, this case should be dismissed.  Plaintiffs have presented no basis for the Court to permit discovery.

## ARGUMENT

### I.       Standards For Permitting Discovery In The Face Of A Pending Motion To Dismiss

The Court should not allow the plaintiffs to undermine RCFC 12(b), which requires the dismissal of untenable claims before parties and the Court have invested resources in the discovery process.  The rule allows "the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity."  *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993); *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (Dispositive motions "enable defendants to challenge the sufficiency of complaints without subjecting themselves to discovery.").  Postponing discovery until the resolution of dispositive motions "is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources."  *Coastal States Gas Corp. v. Dept. of Energy*, 84 F.R.D. 278, 282 (D. Del. 1979).

"On a motion to dismiss, the court 'must accept as true all of the factual allegations contained in the complaint.'"  *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1362 (Fed. Cir. 2013) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002)).  The factual allegations in the complaint, however, must "raise a right to relief above the speculative level" and must cross "the line from conceivable to plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

3

544, 555, 570 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see Twombly*, 550 U.S. at 557-58 ("something beyond the mere possibility . . . must be alleged.").

As to motions pursuant to RCFC 12(b)(1), this Court has observed that "when a motion to dismiss challenges a *jurisdictional fact* alleged in a complaint, a court may allow discovery in order to resolve the factual dispute." *Clear Creek Cmty. Servs. Dist. v. United States*, 100 Fed. Cl. 78, 81 (2011) (emphasis added) (permitting discovery related to statute of limitations defense). However, "a trial court may deny jurisdictional discovery when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction . . . ." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1235-36 (Fed. Cir. 2010). "[A] party is not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion." *Freeman v. United States*, 556 F.3d 326, 342 (5th Cir. 2009).

As to motions under RCFC 12(b)(6), RCFC 12(d) states that if matters outside the pleadings are presented and not excluded by the court, the court should treat the motion as one for summary judgment. RCFC 12(d); *see also Martin v. United States*, 96 Fed. Cl. 627, 629 (2011) (citing *Akins v. United States*, 82 Fed. Cl. 619, 622 (2008)). In deciding a Rule 12(b)(6) motion, however, courts may consider documents attached to the complaint and documents incorporated by reference into the complaint. *Bell/Heery v. United States*, 106 Fed. Cl. 300, 307 (2012), *aff'd*, No. 2013-5002, 2014 WL 43892 (Fed. Cir. Jan. 7, 2014); *Frazier v. United States*,

67 Fed. Cl. 56, 59 (2005), *aff'd*, 186 Fed. App'x 990 (Fed. Cir. 2006); *Akins*, 82 Fed. Cl. at 622;

*Kinnucan v. United States*, 25 Cl. Ct. 355, 356 n.1 (1992).  Courts may also consider certain

matters outside the pleadings, such as public records, without converting the motion to one for

summary judgment.  *See Terry v. United States*, 103 Fed. Cl. 645, 652 (2012); *Love Terminal*

*Partners v. United States*,  97 Fed. Cl. 355, 378-79 (2011).  Additionally, courts may consider

materials "integral" to a complaint, even if not attached or incorporated by reference, and

"documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98, n.2 (2d Cir. 2007); *Popa v.*

*PricewaterhouseCoopers L.L.P.*, 2009 WL 2524625, at *1 n.2 (S.D.N.Y. Aug. 14, 2009).

By its terms, RCFC 12(d) only permits conversion of motions to dismiss for failure to

state a proper claim (RCFC 12(b)(6)) and 12(c)) – not motions to dismiss based on jurisdiction

(RCFC 12(b)(1)).  *See DeKalb Cnty. v. United States*, 108 Fed. Cl. 681, 692 (2013); *see Estes*

*Express Lines v. United States*, 108 Fed. Cl. 416, 420 (2013), *rev'd on other grounds*, No. 2013-

5056, 2014 WL 26244 (Fed. Cir. Jan 3, 2014).   Accordingly, it is well settled that "[c]onversion

of a 12(b)(1) motion to dismiss into a summary judgment motion is not provided for by RCFC

12(b) [now 12(d)]."  *North Hartland, L.L.C. v. United States*, 78 Fed. Cl. 172, 178 (2007).

