No. 13-465C
(Judge Sweeney)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FAIRHOLME FUNDS, INC., *et al.,*

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

**DEFENDANT'S CONSOLIDATED MOTION TO LIFT STAY OF
BRIEFING ON MOTION TO DISMISS AND MOTION TO SUSPEND
DISCOVERY, OR, IN THE ALTERNATIVE, MOTION FOR RECONSIDERATION**

STUART F. DELERY
Assistant Attorney General

JEANNE E. DAVIDSON
Director

OF COUNSEL:

PETER A. BIEGER
Assistant General Counsel
KATHERINE M. BRANDES
Attorney Advisor
Department of the Treasury
1500 Pennsylvania Avenue, N.W
Washington, D.C. 20220

KENNETH M. DINTZER
Acting Deputy Director
ELIZABETH M. HOSFORD
GREGG M. SCHWIND
Senior Trial Counsel
KATY M. BARTELMA
SETH W. GREENE
ERIC E. LAUFGRABEN
DANIEL B. VOLK
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
(202) 616-0385
kenneth.dintzer@usdoj.gov

March 17, 2014

Attorneys for Defendant

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................iii

ARGUMENT ....................................................................................................... 3

    I.     The Court Should Suspend Discovery And Resolve The
         Remaining Dispositive Issues In The Government's Motion To
         Dismiss With Respect To Which There Is Undisputedly No Need
         For Discovery ........................................................................................ 3

         A.     The Court's Discovery Order Does Not Preclude A
               Decision On Seven Independent Bases For Dismissal Of
               The Complaint ...................................................................... 3

         B.     A Stay Of Discovery Is Needed to Effectuate The "Just,
               Speedy, and Inexpensive" Resolution Of Case Dispositive
               Issues That Is Required By The Court's Rules ........................... 5

    II.    The Court Should Grant Our Motion For Reconsideration And
         Vacate Its Discovery Order ................................................................. 10

         A.     The Requested Discovery Regarding Ripeness Is Both
                Unnecessary And Statutorily Prohibited ................................... 11

         B.     The Court Should Not Authorize Plaintiffs To Probe For
               Evidence To Support Their Conspiracy Theory When It
               Cannot Result In A Claim Within This Court's Jurisdiction ................... 15

         C.     The Court Erred In Granting Discovery To Aid In Defense
               Of The Government's RCFC 12(b)(6) Motion ........................... 17

             1.     Granting Discovery To Aid In Defense Of A RCFC
                    12(b)(6) Motion Is Always Improper ........................... 18

             2.     Allowing Plaintiffs To Take Discovery Of The
                    Government As To Plaintiffs' Reasonable
                    Investment-Backed Expectations Is Wholly Illogical ................... 19

    III.   The Court Should Stay The March 20, 2014 Deadline For Filing A
         Joint Discovery Schedule ................................................................... 20

CONCLUSION ................................................................................................... 20

CASES

*Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*,
    988 F.2d 1157 (Fed. Cir. 1993) .......................................................................... 2, 18

*Agora, Inc. v. Axxess, Inc.*,
    90 F. Supp. 2d 697 (D. Md. 2000), ........................................................................ 6

*Agrocomplect, AD v. Republic of Iraq*,
    524 F. Supp. 2d 16 (D.D.C. 2007), ........................................................................ 17

*Ameristar Fin. Servicing Co. LLC v. United States*,
    75 Fed. Cl. 807 (2007) ............................................................................................ 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................................... 16, 18

*AstraZeneca Pharms. LP v. Apotex Corp.*,
    669 F.3d 1370 (Fed. Cir. 2012) ............................................................................. 12

*Black v. United States*,
    24 Cl. Ct. 465 (1991) ............................................................................................... 5

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................................................. 5

*Cienega Gardens v. United States*,
    503 F.3d 1266 (Fed. Cir. 2007) ............................................................................. 19

*Coastal Gas Corp. v. Dep't of Energy*,
    84 F.R.D. 278 (D. Del. 1979) .................................................................................. 6

*Contemporary Mission, Inc. v. U.S. Postal Serv.*,
    648 F.2d 97 (2d Cir. 1981) .................................................................................... 14

*Ex parte McCardle*,
    7 Wall. 506 (1868) ................................................................................................... 7

*Florsheim Shoe Co. v. United States*,
    744 F.2d 787 (Fed. Cir. 1984) ................................................................................ 6

*Freeman v. FDIC*,
    56 F.3d 1394 (D.C. Cir. 1995) .............................................................................. 14

*Freeman v. United States*,
  556 F.3d 326 (5th Cir. 2009) ................................................................... 16

*Golden Pac. Bancorp v. United States*,
  25 Cl. Ct. 768 (1992), ............................................................................. 16

*Golden Pac. Bancorp v. United States*,
  15 F.3d 1066 (Fed. Cir. 1994) ................................................................. 19

*Goodman Holdings v. Rafidain Bank*,
  26 F.3d 1143 (D.C. Cir. 1994) ................................................................. 17

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) ................................................................................... 6

*Herbert v. Lando*,
  441 U.S. 153 (1979) ................................................................................... 5

*Int'l Graphics v. United States*,
  3 Cl. Ct. 715 (1983) ................................................................................... 6

