```
 1                   UNITED STATES COURT OF FEDERAL CLAIMS

 2

 3

 4   FAIRHOLME FUNDS, INC., ET AL.,)

 5            Plaintiffs,          ) Case No.

 6                 vs.             ) 13-465C

 7   THE UNITED STATES OF AMERICA, )

 8            Defendant.           )

 9

10

11

12                              Courtroom 8

13               Howard T. Markey National Courts Building

14                        717 Madison Place, N.W.

15                          Washington, D.C.

16                        Wednesday, May 7, 2014

17                            11:00 a.m.

18                          Status Conference

19

20

21            BEFORE:   THE HONORABLE MARGARET M. SWEENEY

22

23

24

25   Elizabeth M. Farrell, CERT, Digital Transcriber
```

Fairholme Funds, Inc., et al.  v. USA                    5/7/2014

```
 1    APPEARANCES:
 2    ON BEHALF OF THE PLAINTIFFS:
 3            CHARLES J. COOPER, ESQ.
 4            DAVID H. THOMPSON, ESQ.
 5            VINCENT J. COLATRIANO, ESQ.
 6            NICOLE J. MOSS, ESQ.
 7            BRIAN BARNES, ESQ.
 8            Cooper & Kirk, PLLC
 9            1523 New Hampshire, NW
10            Washington, DC  20036
11            (202) 220-9600
12            ccooper@cooperkirk.com
13    ON BEHALF OF THE DEFENDANT:
14            KENNETH MICHAEL DINTZER, ESQ.
15            ELIZABETH M. HOSFORD, ESQ.
16            GREGG M. SCHWIND, ESQ.
17            U.S. Department of Justice
18            Post Office Box 480
19            Ben Franklin Station
20            Washington, DC  20044
21            (202) 616-0385
22            kenneth.dintzner@usdoj.gov
23    ALSO PRESENT:
24            Scott Proctor, Cooper & Kirk
25
```

Fairholme Funds, Inc., et al.  v. USA                    5/7/2014

```
 1                  P R O C E E D I N G S
 2                    -    -    -    -    -
 3            (Proceedings called to order at 11:03 a.m.)
 4            LAW CLERK:  The United States Court of Federal
 5    Claims is now in session.  This is Fairholme Funds,
 6    Incorporated vs. the United States, Case Number 13-465, the
 7    Honorable Margaret M. Sweeney presiding.
 8            THE COURT:  Good morning, Counsel.  Please be
 9    seated.
10            ALL:  Good morning, Your Honor.
11            THE COURT:  Would counsel who are in the courtroom
12    please identify themselves for the record?
13            MR. COOPER:  Yes, certainly, Your Honor.  Good
14    morning, Judge Sweeney, my name is Charles Cooper with Cooper
15    and Kirk.  I represent the Plaintiffs in the action before
16    you, Fairholme and the Berkeley Insurance entities.  I'd like
17    to introduce as well my colleagues, if I may.  With me is my
18    partner, David Thompson.
19            MR. THOMPSON:  Good morning, Your Honor.
20            MR. COOPER:  Also, my partner Vince Colatriano.
21            MR. COLATRIANO:  Good morning, Your Honor.
22            MR. COOPER:  Our colleague and associate, not a
23    lawyer, Scott Proctor.  I'd ask your permission to allow him
24    to remain above the Bar, Your Honor.
25            THE COURT:  Of course.
```

Fairholme Funds, Inc., et al.  v. USA                          5/7/2014

```
 1              MR. PROCTOR:  Good morning, Your Honor.

 2              THE COURT:  Welcome.

 3              MR. COOPER:  And also with me, but only

 4   telephonically, are two other colleagues, Nicole Moss and

 5   Brian Barnes.

 6              THE COURT:  Good morning to both of them.

 7              And for the United States, I recognize Mr. Dintzer.

 8              MR. DINTZER:  Good morning, Your Honor.

 9              THE COURT:  Good to see you again.  How are you?

10              MR. DINTZER:  And in Washington, D.C.

11              THE COURT:  Yes.

12              MR. DINTZER:  I'm here today representing the

13   United States Department of Justice, and with me at counsel

14   table is Elizabeth Hosford --

15              THE COURT:  Good morning.

16              MR. DINTZER:  -- and Gregg Schwind, both from our

17   office.

18              MR. SCHWIND:  Good morning, Your Honor.

19              THE COURT:  Good morning.

20              MR. DINTZER:  And Mr. Schwind will be addressing

21   the Court today on the matters before the Court.

22              THE COURT:  Very good.  Thank you very much.

23              MR. DINTZER:  Thank you, Your Honor.

24              THE COURT:  Whenever counsel are ready to proceed.

25              MR. COOPER:  Thank you very much, Judge Sweeney.
```

