No. 13-465C
(Judge Sweeney)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FAIRHOLME FUNDS, INC., *et al.*,

Plaintiffs,

v.

UNITED STATES,

Defendant.

DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

STUART F. DELERY
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

KENNETH M. DINTZER
Acting Deputy Director
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044

June 17, 2014                              Attorneys for Defendant

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ..........................................................................................................1

ARGUMENT .................................................................................................................4

I.      The Court Should Limit Discovery With Respect To Request 1
And Request 6-10 To Documents Created Prior To August 17, 2012,
The Date Of The Third Amendment ........................................................................4

        A.    HERA Bars Permitting The Discovery Requested By
Plaintiffs ........................................................................................................4

        B.    Deliberations Regarding The Future Of The Enterprises
Are Also Protected By The Deliberative Process Privilege ............8

II.     The Court Should Confine Plaintiffs' Document Requests
To The Scope Of The February 26 Order ..................................................13

        A.    Discovery Into The Solvency Of The Enterprises
At The Time Of The Conservatorship Decision In 2008 ...............13

        B.    Discovery Regarding Whether FHFA Was An "Agent
And Arm" Of Treasury When It Entered Into The Third
Amendment ..................................................................................15

        C.    Summary ......................................................................................17

CONCLUSION ............................................................................................19

## TABLE OF AUTHORITIES

<u>CASES</u>

*Ambase Corp. v. United States,*
  61 Fed. Cl. 794 (2004) .................................................................................................... 4, 5

*Bead Filters Int'l. v. Mills,*
  No. SA-09-cv-105-XR, 2009 WL 3837863 (W.D. Tex. Nov. 12, 2009) ................................... 8

*Brandow v. FDIC,*
  No. 1:08-cv-2771, 2008 WL 5378348 (N.D. Ohio Dec. 22, 2008) ........................................... 5

*Dittmer Properties., L.P. v. FDIC,*
  708 F.3d 1011 (8th Cir. 2013) ............................................................................................ 5, 6

*Dudman Commcn's Corp. v. Dep't of the Air Force,*
  815 F.2d 1565 (D.C. Cir. 1987) ............................................................................................. 10

*Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.,*
  --- F.Supp.2d ---, 2013 WL 5660247 (S.D.N.Y. Oct. 16, 2013) ............................................. 13

*First Hartford Corp. Pension Plan & Trust v. United States,*
  194 F.3d 1279 (Fed. Cir. 1999) ............................................................................................... 5

*Ford Motor Co. v. United States,*
  94 Fed. Cl. 211 (2010) ................................................................................................... 11, 14

*In re Sealed Case,*
  121 F.3d 729 (D.C. Cir. 1997) ............................................................................................... 12

*In re United States,*
  321 Fed. App'x 953 (Fed. Cir. 2009) ..................................................................................... 10

*Lakeland Partners, LLC v. United States,*
  88 Fed. Cl. 124 (2009) .......................................................................................................... 17

*Life Techs. Corp. v. Biosearch Techs. Corp.,*
  No. C-12-00852, 2012 WL 1600393 (N.D. Cal. May 7, 2012) ................................................. 8

*Mack v. Great Atl. and Pac. Tea Co., Inc.,*
  871 F.2d 179 (1st Cir. 1989) .................................................................................................. 14

*Nat'l Sec. Archive v. CIA,*
  _ F.3d _, 2014 WL 2053829 (D.C. Cir. May 20, 2014) ........................................................... 9

*Plaintiffs in All Winstar-Related Cases at Court v. United States*,
   44 Fed. Cl. 3 (1999) ........................................................................................................ 5

*Powell Mountain Energy, LLC v. Manalapan Land Co., Ltd.*,
   No. 09-305, 2011 WL 3880512 (E.D. Ky. Aug. 31, 2011) ........................................ 8

*Quarles v. Dep't of the Navy*,
   893 F. 2d 390 (D.C. Cir. 1990) ............................................................................... 10

*Romacorp, Inc. v. Prescient, Inc.*,
   No. 10-22872, 2011 WL 2312563 (S.D. Fla. June 8, 2011) .................................... 13

*SAS Inst. Inc. v. World Programming Ltd.*,
   No. 5:10-cv-25-FL, 2014 WL 1760960 (E.D.N.C. May 1, 2014) .............................. 8

*Stevens v. FDIC*,
   No. 11-CV-00841, 2011 WL 3925087 (C.D. Cal. Aug. 25, 2011) ......................... 12

*United States v. Nixon*,
   418 U.S. 683 (1974) .......................................................................................... 9, 10

## STATUTES

12 U.S.C. § 4617(f) ............................................................................................... 2, 4

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FAIRHOLME FUNDS, INC., *et al.*,       )
                                       )
        Plaintiffs,                    )       No. 13-465C
                                       )       (Judge Sweeney)
        v.                             )
                                       )
THE UNITED STATES,                     )
                                       )
        Defendant.                     )

## DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

## INTRODUCTION

Our motion for protective order and supporting declarations demonstrate that the discovery sought by plaintiffs would interfere with the functioning of the conservatorships of Fannie Mae and Freddie Mac, impair ongoing deliberations about the future of the Enterprises, and go far beyond the limited discovery contemplated by the Court's February 26 order. Granting the relief that we request – a cutoff date of August 17, 2012 for one discovery category and reasonable limitations on the other two categories – will allow for the production of documents pertaining to the issues contemplated by the Court while addressing the very serious concerns implicated by plaintiffs' requests.[1]

With respect to plaintiffs' discovery requests that probe into the Government's internal views as to the future of the Enterprises (Requests 1 and 6-10), we seek a protective order that provides a cutoff date of August 17, 2012. Our motion explains that compelled disclosure of these documents with no cutoff date would adversely "affect the exercise of powers or functions" of the Federal Housing Finance Agency (FHFA) as conservator in direct contravention of 12

---

[1]   For the Court's convenience, the exact scope of our proposed discovery is set forth in a chart at the close of this reply.

U.S.C. § 4617(f), and would threaten the integrity of the Government's ongoing internal deliberations.  *See* Decl. of Melvin Watt, ¶ 3 (Watt Decl.) (A1-7).

Plaintiffs' response is to claim that whether disclosure would have a significant adverse effect on the conservator's exercise of its powers and functions is irrelevant because plaintiffs seek only damages in this case.  However, they offer no reason why the bar in 12 U.S.C. § 4617(f) applies only to suits seeking injunctions and not to suits seeking damages.  The statute contains no such limitation and its purpose would be undermined if litigants could impair the operations of the conservatorships by filing a damages action and making discovery demands into processes at the core of the conservator's responsibilities.  Congress provided a comprehensive bar against such action because of the extreme circumstances contemplated by the imposition of the conservatorships.  The FDIC cases on which plaintiffs rely do not involve conservatorships of open and operating financial institutions and therefore implicate none of the concerns raised by their own demands.

Plaintiffs offer no basis for their assertion that a court order compelling the discovery sought by plaintiffs would *not* "have extraordinarily deleterious consequences on the Conservator's conduct of the ongoing and future operations of the conservatorships."  Watt Decl. ¶ 3 (A2).  Their response disregards the nature of their requests, which target the ongoing assessments of the Enterprises' future profitability and potential courses of action available to the conservator.

Plaintiffs do not seriously dispute that the requests also implicate the deliberative process, but ignore the extraordinary nature of their demands.  Instead, they seek the production of documents relating to present and future assessments of the Enterprises' profitability and the

ongoing thinking as to the future of the Enterprises without citing any precedent for such demands.

Our motion further asks for a protective order that sets appropriate limits with respect to plaintiffs' requests that exceed the scope of this Court's February 26 order.  In its order, the Court authorized discovery with respect to the solvency of Fannie Mae and Freddie Mac at the time of the 2008 conservatorship decision.  The Government has agreed to produce non-privileged financial projections of Fannie Mae and Freddie Mac in connection with the conservatorship decision (Request 1(a)), and documents related to the decision to leave the Enterprises' capital structure in place during the conservatorships (Request 4).  The remainder of Request 1 (Requests 1(b) through 1(k)), along with Requests 2, 3, and 5, go well beyond the discovery permitted by the Court by seeking over six years of comprehensive financial information with no limitations.

The Court also authorized discovery regarding whether "FHFA was an agent and arm of the Treasury" when it entered into the Third Amendment, such that FHFA may be treated as the United States for purposes of Tucker Act jurisdiction.  Requests 11, 14, and 16, in part, bear on this question, and the Government has agreed to produce responsive, non-privileged documents.  However, by their plain terms, the requests plaintiffs group under the subtitle "Requests Relating To Whether FHFA Is The United States" (Requests 11-19) far exceed the scope of the issue as described by plaintiffs in their motion and by the Court in its order.

**ARGUMENT**

I.    **The Court Should Limit Discovery With Respect To Requests 1 and 6-10 To Documents Created Prior To August 17, 2012, The Date Of The Third Amendment**

    A.    **HERA Bars Permitting The Discovery Requested By Plaintiffs**

The Enterprises are in conservatorship, not receivership.  Section 4617(b)(2)(A) of the Housing and Economic Recovery Act of 2008 (HERA) transferred to the conservator for the duration of the conservatorships "all rights, titles, powers, and privileges of the regulated entity, and of any stockholder."  Conservatorships are extraordinary and Congress expressed clearly its intent regarding the administration of the conservatorships.  Accordingly, judicial rulings, such as those upon which plaintiffs rely, allowing shareholders of seized, closed banks to bring suit in *receivership* provide no support for plaintiffs.

