IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FAIRHOLME FUNDS, INC., et al.,      )
                                    )
            Plaintiffs,             )      No. 13-465 C
                                    )      (Judge Sweeney)
      v.                            )
                                    )
THE UNITED STATES,                  )
                                    )
            Defendant.              )

**DEFENDANT'S MOTION FOR CLARIFICATION
OR, IN THE ALTERNATIVE, FOR AN ENLARGEMENT
OF TIME TO PROVIDE SUPPLEMENTAL DECLARATIONS
IN RESPONSE TO THE COURT'S MAY 20, 2016 ORDER**

Defendant, the United States, respectfully requests clarification of two points in the

Court's May 20, 2016 order (May 20 Order), which instructs the United States to: (1) provide

the Court with "supporting affidavits from agency heads or their delegates with respect to all

documents as to which defendant asserts the deliberative process privilege . . . by no later than

May 27, 2016;" and (2) provide the court with hard copies of the documents identified in the

index attached as Exhibit 1 to plaintiffs' motion to compel.  May 20 Order at 1.  On May 25,

2016, counsel for plaintiffs advised counsel for the United States that plaintiffs oppose the

Government's motion.

**I.      Request For Clarification With Respect To Documents Sought By The Court
          For In Camera Review**

First, we seek clarification regarding the documents for which the Court seeks

supporting declarations from the agencies.  We understand the order's reference to "all

documents" to refer to all documents that the Court has directed us to provide for *in camera*

review.  Those documents are identified in the excerpts from Treasury's and FHFA's privilege

logs that are attached as Exhibit 1 to plaintiffs' motion to compel.  ECF No. 270 (Pls. Mot.) at

Ex. 1.  To the extent our understanding is correct, we respectfully refer the Court to the

Declarations of Christopher Dickerson and David R. Pearl pursuant to which FHFA and

Treasury, respectively, formally invoked Government privileges with respect to the documents

that the Court will review *in camera*.  We have attached Mr. Dickerson's and Mr. Pearl's

declarations to this motion.[1]

The United States also seeks clarification with respect to the portion of the May 20 Order

that instructs the United States to submit hard copies of the "documents identified in those pages

of the Vaughn index attached as Exhibit 1 to plaintiffs' motion to compel."  May 20 Order at 1.

Although we are compiling hard copies of 54 documents on Exhibit 1 that are protected by the

deliberative process and/or bank examination privileges for *in camera* review, Exhibit 1 lists 4

documents that are subject to the presidential communications privilege: 3 of the 4 documents

are protected by both the deliberative process and presidential communications privileges; 1 of

the 4 documents is protected by the presidential communications privilege alone.

As we explained in our response to plaintiffs' motion, the law does not require the

Government to provide declarations invoking the presidential communications privilege or to

submit these documents for *in camera* review until plaintiffs establish a "focused demonstration

of need."  *See* ECF No. 284 (Def. Response) at 35-38 (citing *In re Sealed Case*, 121 F.3d 729,

746 (D.C. Cir. 1997); *see also Dairyland Power Coop. v. United States*, 79 Fed. Cl. 659, 662

(2007) ("the White House need not formally invoke the presidential communications privilege

until the party making the discovery request has shown a heightened need for the information

sought")).  Because the Court has not made express findings that plaintiffs established their need

---

[1]  These declarations are also contained in the appendix to the United States' response to plaintiffs' motion to compel.  *See* ECF No. 284-1 (Appendix to Defendant's Response) at A58-A67 (Dickerson); A68-A86 (Pearl).

for such documents, we respectfully ask the Court to clarify whether it intended to order the submission of the documents subject to the presidential communications privilege.

## II.    Alternative Request For An Extension Of Time Within Which To Provide Declarations With Respect To Documents Protected By The Deliberative Process Privilege

In the alternative, to the extent that the May 20 Order requires the United States to provide additional declarations with respect to all documents on our privilege log protected by the deliberative process privilege, we respectfully request that the Court: (1) confirm that it requests declarations with respect to documents protected by the deliberative process privilege alone (as opposed to multiple privileges); and (2) grant us leave to provide such declarations no later than 60 days after the Court concludes *in camera* review of, and issues its decision with respect to, the documents identified in Exhibit 1 to plaintiffs' motion.

Because over 2,000 documents are subject to multiple privileges, we request that the Court confirm that the supplemental declarations requested are limited to documents, or portions of documents, protected by the deliberative process privilege alone.  Further, because portions of the remaining Treasury and FHFA documents identified on the United States' privilege log are duplicates of, or closely related to, the documents that will be reviewed *in camera*, the Court's decision will assist the Government in streamlining the preparation of the declarations.[2]  *See* Def. Response at 2.  Deferral of the Court's request for supplemental declarations until the Court issues a decision with respect to the documents subject to *in camera* review will aid in narrowing the universe of documents that remains in dispute, and relieve the Court of the burden

---

[2]  In the event that the Court requires declarations for all documents protected by the deliberative process privilege, supplemental declarations will also need to be prepared for an additional 491 documents that Treasury's consultant, Grant Thornton, identified on its privilege log as protected by the deliberative process privilege.

of reviewing declarations that assert privilege over documents (or variations of documents) that the Court has already considered.

In any case, preparing such declarations would entail an additional, comprehensive, page-by-page review of the approximately 8,000 Treasury documents and 3,000 FHFA documents identified on our privilege logs.[3]  Indeed, compiling Mr. Dickerson's and Mr. Pearl's declarations, which address the documents that are the subject of plaintiffs' pending motion, required painstaking consideration of roughly 60 documents by senior agency officials and counsel.  The level of time and effort required to replicate this process with respect to approximately 11,000 additional documents, absent further guidance from the Court, cannot be overstated.  Such a process would, conservatively, consume hundreds of hours of Government counsel's time and require days of work by senior agency officials—time that would distract from those officials' regular policymaking and public-service work.

In the event that the Court requires us to provide declarations with respect to all documents over which Treasury and FHFA have invoked the deliberative process privilege before it concludes *in camera* review of the documents identified in Exhibit 1 to plaintiffs' motion, we request a 75-day enlargement of time.  We anticipate that the requested enlargement will provide counsel and the agencies with sufficient time to review the documents, compile the declarations, and obtain the necessary internal review.

For these reasons, we request confirmation: (1) that the Court's May 20 Order requires the United States to provide declarations with respect to the documents subject to *in camera* review; and (2) that the Declarations of Christopher Dickerson and David Pearl attached to the United States' response satisfy this requirement.  In the alternative, we request that the Court

---

[3]  The volume of logged documents reflects the United States' efforts to protect sensitive, predecisional deliberations regarding housing finance policy.

clarify that it seeks supplemental declarations with respect to documents protected by the

deliberative process privilege alone (as opposed to multiple privileges), and order the United

States to provide such supplemental declarations within 60 days after the Court has issued an

order with respect to the documents identified in Exhibit 1 to plaintiffs' motion.  Finally, to the

extent that the Court denies our request to defer the production of supplemental declarations

until the Court has the opportunity to review, *in camera*, the documents identified in plaintiffs'

motion to compel, we request a 75-day enlargement of time to August 10, 2016 to provide those

declarations.

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General


s/Robert E. Kirschman, Jr.
ROBERT E. KIRSCHMAN, JR.
Director


s/Kenneth M. Dintzer
KENNETH M. DINTZER
Deputy Director
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 616-0385
Facsimile:  (202) 307-0973
Email:  Kenneth.Dintzer@usdoj.gov

May 25, 2016                                    Attorneys for Defendant

# APPENDIX

<u>INDEX TO APPENDIX</u>

Declaration of Christopher H. Dickerson, Dec. 15, 2015 ............................................................. A1

Declaration of David R. Pearl, Jan. 20, 2016 ............................................................................ A11

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FAIRHOLME FUNDS, INC., *et al.*,    )
                                   )
        Plaintiffs,    )
                                     )      No. 13-465C
                                     )      (Judge Sweeney)
        v.    )
                                       )
THE UNITED STATES,    )
                                     )
        Defendant.    )

## DECLARATION OF CHRISTOPHER H. DICKERSON

I, Christopher H. Dickerson, hereby declare, based on personal knowledge of the facts, as follows:

1.      I am Senior Associate Director of the Division of Enterprise Regulation ("DER") at the Federal Housing Finance Agency ("FHFA"). I have been employed by FHFA since its inception in 2008. I previously was employed by FHFA's predecessor, the Office of Federal Housing Enterprise Oversight ("OFHEO") from July 1997 until my employment automatically transferred to FHFA.