## II.  Plaintiffs Have Not Articulated A Valid Basis For The Court To Permit Discovery At This Early Stage Of The Litigation

The Court should deny plaintiffs' motion because (1) there are no jurisdictional facts in

dispute; (2) discovery is not necessary to resolve the legal sufficiency of plaintiffs' claims; and

(3) to the extent there is a dispute as to any well-pled factual matter, the Court must, in

considering the motion to dismiss, assume as true the allegations in plaintiffs' complaint.

Accepting plaintiffs' allegations as true, the complaint still must be dismissed, and the Court may make this determination without reference to any matters outside the pleadings.

### A.   Plaintiffs Are Not Entitled To Jurisdictional Discovery

The Court should reject plaintiffs' request for discovery related to the Government's jurisdictional challenge.  Plaintiffs fail to identify any disputed facts relevant to the Court's resolution of whether it has jurisdiction to hear the asserted takings claim.

### 1.   There Are No Jurisdictional Facts In Dispute Related To The Legal Question of Ripeness

First, plaintiffs argue that jurisdictional discovery is necessary to respond to the Government's ripeness argument.  According to plaintiffs, there is a direct contradiction between (1) the observation that the ultimate disposition of the Enterprises is *unknown*; and (2) plaintiffs' allegation that "Fannie and Freddie are *expected* to enjoy strong profitability for years to come." Pls.' Mot. at 9 -10 (emphasis added).  Based on this purported "factual dispute," plaintiffs seek discovery regarding the "expected future profitability of Fannie and Freddie . . . and when (if ever) and how the conservatorship will end." *Id.* at 12.  The Court should reject this discovery request because there is no factual dispute as to the "assessment of the future profitability of the Companies," id. at 11, relevant to this Court's jurisdiction.  Plaintiffs' allegations are not sufficient to constitute a ripe claim, and no discovery they could obtain can change this.[1]

Plaintiffs argue that "the Government's ripeness argument rests upon *factual claims about the future financial health* of the Companies." Pls.' Mot. at 9 (emphasis added).  This is erroneous; the Government makes no such "factual claims," but instead accepts plaintiffs'

---

[1]  Plaintiffs do not claim that the Government cited extra-pleading materials in making its ripeness argument. *See* Pls. Mot. at 9-12.

allegations.  Taking plaintiffs' allegations as true, as the Court must, we explain that, regardless of *expectations* of profitability, the timing of the Enterprises' exit from the conservatorships – including whether the Enterprises are placed in receivership – is unknown and unknowable and thus not ripe for judicial review.  US Mot. to Dismiss at 38-41.  *Expectations* are by definition speculative and uncertain.  Despite anyone's best predictions of what the future may hold, the status and profitability of Fannie Mae, Freddie Mac, or any other company is unknown, and claims that turn on future profitability are not ripe for judicial review.  *See Marvel Worldwide, Inc. v. Kirby*, 756 F. Supp. 2d 461, 468-469 (S.D.N.Y. 2010) (declining to resolve a claim for the apportionment of future profits for lack of ripeness).  Accordingly, discovery cannot and will not change the fact that plaintiffs' claim is not ripe because it is "contingent [upon] future events that may not occur as anticipated, or indeed may not occur at all."  *Texas v. United States*, 523 U.S. 296, 300 (1998).