*JPMorgan Chase & Co.*,
  --- F.Supp.2d ----, Nos. 11 Civ. 6188 *et al.*, 2013 WL 5660247 (S.D.N.Y. Oct. 16, 2013) ....... 9

*Kolley v. Adult Protective Servs.*,
  725 F.3d 581 (6th Cir. 2013) ............................................................... 5, 18

*Krim v. BancTexas Grp., Inc.*,
  989 F.2d 1435 (5th Cir. 1993) ................................................................. 14

*L-3 Commc'ns Integrated Sys., L.P. v. United States*,
  98 Fed. Cl. 45 (2011) ............................................................................... 10

*Martin v. United States*,
  101 Fed. Cl. 664 (2011) ........................................................................... 10

*McCook Metals LLC v. Alcoa, Inc.*,
  249 F.3d 330 (4th Cir. 2001) ................................................................... 19

*McKinley v. FHFA,*,
  789 F. Supp. 2d 85 (D.D.C. 2011) ............................................................. 9

*Minesen Co. v. McHugh*,
  671 F.3d 1332 (Fed. Cir. 2012) ................................................................. 6

*Nat'l Trust for Historic Preserv. v. FDIC*,
   995 F.2d 238 (D.C. Cir. 1993).................................................................. 14

*O'Melveny & Myers v. Federal Deposit Insurance Corporation*,
   512 U.S. 79 (1994)......................................................................................... 15

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999)....................................................................................... 19

*Petro-Hunt, L.L.C. v. United States*,
   108 Fed. Cl. 398 (2013)................................................................................ 17

*Reliance Ins. Co. v. United States*,
   18 Cl. Ct. 359 (1989).................................................................................. 5, 6

*Rippee v. Boston Mkt. Corp.*,
   408 F. Supp. 2d 982 (S.D. Cal. 2005)....................................................... 14

*Rutman Wine Co. v. E. & J. Gallo Winery*,
   829 F.2d 729 (9th Cir. 1987)......................................................................... 5

*Sharp v. United States*,
   566 F.2d 1190, 215 Ct. Cl. 883 (Ct. Cl. 1977)....................................... 15

*Slattery v. United States*,
   583 F.3d 800 (Fed. Cir. 2009),................................................................... 16

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998)........................................................................................... 7

*Texas v. United States*,
   523 U.S. 296 (1998)....................................................................................... 12

*Thomas v. Independence Township*,
   463 F.3d 285 (3d Cir. 2006).......................................................................... 6

## STATUTES

12 U.S.C. § 4617............................................................................................ 1, 13, 14

28 U.S.C. § 1500...................................................................................................... 4

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FAIRHOLME FUNDS, INC., *et al.*,     )
    )
    Plaintiffs,     )
    )   No. 13-465C
    v.     )   (Judge Sweeney)
    )
THE UNITED STATES,     )
    )
    Defendant.     )

## DEFENDANT'S CONSOLIDATED MOTION TO LIFT STAY OF BRIEFING ON MOTION TO DISMISS AND MOTION TO SUSPEND DISCOVERY, OR, IN THE ALTERNATIVE, MOTION FOR RECONSIDERATION

Pursuant to Rules 7(b), 54(b), and 59(a)(1) of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully requests that the Court stay its February 26, 2014 order (Order) pending resolution of the dispositive issues in the Government's motion to dismiss with respect to which there is undisputedly no need for discovery. In the alternative, the United States respectfully asks the Court to reconsider and vacate the Order because discovery prior to resolution of the motion to dismiss is inappropriate.

The Order rests on the conclusion that discovery is needed before the Court can resolve three grounds for dismissal the Government has presented: whether plaintiffs' claims are ripe, whether a challenge to the actions of the Federal Housing Finance Agency (FHFA) can proceed under the Tucker Act, and whether plaintiffs have stated a viable regulatory takings claim. As discussed in Part II, below, with respect to the ripeness argument, the contemplated discovery would not aid the Court in deciding the motion to dismiss and is contrary to the Housing and Economic Recovery Act of 2008's clear mandate that "no court may take any action to restrain or affect the exercise of powers or functions of [FHFA] as a conservator or a receiver." 12 U.S.C. § 4617(f). Consequently, the Order should be reconsidered and vacated.

But in any event, these three arguments represent only a fraction of the independent grounds for dismissal that the Government raised in its motion. Plaintiffs did not seek, nor did the Court order, discovery on seven other independent grounds upon which the Court could dispose of the case. RCFC 12's purpose is "to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity." *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993) (discussing Rule 12(b)(6)). Thus, as we discuss in Part I, below, the Government is entitled to have the Court decide these independent arguments at the outset of the case. Because these other case-dispositive grounds for dismissal are not affected by the Court's Order, plaintiffs will not be prejudiced by the Court lifting the stay of briefing and suspending discovery at this time. On the other hand, the Government will suffer significant prejudice if required to provide extensive discovery before the Court considers the remaining dispositive arguments.

Without this relief, the Government will suffer especially severe harm because plaintiffs have signaled that they intend to seek extensive discovery on a broad spectrum of factual issues that deeply implicate the merits of the case, not targeted jurisdictional discovery. Because of the sweeping nature of plaintiffs' allegations, that likely would mean requests to depose numerous officials and the potential for requests to produce hundreds of thousands, if not millions, of pages of documents.