Fairholme Funds, Inc., et al.  v. USA                              5/7/2014

```
 1    Again, good morning.  Charles Cooper.  I first want to say
 2    it's a great privilege to appear before you in your
 3    courtroom.  This is our first meeting, but I and my
 4    colleagues have spent much time in the Court of Federal
 5    Claims over the years, and we're happy to be here.
 6            Your Honor, we're first very mindful of the burdens
 7    on the Court's time and, so, we're grateful for your time
 8    this morning and, more broadly, for the Court setting,
 9    essentially every two weeks, time aside -- court time aside
10    to continue to monitor on a real-time basis the discovery
11    process between the parties in this case.
12            Our purpose this morning is really not to bring you
13    an issue or dispute for resolution, but rather to alert you
14    to a couple of things first, things that you will be treating
15    with in due course and quickly.  First is an unanticipated
16    complication that has arisen in the case and, secondly, a
17    very serious dispute that has already matured between the
18    parties as a result of the Government's responses to our
19    document requests pursuant to the discovery authorizations
20    contained in the Court's order.
21            The unanticipated complication is that the Justice
22    Department has taken the position now that it will not gather
23    and will not produce any documents that it says are in the
24    custody and control of the companies, Fannie Mae and Freddie
25    Mac.  It says those documents are not in the control and
```

Fairholme Funds, Inc., et al.  v. USA                    5/7/2014

1    custody of the Federal Housing Finance Authority, FHFA.  We

2    did not anticipate that wrinkle, largely because of our

3    experience really in the Winstar litigations and in many

4    others where the Government has assumed the responsibility

5    and acknowledged its custody and control over documents that

6    are documents generated and within the entities that are

7    under conservatorship or receivership.

8           So, this was not something we had anticipated,

9    particularly in light of the Government's position under the

10   statute, which is very similar, if not identical, to the

11   provisions under FIRREA, where the Winstar cases were

12   litigated, that it has assumed all the rights,

13   responsibilities, obligations, blah, blah, blah, of the

14   entities under conservatorship, of the directors, the

15   stockholders and other stakeholders within the companies

16   themselves.

17          So, that -- in light of that, we have now filed --

18   served upon the companies themselves third-party document

19   requests, and we shall see what now follows in train, but,

20   again, this is not something we had anticipated and it will

21   likely complicate matters as we go forward.

22          The dispute, Your Honor, that has now matured into

23   a firm condition arising from really the Government's

24   wholesale refusal to produce any documents relating to most

25   of the disputed factual issues that were the foundation for

Fairholme Funds, Inc., et al.  v. USA                                    5/7/2014

```
 1    this Court's orders authorizing discovery.

 2            And with your indulgence, I would like to take just

 3    a few minutes to kind of preview for the Court what the

 4    nature of those disputes are.  And, first, if I may, I think

 5    it's important to outline for the Court the essential

 6    gravamen of our taking claim in this case.  Back in September

 7    of 2008, when FHFA placed Fannie and Freddie in

 8    conservatorship -- and I stress conservatorship not

 9    receivership -- with its intended husbanding and gathering of

10    the assets and liquidating the assets, but rather

11    conservatorship, then director James Lockhart of the FHFA

12    publicly assured the public as follows:

13            "Conservatorship is a statutory process designed to

14    stabilize a troubled institution with the objective of

15    returning the entities to normal business operations.  FHFA

16    will act as the conservator to operate Fannie and Freddie

17    until they are stabilized."

18            At the same time as the conservatorship was

19    created, FHFA specifically assured the public that the

20    companies' existing capital structure would remain intact and

21    that the property rights of the existing private stockholders

22    would be protected.  This is what they said:  "During the

23    conservatorship, the Company's stock will continue to trade

24    ... Stockholders will continue to retain all rights in the

25    stock's financial worth."  So that if their purpose is
```

Fairholme Funds, Inc., et al.  v. USA                    5/7/2014

1    succeeded, if the conservatorship did what it was designed

2    and statutorily essentially required to do, which is try to

3    restore them to safety and soundness, then the private

4    stockholders would benefit from those good efforts as well.

5          Well, four years later -- and I'm getting a little

6    ahead of myself -- in connection with the conservatorship, of

7    course, the Treasury Department agreed to provide funding for

8    those then troubled institutions, Fannie and Freddie.  And in

9    return essentially got senior preferred stock that carried an

10   annual dividend of 10 percent.  Those are the essential

11   terms.  But, in addition, it got warrants for 79.9 percent of

12   Fannie and Freddie's common equity.  So, the Government

13   itself received, as a result of that negotiation, a very

14   substantial stake in Fannie and Freddie's future

15   profitability.