HERA also bars a court from taking  "any action to restrain or affect the exercise of powers or functions" of the FHFA as conservator.  12 U.S.C. § 4617(f).  Plaintiffs contend that this statutory bar applies only in suits seeking injunctive relief.  Had Congress intended, however, to limit the application of this provision to suits for injunctive relief it could have easily said so.  Plaintiffs identify no grounds for engrafting a limitation on the statute that Congress did not itself include.  A discovery order in a suit for damages can "affect the exercise of powers or functions" of the conservator and compromise the conservator's conduct just as clearly as an injunction.

Plaintiffs' citation to cases in which an analogous statutory provision was determined not to foreclose suits for damages against the FDIC as receiver does not respond to the Director's determination that the challenged discovery requests would restrain and affect the conservator.  The case on which plaintiffs place primary reliance, *Ambase Corp. v. United States*, 61 Fed. Cl. 794 (2004), concerned the liquidation of a failed bank by the statutory receiver.  In that context,

the court concluded that a claim for "money damages *ex post* as the result of FDIC actions" as

receiver did not impair the FDIC's ability to exercise its statutory functions.  *Id*. at 799.  Here, in

contrast, plaintiffs seek discovery in aid of their attack on the conservator's continuing

management of the conservatorships.  That discovery, in contrast to the circumstances in

*Ambase,* will adversely affect the functions of an ongoing conservatorship of open financial

institutions.[2]

Indeed, as the district court recognized in *Brandow v. FDIC*, No. 1:08-cv-2771, 2008 WL

5378348 (N.D. Ohio Dec. 22, 2008), even in the context of a receivership, discovery may

impermissibly impair the receiver's ability to carry out its functions simply because it is

excessively burdensome.  *See id.* at *3 (analogous statute barred an order requiring the receiver

to produce information about 15,000 creditors on short notice because it would "pose a

significant burden on the FDIC which would interfere with its ability" to exercise its statutory

powers).  Similarly, *Dittmer Properties., L.P. v. FDIC*, 708 F.3d 1011 (8th Cir. 2013), illustrates

the broad scope of an analogous provision even in the context of a liquidation.  That case

involved the validity of a note that the FDIC, in its capacity as receiver, had already sold to a

---

[2]   Contrary to plaintiffs' suggestion, this motion does not require the Court to revisit its
earlier rulings on the availability of discovery.  We note, however, that plaintiffs' failure to
distinguish between a conservatorship and a receivership underlies their legal analysis generally.
HERA dictates when a shareholder claim can be brought.  The statute precludes shareholders
from interfering with FHFA's stewardship of the ongoing conservatorships through an action
like this suit or plaintiffs' parallel district court action, *Fairholme Funds, Inc. v. FHFA*, No. 13-
cv-1053 (D.D.C.).  Similarly, the cases on which plaintiffs rely treat receivership and liquidation
as jurisdictional prerequisites to the damages claims seeking to enforce shareholders' statutory
distribution rights in receivership.  *See First Hartford Corp. Pension Plan & Trust v. United
States*, 194 F.3d 1279, 1288 (Fed. Cir. 1999) (concluding that the plaintiff could claim a property
interest in a liquidation surplus "provided that a liquidation was underway that could create a
surplus thereby triggering a shareholder distribution"); *Plaintiffs in All Winstar-Related Cases at
Court v. United States*, 44 Fed. Cl. 3, 11-12 (1999) ("Our holding [allowing shareholders to sue
derivatively] is limited to the liquidation context in which any surplus, as a matter of law, must
be distributed to the shareholders.").  Here, Fannie Mae and Freddie Mac are being operated as
open financial institutions in conservatorship, not closed and liquidated in receivership.

private party which, by the time the case reached the court of appeals, was the defendant in interest. *See id.* at 1016 & n.5. The Eighth Circuit, concurring with decisions of other circuits, held the statutory bar precluded a suit against the purchaser of the note because allowing suit to proceed would "affect[] the FDIC's ability to function as receiver in the case." *Id.* at 1017.