2.      FHFA is an independent federal agency with regulatory authority over the Federal National Mortgage Association ("Fannie Mae"), the Federal Home Loan Mortgage Corporation ("Freddie Mac") (together, the "GSEs" or "the Enterprises"), and the Federal Home Loan Banks.

3.      In connection with my responsibilities as Senior Associate Director of DER, I am generally familiar with this litigation.

4.      For the purposes of this litigation, I have been delegated the authority by FHFA Director Melvin L. Watt to invoke the deliberative process privilege and the bank examination privilege. I therefore possess delegated authority to assert both the deliberative process privilege

and the bank examination privileges on behalf of FHFA with respect to the documents discussed below.  I formally assert both privileges over the following documents:

    a.  Document prepared by BlackRock Solutions titled FNM Loss and Capital Projections Overview, dated September 6, 2008 (FHFA00031960);

    b.  Document prepared by BlackRock Solutions titled FRE Loss and Capital Projections Overview, dated September 6, 2008 (FHFA00031962);

    c.  Document prepared by BlackRock Solutions titled Approach for Agency Loss and Capital Projections, dated September 6, 2008 (FHFA00031964);

    d.  Document prepared by BlackRock Solutions titled Freddie Mac Confidential Capital Review: Preliminary Results, dated August 25, 2008 (FHFA00056237).

    e.  An FHFA presentation titled "Accounting for Income Taxes: Deferred Tax Assets" (FHFA00092209), dated October 29, 2008;

    f.  FHFA Forecast Scenarios As Requested by FHFA, dated September 2011 (FHFA00093706);

    g.  FHFA Projections of Remaining Treasury Funding Commitment Under Three Scenarios, September 16, 2011 (FHFA00100594).

5.    Pursuant to authority delegated to me as described in Paragraph 4, above, I assert the bank examination privilege on behalf of FHFA with respect to the following documents (referred to herein as the "Risk Assessment Memoranda"):

    a.  FHFA Risk Assessment Memorandum Regarding Fannie Mae's Earnings as of March 31, 2012 (FHFA00096631);

    b.  FHFA Risk Assessment Memorandum Regarding Fannie Mae's Solvency as of March 31, 2012 (FHFA00096634);

     c.  FHFA Risk Assessment Memorandum Regarding Freddie Mac's Earnings as of March 31, 2012 (FHFA00096636);

     d.  FHFA Risk Assessment Memorandum Regarding Freddie Mac's Solvency as of March 31, 2012 (FHFA00096638).

6.     In addition, I possess delegated authority to assert the deliberative process privilege on behalf of FHFA with respect to the following document ("DeLeo Email"):

     a.  Email sent by Wanda DeLeo to James Lockhart and Edward DeMarco on October 29, 2008 with subject line "RE: bberg question-FNM write down def tax assets."

7.     A true and correct copy of the delegation memorandum is attached hereto as Exhibit A.

## REGULATION OF THE ENTERPRISES

8.     FHFA regulates the GSEs through its Division of Enterprise Regulation ("DER"). The DER is the successor to OFHEO's Office of Supervision, which regulated the GSEs until it was replaced by FHFA in 2008. The DER's regulation of the GSEs is substantially the same as that performed by OFHEO before FHFA was established. OFHEO's Office of Supervision, in turn, was modeled on the best practices of supervisory regimes of financial regulators, including the Office of the Comptroller of the Currency ("OCC"), the Federal Deposit Insurance Corporation ("FDIC"), the Office of Thrift Supervision ("OTS"), and the Federal Reserve Board ("FRB"). OFHEO was originally staffed exclusively by former examiners from these agencies.

9.     The examination program is the primary means by which FHFA monitors the Enterprises' financial safety and soundness and their compliance with applicable laws, regulations and policies. FHFA's approximately 75 examiners administer the Agency's examination program, through among other things, reviews of Enterprise financial data, periodic

on-site examinations and ongoing contacts with the Enterprise boards of directors.  FHFA can

take a variety of supervisory actions to require the Enterprises to correct deficiencies identified

during the examination process.

10.    DER personnel regularly request documents, test internal controls and risk

management practices, meet with GSE staff, review transactions and holdings, prepare initial

findings, prepare analysis memoranda, issue conclusion and closeout letters, and monitor and

evaluate the GSEs' implementation of remedial measures.  The DER distills all of this

information into high-level analyses that are then reviewed within FHFA.

11.    In September 2008, due to the Enterprises' mounting mortgage-related losses,

FHFA found they were critically undercapitalized and as authorized by HERA, placed them into

conservatorships.  To facilitate FHFA's efforts, HERA vested the Agency with all of the powers

of the Enterprises' shareholders, directors and officers.  12 U.S.C. §§ 4617(b)(2)(A).  Although

FHFA has assumed the authority of the management and boards of directors of the Enterprises

during the period of conservatorship, it has delegated to the Enterprises' chief executive officers

and boards of directors responsibility for much of the day-to-day operations of the companies.

As required by HERA, during conservatorship, FHFA continues to supervise and regulate the

Enterprises and continues to conduct examinations as part of that supervision.

## BANK EXAMINATION PRIVILEGE

12.    When FHFA asserts a formal claim of bank examination privilege, the agency

considers whether the document is properly characterized as falling within the scope of FHFA's

supervision of the GSEs and whether the document was generated by FHFA or by one of the

GSEs in response to a supervision-related request from FHFA.  The privilege is claimed only to

protect those documents reflecting the supervisory process.

13.     FHFA does not seek to protect documents containing factual matters unless such factual matters are so intertwined with advisory opinions, recommendations, conclusions, or reasoning that the factual material cannot be excised from the privileged material, or unless the factual matter itself, through its selection and distillation by the author, would reveal the author's mental process or the agency's deliberations.  Documents are withheld in full where there is not a reasonably segregable portion that is not privileged.

## DELIBERATIVE PROCESS PRIVILEGE

14.     When FHFA asserts a formal claim of privilege with respect to pre-decisional, deliberative documents, the agency considers whether the documents are properly characterized as falling within the scope of the deliberative process, that is, whether the documents were generated before the adoption of an agency policy or position and, if so, whether the documents reflect the give-and-take of the intra-agency consultation process leading up to the formulation of an agency policy or position.  The privilege also applies in the case of post-decision documents that describe the deliberative process that results in the formulation of the agency policy or position.  The privilege is claimed only to protect those documents reflecting advisory opinions, recommendations, and deliberations that comprise part of the process by which agency decisions and policies are formulated.

15.     FHFA does not seek to protect documents containing factual matters unless such factual matters are so intertwined with advisory opinions, recommendations, conclusions, or reasoning by government officials that the factual material cannot be excised from the privileged material or unless the factual matter itself, through its selection and distillation by the author, would reveal the author's mental process or agency's deliberations.  Documents are withheld in full where there is not a reasonably segregable portion that was not privileged.

## BLACKROCK DOCUMENTS

16.     The BlackRock Documents, over which I assert the bank examination privilege

and the deliberative process privilege on behalf of FHFA, contain loss and capital projections

prepared by consultant BlackRock Solutions before the establishment of conservatorship for

purposes of agency decision-making.