Plaintiffs' complaint asks the Court to hit a moving target: no one can say (1) whether and when the Enterprises, in their discretion, will declare a shareholder dividend; (2) whether and when the Enterprises will resume draws on the Treasury capital commitment; or (3) whether and when the Enterprises might be placed in receivership.  Until those issues are resolved, the Court cannot assess the ultimate effect of the conservatorships on shareholders' dividend and liquidation rights, and no amount of discovery will change that.[2]

---

[2]   In their motion, plaintiffs cite a Fannie Mae Quarterly Report (Form 10-Q) for the statement "we [Fannie Mae] expect to remain profitable for the foreseeable future."  Pls.' Mot. at 10; Compl. ¶ 57 (available at http://phx.corporate-ir.net/phoenix.zhtml?c=108360&p=irol-secQuarterly&control_SelectGroup=Quarterly%20Filings.  These expectations, however, are accompanied by a number of risks and uncertainties that, according to Fannie Mae, may cause actual financial performance to vary from expectations.  Form 10-Q at 77, 80, 156; *see also id.* at 11-12.

Plaintiffs' allegations will remain "hypothetical, abstract, and contingent" – and, therefore, not ripe for judicial review – until the issues surrounding the conservatorships, additional draws from Treasury, and possible receivership are resolved.  *Mass. Bay Transp. Auth. v. United States*, 21 Cl. Ct. 252, 257 (1990).  Currently, however, plaintiffs cannot provide a reliable, non-speculative measure of what, if anything has been "taken" from them, and no amount of discovery can chart these unknown waters.  *See Smith v. United States*, 495 Fed. App'x 44, 49 n.6 (Fed. Cir. 2012) (unpublished) (trial court properly denied discovery where plaintiff sought "to engage in a fishing expedition for information that would not establish jurisdiction).  Therefore, the Court should deny plaintiffs' request to obtain discovery on how Fannie Mae and Freddie Mac might perform in the future.

**2.      Plaintiffs Are Not Entitled To Discovery With Respect To The Legal Question Of FHFA's Status When It Acts As Conservator**

Plaintiffs contend that they need discovery to address our purely legal argument that, for purposes of Tucker Act jurisdiction, FHFA is not a Government actor when serving as conservator.  Pls.' Mot. at 12-17.  Plaintiffs argue that (1) the Government makes two "factual assertions" in support of our explanation as to why plaintiffs cannot sue FHFA in its conservator role; and (2) these "factual assertions" contradict allegations in plaintiffs' complaint.  *Id.* Plaintiffs are mistaken: the purported factual issues cited by plaintiffs have nothing to do with the legal question of whether the Court has jurisdiction over FHFA acting as conservator, and the Government has never claimed otherwise.  The Court, therefore, should reject plaintiffs' request for discovery into FHFA's status.

First, we described the Enterprises' circumstances leading up to the Third Amendment as a "death spiral," only for background purposes*, see* US Mot. to Dismiss at 9, and not to support

8

our jurisdictional arguments. *See id.* at 12-16. For purposes of the Court's jurisdiction, the circumstances of the Third Amendment's adoption does not bear in any way on the legal status of FHFA when acting as conservator.[3]

We explain in our motion that, based on well-established case law, FHFA stepped into the shoes of the Enterprises when it assumed the role of conservator under Section 4617(b)(2)(A) of HERA. *See* US Mot. to Dismiss at 13-14; *Herron v. Fannie Mae*, 857 F. Supp. 2d 87, 96 (D.D.C. 2012) (holding that "FHFA as conservator of Fannie Mae is not a government actor"). Thus, FHFA is not the United States for the purposes of this Court's jurisdiction. *See O'Melveny & Myers v. Fed. Deposit Ins. Corp.*, 512 U.S. 79, 85 (1994) (FDIC acting as receiver "is not the United States"); *Ameristar Fin. Servicing Co. LLC v. United States*, 75 Fed. Cl. 807, 812 (2007) (dismissing claim because the FDIC as conservator "was not acting as the United States").