Thus, we respectfully ask the Court to: (1) lift the stay of briefing, (2) suspend discovery pending resolution of the issues in the Government's motion to dismiss with respect to which it is undisputed that there is no need for discovery, and (3) stay the requirement for the parties to file a joint discovery schedule. In the alternative, we respectfully ask the Court to reconsider and

vacate its Order allowing discovery to take place at this preliminary stage of the case. The

parties' and the Court's interests are best served by postponing burdensome discovery that may

be superseded by the relief we request.

**ARGUMENT**

I.     **The Court Should Suspend Discovery And Resolve The Remaining Dispositive
       Issues In The Government's Motion To Dismiss With Respect To Which There Is
       Undisputedly No Need For Discovery**

Because the Order does not address the majority of our motion to dismiss, the interests of

justice require the Court to permit briefing on our pending motion to dismiss and suspend

discovery until the Court addresses these other dispositive issues. Resumption of briefing and

suspension of discovery will spare the parties and the Court the unnecessary discovery burdens

and disputes that will inevitably result from wide-ranging fact discovery.

   A.     **The Court's Discovery Order Does Not Preclude A Decision On Seven
          Independent Bases For Dismissal Of The Complaint**

Plaintiffs' motion for a continuance to permit discovery (Discovery Motion) requested

discovery solely with respect to four distinct and severable issues raised by our motion to

dismiss: (1) whether the complaint's claims are ripe, Discovery Motion at 9-12; (2) whether

FHFA acting as conservator is the United States, *id*. at 12-17; (3) whether plaintiffs can satisfy

the "nature of the Government action" prong of the *Penn Central* regulatory taking test; *id*. at 18-

22; and (4) relevant to *Penn Central's* "investment-backed expectations" prong, whether the

Enterprises' solvency (or lack thereof) at the time of the conservatorships affected the

reasonableness of shareholder expectations of future profitability. *Id.* at 22-25.

Ultimately, the Court granted plaintiffs' motion only with respect to issues (1), (2), and

(4) above. Order at 3-4. Thus, neither the Court nor the plaintiffs addressed numerous

dispositive legal arguments, raised by our motion, listed in the following chart:

| Grounds For Dismissal | The Order |
|---|---|
| Lack of jurisdiction to entertain challenge to FHFA's actions as conservator; Motion to Dismiss at 16-18. | Granted plaintiffs discovery regarding plaintiffs' allegations that FHFA acted at Treasury's direction. |
| Lack of jurisdiction pursuant to 28 U.S.C. § 1500; *id.* at 18-20. | Stayed briefing. |
| Lack of standing to sue because HERA expressly provides that FHFA succeeded to all shareholder rights; *id.* at 21-23. | Stayed briefing. |
| Lack of standing to bring claims based upon an alleged loss of share value or dividends; *id.* at 23-24. | Stayed briefing. |
| Failure to state a claim because the Third Amendment was executed by the Government acting as a market participant rather than a sovereign; *id.* at 26-28. | Stayed briefing. |
| Failure to state a takings claim because plaintiffs' possess no legally cognizable property interest; *id.* at 28-32. | Stayed briefing. |
| Failure to state a categorical regulatory takings claim; *id.* at 32-33. | Stayed briefing. |
| Failure to state a *Penn Central* regulatory takings claim because plaintiffs lacked a reasonable expectation of profits given the Enterprises' insolvency; *id.* at 34-37. | With respect to the "reasonable investment-backed expectations" prong, granted plaintiffs discovery regarding solvency and reasonableness of shareholders' expectations about the Enterprises' future profitability. |
| Failure to state a *Penn Central* regulatory takings claim because of the application of *Golden Pacific*; *id.* | Stayed briefing. |
| Lack of ripeness for judicial review; *id.* at 38-39. | Granted plaintiffs discovery regarding future plans for the conservatorships. |

If the Court grants our motion to dismiss with respect to any of the arguments listed above, this case can be resolved without any of the discovery contemplated by the Court's Order taking place. Consequently, the Court should resolve the pending motion to dismiss before allowing any discovery.

### B. A Stay Of Discovery Is Needed To Effectuate The "Just, Speedy, and Inexpensive" Resolution Of Case Dispositive Issues That Is Required By The Court's Rules

The Supreme Court has made clear that motions to dismiss are tools "by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). It would be manifestly inconsistent with RCFC 12's purpose to allow this case to proceed to discovery without first considering grounds for dismissal on which it is undisputed that no factual development is necessary. Indeed, one of the primary objectives of a dispositive motion is to "enable defendants to challenge the sufficiency of complaints without subjecting themselves to discovery." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987); *accord Kolley v. Adult Protective Servs.*, 725 F.3d 581, 587 (6th Cir. 2013) ("A plaintiff is not entitled to discovery before a motion to dismiss, and dismissal under Rule 12(b)(6) helps protect defendants from expending resources on costly discovery for cases that will not survive summary judgment.").