16         Four years later, the conservatorship succeeded.

17   The entities were restored to stable -- they were stabilized.

18   In fact, not only stabilized, but restored to record

19   profitability, profits like Fannie and Freddie had never seen

20   before.  But just as Fannie and Freddie were returned to

21   stable profitability and said, we expect to make profits for

22   the foreseeable future in their own stock filings, at the

23   time and thereafter, the Government decided to amend the

24   original deal.

25         Treasury and FHFA entered the third amendment,

Fairholme Funds, Inc., et al.  v. USA                          5/7/2014

1   which contained the so-called net worth sweep, the sweep

2   amendment, which said, essentially, the 10 percent dividend

3   isn't good enough anymore.  From now on, Treasury will

4   receive 100 percent dividend, all profits, the entire net

5   worth of both entities going forward in perpetuity, and that

6   the entities will not be allowed to restore capital, build

7   capital, will not be allowed to essentially return to the

8   market in their pre-conservatorship condition, the original

9   premises and, in fact, the statutory premises of

10  conservatorship itself.

11          Your Honor, you, in the light of all that and in

12  the light of the Government's motion to dismiss and the

13  factual disputes that it created between the parties relating

14  to three defenses that were asserted in that motion to

15  dismiss, granted Plaintiffs the authority to take limited

16  discovery into those three areas.  They were relating to the

17  Government's claim that our takings case is not ripe;

18  secondly, to their argument that this Court has no

19  jurisdiction over the Tucker Act because they said, hey,

20  FHFA, as conservator, is not the United States; and, finally,

21  related to the merits of our takings claim and the prong of

22  the Penn Central test that we have to show a reasonable

23  investment-backed expectation.

24          So, in light of the Government's factual assertion

25  in connection with two of those, that is its ripeness defense

Fairholme Funds, Inc., et al.  v. USA                    5/7/2014

1    and its argument that we lacked any reasonable investment-

2    backed expectation, the Court authorized discovery into the

3    Government's assessments of Fannie and Freddie's future

4    profitability and into the related subject of why the

5    Government had allowed preexisting capital structure to

6    remain in place and whether that was at least impartial

7    recognition of future profitability of the entities.

8              In its responses to our document requests, the

9    Government takes the position that it will not produce any

10   documents, one, that relate to the operations of Fannie and

11   Freddie, including their future profitability.  Two, no

12   documents that relate to the Government's assessment of

13   Fannie and Freddie's future of profitability at the time of

14   the net worth sweep, at the time when the deal was changed

15   and they imposed the net worth sweep, the critical moment

16   when -- when, presumably, our investment-backed expectations

17   would be tested and when we believe our takings claim became

18   ripe.

19             Three, no documents that relate to the Government's

20   assessment of the value of its warrants to purchase 79.9

21   percent of the common equity of these entities, in its own

22   stake, negotiated stake in the future profitability of those

23   entities, no documents that relate to that.

24             Finally, four, no documents that relate to Fannie

25   and Freddie's original obligation to pay the 10 percent

Fairholme Funds, Inc., et al. v. USA                                5/7/2014

1    dividend on the Government's senior preferred stock.

2            The second area, Your Honor, that the Court

3    authorized discovery that was ripe in this related discovery,

4    concerned questions of when and how Fannie and Freddie will

5    be allowed to exit conservatorship, if at all.  Remember, our

6    position is that decision's been made.  They are not going to

7    be allowed -- we will never -- the Government's compass is

8    set and the private shareholders will never be allowed to

9    participate in any profits no matter how record-breaking they

10   become, no matter how solvent the entities are.

11           But the Government has taken the position that it

12   will not produce any documents, one, that relate to the

13   Government's own standards or other considerations for

14   determining when, whether and how the corporate -- the

15   conservatorships of Fannie and Freddie may be terminated;

16   essentially, the essential issue on which this Court allowed

17   discovery.  But there's more.

18           Secondly, they'll produce no documents that relate

19   to the Government's decision to ensure that the existing

20   private shareholders will not have access to any future

21   profitability of Fannie and Freddie, again, a decision that

22   they've all -- they made clear, or at least has become clear

23   from internal documents produced in a different case, a

24   parallel case, and that's the Government's own -- Treasury's

25   anyway -- own commitment.