Plaintiffs are on no firmer ground in urging the Court to disregard Director Watt's declaration that disclosure of the post-Third Amendment materials sought in Request 1 and Requests 6-10 would "have extraordinarily deleterious consequences on the Conservator's conduct of the ongoing and future operations of the conservatorships." Watt Decl. ¶ 3 (A1-7). Plaintiffs' assertion that it "simply cannot be that every responsive document created after August 17, 2012 [the date of the Third Amendment] contains market-moving information," Pls.' Opp. at 7, ignores the purpose of plaintiffs' document requests, which is to elicit non-public information about "when, and how the conservatorships will end[.]" Pls.' Opp. at 1. Director Watt explains in detail in his declaration that "[t]he disclosure of any plans relating to ongoing and future operation of the conservatorships, including the projections of the future profitability of Fannie Mae and Freddie Mac (or lack thereof) under a range of economic, business and policy scenarios can be anticipated to have a destabilizing effect on the Nation's housing market and economy." Watt Decl. ¶ 7 (A3); *see also* Dickerson Decl. ¶ 16 (A25) ("Because mortgage rates are very sensitive to price changes in the futures market, the disclosure of the type of non-public information contained in response to Plaintiffs' Requests No[s.] 1 (to the extent it seeks documents relating to ongoing and future operations of the Enterprises) 6, 7, 8, 9 and 10 would quickly result in higher costs for borrowers").

Noting that FHFA voluntarily releases reports containing financial projections for the Enterprises, plaintiffs leap to the conclusion that no harm can result if the Court were to compel

disclosure of the information that has not been made public.  Pls.' Opp. at 8 n.3.  The error of

such reasoning is self-evident, and disregards the nature of plaintiffs' requests, which seek

evolving and necessarily tentative predictions and plans by officials and employees at all levels

that are not the carefully analyzed and vetted reports that are issued to the public.  *See* Watt Decl.

¶ 13 (A6) (the disclosure of information "concerning a wide range of operational and other issues

about which final decisions have not yet been made or implemented fully, such as documents

responsive to Requests 8 and 10, would mislead the public and adversely affect market

participants by disseminating raw data and information suggesting courses of action that may

later be rejected or significantly altered"); Stegman Decl. ¶ 28 (A16) ("The policy decision-

making process is iterative.  It involves evaluation, testing, and re-testing of ideas, options, and

strategies.  Often early hypotheses, strategies, suggestions, and ideas prove not to be workable

for any number of reasons" and "produc[ing] deliberative materials that reflect such discarded

assumptions and ideas could misinform the public and result in unintended market

consequences.").

Although plaintiffs insist that no harms would befall the markets if the post-Third

Amendment documents sought in Requests 1 and Requests 6-10 are publicly released, they

suggest that the Court could avoid such harms by restricting access to specified attorneys.  Pls.'

Opp. at 9-10.  HERA does not permit reliance on such measures, which would be inadequate

even if plaintiffs were not disdainful of the Government's assessment of the harm that would

result from public disclosure.  "The Conservator is charged with directing the largest

conservatorships in U.S. history in support of the Nation's multi-trillion dollar mortgage finance

system."   Watt Decl. ¶ 7 (A3).  No set of restrictions can guarantee against the risk of disclosure,

as recently illustrated in the litigation arising out of the federal government's bailout of AIG.

*See Starr Int'l. Realty Co., Inc. v. United States,* No. 1:11-cv-0079-TCW, Dkt. 231 (Fed. Cl. May 15, 2014) (noting that news reporter had access to deposition transcripts of Timothy F. Geithner, Henry M. Paulson and Ben S. Bernanke in violation of protective order).[3]

The process of litigation in this case itself would also create multiple opportunities for inadvertent disclosures of protected material.  It would be necessary, of course, to file pleadings under seal, as well as redacted public versions of the pleadings.  (The same process would apply to this Court's orders.)  Even if plaintiffs successfully redacted all specific information gleaned through discovery, their briefs would be carefully scrutinized by the markets for inferences (whether warranted or not) regarding the materials obtained.

Thus, even if current projections regarding the Enterprises' future profitability and deliberations regarding the conservatorships' future termination were relevant to plaintiffs' takings claim—which they are not—releasing such materials to plaintiffs or their lawyers would improperly interfere with the conservatorships.

## B.  Deliberations Regarding The Future Of The Enterprises Are Also Protected By The Deliberative Process Privilege

Plaintiffs do not seriously dispute that Requests 1 and Request 6-10 for post Third Amendment documents categorically target deliberations regarding the future of the Enterprises.

---

[3]  *See also, e.g., Apple Inc. v. Samsung Elecs. Co.* Ltd., No. 5:11-cv-01846, slip op. (N.D. Cal. Jan. 29, 2014 ) (highly-sensitive business information designated "Attorneys Eyes Only" inadvertently disclosed to hundreds of employees of company's competitor); *Life Techs. Corp. v. Biosearch Techs. Corp.*, No. C-12-00852, 2012 WL 1600393 at *2 (N.D. Cal. May 7, 2012) (sensitive laboratory reports designated as "Attorneys Eyes Only" inadvertently disclosed to non-attorney, business competitors); *Powell Mountain Energy, LLC v. Manalapan Land Co., Ltd.*, No. 09-305, 2011 WL 3880512 at *1-2 (E.D. Ky. Aug. 31, 2011) (lease containing sensitive pricing, royalty and production terms designated as "Attorneys Eyes Only" disclosed to non-attorney in violation of protective order); *Bead Filters Int'l. v. Mills*, No. SA-09-cv-105-XR, 2009 WL 3837863 at *1-2 (W.D. Tex. Nov. 12, 2009) (documents designated "Attorneys Eyes Only" inadvertently disclosed to client and publicly filed); *SAS Inst. Inc. v. World Prog. Ltd.*, No. 5:10-cv-25-FL, 2014 WL 1760960 at *2 (E.D.N.C. May 1, 2014) (sensitive client list disclosed to non-attorneys in litigation between competitors, despite "Attorneys' Eyes Only" designation).