17.     Based on my review of the BlackRock Documents, I have determined that they

were generated in the course of FHFA's continuous supervision of the Enterprises.  The

documents are inherently pre-decisional and reflect real-time analyses of the Enterprises

operations.  The production of these documents would reduce candor and inhibit

communications by consultants, and thus would adversely affect the quality of supervision of the

GSEs.  If employees and consultants believe that their communications regarding supervision of

the GSEs could become public in the event of litigation, they are unlikely to feel at liberty to

express their candid opinions.

18.     In particular, the issues addressed in the BlackRock Documents — projections in

September 2008 of Enterprise credit and capital losses — are the subject of significant public

interest and would likely be the subject of intense publicity and public scrutiny.  Disclosure of

that information likely would inhibit the willingness of consultants to provide advice in the

future as part during the agency's decision making processes.  Consultants could reasonably

believe that in a case under intense public scrutiny they could be held up for ridicule if their

recommendations and/or advice was rejected, especially where the rejection may be in

unflattering terms.  Disclosure of such information also could confuse the public by revealing

statements about the financial condition of the Enterprises that might be misleading when

stripped of context.  Further, because the BlackRock Documents reflect the internal deliberations

of FHFA prior to the agency's adoption of an official position, disclosure of the views or opinions of consultants could confuse the public by suggesting rationales for FHFA's actions that may or may not have been relied upon as the basis for those actions.

## FHFA PRESENTATION ON DTA

19.     I assert the bank examination and deliberative process privileges over the FHFA presentation titled "Accounting for Income Taxes: Deferred Tax Assets" (FHFA00092209), dated October 29, 2008. This presentation contains pre-decisional and deliberative statements about FHFA's regulatory supervision of how to account for the GSEs deferred tax assets. Review of GSE accounting policies is part of the supervision process. Among other things, the redacted portion of the document includes deliberations over the measurement and treatment of the GSEs' deferred tax assets and evaluates arguments for and against the realization of these assets, based on information that FHFA requested and obtained from the GSEs. The redacted portion of the document reflects opinions of FHFA personnel, including the Office of the Chief Accountant and Risk Analysis, at a time when FHFA's views and opinions were not fully developed and the issues were still being debated. The preliminary opinions, recommendations, and deliberations in the document may or may not have been considered in developing any of the policy positions that FHFA adopted. The redacted material neither represents a complete and accurate record of all of the information considered nor reflects any statement of agency policy or a final decision.

## FORECASTS

20.     The Forecasts, over which I assert the bank examination privilege and the deliberative process privilege, provide analysis of various scenarios using assumptions provided by FHFA. Periodically, as part of the examination process, regulators ask regulated entities to

prepare stress tests, which are analyses or simulations designed to determine the ability of the regulated entity to deal with an economic crisis. FHFA00093706 consists of projections run on Fannie Mae's models at FHFA's request, using assumptions or scenarios provided by FHFA. It examines three scenarios provided by FHFA—Base, Optimistic, and Stress—and analyzes Fannie Mae's projected income, solvency, and credit losses under these scenarios. FHFA in its capacity as regulator makes a policy determination each year as to which stress tests to publish. FHFA00093706 were projections for internal FHFA review and were not published.

21.     FHFA also periodically prepares its own forecasts. FHFA00100594 is a document prepared by FHFA that analyzes both Enterprises' projected remaining Treasury funding commitment under scenarios determined by FHFA.

22.     The Forecasts contain pre-decisional and deliberative statements about FHFA's supervision of the Enterprises. The preliminary opinions, recommendations, and deliberations in these documents may or may not have been considered in developing any of the policy positions that FHFA adopted in its capacity as regulator of the Enterprises. The withheld material neither represents a complete and accurate record of all of the information considered nor reflects any statement of agency policy or a final decision. Based on my review of the e-mail, I have determined that Production of the forecasts would inhibit the frank and honest opinions and recommendations related to stress tests, and thus would adversely affect the quality of FHFA's decisions and policies.

## RISK ASSESSMENT MEMORANDA

23.     The Risk Assessment Memoranda dated March 31, 2012, over which I assert the bank examination privilege, were prepared by the Office of Financial Analysis, Modeling and Simulations. FHFA00096631 discusses Fannie Mae's earnings; FHFA00096634 discusses

Fannie Mae's solvency; FHFA00096636 discusses Freddie Mac's earnings; and FHFA00096638 discusses Freddie Mac's solvency. These memoranda contain analyses and opinions regarding the Enterprises' outlook for earnings and solvency as of March 31, 2012. The preparation of risk assessment memoranda is part of the supervisory process to determine the safety and soundness of the GSEs.

## DELEO E-MAIL

24.     The DeLeo Email, over the redacted portions of which I assert the deliberative process privilege on behalf of FHFA, was sent by Wanda DeLeo to James Lockhart and Edward DeMarco on October 29, 2008. The Email contains pre-decisional and deliberative statements about how FHFA should respond to a press inquiry about the treatment of deferred tax assets in October 2008. Based on my review of the e-mail, I have determined that the production of the redacted portions of the Email would inhibit the frank and honest discussion of policy matters, and thus would adversely affect the quality of FHFA's decisions and policies. The reluctance of FHFA personnel to share their candid opinions, and the bases for them, would restrict FHFA's ability to formulate sound policy and diminish the benefits of future efforts to help restore confidence in the Enterprises and avoid the systemic risk that can directly destabilize the national housing finance market. This concern is particularly acute as redacted portions of the Email relate to sensitive discussions regarding FHFA's policies with respect to the ongoing and future operations of the Enterprises.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _15th_ day of ___December___ 2015 at Washington, D.C.

By: _____

CHRISTOPHER H. DICKERSON

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FAIRHOLME FUNDS, INC., *et al.*,    )
                            )
        Plaintiffs,        )
                            )    No. 13-465C
        v.                 )    (Judge Sweeney)
                            )
THE UNITED STATES,        )
                            )
        Defendant.      )

## DECLARATION OF DAVID R. PEARL

I, David R. Pearl, declare pursuant to 28 U.S.C. § 1746:

1.      I am the Executive Secretary of the United States Department of the Treasury.  In that capacity, I am responsible for directing the activities and operations of the Executive Secretariat. My responsibilities include ensuring that decisions made by the Secretary and the Deputy Secretary, among others, are properly implemented and that their requests receive appropriate responses; ensuring the quality and appropriate coordination of materials prepared for these principal officials in connection with formulating and implementing policy, including overseeing the preparation of briefing materials for meetings, international conferences, and negotiations; collecting, maintaining, controlling, retrieving, and disseminating policy decisions and papers, staff records, and reports, as well as a wide variety of other correspondence and documents relevant to the information and operational needs of principal officials; assisting in identifying policy problems that require coordination, and coordinating policy issues across different components of the Department; and advising principal officials on the best uses of the Department's resources.  I am also responsible for approving responses to Freedom of Information Act (FOIA) requests directed at Secretariat documents, a task which requires me to evaluate whether responsive records are covered by various exemptions to FOIA's disclosure requirements, including the deliberative process privilege.

2.      By memorandum, Jacob J. Lew delegated to me, as Executive Secretary and for the purposes of this litigation, his authority as Secretary of the Treasury to invoke the deliberative process privilege.  I therefore possess delegated authority to assert the deliberative process privilege on behalf of Treasury with respect to documents and information subject to discovery requests in this lawsuit.  A true and correct copy of the memorandum is attached hereto as Exhibit A.

3.      I am aware of this lawsuit, which Plaintiffs brought against the United States.  Plaintiffs contend, among other things, that 2012 amendments to the Preferred Stock Purchase Agreements (PSPAs) between Treasury and Fannie Mae and Freddie Mac (collectively the GSEs), through the Federal Finance Housing Agency (FHFA) as conservator, referred to collectively as the Third Amendment, constituted takings without just compensation under the Fifth Amendment.

4.      I am informed by counsel that, on April 7, 2014, Plaintiffs served their First Set of Requests for Production (Plaintiffs' Requests) on the United States, calling for the production of numerous categories of documents.

5.      In accordance with standard Treasury procedures, attorneys for Treasury and the Department of Justice (DOJ) reviewed certain documents collected in response to Plaintiffs' Requests to identify responsive documents and determine whether any cognizable privileges apply to them.