The question is purely legal: does FHFA stand in the shoes of the Enterprises when it acts as conservator of the Enterprises? If the Court answers this question in the affirmative, as other courts have done, *see, e.g.*, *Herron*, 857 F. Supp. 2d at 96, then the Court should dismiss plaintiffs' claim for lack of jurisdiction. The Court may decide this legal question because, as plaintiffs repeatedly concede in their complaint, FHFA was appointed conservator of Fannie Mae and Freddie Mac and acted as conservator thereafter, including at the time of the action (the Third Amendment to the Stock Agreements) that plaintiffs allege effected a "taking" of their

---

[3] We note, however, that plaintiffs' quibble with characterization of the circumstances leading to the Third Amendment is undercut by the exhibit attached to their motion. *See* Pls.' Mot., Exh. 1 at 4 ("If the Enterprises are unable to generate the income necessary to meet the 10% dividend, they will draw on the PSPAs [the Stock Agreements with Treasury] to fund payments back to Treasury (i.e. circular flows). Absent a change, this will lead to the GSE's insolvency as they will exhaust the finite amount of capital support remaining after 2012.")

shareholder rights.  *See, e.g.*, Compl. ¶ 4 ("[P]ursuant to HERA, FHFA placed the Companies into conservatorship with the consent of Fannie and Freddie, and Treasury exercised its temporary authority to provide them with capital."); *id.* at ¶ 5 ("When they agreed to conservatorship, the boards of Fannie and Freddie ceded control of the assets and powers of the Companies to FHFA as conservator.  Thus the conservator has ultimate responsibility for, and sole control of, the affairs of Fannie and Freddie so long as the conservatorship continues."); *id.* at ¶ 11 (With the Third Amendment, "Treasury and FHFA effectively nationalized two of the nation's largest financial institutions, while they were under the protection of FHFA as conservator."); *id.* at ¶ 13 ("The conservatorship of Fannie and Freddie achieved the purpose of restoring the Companies to financial health."); *id.* ¶ at 73 ("The Government's unilateral imposition of the Net Worth Sweep pursuant to FHFA's authority as conservator of Fannie and Freddie can in no conceivable respect be fairly characterized as 'conserving' the Companies' assets or property."); *see also id.* at ¶¶ 43, 44, 61, 72.

Plaintiffs further contend that the Government's characterization of the Third Amendment as a "voluntary" agreement between FHFA and Treasury creates a factual dispute warranting discovery.  Pls.' Mot. at 15-16, citing US Mot. to Dismiss at 4, 13, 15.  But no factual dispute exists.  Our assertion that the Third Amendment was a voluntary agreement between FHFA and Treasury does not conflict with any allegation in plaintiffs' complaint: plaintiffs do not contend that FHFA was coerced, acted under duress, or otherwise acted involuntarily in agreeing to the Third Amendment.  To the contrary, plaintiffs allege that FHFA *agreed* to the Third Agreement.  *See, e.g.*, Compl. ¶ 67 ("As noted above, FHFA agreed to sweep all of the Companies' profits to Treasury at the very moment that the Companies had returned to stable profitability . . . .).

The other allegations that plaintiffs now argue support a theory of "coercion" (e.g., Compl. ¶¶ 10, 11, 63, 72) are bare conclusory statements, and the Court is not required to credit them. *See Iqbal*, 556 U.S. at 679 ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."). Even if the Court accepts these allegations as well-pleaded, they do not "plausibly give rise to an entitlement to relief." *Id.*; *see also Sioux Honey Assoc. v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1063 (Fed. Cir. 2012) (considering other "more likely" explanations in finding a claim lacked plausibility); *Starr Int'l Co. v. Fed. Reserve Bank of New York*, 906 F. Supp. 2d 202, 216 (S.D.N.Y. 2012) (noting that although the plaintiffs' complaint "paints a portrait of government treachery worthy of an Oliver Stone movie," it is "one thing to make a sweeping and dramatic claim of government misconduct," but "quite another . . . based on concrete factual allegations – such as *Twombly* and *Iqbal* require –" to allege a plausible claim of Government control over a private entity). Therefore, there is no credible factual dispute on the issue of voluntariness.