Underscoring the importance of Rule 12's safeguard against discovery relating to legally unsupportable claims is the Rules' clear policy favoring "just, speedy and inexpensive determination of every action." RCFC 1. Although discovery is subject to a "liberal rule," it is equally clear that "'when considering a motion to . . . suspend discovery, Rule 1 . . . is relevant.'" *Black v. United States*, 24 Cl. Ct. 465, 468 (1991) (quoting *Reliance Ins. Co. v. United States*, 18 Cl. Ct. 359, 360 (1989)); *see also Herbert v. Lando*, 441 U.S. 153, 177 (1979) ("discovery provisions, like all of the Federal Rules of Civil Procedure, are subject to the injunction of Rule 1 that they 'be construed to secure the just, speedy, and inexpensive

determination of every action'"); *Int'l Graphics v. United States*, 3 Cl. Ct. 715, 718 (1983) (invoking Rule 1).

To that end, courts consistently and routinely suspend discovery pending the resolution of threshold dispositive motions. *See*, *e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982); *Thomas v. Independence Township*, 463 F.3d 285, 302 (3d Cir. 2006) ("Until the Rule 12(b)(6) motion is resolved, all discovery must be stayed."); *Florsheim Shoe Co. v. United States*, 744 F.2d 787, 797 (Fed. Cir. 1984); *Reliance Ins. Co.*, 18 Cl. Ct. at 360-61; *Int'l Graphics*, 3 Cl. Ct. at 718. Postponing discovery until the resolution of potentially dispositive motions is an "eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources." *Coastal Gas Corp. v. Dep't of Energy*, 84 F.R.D. 278, 282 (D. Del. 1979); *see also Agora, Inc. v. Axxess, Inc.*, 90 F. Supp. 2d 697, 699 (D. Md. 2000), *aff'd*, 11 F. App'x 99 (4th Cir. 2001) ("If . . . dismissal of this case under Fed.R.Civ.P. 12(b)(6) is reversed on appeal . . . I shall consider further whether to permit jurisdictional discovery.").

The Court may eliminate the need for discovery of any kind by simply taking up the seven threshold issues, listed above, that are not addressed in the Court's Order. Ultimately, the Court will need to address these challenges, and resolving these before burdensome and expensive discovery can only produce efficiencies for the Court and the parties. Indeed, with respect to the argument that plaintiffs lack constitutional standing to bring claims for an alleged loss of share value or dividends, the Court is bound to make a determination before the case may proceed: "Supreme Court precedent [ ] requires federal courts to answer questions concerning their Article III jurisdiction—[although] not necessarily their statutory jurisdiction—before reaching other dispositive issues." *Minesen Co. v. McHugh*, 671 F.3d 1332, 1337 (Fed. Cir.

2012); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("'Without jurisdiction the court cannot proceed at all in any cause.'") (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1868)).

Plaintiffs' plans for discovery demonstrate why the stay is necessary. Indeed, we anticipate burdensome discovery requests, including depositions of officials and the potential for production of hundreds of thousands, if not millions, of pages of documents.

Plaintiffs have already communicated, in the declaration of counsel attached to their motion, that their discovery requests will be wide-ranging. On the issue of ripeness alone, plaintiffs intend to seek the following:

> With regard to the Government's expectations about the future profitability of the Companies and how long they will remain in the conservatorship, Plaintiffs seek discovery of emails, strategy documents, internal analyses and projections, and other communications regarding the expected future profitability of Fannie and Freddie (both at the time of the Net Worth Sweep and at present) and also regarding when (if ever), and how, the conservatorships will end. This discovery should include, for example, the production of all nonprivileged documents, and appropriate depositions, relating to the Government's belief that Fannie and Freddie will remain profitable for the foreseeable future. Plaintiffs also need discovery about the Government's decision to allow the Companies to recognize billions of dollars of the Companies' deferred tax asset valuation allowances. This discovery should include documents in the possession of Treasury, FHFA, and/or any other relevant Government agencies.

Discovery Motion, Exhibit A at 4.

With respect to FHFA's status as conservator, plaintiffs' declaration states the following:

> With regard to whether FHFA voluntarily entered into the Third Amendment, Plaintiffs seek discovery of communications and documents of FHFA, Treasury, and other Government agencies that concern the agencies' analyses of the financial and other considerations implicated by entering into the Net Worth Sweep. Discovery should include production of all Government documents

related to whether Treasury or other Government agencies influenced the decision of FHFA to enter into the Third Amendment. Interrogatories, depositions, and document productions are likely, in Plaintiffs' view, to yield information that would rebut the Government's factual claims and reveal that Treasury or other Government agencies played a causal role in FHFA's decision to agree to the Net Worth Sweep.

Discovery Motion, Exhibit A at 5.

Finally, with respect to investment-backed expectations, the plaintiffs state:

With regard to whether the Companies were insolvent in 2008 or whether shareholders in the Companies would have had reasonable investment-backed expectations about the Companies' profitability and private control, Plaintiffs seek discovery of all nonprivileged documents, and appropriate depositions, relating to the financial condition of Fannie and Freddie at the time they were placed into conservatorship, and about the Government's own expectations about when and how Fannie and Freddie would return to normal business operations. The discovery should also include the production of documents and depositions related to why the Government allowed the Companies' pre-existing capital structure and stockholders to remain in place, and whether this decision was based in part on the expectation that the Companies would be profitable again in the future.

Discovery Motion, Exhibit A at 5.