Fairholme Funds, Inc., et al.  v. USA                          5/7/2014

1            And, third, they'll produce no documents that

2    relate to the Government's decision to wind down Fannie and

3    Freddie and to ensure that they will not be allowed to

4    continue in -- or to return to their pre-conservatorship

5    market status.  No documents that relate to those issues.

6    Essentially, a wholesale refusal on this important subject

7    matter of the Court's discovery order.

8            The final area, Your Honor, is this Court

9    authorized discovery, and to the Government's argument that

10   the FHFA is not the United States and, therefore, our claims

11   aren't ripe, and even if they were, we have no taking claim

12   against an entity other than the United States, so the merits

13   are meritless.

14           The Court recognized, in your order, that this

15   question, whether or not FHFA is the United States even when

16   it is purported to act as the conservator is an intensely

17   fact-based inquiry that examines the purposes of FHFA and its

18   actions.  And that that includes considerations that -- as to

19   whether or not the FHFA was, in effect, acting as an agent of

20   Treasury.  And that, of course, is our allegation.  That's

21   our clear factual allegation, that they were acting at the

22   direction of the Treasury and in collusion with Treasury.

23           The Government has interpreted that authority for

24   discovery very narrowly, Judge Sweeney, essentially taking

25   the position that it will produce only documents related to

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

Fairholme Funds, Inc., et al.  v. USA                           5/7/2014

```
 1    whether FHFA acted at the direct behest of Treasury in
 2    agreeing to the net worth sweep.  Now, of course, that
 3    language comes out of this Court's order in -- amidst a lot
 4    of other language.  And we don't expect to find any documents
 5    in the Government's warehouse that -- in which the Government
 6    will -- the Treasury will have said to FHFA, you will do as
 7    you're told.  But we -- but, Your Honor, we expect to find a
 8    lot of documents that will support and demonstrate that the
 9    Treasury was in the driver's seat every step of the way here.
10    Already much has surfaced, as we've outlined in our papers to
11    this Court, that strongly suggests that, if not prove it
12    outright.  But we are certain that the discovery -- we are
13    highly confident, I should say, that the discovery will show
14    that Treasury was in that driver's seat.
15          But the Government has said no documents will they
16    produce relating to FHFA's determination that it is obligated
17    to maximize the return of the Treasury.  They've stated that
18    explicitly, that is, FHFA has stated that's their obligation.
19    They have denied any obligation to the shareholders.  Their
20    obligation is to maximize return.  Well, that's -- that, by
21    itself, Your Honor, suggests the answer to the inquiry, but
22    in terms of FHFA's status, vis-a-vis, Treasury.
23          But in any event, we've got no documents that
24    relate to that.  We've also got no documents relating to
25    communications on this subject, relating to the net worth
```

Fairholme Funds, Inc., et al.  v. USA                    5/7/2014

1    sweep that may have taken place between Treasury and FHFA,

2    its leadership, or Treasury and/or FHFA and the companies.

3    Anything related to net worth sweep, they say those

4    communications they won't produce.

5          Your Honor, they have a variety of reasons for

6    that.  You will see them.  But -- and it's not my purpose

7    here to short circuit the process the Court has put in place,

8    but rather, as I think the Court anticipated from the

9    generous scheduling of regularized conferences, mainly to

10   keep this Court aware on a real-time basis as things arise.

11   But according to this Court's procedural expectations, the

12   Government will be coming forward with a protective order,

13   and that will be briefed up in due course, on these and the

14   many related skirmishes that I haven't thought rose to the

15   level to mention to you here this morning.

16         So, that's my purpose.  Again, thank you very much

17   for, again, holding your courtroom open for these purposes.

18   I am fairly confident and always have been that we will be

19   tolling upon the Court's good offices over the course of this

20   discovery frequently.  Thank you.

21         THE COURT:  Well, that's fine.  And I look forward

22   to hearing from Mr. Dintzer in just a moment, but just so you

23   know, it was -- I don't know what -- I believe it was the

24   Plaintiffs' suggestion that I conduct the -- or at least give

25   the parties the option of having a status conference

Fairholme Funds, Inc., et al.  v. USA                          5/7/2014

```
 1    concerning discovery with the Court every two weeks, and
 2    that's my role as a judge to help smooth the waters where I
 3    can.
 4            Just so you know, it's my policy in every single
 5    case -- I say this at every initial scheduling conference
 6    with the parties right after the JPSR is filed, to
 7    immediately contact my office when there's an impasse in
 8    discovery because I'd rather diffuse the situation than have
 9    -- forgive the metaphor -- the pot boil and then have warring
10    factions in front of me.  There's no need for that.  Whenever
11    I can help the parties navigate the -- or set down the rules
12    of the road so we know where we're going, that's always the
13    best way to proceed.  Otherwise, people just get spun up and
14    we're -- I wouldn't say that these counsel involved in this
15    case would get spun up, but it does happen in other cases.
16            And, so, rather than have people exchanging rather
17    unpleasant emails and letters, this is just, I think, the
18    best way to proceed, or at least it's my practice.  So, we'll
19    move forward.
20            MR. COOPER:  Thank you, Your Honor, understood.
21    And we very much welcome the Court's active management.
22    That's very refreshing.  If only that were the case
23    everywhere that we all practice, but thank you very much.
24            THE COURT:  I do have one question, unless I should
25    save this for the Justice Department, but I guess it was in
```