They fail to appreciate, however, the extraordinary nature of their insistence that no cutoff date should apply to their document requests.   Courts typically consider the deliberative process in response to requests for materials underlying *past* decisions, and apply the privilege even when the events at issue are decades old.  *See, e.g.*, *Nat'l Sec. Archive v. CIA*, _ F.3d _, 2014 WL 2053829 at *1 (D.C. Cir. May 20, 2014) (sustaining deliberative process privilege with respect to drafts of 1970's CIA history of the 1961 Bay of Pigs invasion and declaring that "'[h]uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decisionmaking process,' and that this concern dates back to "the Constitutional Convention itself") (quoting  *United States v. Nixon*, 418 U.S. 683, 705 (1974)).

In seeking post-Third Amendment documents relating to the future of the conservatorships, plaintiffs have no interest in past decisions.  Instead, plaintiffs seek the most current information on the evolving thinking on the Enterprises' future.  We stress again – and plaintiffs do not dispute – that the documents created after the Third Amendment have no bearing on their takings claim, and are claimed to be relevant (if at all) only to the question of when they can invoke this Court's jurisdiction.[4]  Yet there is no end to the discovery plaintiffs seek, and no way to assess its relevance.  Even last month's thinking would be irrelevant to

---

[4]   It is not surprising that plaintiffs are interested in the Government's internal policymaking processes and views, as they continue to buy and sell shares in the Enterprises. For example, between September 30 and October 23, 2013, the Fairholme plaintiffs acquired almost 40 million shares of common stock in the Enterprises for about $1.50 per share.  A66-70. On March 11, 2014, after the stock price had risen dramatically, plaintiffs sold over 12 million of these shares for just over $4.00 per share, earning over $30 million.  *Id.*  Plaintiffs' financial interest, however, in knowing more about the Government's decision-making process does not make their document requests relevant to their takings claim.

plaintiffs' ostensible purpose if it has been superseded.  And this month's thinking would, in turn, lose its asserted relevance in light of further developments.

A ruling by this Court is necessary to assure decision-makers and those who rely on the discretion of government agencies that they will not be "operat[ing] in a fishbowl," *Nat'l Sec. Archive*,  2014 WL 2053829 at *2, during this litigation.  As the declarations establish, and as plaintiffs cannot dispute, if the Government were required to operate in this fashion, "the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer." *Id. (quoting  Dudman Commcn's Corp. v. Dep't of the Air Force,* 815 F.2d 1565, 1567 (D.C.Cir.1987)); *see* Stegman Decl. (A8-19); Dickerson Decl. (A20-30).

Plaintiffs broadly assert that "a host of documents drafted after the Government's proposed cutoff date are not privileged because they (1) contain factual material, (2) have been shared with Congress or other third parties, (3) announce or relate to final policy decisions, or (4) are relevant to the Government's subjective motivations."  Pls.' Opp. at 2.   But they make little attempt to explain the legal and factual assumptions underlying these assertions.

Regarding the first argument, plaintiffs fail even to cite the Federal Circuit's decision in *In re United States*, 321 Fed. App'x 953 (Fed. Cir. 2009), in which the Court of Appeals explained that in applying the deliberative process privilege, factual information may be disclosed "only if it does not reveal the deliberative process and [is] not intertwined with the policy-making process," and noted "that courts hold exempt from disclosure factual material such as factual summaries by decisionmakers or factual material about the inner workings of the deliberative process itself[.]" *Id.* at 959 (citing *Quarles v. Dep't of the Navy*, 893 F. 2d 390, 392 (D.C. Cir. 1990)).

Regarding their remaining arguments, plaintiffs appear to contend that their request for ongoing deliberations actually relates to a final determination that a legislative solution will occur. *See, e.g.,* Pls.' Opp. at 15.  Plaintiffs are not, however, seeking documents underlying a final legislative proposal, which would, in any event, be privileged. *See Ford Motor Co. v. United States*, 94 Fed. Cl. 211, 224 (2010) (holding that the deliberative process privilege protects "a suggested legislative proposal" that reflected the views of agency attorneys regarding the need for, and benefit of, legislative change affecting this matter).  Instead they seek broad categories of deliberative documents.