6.      I am informed by counsel that, on November 23, 2015, Plaintiffs filed a motion to compel the production of documents that have been withheld for privilege.  In their motion, Plaintiffs challenged documents withheld pursuant to the deliberative process privilege (among other protections from disclosure).

7.      Based upon the review of attorneys from Treasury and DOJ, and upon my personal review of the challenged documents, I have determined to assert the claim of deliberative process privilege with respect to the documents, or portions thereof, described herein and identified in the Appendix to this declaration.

8.      When Treasury asserts a formal claim of privilege with respect to predecisional deliberative documents, the agency considers whether the document is properly characterized as falling within the scope of the deliberative process privilege, that is, whether the document predates the adoption of an agency policy or position and whether the document reflects the give-and-take of the consultation process leading up to the formulation of an agency policy or position.  The privilege is claimed only to protect those intra-governmental documents reflecting advisory opinions, recommendations, and deliberations that make up part of the process by which agency decisions and policies are formulated.  Treasury does not seek to protect documents containing factual matters unless such factual matters are so intertwined with advisory opinions, recommendations, conclusions, or reasoning by officials that the factual material cannot be excised from the privileged material or unless the factual matter itself, through its selection and distillation by the author, would reveal the author's mental processes or the agency's deliberations.  Whenever possible, reasonably segregable non-privileged portions are produced.  Documents are withheld in full where there is not a reasonably segregable portion that is not privileged.  The privilege is not claimed to protect all opinions, conclusions, mental impressions, and thought processes of government officials, but only those whose disclosure would interfere with vital government functions or would cause injury to the quality of agency decisions.

9.      Based on my review of the challenged documents over which Treasury asserts the deliberative process privilege, I have determined that disclosing the withheld documents or the redacted portions thereof, described in greater detail below, would inhibit the frank and honest discussion of policy matters, and thus would adversely affect the quality of Treasury's decisions and policies.  The withheld material generally reflects sensitive deliberations regarding Treasury's policies with respect to the use of billions of dollars of taxpayer money to support Fannie Mae and Freddie Mac, as well as Treasury's broader role in preserving financial stability and protecting the U.S. economy.  These include, among other things, discussions regarding potential housing-finance-reform legislation; deliberations relating to potential administrative

2

actions regarding housing policy; analyses regarding systemic financial risks, including the nature and extent of Treasury's ability to assist companies, such as Fannie Mae and Freddie Mac, to mitigate the impact of their deteriorating financial conditions on the financial system and the broader economy; and specific communications with other agencies and lawmakers regarding unresolved questions of housing policy.

10.     The withheld documents, or portions thereof, reflect opinions of Treasury officials and staff throughout the Department, up to and including the Secretary of the Treasury, at a time when Treasury's views and opinions were not fully developed and the issues were still being debated.  None of the withheld information represents a statement of agency policy or a final decision.

11.     If these documents were released, it would adversely affect Treasury's ability, among other things, to respond effectively to future financial disruptions, and to craft policies that protect the public from private entities in financial distress.  Moreover, their release would make it more difficult for Treasury to carefully consider the various matters of financial and economic policy that arise over the course of an extended period of economic unrest.

12.     Release of these documents would have a chilling effect on the free exchange of opinions and ideas of Treasury officials and staff involved in future efforts to formulate policy, including efforts to identify systemic risks, preserve financial stability, and protect the U.S. economy.  If Treasury officials and staff believe that such exchanges could become public in the event of litigation, they are unlikely to feel at liberty to offer their candid opinions.  The reluctance of Treasury officials and staff to share their candid opinions, and the bases for them, would restrict Treasury's ability to formulate U.S. economic policy, interact with other agencies and lawmakers, fully develop policies and strategies, and effectively respond to future financial crises.  This would adversely affect Treasury's ability to devise and execute financial policies that best represent the interests of the U.S. government and U.S. taxpayers.

13.     In addition, because these documents represent the internal deliberations of Treasury officials and staff prior to the Department's adoption of an official position, disclosure of the views or opinions of individual Treasury officials and staff could suggest rationales for Treasury's policies and decisions that may or may not have been relied upon as a basis for final policy positions and decisions.  The policy decision-making process is iterative.  Preliminary opinions and analyses contained in these documents may or may not have been taken into account in developing, or formed the bases for, any of the objectives or strategies that Treasury subsequently adopted.  Requiring disclosure of proposed policies could also cause confusion regarding why a certain policy has been adopted or will be adopted when, in fact, it might not be adopted at all.

14.     For the reasons described above, it is necessary to protect the confidentiality of predecisional agency deliberations.  The Government's need for a properly functioning policy process outweighs Plaintiffs' need for this information.

15.     The privileged documents referenced herein are grouped and described below.

**Deliberations Regarding Housing Finance Reform**

16.     Treasury has been actively engaged in efforts to promote comprehensive housing finance reform through legislation that puts a sustainable reformed housing finance system in place.  The flawed system of housing finance that contributed to the financial crisis is still substantially in place and continues to put the taxpayer at risk.  We believe that comprehensive housing finance reform remains the major unfinished business of financial reform.

17.     Since the financial crisis, Treasury officials and staff have been continuously deliberating among themselves and engaging with officials and staff from other government agencies to develop proposals for reforming the housing finance system.  For example, Treasury engaged in extensive discussions to prepare a February 2011 report to Congress, titled "Reforming America's Housing Finance Market: A Report to Congress."  This work marked the beginning of a multi-year policy development process that is ongoing.

18.     Treasury has also worked closely with Congressional staff to provide technical assistance during the process of drafting bipartisan legislative proposals for housing finance reform.  Senior Treasury officials provided assistance to the Senate Banking Committee and other Congressional staff regarding some of the more complex technical issues surrounding housing finance reform.

19.     The draft memoranda, other draft documents, and correspondence in this category relate to discussions and deliberations that took place within Treasury regarding housing finance reform.  The documents reflect predecisional deliberations central to the policy-making process and the considerations weighed by Treasury officials and staff in connection with these deliberations.

20.     Documents challenged by plaintiffs in this category include:

   a.   App'x Rows 1 – 2 (UST00500982 and UST00521902): Drafts of memoranda for the President regarding housing finance reform.  Treasury officials and staff participated in preparing the draft memoranda.  The documents reflect potential policies to pursue and contain Treasury staff recommendations concerning the options presented.  The documents reflect predecisional deliberations regarding such policies.

   b.   App'x Row 3 (UST00515290): Correspondence between Treasury staff and a White House advisor regarding housing finance reform.  The email chain reflects discussion of potential policies to pursue.  The documents reflect predecisional deliberations regarding such policies.

   c.   App'x Row 4 (UST00389678): Draft of memorandum for Secretary of the Treasury Timothy Geithner prepared by Treasury officials and staff regarding proposals for housing finance reform.  The document articulates principles to be pursued in working on potential reforms of the mortgage finance system.  The documents reflect predecisional deliberations regarding such reforms.

   d.   App'x Rows 5 – 7 (UST00490551, UST00513480, and UST00544897): Drafts of policy papers prepared by Treasury officials and staff regarding housing finance

4

reform.  The documents contain discussions of a potential comprehensive housing finance reform plan.  The documents reflect predecisional deliberations regarding the proposed plan.

e.  App'x Row 8 (UST00518402): Draft of memorandum for the Secretary prepared by Treasury officials and staff regarding policy implications of proposed housing finance legislation.  The document contains Treasury staff views on proposed housing finance bills. The documents reflect predecisional deliberations regarding the proposed legislation.

21.    Requiring disclosure of these deliberative materials would have a chilling effect on Treasury's housing finance reform work.  If Treasury officials and staff know that their deliberations on housing finance reform will be disclosed to litigation adversaries, they are unlikely to feel at liberty to offer their candid opinions and fully engage in the policy development process.  Disclosure of the details of this evolving policymaking process would inhibit Treasury's ability to engage in ongoing policy deliberations resulting in a profound negative impact on such deliberations.  As Treasury continues its efforts to help bring about comprehensive reform of the housing finance system, it is critical that we preserve the ability to have robust discussions in which we are able to explore sensitive and important policy decisions from multiple angles.