Finally, even if there were a dispute, discovery would not be warranted at this stage of the litigation because none of the alleged "factual disputes" is jurisdictional. The Court may simply assume the truth of the well-pleaded allegations in plaintiffs' complaint and decide the Government's motion accordingly. And, to the extent any of the "factual disputes" identified by plaintiffs is relevant to the Court's jurisdiction, the Court may properly reserve the issue for trial after discovery. *Forest Glen Props., LLC v. United States*, 79 Fed. Cl. 669, 678–79 (2007) ("When it appears to a court, however, that the jurisdictional facts are 'inextricably intertwined with the merits,' it may postpone their determination until trial when all relevant evidence may be considered at the same proceeding.") (citations omitted) . Thus, under no circumstances are

plaintiffs entitled to discovery before the Court's consideration of our motion to dismiss.  For all of these reasons, the Court should reject plaintiffs' request for jurisdictional discovery.

> **B.     Plaintiffs Are Not Entitled To Discovery With Respect To Their Failure To State A Viable Takings Claim Under RCFC 12(b)(6)**

The Court should reject plaintiffs' request to convert the United States' Rule 12(b)(6) motion to dismiss into a motion for summary judgment and to allow discovery under Rule 56(d). Pls.' Mot. at 17-25.  Plaintiffs base their request on (1) the Government's citation to a document outside of the pleadings, and (2) alleged "factual assertions" related to plaintiffs' flawed takings claim.  Because plaintiffs are mistaken, both in their discussion of our motion to dismiss and their analysis of the relevant case law, the Court should deny the request.

> **1.     The Government's Citation To A Press Release Does Not Warrant Converting The Pending Motion To One For Summary Judgment**

The United States' citation to a press release – in a footnote in the statement of facts – does not provide a basis to convert the motion to one for summary judgment for two reasons. First, the press release is a public document and, thus, can properly be considered by the Court. Second, the press release was cited in a footnote solely for background and context purposes, and is not material to our legal arguments in the motion to dismiss.  Accordingly, plaintiffs fail to identify any basis to convert our motion to dismiss to one for summary judgment.

Plaintiffs note that, in the statement of facts, we cite the August 2012 FHFA press release (announcing the Third Amendment), a document plaintiffs do not reference in their complaint. Pls.' Mot. at 13, citing US Mot. to Dismiss at 10 n.9.  Specifically, the statement of facts in our motion to dismiss contains the following statement: "The Enterprises found themselves in a death spiral: drawing on the Treasury commitment to pay Treasury its fixed dividend, which, in turn, increased Treasury's total investment and the next quarterly dividend."  US Mot. To

Dismiss at 9-10.  The sentence ends with a footnote citation which suggests the reader "*See* Press

Release, FHFA, Statement of FHFA Acting Director Edward J. DeMarco on Changes to Fannie

Mae and Freddie Mac Preferred Stock Purchase Agreements (Aug. 17, 2012)."  This citation

does not support plaintiffs' request for discovery.

First, our motion to dismiss does not rely upon impermissible, extra-record material in

demonstrating the shortcomings of plaintiffs' complaint.  As this Court has recognized:

> [T]he court is not always restricted to the four corners of the
> complaint when adjudicating RCFC 12(b)(6) motions.  Indeed, courts
> have allowed consideration of matters incorporated by reference or
> integral to the claim, items subject to judicial notice, matters of public
> record, orders, items appearing in the record of the case, and exhibits
> attached to the complaint whose authenticity is unquestioned; these
> items may be considered by the district judge without converting the
> motion into one for summary judgment.

*Newtech Research Sys. LLC v. United States*, 99 Fed. Cl. 193, 200 n.11 (2011) (citing Wright &

Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)); *Sebastian v. United States*, 185

F.3d 1368, 1374 (Fed. Cir. 1999) ("In deciding whether to dismiss a complaint under Rule

12(b)(6) the court may consider matter of public record.").

Here, the FHFA press release is a public document; thus, the Court may judicially notice

the fact that the Acting Director made the statements identified in the press release.  *DeKalb

Cnty.*, 108 Fed. Cl. at 692; *Bell/Heery*, 106 Fed. Cl. at 307; *Terry*, 103 Fed. Cl. at 652. (citations

omitted); *Love Terminal Partners*, 97 Fed. Cl. at 378-79 (citations omitted).