Thus, in order to merely complete briefing on the Government's threshold challenge to plaintiffs' claims (which focus on actions taken in August 2012), plaintiffs apparently plan to seek expansive discovery that begins prior to the initiation of the conservatorships – four years earlier – and stretches into the indefinite future. These broad discovery wish-lists, however, do not actually identify the outer markers of plaintiffs' discovery plans. In a post-Order communication with counsel, plaintiffs further explained that "the precise contours and sequencing of discovery will depend upon the evidence that is produced" and the "probative value of that evidence." This communication plainly conveys that – if permitted – plaintiffs will seek unending discovery. Indeed, the breadth of discovery that plaintiffs intend to pursue fully

duplicates that which we might expect were this the beginning of full fact discovery. The important differences are that (1) the Court's Order does not contemplate any discovery by the Government, and (2) the pending jurisdictional challenges may make this discovery unnecessary.

The phenomenal breadth of plaintiffs' discovery plans demonstrates why the Court's Rules require resolution of our pending challenges first. The potential expense to the Government of complying with even a fraction of plaintiffs' objectives will be enormous, invasive, and completely avoidable, given the remaining dispositive challenges in our motion to dismiss.

Further, the burdens of the discovery demanded by plaintiffs will not necessarily be limited to the Government. Indeed, such burdens will extend to the plaintiffs and the Court because allowing discovery to proceed may prompt extensive discovery disagreements. *See FHFA v. JPMorgan Chase & Co*., --- F.Supp.2d ----, Nos. 11 Civ. 6188 *et al.*, 2013 WL 5660247 (S.D.N.Y. Oct. 16, 2013) (in discovery dispute on FHFA-related claim, court held that bank-examination privilege applies to communications between FHFA and Enterprises); *McKinley v. FHFA*, 789 F. Supp. 2d 85, 88-89 (D.D.C. 2011) (in privilege dispute in FHFA-related claim, court held deliberative-process privilege applied to FHFA documents concerning the decision to appoint FHFA as conservator in 2008).

Accordingly, in the interest of a "just, speedy, and inexpensive determination" of this action," *see* RCFC 1, the Court should lift the stay on briefing of the aspects of our motion to dismiss that are not affected by the Court's Order, suspend discovery, and decide those aspects of the motion unaffected by the Court's Order.

**II.    The Court Should Grant Our Motion For Reconsideration And Vacate Its Discovery Order**

In the alternative, to further the efficient administration of justice, the Court should reconsider and vacate the Order.  The permitted discovery will not assist the Court in resolving our motion to dismiss.

"[C]ourts possess inherent authority to modify interlocutory orders prior to the entering of final judgment in a case."  *Martin v. United States*, 101 Fed. Cl. 664, 670 (2011).  The Court has broad discretion to entertain a request for reconsideration, and the standard for such requests is less rigorous than for reconsideration of final judgments.  *See id.* at 670-71.  Reconsideration of interlocutory orders under RCFC 54(b) "is available as justice requires."  *L–3 Commc'ns Integrated Sys., L.P. v. United States*, 98 Fed. Cl. 45, 48 (2011) (internal quotation omitted).  Basic principles of justice and economy require reconsideration of the Court's Order.

The Court's Order authorized plaintiffs to conduct discovery into three areas.  First, in response to plaintiffs' assertion that they need discovery to show that their claims are ripe for adjudication, the Order allows plaintiffs to take discovery regarding the Government's assessment of the future profitability of the Enterprises and "when, and how, the conservatorship[s] will end."  Order at 3.  Second, regarding whether FHFA, as conservator, is the United States for purposes of the Tucker Act, the Order authorizes plaintiffs to take discovery as to "whether the FHFA acted at the direct behest of the Treasury."  *Id.*  Finally, to aid their opposition to the Government's RCFC 12(b)(6) motion, the Court permitted plaintiffs to take discovery regarding the Enterprises' "solvency and the reasonableness of expectations about their future profitability, as well as . . . why the government allowed the preexisting capital structure and stockholders to remain in place, and whether this decision was based on the partial expectation that Fannie and Freddie would be profitable again in the future."  *Id.* at 4.

For the reasons explained below, a ruling on the legal arguments in our motion to dismiss, however, does not require this discovery. Indeed, the Court may never need to consider the portions of the motion to dismiss for which plaintiffs seek discovery. The entire complaint may be dismissed for lack of standing, for example, without ever reaching these issues. Thus, the Court should reconsider its grant of immediate discovery on three issues in advance of a ruling on numerous, unrelated dispositive issues.

A.      **The Requested Discovery Regarding Ripeness Is Both Unnecessary And Statutorily Prohibited**

The Court should reconsider – and vacate – its order permitting discovery regarding ripeness, because the permitted discovery cannot aid the Court in resolving this jurisdictional challenge.

First, discovery in response to a ripeness challenge is illogical. In its motion to dismiss, the Government explained that, because it requires speculation regarding future events, plaintiffs' claim is unripe. Motion to Dismiss at 38-41. Either the future events are unknowable as the United States claims, and discovery will not provide assistance, or no speculation is required and the Government's ripeness argument does not amount to an independent ground for dismissal. Under either scenario, discovery at this stage is inappropriate.

The Court explained its decision to permit the discovery on ripeness in the following manner: "defendant argues that plaintiffs' claims are not ripe for review because: 1) future profitability is unknown, and 2) both Fannie and Freddie are still in conservatorship. These factual claims made by defendant contradict the allegations in plaintiffs' complaint." Order at 3. But this is not so: the complaint does not, and could not, allege that the future profitability of the enterprises is known, or that the enterprises are no longer in conservatorship. *Cf.* Compl. ¶ 62 (acknowledging that the enterprises still are in conservatorships).