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

Fairholme Funds, Inc., et al.  v. USA                          5/7/2014

1    docket number 39, reply in support of Defendant's proposed

2    plan for discovery, the Justice Department notes that the

3    District Court has -- I guess there's a -- docket 33 and 34

4    in the Fairholme case that's -- I believe it's in front of

5    Judge Lamberth --

6              MR. COOPER:  That's right.

7              THE COURT:  Someone that I esteem and admire

8    greatly and who spoke at my --

9              MR. COOPER:  Investiture?

10             THE COURT:  -- introduction to the -- my

11   investiture, thank you.  There was -- I guess you all were

12   awaiting a ruling from him on the motion to supplement the

13   administrative record.  Now, I also from -- my wonderful law

14   clerk has told me there have been many things that have been

15   filed on that docket and, so, it could very well be that

16   Judge Lamberth has not had an opportunity yet to rule.  But I

17   will just ask you as of checking early this morning, there

18   did not appear to be a ruling.  Are we either mistaken or

19   have we missed something in the past hour or two?

20             MR. COOPER:  Well, Your Honor, if you've missed

21   something in the past hour or two, so have I.  And I'm seeing

22   no correction from my colleagues.  So, we haven't had

23   movement from Judge Lamberth on those pending requests.

24             Just to fill out the Court's background here, Judge

25   Lamberth really inherited this case from Judge Wilkins, who

Fairholme Funds, Inc., et al.  v. USA                                          5/7/2014

```
 1    had the case initially and who set forward, you know, a very

 2    aggressive -- very aggressive schedule for moving that case

 3    along.  And since the time that the case was transferred to

 4    Judge Lamberth, I'm sure that he's -- his plate is

 5    overflowing -- I've been before him many times and I

 6    certainly agree with your comments with respect to Judge

 7    Lamberth.  But he has not yet taken action on those pending

 8    requests.  So, we're just abiding that event.

 9              THE COURT:  Very good, thank you.

10              MR. COOPER:  Thank you.

11              THE COURT:  Mr. Dintzer?

12              MR. DINTZER:  Yes, Mr. Schwind --

13              THE COURT:  Mr. Schwind?

14              MR. DINTZER:  Yes, he'll be addressing the Court.

15    Thank you, Your Honor.

16              THE COURT:  Very good.  I didn't know if you had

17    any opening remarks.  I didn't want to take any time away

18    from you.

19              MR. DINTZER:  Thank you, Your Honor.

20              MR. SCHWIND:  Good morning, Your Honor.

21              THE COURT:  Good morning.

22              MR. SCHWIND:  I'd like to respond to some of what

23    Mr. Cooper has brought into the Court this morning, talk

24    briefly about the status of discovery, where we are right

25    now, talk about the case briefly and talk about the most
```

Fairholme Funds, Inc., et al.  v. USA                            5/7/2014

```
 1   recent request for documents directly from Fannie Mae and
 2   Freddie Mac that Mr. Cooper referenced first in his
 3   presentation.
 4            I can say, at the outset, to use the Court's
 5   metaphors, the pot is not boiling, the parties are not
 6   warring.  We have not exchanged any bitter vitriolic emails
 7   at all.
 8            THE COURT:  Congratulations.  I'm delighted to hear
 9   it.
10            MR. SCHWIND:  In fact, this afternoon, we haven't
11   agreed on an exact time, but we're going to continue the
12   process of negotiating a search proposal -- both sides have
13   exchanged search proposals, and I'll talk about that briefly.
14            THE COURT:  Well, I'm glad to hear it, because that
15   was something else I was going to ask you when you were
16   concerned and if there's still concern about the potential
17   2.5 million documents.  It didn't seem to me that you had
18   come up with search terms to conduct electronic discovery.
19   So, I tend to be -- allow discovery to proceed in very broad
20   -- even if it's discovery in aid of jurisdiction, some ways -
21   - especially in discovery in aid of jurisdiction, I will
22   allow Plaintiffs every opportunity to establish that this
23   Court has jurisdiction over its claims.  This is a citizens
24   court after all and I want them to have every opportunity.
25            Having said that, I don't want the Plaintiffs, in
```

Fairholme Funds, Inc., et al.  v. USA                              5/7/2014

1    any way, to construe that I think there isn't jurisdiction.