Perhaps to obfuscate the issues raised by our motion, plaintiffs barely refer to the actual language of the discovery requests at issue here.  *See* A37-40.  On their face, the requests go to the heart of the evolving and ongoing policy deliberations, and we quote the requests again to avoid any confusion engendered by plaintiffs' argument:

**REQUEST NO. 1:**  Any and all projections relating to the "profitability" of the Enterprises "from the time Defendant began considering whether to place the Companies into conservatorship to the present, including any models relating to those projections."

**REQUEST NO. 6:** Any and all documents relating to the standards for determining when, whether, and how to terminate the conservatorships of the Companies, including but not limited to documents relating to Treasury's authority to prevent termination of the conservatorships by withholding consent to termination of the conservatorships.

**REQUEST NO. 7:** Any and all documents relating to Defendant's commitment to ensure that existing equity holders will not have access to positive earnings from the GSEs, including the development of this policy and actions taken pursuant to this policy. *See, e.g.*, T202.

**REQUEST NO. 8:** Any and all documents relating to Defendant's policies to reduce the Companies' role in the mortgage market and to wind the Companies down, including development of those policies and actions taken pursuant to those policies. *See, e.g.*, T207.

**REQUEST NO. 9:** Any and all documents reflecting communications between FHFA and/or Treasury, on the one hand, and the Companies' board members and executives, on the other hand, relating to termination of the conservatorships.

**REQUEST NO. 10:** Any and all documents relating to Defendant's expectation that the Companies will not continue as they existed before the conservatorships. *See, e.g.*, T2390.

With considerable insouciance, plaintiffs declare that FHFA cannot invoke the deliberative process privilege because, as the Government has urged, FHFA "'is not the United States when it acts as conservator.'" Pls.' Opp. at 11. Plaintiffs, have taken the contrary view, however, which is the predicate of their suit. This Court has recognized that, in order to premise a takings claim on action by FHFA, plaintiffs must show that "FHFA was an agent and arm of the Treasury" and thus the United States for purposes of Tucker Act jurisdiction. February 26 Order at 3. Thus, assuming for purposes of argument that plaintiffs were to prevail in this litigation, it would be necessary to conclude that FHFA was acting as part of the United States and would be entitled to assert the deliberative process privilege.

Plaintiffs have two options: either their claims must be dismissed because conservatorship actions are *not* actions of the United States, or their arguments against application of the deliberative process privilege must be rejected because the conservatorship actions *are* actions of the United States. In either circumstance, plaintiffs are not entitled to the discovery they seek. The United States cannot properly be deprived of the ability to assert the deliberative process privilege before the status of the FHFA is resolved.[5] Once documents are disclosed, the privilege is, of course, lost forever.

---

[5] Moreover, the conservator may assert the deliberative process privilege even if its conduct is not subject to the Tucker Act. The purpose of the privilege is "to prevent injury to the quality of agency decisions by allowing *government officials* freedom to debate alternative approaches in private." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (emphasis added). Plaintiffs cannot dispute that FHFA employees making decisions on behalf of the conservator remain government officials. *Cf. Stevens v. FDIC*, No. 11-CV-00841, 2011 WL 3925087, at *3 & n.3 (C.D. Cal. Aug. 25, 2011) ("Although the FDIC as receiver steps into the shoes of the failed bank . . . this does not make the FDIC as a whole any less a government agency."). It would contravene the purpose of the privilege and make little sense to conclude that deliberations of FHFA officials lose their protected status simply because, in a different

Plaintiffs' references to "subjective motivation" do not, even on their own theory of the case, have any bearing on documents in Request 1 and Requests 6-10 that were created after the Third Amendment.  Instead, plaintiffs appear to seek an advance ruling with respect to pre-Third Amendment documents, none of which is at issue in this motion.  The Court should decline that invitation, and we do not here address the many errors that underlie plaintiffs' assertions in this regard.

## II.      The Court Should Limit Plaintiffs' Document Requests To The Scope Of The February 26 Order

We demonstrated in our motion that a protective order is also warranted in this case because many of Fairholme's document requests seek materials outside the subjects identified in the Court's February 26 order.  In response, plaintiffs misstate and enlarge the subjects in the Court's order, then ask the Court to apply a liberal relevance standard to even further expand the reach of their document requests.  Pls.' Opp. at 18-25.  Plaintiffs are incorrect on both counts.

### A.      Discovery Into The Solvency Of The Enterprises At The Time Of The Conservatorship Decision In 2008

This Court permitted discovery into the solvency of Fannie Mae and Freddie Mac at the time of the appointment of a conservator in 2008.  *See* February 26 Order at 3-4.  The Court granted this discovery in response to plaintiffs' request.  *See* Pls.' Mot for Discovery at 24 (Dkt.