## Deliberations Regarding Housing Policies

22.    Treasury is also actively engaged in broader housing policy efforts.  This policy work includes not only potential housing-finance reforms, but also affordable-housing initiatives, foreclosure-prevention measures, loan-modification and refinancing programs, and reforms to the mortgage markets.  Treasury officials and staff engage on a regular basis with their counterparts at other government agencies to develop housing policy proposals and discuss ongoing housing policy efforts.  Treasury's efforts to formulate and execute housing policies are ongoing.

23.    The draft memoranda and other draft documents in this category relate to discussions and deliberations regarding housing policies, including but not limited to housing-finance reform, housing affordability, and other mortgage-related reforms.  The documents reflect predecisional deliberations central to the policy-making process and the considerations made by Treasury officials and staff in connection with these deliberations.

24.    Documents challenged by plaintiffs in this category include:

a.  App'x Row 9 (UST00492699): Draft of speech to be delivered by Michael Stegman, Counselor to the Treasury Secretary for Housing Finance Policy, regarding housing policy reforms.  The document reflects discussion of ongoing housing policy efforts and potential housing policies to pursue.  The document reflects predecisional deliberations regarding such policies, including standards for short sales, the federal risk retention rule, and housing finance reform. Counsel has informed me that a final copy of the speech will be produced in response to Plaintiffs' Requests.

b. App'x Row 10 (UST00504514): Draft of memorandum regarding various FHFA housing policy initiatives including refinancing standards and reform of representations and warranties for consumer mortgages.  The document reflects discussion of FHFA's progress in various housing policy areas and views and opinions of FHFA's progress.  The document reflects predecisional deliberations regarding such policies.

c. App'x Row 11 (UST00536346): Draft of memorandum for Secretary Geithner regarding housing policy ideas.  The document reflects discussion of housing policy efforts and potential housing policies to pursue including how to increase housing affordability, how to assist communities with high foreclosure rates, how to increase mortgage financing, and how to encourage banks to modify existing loans.  The document reflects predecisional deliberations regarding such policies and views and opinions of the proposed policies.

d. App'x Row 12 (UST00548270): Draft outline of memorandum for Secretary Geithner regarding housing policy efforts including loan programs, housing finance reform, and other mortgage-related reforms.  The document reflects discussion of potential housing policies to pursue.  The document reflects predecisional deliberations regarding such policies and views and opinions of the proposed policies.

25.     Requiring production of these deliberative materials would have a chilling effect on development of housing policy going forward.  If Treasury officials and staff know that their housing policy deliberations will be disclosed to litigation adversaries, they are unlikely to feel at liberty to offer their opinions and fully engage in the housing policy development process.  It will immediately become difficult to fully develop housing policies and strategies.  Requiring disclosure of the details of these evolving policymaking processes would inhibit Treasury's ability to engage in ongoing housing policy deliberations.

**Deliberations Regarding PSPA Modifications**

26.     The draft memoranda, draft presentations, and other draft documents in this category relate to the development of the modifications to the PSPAs.  The documents reflect predecisional deliberations central to the policy-making process and the considerations weighed by Treasury officials and staff in connection with these deliberations.  These documents are predecisional because they were created and shared before the Third Amendment was adopted and contain deliberations concerning rationales for entering into it.

27.     These draft documents describe proposed modifications to the PSPAs.  They reflect the collective thoughts of certain Treasury staff concerning possible reasons for entering into certain proposed modifications to the PSPAs.

28.     Documents challenged by plaintiffs in this category are:

a. App'x Rows 13 – 17 (UST00061421, UST00384501, UST00478535, UST00502258, and UST00536560): Draft documents discussing potential modifications to the PSPAs.  These documents reflect discussions of proposed

6

modifications to the PSPAs including discussions of potential rationales for the changes under consideration. The documents also reflect opinions and views regarding the proposed modifications. The documents include discussions of proposed modifications that were ultimately not made and the considerations that led to the decision not to pursue such modifications. The documents reflect predecisional deliberations regarding the proposed changes.

b. App'x Row 18 (UST00384146): Draft of presentation for Secretary Geithner discussing Fannie Mae financial projections. The document reflects analysis and projections regarding Fannie Mae's future financial performance, including estimates of future draws and dividend payments. Such analysis was part of Treasury's decision-making process that resulted in the execution of the Third Amendment. The document reflects predecisional deliberations regarding the proposed modifications. Counsel has informed me that the final version of this document, which was provided to Secretary Geithner, has been produced in response to Plaintiffs' Requests.

c. App'x Row 19 (UST00389662): Draft of memorandum for Secretary Geithner discussing potential options for restructuring the GSEs and transitioning to a future housing finance system. The document reflects discussions of various policy options under consideration. The document reflects predecisional deliberations regarding such policy options and views and opinions of the proposed policy options.

d. App'x Rows 20 – 23 (UST00407182, UST00407342, UST00472229, and UST00472232): Draft analyses of GSE financial projections prepared by Treasury officials and staff. These documents reflect draft analyses and projections regarding the GSEs' future financial performance, including estimates of future draws and dividend payments. The assumptions embedded in the analyses reflect Treasury's subjective judgment. Such analytical work regarding potential modifications to the PSPAs was part of Treasury's deliberative process that culminated in the execution of the Third Amendment. The document reflects predecisional deliberations regarding the proposed modifications.

e. App'x Row 24 (UST00539251): Draft of presentation for Office of Management & Budget ("OMB") discussing potential modifications to the PSPAs. The document reflects draft analyses and projections regarding the GSEs' future financial performance, including estimates of future guarantee fees. Those analyses and projections were part of Treasury's deliberative process that culminated in the execution of the Third Amendment. Counsel has informed me that the final version of this document, which was provided to OMB, is publicly available.

29.    Requiring production of these deliberative materials would have a chilling effect on Treasury's ability to develop financial policies. The ability to distribute and receive comments and feedback on draft memoranda, draft presentations, and other draft documents is an essential function of the policy-making process. If Treasury officials and staff believe that such draft

documents will be disclosed to litigation adversaries, they are unlikely to feel at liberty to offer their opinions and fully engage in the policy development process. As a result, Treasury's ability to develop and make policy would be adversely affected.

## Deliberations Regarding GSE Projections

30.     The draft analyses and draft documents in this category relate to analyses of GSE financial projections provided by Grant Thornton, a Treasury consultant, to Treasury (App'x Rows 25 – 38 (UST00409040, UST00473767, UST00473770, UST00473773, UST00473776, UST00473779, UST00473782, UST00481423, UST00481424, UST00481425, UST00556294, UST00556295, UST00556459, and UST00556460)). Each of the documents in this category contains outputs from Grant Thornton's model in spreadsheet form. Treasury used these projections in considering whether to make modifications to the PSPAs. At Treasury's request, Grant Thornton made modifications to certain assumptions in its model and provided Treasury with the results. The assumptions embedded in the financial projections and the changes to those assumptions reflect the subjective judgments and choices of the agency. The changes to the assumptions requested by Treasury reflect the agency's exercise of discretion and judgment as part of its deliberations regarding potential modifications to the PSPAs.

31.     The documents reflect predecisional deliberations central to the policy-making process and the considerations made by Treasury officials and staff in connection with these deliberations. Treasury staff used the data and conclusions from Grant Thornton's financial projections in analyzing and formulating projections of the GSE's financial results. Accordingly, these Grant Thornton projections and the resulting analysis were relied upon during deliberations and the decision-making process concerning the Third Amendment.

32.     Requiring production of these deliberative materials would have a chilling effect on the ability of Treasury staff to engage with consultants as they develop and execute financial policies. If Treasury officials and staff believe that such draft documents will be disclosed to litigation adversaries, they are unlikely to feel comfortable making use of expert consultants in the policy development process. As a result, Treasury's ability to devise and execute financial policies would be harmed.