More importantly, the press release – and the background facts associated with it – are

not material to the legal arguments in our motion to dismiss; which, of course, is why the

document is not cited in the argument section of our brief but in the statement of facts.[4]  We make the following RCFC 12(b)(6) challenges in our motion to dismiss:

    A.   Treasury Cannot Be Subject To Takings Liability Because The Third Amendment Was Executed By The Government Acting As A Market Participant Rather Than A Sovereign

    B.   Plaintiffs' Ownership Of Shares In The Enterprises Does Not Create A Legally Cognizable Property Interest For Purposes Of A Takings Claim

    C.   Plaintiffs Have Not Alleged The Facts Necessary For A Taking

    D.   Plaintiffs' Claims Are Not Ripe For Judicial Review

US Mot. To Dismiss at ii.  Facially, none of these bases rises or falls with the *reason* the Third Amendment was adopted – a point which the plaintiffs suggest will be hotly contested.  Pls.' Mot. at 13-15.  The first argument establishes through case law that no taking arises from non-sovereign governmental acts.  The reason for the Third Amendment plays no role in this analysis.  The second argument establishes that, given the regulatory framework governing Fannie Mae and Freddie Mac, plaintiffs legally cannot identify a relevant property right necessary to assert a taking.  Again, the reason for the Third Amendment has no bearing on this argument.  The third basis for dismissal – as the heading suggests – is limited to the failings of plaintiffs' allegations in their complaint.  Finally, the ripeness argument addresses how potential changes, over time, make it impossible for the Court to evaluate the Third Amendment's ultimate impact.  Yet again, the reason for the Third Amendment does not affect the analysis.  Accordingly, the Court should conclude that the reference to the press release in a footnote in our statement of facts is not material to our arguments and cannot be used by plaintiffs as a device for commencing discovery.

---

[4]  Further, the document is identified with a "see" reference.

Finally, even if the Court elected not to judicially notice the press release's contents, and concluded that the press release was somehow material to our analysis, the citation still does not create a basis to convert the motion to a motion for summary judgment or otherwise allow discovery. On a motion to dismiss, the Court should simply disregard any material that it deems unnecessary, rather than convert the motion into one for summary judgment. *See In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 262 (S.D.N.Y. 2008) (disregarding materials not deemed judicially noticeable or relevant).

### 2. The Government's RCFC 12(b)(6) Challenge To The Sufficiency Of The Complaint Does Not Require The Resolution Of Any Factual Disputes

The Rule 12(b)(6) bases for dismissal of plaintiffs' takings claim do not require the Court to resolve any purported "factual disputes." Accepting plaintiffs' allegations as true, plaintiffs' takings claim is insufficient on its face. In any event, the challenged factual statements are provided merely for context and background; the statements cannot properly serve as a basis to convert the motion into a motion for summary judgment and permit discovery.

In our motion to dismiss, we identify three reasons that plaintiffs fail to state a viable regulatory taking. First, takings claims cannot be premised upon Government action undertaken in a proprietary or commercial capacity. US Mot. to Dismiss at 26-28; *see, e.g.*, *Alaska Airlines, Inc. v. Johnson*, 8 F.3d 791, 798 (Fed. Cir. 1993). Second, as shareholders in regulated financial institutions, plaintiffs cannot assert a legally cognizable property interest that was "taken" by FHFA as conservator. US Mot. at 28-32. The Federal Circuit has held exactly this in a line of cases that are binding precedent on this Court. *Id.*; *see, e.g.*, *Branch v. United States*, 69 F.3d 1571, 1575 (Fed. Cir. 1995). Finally, under any legal formulation, plaintiffs do not allege a regulatory taking. US Mot.to Dismiss at 32-37. Here, the Government demonstrated that

plaintiffs' regulatory takings claim fails as a categorical taking or under the typical *Penn Central*

three-factor test.  US Mot. to Dismiss at 33-37, citing *Penn Central Transp. Co. v. City of New*

*York*, 438 U.S. 104 (1978).