Nor could discovery possibly bear on these points. First, discovery regarding expectations about future profitability or predictions of when the enterprises might exit conservatorship could not assist the Court in resolving the Government's ripeness challenge, because mere expectations and predictions could not counter the undisputed fact that these "future events . . . may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998); *accord AstraZeneca Pharms. LP v. Apotex Corp.*, 669 F.3d 1370, 1375, 1380-81 (Fed. Cir. 2012) (holding at the motion to dismiss stage that predictions that the FDA would require the defendant to engage in infringing conduct in the future, regardless of their validity, could not establish the ripeness of the plaintiff's infringement claim). Whether or not Government officials have *expectations* regarding the Enterprises' future profitability, the fact remains that future profitability is unknown. Discovery cannot reasonably be expected to offer insight as to whether the entities *will be* profitable in the future.

Second, regarding the future of the conservatorships, plaintiffs' complaint acknowledges that Fannie and Freddie are still in conservatorships. *See* Compl. ¶ 62. Accordingly, discovery is not necessary to confirm this undisputed fact. The Court, however, determined that "[d]iscovery will enable plaintiffs to . . . answer the question as to when, and how, the conservatorship will end." Order at 3. As an initial matter, the future of the conservatorships may well be determined by Congress, which is considering several pieces of legislation addressing the Enterprises.[1] In any event, respectfully, even if discovery could provide a window into when and how the conservatorships would end, that would not address the Government's argument that plaintiffs' claims are not ripe until the conservatorships do, in fact, end. When that happens (whether tomorrow or in five years), and how that happens (whether

---

[1] *See*, *e.g.*, S. 1217, 113th Cong. (2013).

through receivership, legislation, or otherwise) has absolutely no bearing on the simple fact that the conservatorships have not yet ended, and, thus, the claims are not ripe. To illustrate the point, if the discovery requested by plaintiffs supported the (purely hypothetical) factual finding that the conservatorships were likely to end within two years, that finding would not enable the Court to resolve the Government's ripeness challenge. It would simply suggest that the plaintiffs' claims might be ripe in two years. In sum, the discovery permitted cannot possibly yield facts that would bear on the Government's ripeness argument.

Moreover, permitting discovery without ruling first on the numerous other threshold legal issues – including whether shareholder plaintiffs lack standing even to pursue these claims – would violate Congress's directive under the Housing and Economic Recovery Act of 2008 (HERA), 12 U.S.C. § 4617, that "*no court may take any action to restrain or affect the exercise of powers or functions of [FHFA] as a conservator* or a receiver." 12 U.S.C. § 4617(f) (emphasis added). Congress charged the conservator with a statutory duty to "carry on the business of the" Enterprises when they are in conservatorships, and "operate [the Enterprises] with all the powers of the shareholders, the directors, and the officers," and "take any [authorized action], which [FHFA] determines is in the best interests of the [Enterprises] or [FHFA]." *Id*. at § 4617(b)(2). In addition, upon its appointment, FHFA as conservator "immediately succeed[ed] to . . . all rights, titles, powers, and privileges of the [Enterprises], and of *any stockholder*, officer, or director of [the Enterprises]." 12 U.S.C. § 4617(b)(2)(A) (emphasis added). Against this background, discovery by the Enterprises' shareholders into any matters regarding the Conservator's plans for Fannie Mae's and Freddie Mac's future will improperly interfere with and allow shareholders to influence the Conservator's decision making process in direct violation of section 4617(f), which Congress enacted to insulate FHFA from use of the judicial process to

affect or restrain FHFA's conservatorship powers.  *Id.*; *see also Nat'l Trust for Historic Preserv. v. FDIC*, 995 F.2d 238, 240 (D.C. Cir. 1993) (holding materially identical statutory language "immuniz[es]" the conservator from "outside second-guessing"); *Freeman v. FDIC*, 56 F.3d 1394, 1399 (D.C. Cir. 1995) (holding materially identical statutory language "effect[s] a sweeping ouster of courts' power to grant equitable remedies").  Here, such invasive discovery is improper in light of the fact that the Court has not yet decided the threshold issue whether plaintiffs even possess standing to sue in light of HERA's complete transfer of all shareholder "rights, titles, powers and privileges" to the Conservator.  12 U.S.C. § 4617(b)(2)(A); *see also* Motion to Dismiss at 21-23.

There is no necessary link between the requested discovery and our specific ripeness challenge.  *See Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1443 (5th Cir. 1993) (requiring litigant to both "state with some precision the materials he hoped to obtain with further discovery, and exactly how he expected those materials would assist him in opposing summary judgment"); *Contemporary Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 107 (2d Cir. 1981) ("Rule 56(f) cannot be relied upon to defeat a summary judgment motion where the result of a continuance to obtain further information would be wholly speculative." (internal quotation omitted)).[2]  Without a clear explanation of how the discovery sought will affect the jurisdictional inquiry, the Court cannot ensure that the discovery conducted will remain "precisely focused" and squarely "aimed at addressing matters relating to [ ] jurisdiction."  *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 985 (S.D. Cal. 2005).