2    I don't have anything in front of me at the moment other than

3    the Government's motion to dismiss, not that I, in any way,

4    think that's a frivolous filing, but that's why it's

5    essential that Plaintiffs have their day in court.

6              So, in any event, please proceed.

7              MR. SCHWIND:  Thank you, Your Honor.  And, again,

8    just getting to the update.  As the Court is aware, the Court

9    issued, on February 26th, an order granting limited

10   discovery, and Mr. Cooper acknowledged this morning that that

11   discovery is, in fact, limited.  We are not in full-blown

12   merits discovery at this stage of the litigation.  The Court,

13   thereafter, issued orders establishing a discovery schedule

14   and certain processes as to how we're to get through the

15   schedule and granted Plaintiffs' request that that discovery

16   end on 31 July of this year, a very aggressive schedule that,

17   again, Plaintiffs insisted on.

18             THE COURT:  Well, let me just say this:  If --

19   because the Government has perhaps -- at least from what I

20   understand -- a more narrow view of what would be appropriate

21   for discovery and, not surprisingly, Plaintiffs may have a

22   contrary view, if we need to enlarge the discovery schedule

23   to accommodate the Government in order to produce documents

24   to complete the taking of depositions, I certainly will allow

25   that.  So, the parties should know that the discovery

```
 1    schedule is not written in stone, that it can be modified,

 2    and I will not -- I won't make a party produce documents in a

 3    way that would be impossible to meet a deadline.  I mean,

 4    that's -- you know, I want to be -- I want to be reasonable

 5    with both parties and I will accommodate both parties.  And

 6    that may -- sometimes Plaintiffs may be happy and then in the

 7    next moment they may be very unhappy with my allowing too

 8    much time for discovery, but, in any event, just so that you

 9    know, whatever time the Government needs, I will -- as long

10    as it's reasonable, I will allow it.

11               MR. SCHWIND:  Well, Your Honor, that is not the

12    issue, that the Government needs more time.

13               THE COURT:  No, no, I realize you don't want to --

14    from what I understand, from what Mr. Cooper has said, you

15    don't want to -- or perhaps you have given indications that

16    you are going to be more reluctant in producing certain

17    documents that you think are outside the scope of proper

18    discovery in aid of jurisdiction.

19               MR. SCHWIND:  Well, we would say, Your Honor, that

20    Plaintiffs' document requests go far beyond the limited

21    issues and we think well-defined issues in the Court's

22    February 26th order.  We have asserted objections and that

23    process, again, is going to -- according to the Court's

24    order, the parties then have seven days to try to resolve

25    those objections.  We're in the middle of that seven-day
```

Fairholme Funds, Inc., et al.  v. USA                    5/7/2014

 1   period right now.  We filed our objections and responses on

 2   Friday.  So, we're right now in the middle and, again, we're

 3   going to be continuing -- both sides have exchanged proposals

 4   to get through the document search and we hope to continue --

 5   we will continue that discussion this afternoon with

 6   Plaintiffs.

 7            So, again, we are optimistic that at least the

 8   parties can narrow the issues that may eventually require the

 9   Court's intervention, but that process is still ongoing and

10   we'd like to allow that process to continue to work.