---

legal context, the conservator is not the United States solely for purposes of this Court's jurisdiction.  Consistent with this rationale, courts have uniformly applied the privilege to federal financial regulators acting in their conservatorship or receivership capacities.  *See Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, --- F.Supp.2d ---, 2013 WL 5660247, at *7 (S.D.N.Y. Oct. 16, 2013) (applying deliberative process privilege, remarking that "[n]o party disputes that, as a government agency, the deliberative process privilege applies to FHFA"); *Romacorp, Inc. v. Prescient, Inc.,* No. 10-22872, 2011 WL 2312563, at *3 (S.D. Fla. June 8, 2011) ("The FDIC next argues that, as a governmental agency and its receivership capacity, it may assert certain privileges . . . I find that the FDIC may assert objections under the deliberative process privilege.").

22) (seeking discovery "relating to the financial condition of Fannie and Freddie *at the time they were placed into conservatorship*"); *see also id.*, Ex. A (Decl. of Counsel), at 5 ("Plaintiffs seek discovery of all nonprivileged documents, and appropriate depositions, relating to the financial condition of Fannie and Freddie *at the time they were placed into conservatorship . . . .*") (emphasis added).  Plaintiffs said nothing in their motion for discovery about the solvency of the Enterprises *nearly four years later,* when FHFA and Treasury entered into the August 2012 Third Amendment.

Accordingly, the Government has agreed to produce non-privileged documents in its possession in response to Request No. 1(a), which seeks financial projections of Fannie Mae and Freddie Mac in connection with the conservatorship decision.  *See* Def's Resp. to Pls.' First Set of Reqs. for Produc. at 7-8 (A49-50).  The Government has also agreed to produce documents related to the decision to leave the Enterprises' capital structure in place during the conservatorships (Request 4).  *Id.* at 10-11(A52-53).

The remainder of Request 1 (Requests 1(b) through 1(k)), along with Requests 2, 3, and 5, seek to explore nearly every financial aspect of the conservatorships, Fannie Mae, and Freddie Mac from 2008 to present.  Taken together, these requests seek six years of comprehensive financial information, with essentially no limitations.  These requests thus go well beyond the limited discovery contemplated by this Court.  *See Mack v. Great Atl. and Pac. Tea Co., Inc.*, 871 F.2d 179, 187 (1st Cir. 1989) (a party may not use discovery to "undertake wholly exploratory operations in the vague hope that something helpful will turn up").  For these reasons, with respect to the subject of the Enterprises' solvency and expected profitability in September 2008, the Court should limit plaintiffs to the materials identified in Requests 1(a) and 4.

### B.     Discovery Regarding Whether FHFA Was An "Agent And Arm" Of Treasury When It Entered Into The Third Amendment

The premise of plaintiffs' claim is that "FHFA was an agent and arm of the Treasury" when it entered into the Third Amendment, and that FHFA's actions thus may be treated as the actions of the United States for purposes of Tucker Act jurisdiction.  February 26 Order at 3. Requests 11, 14, and 16, at least in part, target the subject identified by the Court, and the United States has agreed to produce responsive documents.  *See* Def's Resp. to Pls.' First Set of Reqs. for Produc. at 16, 18 (A58, 60-62).  These three document requests fully cover the discovery topic authorized by the Court.[6]

Plaintiffs, however, seek additional materials in Requests 11-19 that are far afield from the subject of the relationship between FHFA and Treasury with respect to the Third Amendment.  The Court should disallow these requests because they vastly exceed the scope of the inquiry permitted by the Court.

Request 11 (although partially proper, as explained above), seeks all communications between FHFA and Treasury from the time of the conservatorship decision in 2008 to the time of the February 2012 FHFA strategic plan.  A57-58.  Request 12 seeks all materials related to whether Fannie Mae and Freddie Mac can repurchase the stock issued to the Government.  A58. Request 13 calls for all documents related to FHFA's supposed determination that "it is obligated to maximize Treasury's return on its investment in the Companies."[7]  A59-60.  Request 15 seeks

---

[6]   Plaintiffs mistakenly claim in their opposition that the Government has withdrawn its agreement to produce documents in response to Requests 11 and 14 and, therefore, our view of authorized discovery is "evolving."  Pls.' Opp. at 22 n.12.  This is inaccurate: we stand by our agreement in our responses to plaintiffs' document requests to produce non-privileged materials in response to Requests 11 and 14 to the extent such documents relate to the Third Amendment.

[7]   In Request 13, plaintiffs misstate the contents of the document that purportedly contains this FHFA "determination."  *See* Pls.' First Set of Reqs. for Produc. at 10 (A40).  The

privileged communications between Treasury and the Department of Justice.  A61.  Request 17

demands communications with Fannie Mae, Freddie Mac, and rating agencies, and market

analysts.  A62-63.  Request 18 demands all communications between members of the Federal

Housing Finance Oversight Board.  A63.