## Deliberations Regarding Valuation Reports

33.     The draft documents in this category relate to the valuation services provided by Grant Thornton to Treasury in connection with the preparation of Treasury's annual financial statements. The documents reflect predecisional deliberations central to the process of preparing and producing Treasury's financial statements and the considerations weighed by Treasury officials and staff in connection with these deliberations. These documents reflect judgment calls and decisions with respect to the preparation of Grant Thornton's reports that are used by Treasury in preparing its annual financial statements. In addition, Treasury staff involved in housing-finance reform reviewed and provided input on Grant Thornton's valuation reports, and these documents reflect that input.

34.     Documents challenged by plaintiffs in this category include:

   a.   App'x Row 39 (UST00475757): Draft memorandum prepared by Treasury and

Treasury's auditor discussing Fannie Mae financial projections. The document reflects questions and comments from Treasury and its auditor regarding a draft report prepared by Grant Thornton showing Grant Thornton's calculation of future payments to Fannie Mae under the PSPAs. The final version of that draft Grant Thornton report would be used by Treasury to prepare its financial statements. Counsel has informed me that a final copy of Grant Thornton's report has been produced in response to Plaintiffs' Requests.

b.  App'x Row 40 (UST00506346): Draft document prepared by Grant Thornton reflecting predecisional deliberations regarding PSPA valuation methodology. The document is part of Grant Thornton's workpapers that support the valuation reports Grant Thornton prepared. It is the work product of Grant Thornton's valuation team. Accordingly, the document reflects deliberations central to the process of preparing Treasury's financial statements and considerations weighed by Grant Thornton and Treasury officials and staff in connection with those deliberations.

35.    Requiring production of these deliberative materials would have a chilling effect on Treasury staff's ability to engage with consultants as they develop Treasury's financial statements. The ability to circulate and receive comments on draft documents is an essential function of this process. Treasury officials and staff must be able to engage candidly and freely with consultants like Grant Thornton. If Treasury officials, staff, and consultants believe that such draft documents will be disclosed to litigation adversaries, they are unlikely to feel at liberty to offer their opinions and fully engage in the process. Disclosure of such documents could deter consultants from providing advice to Treasury in the future. As a result, Treasury's ability to prepare its financial statements would be adversely affected.

## Deliberations Regarding the President's Budget

36.    The document in this category is a draft of a document (App'x Row 41, UST00503672) containing estimates for the President's budget. The document reflects draft analyses and projections regarding estimates of future draws and dividend payments to be made by the GSEs. These numbers were prepared for incorporation into the President's budget. The documents reflect predecisional deliberations regarding such estimates.

37.    Requiring production of these deliberative materials would have a chilling effect on Treasury's ability to assist in developing the President's budget. The ability to circulate and receive comments on draft budget documents is an essential aspect of the budget process. If Treasury officials and staff believe that such draft documents will be disclosed to litigation adversaries, they are unlikely to feel at liberty to offer their opinions and fully engage in the budget process. As a result, Treasury's ability to provide input into the preparation of the President's budget would be adversely affected.

## Deliberations Regarding the Potential Implications of the Terms of the PSPAs

38.    The correspondence in this category are two emails from the same email chain (App'x Rows 42 – 43, UST0061067, UST00385562) discussing the effect of the terms of the amended

PSPAs on long term housing finance reform plans.  The documents reflect considerations weighed by Treasury and White House officials in connection with these predecisional deliberations.

39.    Requiring production of these deliberative materials would have a chilling effect on the free exchange of opinions and ideas between Treasury and White House officials as they develop and execute financial policies.  Treasury's ability to communicate with the White House is an essential function of the policy-making process.  If officials believe that such exchanges will be disclosed to litigation adversaries, they are unlikely to offer their opinions and fully engage in the policy development process.  As a result, Treasury's ability to devise and execute financial policies would be adversely affected.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 20th day of January, 2016.

DAVID R. PEARL
Executive Secretary
United States Department of the Treasury
1500 Pennsylvania Avenue NW
Washington, D.C. 20220

10

A20

**Appendix**

| Row | Starting Bates Number | From | To | CC | Doc Family Date | Privileges | Description |
|-----|----|----|----|----|----|----|----|
| **Deliberations Regarding Housing Finance Reform** | | | | | | | |
| 1 | UST00500982 | Stegman, Michael; Bowler, Timothy; Parrott, Jim; Deese, Brian C.; Miller, Mary; Valverde, Sam [sam.valverde@treasury.gov] | Stegman, Michael; Bowler, Timothy; Parrott, Jim; Deese, Brian C.; Miller, Mary; Eberly, Janice [janice.eberly@treasury.gov]; ExecSecStaff [execsecstaff@do.treas.gov] | Patterson, Mark [mark.patterson@treasury.gov]; Wolin, Neal; LeCompte, Jenni [jenni.lecompte@treasury.gov]; Parrott, Jim;Miller, Mary; Stegman, Michael | 5/2/2012 | DPP; PCP | Memorandum reflecting confidential communication from senior White House advisors to the President regarding housing policy ideas and initiatives. |
| 2 | UST00521902 | Stegman, Michael | | | 6/18/2012 | DPP; PCP | Memorandum reflecting confidential communication from senior White House advisors to the President regarding housing policy ideas and initiatives. |
| 3 | UST00515290 | Parrott, Jim; Foster, Jeff | Foster, Jeff; Parrott, Jim | | 7/29/2011 | DPP; PCP; Redacted | Emails reflecting the exchange of information, views, and advice between Treasury officials and White House staff with broad and significant responsibility for investigating and formulating advice for consideration and direction by the President regarding housing finance issues. |
| 4 | UST00389678 | Foster, Jeff <"/o=ustreasury/ou=exchange administrative group(fydibohf23spdlt)/cn=recipients/cn=fosterj"> | Valverde, Sam <sam.valverde@treasury.gov>; "Fikre, Million" <million.fikre@treasury.gov> | | 1/31/2012 | DPP | Draft memorandum for Secretary containing predecisional deliberations related to mortgage finance market reform proposals. |
| 5 | UST00490551 | Miller, Sarah <sarah.miller@treasury.gov> | Mlynarczyk, Beth <beth.mlynarczyk@treasury.gov>, "Stegman, Michael" <michael.stegman@treasury.gov> | | 7/30/2012 | DPP | Draft policy paper prepared by Treasury staff containing predecisional deliberations regarding housing finance reform. |
| 6 | UST00513480 | Foster, Jeff <"/o=ustreasury/ou=exchange administrative group(fydibohf23spdlt)/cn=recipients/cn=fosterj"> | Foster, Jeff | | 5/21/2012 | DPP | Draft policy document prepared by Treasury staff containing predecisional deliberations regarding housing finance reform. |