Of all of these reasons to dismiss plaintiffs' complaint, plaintiffs' motion for discovery

implicates only our position that plaintiffs have not articulated a valid regulatory takings claim

under *Penn Central*.  In the context of the *Penn Central* analysis, plaintiffs demand discovery

regarding three alleged "factual assertions" that plaintiffs claim they dispute: (1) the purpose of

the Third Amendment; (2) the voluntariness of its adoption by FHFA; and (3) the depth of the

Enterprises' insolvency at the time FHFA placed them into conservatorships.  Pls.' Mot. at 17-

19.  As explained below, however, plaintiffs fail to state a viable takings claim under *Penn*

*Central* regardless of these purported "factual disputes."  Moreover, the alleged "factual

assertions" can be disregarded by the Court without converting the motion to one for summary

judgment.

> **a.     The Court Need Not Decide The Purpose Or Voluntariness Of
> The Third Amendment In Order To Dismiss Plaintiffs' Claim
> Under *Penn Central***

The Government's *Penn Central* analysis is not based upon the Third Amendment's

purpose or the voluntary nature of FHFA's agreement to the Third Amendment.   Therefore, no

discovery into these issues is warranted.

We demonstrated in our motion to dismiss that, applying the *Penn Central* factors,

longstanding Federal Circuit precedent establishes that there can be no interference with

shareholders' reasonable, investment-backed expectations when an agency regulator places a

regulated financial institution in conservatorship or receivership.  US Mot. to Dismiss at 35

(citing *Golden Pac. Bancorp v. United States*, 15 F.3d 1066, 1074 (Fed. Cir. 1994)).  Further, we

demonstrated that plaintiffs do not allege that the conservatorship had any economic impact on them, given that plaintiffs agree that the Enterprises were facing insolvency at the time FHFA placed them into conservatorships and that it is undeniable that the Enterprises would have become insolvent without Government support.  US Mot. to Dismiss at 34; *see* Compl. ¶¶ 41, 53 (acknowledging that Fannie Mae and Freddie Mac "experienced net losses" from 2008 through 2011, resulting in a combined $187 billion in draws from Treasury).  We also showed that the character of the alleged Government action – in rescuing the Enterprises in a time of financial crisis – weighs against finding a regulatory taking because shareholders have benefited for years from the Enterprises' unique relationship with the Government.  *Id.* at 37.

The purported "factual assertions" identified by plaintiffs do not require the Court to convert the motion to a motion for summary judgment and permit discovery.  Pls.' Mot. at 18, 19 n.19, 21.  Neither the purpose of the Third Amendment nor the voluntariness of the Third Amendment is relevant to the application of *Golden Pacific* to this case.  Plaintiffs acknowledge that the Enterprises are regulated financial institutions that, pursuant to FHFA's statutory authority, could be placed into conservatorships.  Compl. ¶ 42.  That is the only fact necessary to hold that there is no viable takings claim.  *Golden Pac. Bancorp*, 15 F.3d at 1073-74.  Similarly, neither "factual assertion" – the Third Amendment's purpose or voluntariness – is relevant to the economic impact and character of the Government action under *Penn Central*.

Moreover, even if plaintiffs were correct that there is a dispute among the parties as to a fact necessary to determine that plaintiffs have failed to state a claim, plaintiffs still are not entitled to discovery.  Instead, the Court should assume all well-pleaded allegations in the complaint as true and decide the motion accordingly.  RCFC 12(d); *Love Terminal Partners*, 97 Fed. Cl. at 378-79.  Plaintiffs have not, therefore, articulated a basis for the relief they seek.