---

[2] Although the Court's order relies upon the proposition that "motions filed under RCFC 56(d) are generally favored and are liberally granted," Order at 2 (internal quotation omitted), RCFC 56(d) has no relevance here, where there is only a motion to dismiss pending.

Accordingly, we respectfully ask the Court to reconsider its grant of discovery with respect to ripeness.

**B.** **The Court Should Not Authorize Plaintiffs To Probe For Evidence To Support Their Conspiracy Theory When It Cannot Result In A Claim Within This Court's Jurisdiction**

Discovery regarding plaintiffs' theory that FHFA conspired with Treasury should not be permitted, because even if discovery validates this implausible narrative, the Court still will lack jurisdiction to entertain plaintiffs' claim.

The Defendant's motion to dismiss challenges the Court's jurisdiction based on the legal principle that FHFA, acting as conservator for Fannie Mae and Freddie Mac, is not the United States. In response to plaintiffs' request, however, the Court authorized discovery to search for evidence that "the FHFA acted at the direct behest of the Treasury." Order at 3. The Court stated: "If, as plaintiffs allege, the FHFA was an agent and arm of the Treasury, then this court possesses jurisdiction over plaintiffs' complaint." *Id.* The Court's conclusion conflicts with case law, and the discovery permitted cannot support jurisdiction.

As established in the motion to dismiss, the Supreme Court, in *O'Melveny & Myers v. Federal Deposit Insurance Corporation*, 512 U.S. 79, 85 (1994), held that the FDIC, acting as conservator, is not the United States. Similarly, this Court has held that allegations against a conservator do not state a claim against the United States within the Court's Tucker Act jurisdiction. *See Ameristar Fin. Servicing Co. LLC v. United States*, 75 Fed. Cl. 807, 812 (2007) (dismissing claim because the FDIC as conservator "was not acting as the United States"); *see also Golden Pac. Bancorp v. United States*, 25 Cl. Ct. 768, 770 n.2 (1992), *aff'd*, 15 F.3d 1066 (Fed. Cir. 1994) (challenge to propriety of the Comptroller's exercise of discretion would sound in tort); *Sharp v. United States*, 566 F.2d 1190, 215 Ct. Cl. 883, 883-84 (Ct. Cl. 1977). Because

binding precedent requires that conclusion, it cannot be overcome by any facts plaintiffs might find in discovery. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

The Court incorrectly relied on *Slattery v. United States*, 583 F.3d 800, 827 (Fed. Cir. 2009), *vacated and reinstated as modified after reh'g en banc*, 635 F.3d 1298 (2011) (en banc), to support the conclusion that the issue of whether FHFA as conservator is the United States is factual. In *Slattery*, the court merely concluded that "FDIC's position in contracting on behalf of the United States, and its liability for breach, includes responsibility for the consequences of the breach." *Id.*, 583 F.3d at 828. The court recognized that FDIC as the United States is responsible for contracts entered into before seizure. *Id.* at 827-28. Thus, the court did not endorse a blanket rule recognizing the FDIC as conservator as the United States. Consequently, *Slattery* provides no basis for the Court to order discovery, much less find jurisdiction to decide plaintiffs' claims. In any event, the *Slattery* panel decision should not be viewed as binding precedent because it was as vacated, reheard en banc, and replaced with a decision that did not examine the issue addressed by the panel.

Plaintiffs represent that they seek discovery in order to determine whether FHFA acted in "collusion" with Treasury in executing the Third Amendment, or, alternatively, acted contrary to its powers as conservator. Pl. Reply To Def.'s Opp'n to Pl. Mot. for Discovery at 7. Plaintiffs should not be permitted to search for evidence to support their theory that FHFA committed unauthorized or tortious actions because, even if such allegations were proven, the Court would lack Tucker Act jurisdiction over the claims. *See Freeman v. United States*, 556 F.3d 326, 342 (5th Cir. 2009) ("a party is not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1)

16

motion"); *Agrocomplect, AD v. Republic of Iraq*, 524 F. Supp. 2d 16, 34 (D.D.C. 2007), *aff'd*, 304 F. App'x 872 (D.C. Cir. 2008) ("Jurisdictional discovery is not warranted when [the] plaintiff['s] allegations, even if supplemented or verified, would remain insufficient . . . ."); *Goodman Holdings v. Rafidain Bank*, 26 F.3d 1143, 1147 (D.C. Cir. 1994) ("[W]e do not see what facts additional discovery could produce that would affect our jurisdictional analysis . . . ."). Neither plaintiffs nor the Court has identified undeveloped facts that could overcome established law. Thus, the Court should reconsider and reverse its order permitting plaintiffs to pursue discovery related to FHFA's relationship with Treasury. *Petro-Hunt, L.L.C. v. United States*, 108 Fed. Cl. 398, 399 (2013) (court may reverse or modify its own orders.).

If, however, the Court disagrees with our reading of the legal authority, the proper course would be to reject this argument as an independent basis to dismiss and proceed to consider the other grounds for dismissal we raised, rather than to permit out-of-turn discovery.