11            That's first.  Second -- or that's where we are

12   right now.  I will also add to that that, of course, the

13   Government did provide initial disclosures in accordance with

14   the Court's schedule and the parties exchanged

15   interrogatories and there will likely be some discussion

16   about the interrogatory responses, as well.  But, again,

17   that's all part of the Court's schedule and we'll talk to

18   Plaintiffs about that.

19            As far as the case -- now, Mr. -- or I should say

20   counsel presented his characterization of this complaint in

21   the case, and I'll just -- I won't respond to everything that

22   Mr. Cooper raised beyond saying that this case is about one

23   thing.  It's about one event.  And that's what everyone

24   called the third amendment, not to the Constitution, of

25   course, but to a funding agreement, a stock agreement between

Fairholme Funds, Inc., et al.  v. USA                    5/7/2014

```
 1     Treasury and FHFA.  That was in August 2012.

 2              So, let's talk about what this case is not about.

 3     This case is not about the statute that gave FHFA the

 4     authority to appoint itself conservator and take control of

 5     Fannie Mae and Freddie Mac.  It's not about that.  The

 6     Plaintiffs don't challenge that.

 7              This case is not about the appointment itself of

 8     the conservator back in September 2008.  This case is not

 9     about the execution of those funding agreements and the

10     amendments of those funding agreements that increased

11     Treasury's commitment, taxpayers' commitment.  Right now,

12     taxpayers have already invested $187.5 billion; Treasury's

13     commitment is far in excess of that.  And, so -- but this

14     case is nothing about those aspects.  The Plaintiffs

15     apparently are satisfied with that.

16              What they're not satisfied with is this third

17     amendment in August 2012.  Now, that's first of all.  Second

18     of all -- and we talk about this in our motion to dismiss --

19     this case also implicates a statute.  It's called HERA, the

20     Housing and Economic Recovery Act of 2008.  This was a

21     statute that was passed several months before the appointment

22     of the conservator in this case.  According to that statute,

23     the agency -- the agency in this case being FHFA --

24     immediately succeeded to the rights and titles, powers and

25     privileges not only of Fannie Mae and Freddie Mac, the
```

Fairholme Funds, Inc., et al.  v. USA                                        5/7/2014

1    entities that were placed into conservatorship, but also of

2    shareholders.  That is in the statute.  Any stockholder,

3    officer or director.  That happened immediately upon the

4    appointment of the conservator in this case.  And that is

5    why, in our motion to dismiss, we raise that as a grounds

6    that these Plaintiffs have not business being in court, given

7    the operation of that statute, which, again, Plaintiffs do

8    not challenge.

9            Now, as we have argued to the Court and the Court

10   apparently disagreed -- and we're fine with that -- we think

11   these issues are not discovery-dependent.  There's a number

12   of issues that are not.  The Court disagreed and we are going

13   forward with that discovery and we do think, again, we can

14   narrow some of the issues that will allow the Court to act on

15   our motion to dismiss.  And that is very important to the

16   Government, that we not get dragged into what -- again, it

17   appears to us Plaintiffs would like it to be full-blown

18   discovery.  For example, Plaintiffs have asked for documents

19   relating to the appointment of the conservator.  They're

20   asking for documents relating to early amendment to the stock

21   agreements.  They're asking for, again, a panoply of things

22   that we think are inappropriate.  We're attempting to resolve

23   that.

24           But we think that, given the limited discovery the

25   Court has allowed, that this should be possible, this should

Fairholme Funds, Inc., et al.  v. USA                    5/7/2014

1    be doable by 31 July.  And we do not think it's appropriate

2    for Plaintiffs to say, well, if that's just not possible,

3    then we'll just blow through that deadline.  We think what

4    the Court did is doable.

5         Now, finally, Your Honor, counsel referred to the

6    recent subpoenas and the document requests that have been

7    served on Fannie Mae and Freddie Mac directly.  What's

8    interesting there is that Plaintiffs never intimated in any

9    of their filings, the motion for discovery, their discovery

10   schedule, their discovery plan, that they would do such a

11   thing.  That's first of all.

12        Second of all, the issues that have been identified

13   by the Court as appropriate for discovery are simply not

14   relevant to any documents from Fannie Mae and Freddie Mac.

15   For example, the Court said that Plaintiffs may have

16   discovery into the Government's current -- the Government's

17   current assessment of the future profitability of Fannie Mae

18   and Freddie Mac.  The Government's assessment.  Fannie Mae

19   and Freddie Mac's documents don't get to that.

20        The second is whether FHFA, as conservator, acted

21   at the direct behest or was -- essentially Treasury was agent

22   and arm -- I'm sorry, FHFA was agent and arm of Treasury when

23   it executed the third amendment, so, that relationship

24   between FHFA and Treasury leading to the third amendment.

25   Again, Fannie Mae and Freddie Mac's documents have nothing to

Fairholme Funds, Inc., et al.  v. USA                           5/7/2014

1   do with that.

2          Similarly, the third subject has to do with the

3   Government's assessment of profitability of Fannie Mae and

4   Freddie Mac -- again, Government's assessment back in

5   September 2008, at the time of conservatorship.  Fannie Mae

6   and Freddie Mac's documents don't go to that either.

7          And keep in mind, Your Honor, this -- what

8   Plaintiffs have done in requesting this -- and we're going to

9   attempt to negotiate this with them -- but would, you know,

10  seriously risk completing discovery within the time period

11  that's been allowed by the Court in this case.  We are

12  concerned about it.  We are willing to work with Plaintiffs

13  in the process that's been set out by the Court to try to

14  resolve those issues.  But to the extent we can't, the

15  Court's process and schedule allows the Government to file a

16  motion for protective order and we will do if necessary, if

17  we aren't able to resolve those objections.  But, again,

18  we're in that process right now.