On their face, these requests go well beyond the relationship between FHFA and

Treasury, as well as the time frame for the core issue in plaintiffs' case, the August 2012 Third

Amendment to the stock agreements.  Plaintiffs declare that "the question whether FHFA should

be considered the United States for purposes of the Tucker Act poses a 'fact-intense inquiry.'"

Pls.' Opp. at 23 (quoting February 26 Order at 3).  That is not a reason to transform the specific

question of "whether the FHFA acted at the direct behest of the Treasury" (February 26 Order at

3) into a wide-ranging investigation.  The context of this case is framed by plaintiffs' complaint,

which challenges *only* the August 2012 Third Amendment.  Plaintiffs are not entitled to every

document ever exchanged between FHFA and Treasury in hopes of finding a shard of evidence

to support their theory that FHFA did Treasury's bidding when it agreed to the Third

Amendment.

Plaintiffs misleadingly refer to the liberal relevance standard in RCFC 26, Pls.' Opp. at

25, but that standard has no application here.  Although discovery in the context of the merits of

a case is "broadly construed," this case is in a very different posture.  The Court here has

authorized narrow discovery that is (1) sufficient to respond to certain aspects of the

Government's motion to dismiss; and (2) limited to specific topics.  This is not surprising, given

---

document, FHFA's February 2012 Strategic Plan, states: "FHFA has reported on numerous
occasions that, with taxpayers providing the capital supporting Enterprise operations, this
'preserve and conserve' mandate directs FHFA to minimize losses on behalf of taxpayers."  *See*
http://www.fhfa.gov/AboutUs/Reports/ReportDocuments/20120221_StrategicPlanConservatorsh
ips_508.pdf, at 7.

that it is widely recognized that discovery while a motion to dismiss is pending should be "narrow as possible." *Lakeland Partners, LLC v. United States*, 88 Fed. Cl. 124, 138 (2009).

For these reasons, with respect to the subject of whether FHFA acted at the behest of Treasury in executing the Third Amendment, the Court should limit plaintiffs to the responsive materials identified in Requests 11, 14, and 16.  Discovery beyond this is improper.

**C.**     **Summary**

In sum, the Government respectfully requests that the Court limit discovery in accordance with the following chart.  The scope of discovery identified below will facilitate production of all documents required to resolve the issues identified by the Court without encroaching on core internal decision-making processes. This table takes into consideration the document search terms and custodians that have been under discussion by the parties.  *See* Pls.' Opp. at 26-27.  In accordance with ordinary document production practices, all documents will be reviewed for both responsiveness and privilege.  We respectfully request that the Court enter a protective order striking the remainder of plaintiffs' document requests.

## Government's Proposed Scope of Discovery

| Subject Matter In Court's February 26 Order | Document Requests | Date Range |
|---|---|---|
| Solvency of Enterprises and Expectations of Profitability at the Time of the Conservatorship Decision in September 2008 | **Request 1(a)** (Financial projections in the possession of FHFA and/or Treasury in connection with the conservatorships).<br><br>**Request 4** (Documents relating to decision to leave the GSEs' existing capital structure in place). | July 1 to December 31, 2008 |
| Whether FHFA Acted at the Behest of Treasury in Entering Into the August 2012 Third Amendment | **Request 11** (Communications between FHFA and Treasury related to the conservatorships.)<br><br>**Request 14** (Documents related to FHFA's decision to enter into the Third Amendment.)<br><br>**Request 16** (Documents related to Treasury's decision to enter into the Third Amendment.) | January 1 to September 30, 2012 |
| Government's Current Assessment of Future Profitability of Fannie Mae and Freddie Mac, Including How and When the Conservatorships Will End | **Request 1(a)** (Financial projections in the possession of FHFA and/or Treasury in connection with the conservatorships).<br><br>**Requests 6 thru 10** (Documents related to terminating or winding down the conservatorships.) | January 1 to August 17, 2012 |

## CONCLUSION

For the foregoing reasons and the reasons set forth in our motion, the Court should issue a protective order that discharges the Government of any obligation to produce documents created after August 17, 2012, the date of the Third Amendment, in response to Requests 1 and 6-10.  In addition, the Court should issue a protective order that discharges the Government of any obligation to respond to the remaining document requests to the extent that these requests exceed the scope of the February 26 Order.

Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

s/ Robert E. Kirschman, Jr.
ROBERT E. KIRSCHMAN, JR.
Director

s/ Kenneth M. Dintzer
by Robert E. Kirschman, Jr.
KENNETH M. DINTZER
Acting Deputy Director
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 616-0385
Facsimile:  (202) 307-0972
Email: KDintzer@CIV.USDOJ.GOV

Attorneys for Defendant

June 17, 2014