| Row | Starting Bates Number | From | To | CC | Doc Family Date | Privileges | Description |
|---|---|---|---|---|---|---|---|
| 7 | UST00544897 | Foster, Jeff <"/o=ustreasury/ou=exchange administrative group(fydibohf23spdlt)/cn=recipients/cn=fosterj"> | Foster, Jeff | | 6/5/2012 | DPP | Draft policy paper containing predecisional deliberations concerning housing finance reform. |
| 8 | UST00518402 | Hester, Barrett (Bret) <barrett.hester@treasury.gov> | Miller, Mary <mary.miller@treasury.gov> | Lee, Sandra <sandra.lee@treasury.gov>, "Johnson, AlfredDisabled" <alfred.johnson@treasury.gov> | 2/21/2012 | DPP | Draft memorandum for Secretary containing predecisional deliberations related to policy implications of proposed housing finance legislation. |
| **Deliberations Regarding Housing Policies** | | | | | | | |
| 9 | UST00492699 | Stegman, Michael | Mlynarczyk, Beth <beth.mlynarczyk@treasury.gov> | Stegman, Michael <michael.stegman@treasury.gov> | 5/26/2012 | DPP | Draft speech containing predecisional deliberations regarding housing policies. |
| 10 | UST00504514 | Bowler, Timothy <"/o=ustreasury/ou=exchange administrative group(fydibohf23spdlt)/cn=recipients/cn=bowlert"> | Mlynarczyk, Beth <beth.mlynarczyk@treasury.gov>; "Stegman, Michael" <michael.stegman@treasury.gov> | | 7/27/2012 | DPP | Draft memorandum prepared by Treasury staff containing predecisional deliberations related to various FHFA/GSE housing finance initiatives. |
| 11 | UST00536346 | Bowler, Timothy <"/o=ustreasury/ou=exchange administrative group(fydibohf23spdlt)/cn=recipients/cn=bowlert"> | Graves, Donet (Don) <donet.graves@treasury.gov>, "Caldwell, Phyllis" <phyllis.caldwell@treasury.gov>, "Foster, Jeff" <jeff.foster@treasury.gov> | | 9/6/2011 | DPP | Draft memorandum prepared by Treasury staff containing predecisional deliberations regarding housing policy reform, including the future of the GSEs. |
| 12 | UST00548270 | Stegman, Michael | Miller, Mary <mary.miller@treasury.gov> | Stegman, Michael <michael.stegman@treasury.gov> | 2/4/2012 | DPP | Draft memorandum containing predecisional deliberations related to housing policy and housing finance reform. |

A22

| Row | Starting Bates Number | From | To | CC | Doc Family Date | Privileges | Description |
|---|---|---|---|---|---|---|---|
| **Deliberations Regarding PSPA Modifications** | | | | | | | |
| 13 | UST00061421 | Miller, Mary <mary.miller@treasury.gov> | Valverde, Sam <sam.valverde@treasury.gov>; "Adeyemo, Adewale (Wally)" <adewale.adeyemo@treasury.gov>; "Massad, Timothy" <timothy.massad@treasury.gov>; "Stegman, Michael" <michael.stegman@treasury.gov>; "Bowler, Timothy" <timothy.bowler@treasury.gov>; "Deese, Brian C." <brian_c._deese@who.eop.gov> | Woolf, AndrewDisabled <andrew.woolf@treasury.gov> | 7/20/2012 | DPP | Draft document prepared by Treasury staff containing predecisional deliberations related to potential modification of PSPAs. |
| 14 | UST00384501 | Foster, Jeff <jeff.foster@treasury.gov> | Bowler, Timothy <timothy.bowler@treasury.gov>; "Stegman, Michael" <michael.stegman@treasury.gov> | | 6/10/2012 | DPP | Draft presentation prepared by Treasury staff containing predecisional deliberations related to PSPA amendment considerations. |
| 15 | UST00478535 | Foster, Jeff <"/o=ustreasury/ou=exchange administrative group(fydibohf23spdlt)/cn=recipients/cn=fosterj"> | Stegman, Michael <michael.stegman@treasury.gov> | | 6/7/2012 | DPP | Draft document containing predecisional deliberations concerning potential modifications to PSPAs. |
| 16 | UST00502258 | Foster, Jeff <jeff.foster@treasury.gov> | Bowler, Timothy <timothy.bowler@treasury.gov>; "Mlynarczyk, Beth" <beth.mlynarczyk@treasury.gov>; "Chepenik, Adam" <adam.chepenik@treasury.gov>; "Franchot, NicholasDisabled" <nicholas.franchot@treasury.gov>; "Stegman, Michael" <michael.stegman@treasury.gov> | | 3/5/2012 | DPP | Draft policy document prepared by Treasury staff containing predecisional deliberations regarding proposed PSPA. |
| 17 | UST00536560 | ExecSecProcessUnit <execsecprocessunit@treasury.gov> | TFG75 <nauset75@treasury.gov> | ExecSecProcessUnit <execsecprocessunit@treasury.gov>, ExecSecStaff <execsecstaff@do.treas.gov> | 6/1/2012 | DPP | Draft document containing predecisional deliberations concerning potential modification of the PSPAs. |
| 18 | UST00384146 | Goldblatt, Alan <alan.goldblatt@treasury.gov> | Bowler, Timothy <timothy.bowler@treasury.gov> | | 7/3/2012 | DPP | Draft presentation prepared by Treasury staff containing predecisional analysis and information related to financial forecasts for Fannie Mae. |

| Row | Starting Bates Number | From | To | CC | Doc Family Date | Privileges | Description |
|---|---|---|---|---|---|---|---|
| 19 | UST00389662 | Foster, Jeff <"/o=ustreasury/ou=exchange administrative group(fydibohf23spdlt)/cn=recipients/cn=fosterj"> | Valverde, Sam <sam.valverde@treasury.gov>; "Fikre, Million" <million.fikre@treasury.gov> | | 1/31/2012 | DPP | Draft memorandum for Secretary containing predecisional deliberations related to GSE restructuring. |
| 20 | UST00407182 | Goldblatt, Alan <alan.goldblatt@treasury.gov> | Chepenik, Adam <adam.chepenik@treasury.gov>; "Foster, JeffDisabled" <jeff.foster@treasury.gov> | | 7/5/2012 | DPP | Predecisional, deliberative, draft analysis of GSE financial projections prepared by Treasury staff. |
| 21 | UST00407342 | Goldblatt, Alan <alan.goldblatt@treasury.gov> | Chepenik, Adam <adam.chepenik@treasury.gov>; "Foster, JeffDisabled" <jeff.foster@treasury.gov> | | 6/13/2012 | DPP | Draft analysis reflecting predecisional deliberations concerning GSE financial projections. |
| 22 | UST00472229 | Chepenik, Adam <adam.chepenik@treasury.gov> | Bowler, Timothy <timothy.bowler@treasury.gov>; "Foster, JeffDisabled" <jeff.foster@treasury.gov>; "Mlynarczyk, Beth" <beth.mlynarczyk@treasury.gov> | | 2/26/2012 | DPP | Predecisional deliberative analysis of GSE financial projections prepared by Treasury staff. |
| 23 | UST00472232 | Chepenik, Adam <adam.chepenik@treasury.gov> | Bowler, Timothy <timothy.bowler@treasury.gov>; "Foster, JeffDisabled" <jeff.foster@treasury.gov>; "Mlynarczyk, Beth" <beth.mlynarczyk@treasury.gov> | | 2/26/2012 | DPP | Predecisional deliberative analysis of GSE financial projections prepared by Treasury staff. |
| 24 | UST00539251 | Chepenik, Adam <adam.chepenik@treasury.gov> | Bowler, Timothy <timothy.bowler@treasury.gov>, "Foster, JeffDisabled" <jeff.foster@treasury.gov>, "Goldblatt, Alan" <alan.goldblatt@treasury.gov> | | 6/6/2012 | DPP | Draft presentation for OMB containing predecisional deliberations concerning Treasury proposals for modifying the terms of the PSPAs. |
| **Deliberations Regarding GSE Projections** | | | | | | | |
| 25 | UST00409040 | Eberhardt, Anne <anne.eberhardt@us.gt.com> | Foster, JeffDisabled <jeff.foster@treasury.gov> | | 3/12/2012 | DPP | Draft document prepared for Treasury by consultant containing predecisional deliberations concerning GSE financial projections. |
| 26 | UST00473767 | Eberhardt, Anne <anne.eberhardt@us.gt.com> | Foster, JeffDisabled <jeff.foster@treasury.gov> | | 12/10/2011 | DPP | Predecisional financial analysis prepared by Treasury consultant reflecting Treasury deliberations regarding GSEs. |
| 27 | UST00473770 | Eberhardt, Anne <anne.eberhardt@us.gt.com> | Foster, JeffDisabled <jeff.foster@treasury.gov> | | 12/10/2011 | DPP | Predecisional financial analysis prepared by Treasury consultant reflecting Treasury deliberations regarding GSEs. |