**b.      There Is No Material Dispute As To Whether The Enterprises Were Placed Into Conservatorships At A Time When They Were Facing Insolvency**

The final purported "factual dispute" plaintiffs assert relates to the statement in the Government's motion that *plaintiffs* acknowledge that Fannie Mae and Freddie Mac were facing insolvency at the time FHFA placed them into conservatorships in 2008.  Pls.' Mot. at 22-23.  A close reading of plaintiffs' complaint and motion, however, confirms that plaintiffs do not dispute the financial condition of the Enterprises before FHFA acted.  *See* Compl. ¶¶ 13 (characterizing the Government's capital as "needed"), 41 (describing the Enterprises' losses), 53 (describing "holes in the Companies' balance sheets"); Pls.' Mot. at 24 (plaintiffs concede that "[t]o be sure, the Companies were in poor financial health in 2008.").  This is indisputable.  The Enterprises' draws on the Treasury commitment (in excess of $187 billion) could only be made if the Enterprises' net worth was negative.  *See* Compl. ¶ 53.

For their part, plaintiffs do not allege in their complaint that the institutions were solvent when the institutions were placed in conservatorship.  Plaintiffs do not challenge FHFA's placement of Fannie Mae and Freddie Mac into conservatorships, or FHFA's authority to do so under HERA.  *See* Compl. ¶¶ 4, 43.  Indeed, plaintiffs acknowledge that "[t]he housing crisis had a significant negative effect on the Companies' balance sheets, and from 2007 through 2011 both Fannie and Freddie experienced net losses. . . .  Fannie's reported annual losses peaked in 2009 at $72 billion, and Freddie's annual losses peaked in 2008 at $50 billion.  Compl. ¶ 41.  Plaintiffs also state that "by mid-2012, the conservatorship imposed on the Companies in 2008 had been successful."  *Id.* at 61.  Similarly, plaintiffs do *not* allege that the Enterprises would have survived in the absence of the Government's intervention.

18

Clearly, the only factual dispute is between plaintiffs' own complaint (where the conservatorship is deemed "successful") and the position they take in their motion for discovery (where they challenge our characterization of their allegations). Thus, the Court can only conclude that – for purposes of resolving our motion to dismiss – the Enterprises were facing insolvency, or at least in severe financial distress sufficient to warrant FHFA's intervention, at the time FHFA placed them into conservatorships – which is the entire point we make in our motion to dismiss.

Plaintiffs also imply that the Government's statement that the Enterprises were facing insolvency contradicts the allegations in the complaint that the conservatorships were intended to be temporary. Pls.' Mot. at 24. This is both untrue and nonsensical. FHFA's statement that the conservatorships might be terminated when the Enterprises are stabilized looks to the future financial condition of the Enterprises. The Government's assertions about the financial condition of the Enterprises at the time of the conservatorship is a separate issue.

In any event, as explained above, regardless of the parties' understandings about the Enterprises' solvency, the complaint fails to plausibly allege that the Government interfered with plaintiffs' investment-backed expectations because, as a matter of law, there can be no interference with such expectations when a regulated agency is placed into conservatorship – a placement plaintiffs do not challenge. *See Golden Pac. Bancorp*, 15 F.3d at 1074. This is a purely legal question.

Finally, plaintiffs assert that, should the Court agree to convert the motion to dismiss into a motion for summary judgment, the Court should permit discovery related to the Government's expectations as to the financial condition of Fannie Mae and Freddie Mac at the time they were placed into conservatorships. Pls.' Mot. at 24-25. Plaintiffs argue that discovery of materials

19

regarding the *Government's* expectations is relevant to understanding the *shareholders'* expectations.  *Id.*  The illogic of plaintiffs' request is apparent: non-public, Government documents cannot provide insight into shareholders' expectations.  Plaintiffs, therefore, do not identify a valid basis to permit discovery or a valid subject matter for that discovery.

<u>**CONCLUSION**</u>

For these reasons, the Court should deny plaintiffs' motion for discovery.  The Court should then lift the current stay granted at the request of plaintiffs and direct plaintiffs to respond to the motion to dismiss in short course.

Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

s/ Jeanne E. Davidson
JEANNE E. DAVIDSON
Director

s/ Kenneth M. Dintzer
KENNETH M. DINTZER
Acting Deputy Director
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480 Ben Franklin Station
Washington, D.C. 20044
(202) 616-0385
(202) 307-0972 fax
KDintzer@CIV.USDOJ.GOV
*Attorneys for Defendant*

February 11, 2014

20