### C. The Court Erred In Granting Discovery To Aid In Defense Of The Government's RCFC 12(b)(6) Motion

The Court should reconsider and reverse its Order permitting the plaintiffs to pursue fact discovery regarding our challenge that plaintiffs failed to state a claim under RCFC 12(b)(6). The Order states that "Discovery to Aid in Defense of Defendant's RCFC 12(b)(6) Motion" is warranted with respect to our argument that plaintiffs do not sufficiently allege, for purposes of the *Penn Central* test, that they had reasonable, investment-backed expectations about the future profitability of the Enterprises. Order at 3-4. This conflicts with the Court's rules, which contemplate resolution of jurisdictional challenges before opening substantive discovery. Further, allowing plaintiffs to seek discovery from the Government as to plaintiffs' reasonable, investment-backed expectations defies logic.

**1.      Granting Discovery To Aid In Defense Of A RCFC 12(b)(6) Motion Is Always Improper**

It is never appropriate to order discovery to aid in defense of a RCFC 12(b)(6) motion. Permitting discovery in response to a RCFC 12(b)(6) motion to dismiss directly conflicts with the rule's purpose. "The purpose of the rule is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity." *Advanced Cardiovascular Sys., Inc.*, 988 F.2d at 1160. Accordingly, a "motion made under Rule 12(b)(6) challenges the legal theory of the complaint, not the sufficiency of any evidence that might be adduced." *Id.*

Thus, if plaintiffs' allegations, if ultimately proven, would enable the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged," then our RCFC 12(b)(6) motion should be denied. *See Iqbal*, 556 U.S. at 663. If, however, plaintiffs' allegations, even if true, would not reasonably allow this inference, then the Court should dismiss the complaint. *Id.* at 678-79 (Rule 8 "cannot unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Setting the motion aside and allowing plaintiffs a premature, one-sided opportunity to embark on an invasive and burdensome hunt for evidence does not comport with the Court's Rules or their purpose. *See* RCFC 1 ("These rules . . . should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."); *see also, e.g.*, *Kolley*, 725 F.3d at 587 ("A plaintiff is not entitled to discovery before a motion to dismiss, and dismissal under Rule 12(b)(6) helps protect defendants from expending resources on costly discovery for cases that will not survive summary judgment.").

Discovery is even more inappropriate here, where the Court has suspended briefing on threshold jurisdictional questions, such as standing, for which no discovery has been requested or

ordered.  Authorizing burdensome discovery, without first deciding whether the Court possesses jurisdiction to consider the complaint, is both contrary to case law and fundamentally unfair.  *See McCook Metals LLC v. Alcoa, Inc.*, 249 F.3d 330, 333 (4th Cir. 2001) ("[T]his court 'must be sure of its own jurisdiction before getting to the merits.'") (quoting *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999)).

### 2. Allowing Plaintiffs To Take Discovery Of The Government As To Plaintiffs' Reasonable Investment-Backed Expectations Is Wholly Illogical

The Court should also reconsider its determination that evidence of "reasonableness of expectations" is "in the possession of defendant only."  Order at 4.

Under binding case law, to demonstrate reasonable investment-backed expectations under the *Penn Central* test, plaintiffs must identify their own, subjective expectations, and demonstrate that those expectations were reasonable under the circumstances.  *See Cienega Gardens v. United States*, 503 F.3d 1266, 1288 (Fed. Cir. 2007).  Thus, the relevant expectations under the law are those of the plaintiffs, not the Government.  *See, e.g.*, *Golden Pac.*, 15 F.3d at 1074.  The Order permits plaintiffs to engage in broad and wide-ranging discovery on topics including the Enterprises' "solvency and reasonableness of expectations about their future profitability, as well as . . . why the government allowed the preexisting capital structure and stockholders to remain in place, and whether this decision was based on the partial expectation that Fannie and Freddie would be profitable again in the future."  Order at 4.  Subjecting the Government to discovery on these topics will not answer questions about plaintiffs' expectations.

Information about their own expectations is solely in plaintiffs' possession.  If plaintiffs do not possess adequate information regarding their own expectations to make allegations stating a plausible claim, discovery against the Government cannot help them find it.

**III.    The Court Should Stay The March 20, 2014 Deadline For Filing A Joint Discovery Schedule**

Finally, we request that the Court stay the March 20, 2014 deadline for filing a joint discovery schedule until the Court resolves our motion for reconsideration and motion to lift the stay on briefing and suspend discovery.  The parties' and the Court's best interests are served by postponing establishment of such a schedule because the need for the schedule may be obviated by the grant of one of our motions.

## CONCLUSION

For these reasons, the Court should grant our motion for reconsideration and vacate its prior Order, or, in the alternative, lift the stay on briefing of our motion to dismiss, suspend discovery and stay the deadline for filing a joint discovery schedule.

Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

s/Jeanne E. Davidson
JEANNE E. DAVIDSON
Director

OF COUNSEL:

PETER A. BIEGER
Assistant General Counsel
KATHERINE M. BRANDES
Attorney Advisor
Department of the Treasury
1500 Pennsylvania Avenue, N.W.
Washington, D.C. 20220

s/Kenneth M. Dintzer
KENNETH M. DINTZER
Acting Deputy Director

ELIZABETH M. HOSFORD
GREGG M. SCHWIND
Senior Trial Counsel

KATY M. BARTELMA
SETH W. GREENE
ERIC E. LAUFGRABEN
DANIEL B. VOLK
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
(202) 616-0385
(202) 307-0972 fax
kenneth.dintzer@usdoj.gov

March 17, 2014                                    Attorneys for Defendant