19         THE COURT:  Very good.  Just so you know, I am far

20  more concerned with any party, in a case that's appearing in

21  front of me, is able to obtain the entire universe of

22  documents to which that party is entitled than simply meeting

23  a deadline, because while meeting deadlines is noble, it's

24  appropriate, it facilitates and helps with case management,

25  being a slave to a deadline can -- while it can be efficient,

Fairholme Funds, Inc., et al.  v. USA                           5/7/2014

1    it can be done at the expense of justice and the Court being
2    able to know the complete set of facts.  And, so, just be
3    aware that, yes, I did enter certain deadlines that I believe
4    were suggested by the Plaintiff, but nevertheless, I will not
5    be a slave to a deadline at the expense of justice.
6           So, I'm not saying you were, in any way, suggesting
7    that I do that, but just because you've mentioned the July
8    31st deadline a couple of times.  Again, it's a great goal.
9    If we can march towards that and keep it, marvelous.  And
10   I -- you know, I salute you.  I'll be so proud of the parties
11   if they can accomplish that.  But slavish adherence to
12   deadlines often can be very -- can not serve the parties and
13   serve the Court.  So, I just wanted to let you know that.
14          MR. SCHWIND:  I understand, Your Honor.  What we do
15   expect is that Plaintiffs adhere to -- whether slavishly or
16   otherwise, adhere to the subjects of the limited discovery
17   that has been authorized by the Court.  And that is the real
18   issue, more than the deadline, is that --
19          THE COURT:  Oh, no, I understand that.  It could be
20   that -- it sounds to me as if the interpretation of my order
21   is the real issue here and I -- just to give you a peek
22   behind the curtain, I have perhaps a broader view on my --
23   how I understand my orders, perhaps a bit broader than the
24   Department of Justice.  But I'll just wait to see how the
25   parties are able to negotiate the issues before them and

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

Fairholme Funds, Inc., et al.  v. USA                    5/7/2014

1    then, once presented with the appropriate motions, render a

2    decision.

3              MR. SCHWIND:  Thank you, Your Honor.

4              THE COURT:  Thank you.

5              Mr. Cooper, if you'd like, any other comment?

6              MR. COOPER:  I only would like to add that, Your

7    Honor, we very much embrace the Court's comments about

8    deadlines.  The schedule that the Court put in place was one

9    that was closely similar to the one that the Plaintiffs

10   offered and nobody -- believe me, I think, in this matter

11   before you is more anxious to see the discovery completed

12   than the Plaintiffs are.  That's typically how it works, and

13   I assure you, that's how it works here.

14             But by the same token, we like the -- the very

15   tenor of the Court's remarks.  The important thing is that we

16   -- we, the parties together, develop the information that

17   will produce the truth for the Court.  That's it.

18             THE COURT:  Thank you.

19             MR. COOPER:  Thank you.

20             THE COURT:  Is there anything else for the United

21   States this morning?

22             MR. DINTZER:  No, Your Honor.

23             THE COURT:  Very good.  As I understand it, there's

24   no specific relief that the Plaintiffs are requesting this

25   morning or that the Government's requesting this morning.

Fairholme Funds, Inc., et al.  v. USA                                    5/7/2014

```
 1   So, I will just await the resolution as to what is
 2   percolating below my radar and wait to hear from the parties.
 3   I wish you all the success with your negotiations.  But if
 4   you need -- if we need to have a hearing or if you want to
 5   bring me some issues that perhaps I can render a ruling and
 6   obviate the need for motions with opening briefs and
 7   responses and replies, save people time, money and
 8   aggravation, I'm happy to become involved.  So, just please
 9   contact my chambers and let me know if there's a way we can
10   expedite keeping this case on track and moving forward.
11              And with that, I'll say good morning.
12              ALL:  Good morning, Your Honor.  Thank you.
13              (Whereupon, the hearing was adjourned at 11:42
14   a.m.)
15
16
17
18
19
20
21
22
23
24
25
```

Fairholme Funds, Inc., et al.  v. USA                              5/7/2014

```
 1                    CERTIFICATE OF TRANSCRIBER

 2

 3          I, Elizabeth M. Farrell, court-approved

 4   transcriber, certify that the foregoing is a correct

 5   transcript from the official electronic sound recording of

 6   the proceedings in the above-titled matter.

 7

 8

 9   DATE:   5/8/2014                  s/Elizabeth M. Farrell

10                                     ELIZABETH M. FARRELL, CERT

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```