| Row | Starting Bates Number | From | To | CC | Doc Family Date | Privileges | Description |
|---|---|---|---|---|---|---|---|
| 28 | UST00473773 | Eberhardt, Anne <anne.eberhardt@us.gt.com> | Foster, JeffDisabled <jeff.foster@treasury.gov> | | 12/10/2011 | DPP | Predecisional financial analysis prepared by Treasury consultant reflecting Treasury deliberations regarding GSEs. |
| 29 | UST00473776 | Eberhardt, Anne <anne.eberhardt@us.gt.com> | Foster, JeffDisabled <jeff.foster@treasury.gov> | | 12/10/2011 | DPP | Predecisional financial analysis prepared by Treasury consultant reflecting Treasury deliberations regarding GSEs. |
| 30 | UST00473779 | Eberhardt, Anne <anne.eberhardt@us.gt.com> | Foster, JeffDisabled <jeff.foster@treasury.gov> | | 12/10/2011 | DPP | Predecisional financial analysis prepared by Treasury consultant reflecting Treasury deliberations regarding GSEs. |
| 31 | UST00473782 | Eberhardt, Anne <anne.eberhardt@us.gt.com> | Foster, JeffDisabled <jeff.foster@treasury.gov> | | 12/10/2011 | DPP | Predecisional financial analysis prepared by Treasury consultant reflecting Treasury deliberations regarding GSEs. |
| 32 | UST00481423 | Foster, Jeff <"/o=ustreasury/ou=exchange administrative group(fydibohf23spdlt)/cn=recipients/cn=fosterj"> | Chepenik, Adam <adam.chepenik@treasury.gov> | | 12/13/2011 | DPP | Predecisional deliberative analysis of GSE financial projections prepared by Treasury consultant. |
| 33 | UST00481424 | Foster, Jeff <"/o=ustreasury/ou=exchange administrative group(fydibohf23spdlt)/cn=recipients/cn=fosterj"> | Chepenik, Adam <adam.chepenik@treasury.gov> | | 12/13/2011 | DPP | Predecisional deliberative analysis of GSE financial projections prepared by Treasury consultant. |
| 34 | UST00481425 | Foster, Jeff <"/o=ustreasury/ou=exchange administrative group(fydibohf23spdlt)/cn=recipients/cn=fosterj"> | Chepenik, Adam <adam.chepenik@treasury.gov> | | 12/13/2011 | DPP | Predecisional deliberative analysis of GSE financial projections prepared by Treasury consultant. |
| 35 | UST00556294 | Chepenik, Adam <adam.chepenik@treasury.gov> | Foster, JeffDisabled <jeff.foster@treasury.gov> | | 1/6/2012 | DPP | Predecisional deliberative analysis of GSE financial projections prepared by Treasury consultant. |
| 36 | UST00556295 | Chepenik, Adam <adam.chepenik@treasury.gov> | Foster, JeffDisabled <jeff.foster@treasury.gov> | | 1/6/2012 | DPP | Predecisional deliberative analysis of GSE financial projections prepared by Treasury consultant. |
| 37 | UST00556459 | Chepenik, Adam <adam.chepenik@treasury.gov> | Foster, JeffDisabled <jeff.foster@treasury.gov> | | 1/6/2012 | DPP | Predecisional deliberative analysis of GSE financial projections prepared by Treasury consultant. |
| 38 | UST00556460 | Chepenik, Adam <adam.chepenik@treasury.gov> | Foster, JeffDisabled <jeff.foster@treasury.gov> | | 1/6/2012 | DPP | Predecisional deliberative analysis of GSE financial projections prepared by Treasury consultant. |

| Row | Starting Bates Number | From | To | CC | Doc Family Date | Privileges | Description |
|---|---|---|---|---|---|---|---|
| **Deliberations Regarding Grant Thornton's Valuation Reports** | | | | | | | |
| 39 | UST00475757 | Rominiecki, Ryan R <rrominiecki@kpmg.com> | <anne.eberhardt@us.gt.com>; <carole.banks@treasury.gov>; <kawan.taylor@treasury.gov>; <shawn.mickey@treasury.gov>; <jeff.foster@treasury.gov>; <beth.mlynarczyk@treasury.gov>; <groverj@oig.treas.gov>; <bankolea@oig.treas.gov>; <fitzgeraldm@oig.treas.gov>; <cumbar@oig.treas.gov>; <bob.faber@treasury.gov>; <brad.wilson@us.gt.com>; <david.dufendach@us.gt.com>; <justin.burchett@us.gt.com> | Tchamourliyski, Yuriy M<ytchamourliyski@kpmg.com>; "Lee, Shana H" <shlee@kpmg.com> | 11/1/2011 | DPP | Draft memorandum prepared containing predecisional deliberative analysis of financial projections for Fannie Mae. |
| 40 | UST00506346 | Eberhardt, Anne <anne.eberhardt@us.gt.com> | Banks, Carole <carole.banks@treasury.gov>; "Mickey, Shawn" <shawn.mickey@treasury.gov>; "Taylor, Kawan" <kawan.taylor@treasury.gov>; "Foster, JeffDisabled" <jeff.foster@treasury.gov>; "Fitzgerald, Michael P." <fitzgeraldm@oig.treas.gov>; "Rominiecki, Ryan" <rrominiecki@kpmg.com> | Short, John <john.short@us.gt.com>; "Dufendach, David" <david.dufendach@us.gt.com>; "Burchett, Justin" <justin.burchett@us.gt.com> | 6/29/2012 | DPP | Document prepared by Treasury consultant reflecting predecisional deliberations concerning financial conditions of the GSEs. |
| **Deliberations Regarding the President's Budget** | | | | | | | |
| 41 | UST00503672 | Chepenik, Adam <adam.chepenik@treasury.gov> | Miller, Mary <mary.miller@treasury.gov> | Hester, Barrett (Bret)Disabled <barrett.hester@treasury.gov>; "Bowler, Timothy" <timothy.bowler@treasury.gov>; "Foster, JeffDisabled" <jeff.foster@treasury.gov>; "Johnson, AlfredDisabled" <alfred.johnson@treasury.gov> | 1/10/2012 | DPP | Draft document prepared by Treasury staff containing predecisional deliberations regarding GSE budget estimates. |
| **Deliberations Regarding the Potential Implications of the Terms of the PSPAs** | | | | | | | |
| 42 | UST00061067 | Parrott, Jim <james_m_parrott@who.eop.gov> | Bowler, Timothy <timothy.bowler@treasury.gov> | | 8/18/2012 | DPP; Redacted | Email communications between Treasury and White House staff containing predecisional deliberations related to the terms of the PSPAs. |

| Row | Starting Bates Number | From | To | CC | Doc Family Date | Privileges | Description |
|---|---|---|---|---|---|---|---|
| 43 | UST00385562 | Bowler, Timothy <"/o=ustreasury/ou=exchange administrative group(fydibohf23spdlt)/cn=recipients/cn=bowlert "> | Parrott, Jim <james_m_parrott@who.eop.gov> | | 8/18/2012 | DPP; Redacted | Email communications containing predecisional deliberations related to the budget and the amended PSPAs. |

# Exhibit A

**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C.

# MEMORANDUM FOR DAVID R. PEARL, EXECUTIVE SECRETARY

**FROM:**       Jacob J. Lew
               Secretary of the Treasury

**SUBJECT:**    Delegation of Authority to Invoke the Deliberative Process Privilege:
               *Fairholme Funds, Inc. v. United States*

This memorandum delegates my authority to invoke the deliberative process privilege to the Executive Secretary with respect to documents and information at issue in *Fairholme Funds, Inc. v. United States,* No. 13-465C (Fed. Cl.).

The Executive Secretary may exercise this delegated authority with respect to agency records or information that are predecisional and deliberative, including advisory opinions, recommendations, and deliberations that make up part of the process by which Treasury Department decisions and policies are formulated, when he determines that the release of such records would cause unacceptable harm to that process.

This authority may not be re-delegated.