# In the United States Court of Federal Claims

No. 13-465C
(Filed Under Seal: September 20, 2016)
(Reissued for Publication: October 3, 2016)[1]

```
*************************************
FAIRHOLME FUNDS, INC. et al.,        *
                                     *
                 Plaintiffs,         *
                                     *
v.                                   *
                                     *
THE UNITED STATES,                   *
                                     *
                 Defendant.          *
*************************************
```

Motion to Compel Discovery; RCFC 26(b);
Presidential Communications Privilege;
Deliberative Process Privilege; Bank
Examination Privilege; In Camera Review;
Vaughn Index

Charles J. Cooper, Washington, DC, for plaintiffs.

Kenneth M. Dintzer, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Judge

Before the court is plaintiffs' motion to compel the production of documents currently being withheld by defendant on the grounds of (1) the presidential communications privilege, (2) the deliberative process privilege, (3) the bank examination privilege, or (4) a combination thereof. Following an in camera review of a sample of the disputed documents, and for the reasons set forth below, the court grants plaintiffs' motion.

Due to the length of this opinion, the court provides the following table of contents:

I. BACKGROUND ...............................................................................................2
    A. Nature of Plaintiffs' Case.......................................................................2
    B. Procedural History .................................................................................3
    C. Instant Discovery Dispute ......................................................................5
II. LEGAL STANDARDS ....................................................................................6
    A. RCFC 26(b)...........................................................................................6
    B. Privileges at Issue .................................................................................7
        1. Presidential Communications Privilege....................................8
        2. Deliberative Process Privilege ...............................................11

---

[1] This reissued Opinion and Order incorporates the agreed-to redactions proposed by the parties on September 30, 2016. The redactions are indicated with bracketed ellipses ("[. . .]").

|       | 3.  | Bank Examination Privilege | 16 |
| III.  | DISCUSSION | | 20 |
|       | A.  | Defendant's Declarants | 20 |
|       |     | 1.  Mr. Dickerson | 20 |
|       |     | 2.  Mr. Pearl | 20 |
|       |     | 3.  Mr. McQuaid | 21 |
|       | B.  | BlackRock Documents | 22 |
|       |     | 1.  Deliberative Process Privilege | 23 |
|       |     | 2.  Bank Examination Privilege | 28 |
|       | C.  | FHFA Presentation on DTA | 28 |
|       |     | 1.  Deliberative Process Privilege | 29 |
|       |     | 2.  Bank Examination Privilege | 31 |
|       | D.  | Forecasts | 31 |
|       |     | 1.  Deliberative Process Privilege | 33 |
|       |     | 2.  Bank Examination Privilege | 35 |
|       | E.  | Risk Assessment Memoranda | 36 |
|       | F.  | DeLeo E-mail | 37 |
|       | G.  | Housing Finance Reform | 40 |
|       |     | 1.  Deliberative Process Privilege | 44 |
|       |     | 2.  Presidential Communications Privilege | 48 |
|       | H.  | Housing Policies | 50 |
|       | I.  | PSPA Modifications | 55 |
|       | J.  | GSE Projections | 63 |
|       | K.  | Valuation Reports | 68 |
|       | L.  | Estimates for the President's Budget | 72 |
|       | M.  | Potential Implications of the Terms of the PSPAs | 76 |
|       | N.  | Other Documents Listed on the Privilege Log | 79 |
| IV.   | CONCLUSION | | 80 |

# I. BACKGROUND

## A. Nature of Plaintiffs' Case

In 2008, in response to the financial crisis, Congress enacted the Housing and Economic Recovery Act of 2008 ("HERA"). Thereafter, acting pursuant to its authority under the HERA, the Federal Housing Finance Agency ("FHFA") placed the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") (collectively, the "Enterprises") into conservatorship. In addition, the United States Department of the Treasury ("Treasury Department"), also acting pursuant to the HERA, entered into agreements to purchase securities ("government stock") from the Enterprises. On August 17, 2012, the FHFA and the Treasury Department announced the "Net Worth Sweep," implemented by a "Third Amendment" to the government stock documents. As a result of the Net Worth Sweep, the dividend due on the government stock rose from 10% to 100% of all current and future profits. According to plaintiffs, holders of noncumulative preferred stock issued by the Enterprises, this decision effected a total usurpation of their dividends and eliminated their right to receive a liquidation preference upon the dissolution, liquidation, or winding up of the

Enterprises.  Plaintiffs therefore claim that their property was taken without just compensation in violation of the Fifth Amendment to the United States Constitution.

## B.  Procedural History

Plaintiffs filed their complaint on July 9, 2013.  One month later, on August 9, 2013, defendant filed a motion to stay all proceedings pending the resolution of various other cases—to include another case before this court, a case pending before the United States Court of Appeals for the Federal Circuit ("Federal Circuit"), and related cases pending in the United States District Court for the District of Columbia ("district court").  Alternatively, defendant sought an extension of time within which to file its answer.  The court denied defendant's motion for a stay and ordered defendant to file its answer by December 9, 2013.

On October 29, 2013, the court entered an order of consolidation, coordination, and appointment.  First, the court consolidated Cacciapelle v. United States, No. 13-466C, American European Insurance Co. v. United States, No. 13-496C, and Dennis v. United States, No. 13-542C, under the Cacciapelle caption and docket number (the "Cacciapelle Consolidated Action"), and ordered that any class action hereafter filed in or transferred to this court on behalf of common or preferred shareholders of the Enterprises relating to the August 2012 Third Amendment or related government actions be consolidated with the Cacciapelle Consolidated Action.  Second, the court ordered that any class action hereafter filed in or transferred to this court on behalf of common or preferred shareholders of the Enterprises relating to the September 2008 conservatorship or related government actions be consolidated with Washington Federal v. United States, No. 13-385C.  Third, the court ordered the parties to coordinate discovery, motion practice, case management and scheduling, and other pretrial proceedings, as appropriate, in the Cacciapelle Consolidated Action, Fisher v. United States, No. 13-608C, Shipmon v. United States, No. 13-672C, and Washington Federal (collectively, the "Representative Actions").  Fourth, the court ordered the parties to coordinate discovery, motion practice, case management and scheduling, and other pretrial proceedings, as appropriate, in Fairholme Funds, Inc. v. United States, No. 13-465C, and Arrowood Indemnity Co. v. United States, No. 13-698C (collectively, the "Individual Actions").  Together, the Representative Actions and the Individual Actions were to be referred to as "the Coordinated Actions."  Finally, the court appointed interim co-lead class counsel for both the Cacciapelle Consolidated Action and Washington Federal.

On December 9, 2013, in lieu of an answer, defendant filed a motion to dismiss pursuant to Rules 12(b)(1) and (6) of the Rules of the United States Court of Federal Claims ("RCFC").  Shortly thereafter, on December 20, 2013, plaintiffs filed a motion for a continuance to permit jurisdictional discovery under RCFC 56(d).  According to plaintiffs, defendant, in its motion to dismiss, challenged various jurisdictional facts asserted by plaintiffs in their complaint, thereby necessitating jurisdictional discovery.  Alternatively, plaintiffs argued that if the court were to consider matters outside the pleadings, defendant's motion to dismiss would be converted into one for summary judgment, thus necessitating discovery on factual issues beyond those related to the court's jurisdiction.

Specifically, plaintiffs sought discovery to refute defendant's assertions that (1) plaintiffs' claims were not yet ripe because whether the Enterprises will be solvent in the future

and whether the Enterprises will emerge from their conservatorships are both unknown, (2) the court lacks jurisdiction over the FHFA because the FHFA is not the United States for purposes of this court's exercise of jurisdiction under the Tucker Act, and (3) plaintiffs have failed to state a claim upon which relief can be granted for a Fifth Amendment taking.  With regard to the third assertion, plaintiffs sought discovery relating to the elements of their takings claim, see Penn Cent. Transp. Co. v. City of N.Y., 438 U.S. 104, 124 (1978), to include information concerning two of the three Penn Central factors:  (1) the extent to which the regulation interfered with the reasonableness of plaintiffs' expectations regarding the Enterprises' future profitability—the financial health of the Enterprises in 2008 and expectations for their future viability, and (2) the character of the governmental action—why the government entered into the Third Amendment.[2]

On February 3, 2014, the court issued orders in Washington Federal and Fisher, directing plaintiffs to indicate, by February 19, 2014, whether they, like the Fairholme plaintiffs, intended to seek jurisdictional discovery.  On February 26, 2014, following receipt of the parties' responses,[3] the court granted plaintiffs' motion for discovery.  Specifically, the court concluded that discovery regarding (1) the Enterprises' future profitability, (2) the lifespan of the conservatorships, and (3) the relationship between the FHFA and the Treasury Department would enable the parties to resolve factual issues regarding the court's jurisdiction.  The court further concluded that additional discovery regarding (1) the Enterprises' future solvency; (2) the reasonableness of plaintiffs' expectations regarding the Enterprises' future profitability; and (3) the reasons why the government allowed the preexisting capital structure and stockholders to remain in place, including whether this decision was based on the partial expectation that the Enterprises would be profitable again in the future, would enable the parties to resolve factual issues regarding plaintiffs' ability to state a claim upon which relief could be granted for a Penn Central regulatory taking.

Several months later, on July 16, 2014, the court granted in part and denied in part defendant's motion for a protective order.  In that order, the court indicated that jurisdictional discovery in this case would proceed in phases, beginning with the production of responsive documents dating from April 1, 2008, through December 31, 2008, and from June 1, 2011, through August 17, 2012.  The court further directed defendant to respond to discovery requests for nonprivileged information dating from August 18, 2012, through September 30, 2012, regarding topics other than the future profitability of the Enterprises or whether and when the conservatorships might end.

While discovery was ongoing, defendant filed, on June 8, 2015, a supplemental motion to dismiss.  Briefing on the motion was subsequently stayed.  On July 29, 2015, the court issued an amended protective order.  A second amended protective order was issued on November 9, 2015.

---

[2]  The third Penn Central factor is the economic impact of the regulation.

[3]  Both the Washington Federal plaintiffs and the Fisher plaintiffs indicated that they did not intend to seek jurisdictional discovery beyond that sought by the Fairholme plaintiffs.

**C.  Instant Discovery Dispute**

The instant motion to compel discovery became fully ripe on June 10, 2016.  First, plaintiffs complain that defendant's production in this case has been "haphazard, inconsistent, and overbroad."  Pls.' Mot. 4-10.  Plaintiffs then cite instances where, for example, (1) documents have been produced, only to be clawed back; (2) documents have been flagged as withheld for privilege but then not listed on the privilege log; (3) defendant, after being asked by plaintiffs to reconsider certain privilege claims, subsequently produced numerous documents—suggesting to plaintiffs that the original privilege claims were overly broad; and (4) documents were produced only after plaintiffs indicated that they would be filing a motion to compel.  Id.

Plaintiffs also claim that many of defendant's specific privilege assertions "suffer from serious deficiencies."  Id. at 2.  With respect to the deliberative process privilege, plaintiffs argue that (1) defendant failed to submit the requisite declaration from the appropriate agency head or delegate in support of its assertion of the privilege, (2) defendant's assertion of the privilege with respect to FHFA documents is inconsistent with its litigation position that the FHFA is not the United States, (3) there is reason to doubt that all of the withheld documents are in fact deliberative and predecisional, and (4) the privilege is not absolute and in this case, plaintiffs' need for the documents outweighs any interest defendant may have in keeping the documents secret.  Id. at 2-3.  With respect to the bank examination privilege, plaintiffs argue that the privilege was improperly asserted as to certain FHFA documents because the Enterprises are not banks.  Id. at 3.  Finally, with respect to the presidential communications privilege, plaintiffs claim that their need for the documents is substantial and that it outweighs defendant's interest in keeping the documents secret.  Id.

Defendant advances several arguments in its response to plaintiffs' motion.  First, defendant counters that plaintiffs are unfairly "'picking the lint' off the Government's massive document production," and "criticizing actions that demonstrate the Government's good faith efforts to work with Fairholme to resolve privilege disputes."  Def.'s Resp. 1-2.  Defendant also contends that it has properly invoked the three claimed privileges and that plaintiffs' asserted need for the withheld documents "demonstrates a deep misunderstanding of the law governing Fairholme's takings claims."  Id. at 2-3.  Defendant argues:

> Properly pled takings claims are predicated on authorized actions of the Government that eliminate or diminish a cognizable property interest to an extent that requires the Government to pay just compensation.  Thus, takings law does not concern itself with the subjective motivation issues that Fairholme insists are central to this case; certainly, those issues are not relevant to the specific topics of jurisdictional discovery authorized by the Court.  Accordingly, Fairholme cannot lay the foundation necessary to overcome the deliberative process privilege, the bank examination privilege, or the presidential communications privilege, and the Court therefore should deny Fairholme's motion.

Id. at 3.

Pursuant to the court's May 20 and May 25, 2016 orders, defendant submitted to the court for in camera review hard copies of the documents identified in the Vaughn index attached as Exhibit 1 to plaintiffs' motion to compel.  See Vaughn v. Rosen, 484 F.2d 820, 827-28 (D.C. Cir. 1973).  In addition, defendant submitted sworn declarations from agency head delegates with respect to the three privileges claimed—the presidential communications privilege, the deliberative process privilege, and the bank examination privilege.  In their submissions, the declarants asserted the privileges over nine categories of documents:  (1) BlackRock documents, (2) forecasts, (3) risk assessment memoranda, (4) housing finance reform, (5) housing policies, (6) preferred stock purchase agreement ("PSPA") modifications, (7) government sponsored enterprise ("GSE") projections,  (8) valuation reports, and (9) potential implications of the terms of the PSPAs; and three individual documents:  (1) an FHFA presentation on deferred tax assets ("DTA"), (2) the DeLeo e-mail, and (3) estimates for the President's budget.

## II.  LEGAL STANDARDS

### A.  RCFC 26(b)

"RCFC 26(b)(1) is the general provision governing the scope of discovery."  Sparton Corp. v. United States, 77 Fed. Cl. 10, 21 n.14 (2007).  It provides:

> Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

RCFC 26(b)(1).  RCFC 26(b) mirrors Rule 26(b) of the Federal Rules of Civil Procedure ("FRCP").[4]  Sys. Fuels, Inc. v. United States, 73 Fed. Cl. 206, 215 (2006).  The 1946 amendment to FRCP 26(b) "ma[de] clear the broad scope of examination," which included:

> not only evidence for use at the trial but also inquiry into matters in themselves inadmissible as evidence but which will lead to the discovery of such evidence.  The purpose of discovery is to allow a broad search for facts, . . . or any other matters which may aid a party in the preparation or presentation of his case.

---

[4]  "[T]o the extent permitted by this court's jurisdiction," the RCFC "must be consistent with the Federal Rules of Civil Procedure . . . ."  RCFC 83(a); see also Zoltek Corp. v. United States, 71 Fed. Cl. 160, 167 (2006) (noting that interpretation of a rule of the FRCP "informs the Court's analysis" of the corresponding rule of the RCFC).

FRCP 26 advisory committee's note to 1946 amendment; see also Int'l Paper Co. v. United States, 36 Fed. Cl. 313, 317 (1996) (citing RCFC 26 and stating that "we are similarly mindful of the generally broad scope of discovery in this court").

When FRCP 26(b)(1) was amended in 2000, the advisory committee "introduced a . . . note of caution about the provision." 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2007 (3d ed. 2010). The amendments were "intend[ed for] the parties and the court [to] focus on the actual claims and defenses involved in the action," FRCP 26(b)(1) advisory committee note to 2000 amendment, whereas previously parties "were entitled to discovery of any information that was not privileged so long as it was relevant to the 'subject matter involved in the pending action,'" 6 James Wm. Moore et al., Moore's Federal Practice ¶ 26.41 (3d ed. 2008) (quoting the 1983 version of FRCP 26(b)(1)). Accordingly, the 2000 amendments "narrowed the scope of party-controlled discovery to matters 'relevant to any party's claim or defense.'" Id. (quoting FRCP 26(b)(1)). While courts would "retain[ ] authority to order discovery of any matter relevant to the subject matter involved in the action for good cause," the amended rule was "designed to involve the court more actively in regulating the breadth of sweeping or contentious discovery." FRCP 26(b)(1) advisory committee's note to 2000 amendment. Under the current standard, courts are advised to focus upon the parties' specific claims or defenses when determining the scope of discovery. See id. Of course, "[t]his does not mean that a fact must be alleged in a pleading for a party to be entitled to discovery of information concerning that fact." 6 Moore et al., supra, ¶ 26.41. Rather, "the fact must be germane to a specific claim or defense asserted in the pleadings for information concerning it to be a proper subject of discovery." Id.

Finally, a party's ability to obtain pretrial discovery has additional constraints. RCFC 26(b)(2)(C) authorizes a court to limit "[t]he frequency or extent of discovery otherwise allowed by these rules" if: (1) the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; (2) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action"; or (3) the proposed discovery is outside the scope permitted by RCFC 26(b)(1)." RCFC 26(b)(2)(C)(i)–(iii). Alternatively, the court may limit discovery in response to a motion filed pursuant to RCFC 26(c).

## B. Privileges at Issue

The "public's right to know" is a basic tenant of our democracy: "[T]he public . . . has a right to every man's evidence." United States v. Nixon, 418 U.S. 683, 709 (1974). It serves to protect liberty by holding government officials accountable for their actions and denying them the ability to exercise power in the absence of accountability. Nevertheless, the public does not possess an absolute right to access all government information. As a result, various executive privileges have been recognized. These "exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." Id. at 710. Rather, these executive privileges attempt to balance the government's need to function smoothly by protecting the free and open exchange of ideas among government officials

and their subordinates, as well as the government's need to protect national security, with the public's right to monitor governmental actions taken on its behalf.

The motion now before the court implicates two executive privileges: the presidential communications privilege and the deliberative process privilege. A third privilege, the bank examination privilege, is also at issue.

## 1. Presidential Communications Privilege

"The strongest branch of executive privilege consists of what may be termed the 'Presidential privilege,' which rests in large part on the constitutional separation of powers, affords the President of the United States considerable autonomy and confidentiality, and gives 'recognition to the paramount necessity of protecting the Executive Branch from vexatious litigation that might distract it from the energetic performance of its constitutional duties.'" Sikorsky Aircraft Corp. v. United States, 106 Fed. Cl. 571, 575 (2012) (quoting Cheney v. U.S. Dist. Court for D.C., 542 U.S. 367, 382 (2004)). The privilege is "rooted in the need for confidentiality to ensure that presidential decisionmaking is of the highest caliber, informed by honest advice and full knowledge." In re Sealed Case, 121 F.3d 729, 750 (D.C. Cir. 1997). It is, of course, this confidentiality that "ensures the expression of candid, objective, and even blunt or harsh opinions and the comprehensive exploration of all policy alternatives before a presidential course of action is selected." Id. (internal quotation marks omitted).

In Dairyland Power Co-op v. United States, 79 Fed. Cl. 659, 662-67 (2007) ("Dairyland Power II"), the Honorable Edward J. Damich provides a detailed and thorough review of the cases that discuss the presidential communications privilege. In Dairyland Power II, the plaintiff, a nuclear utility, sued the United States Department of Energy for the partial breach of a contract for the disposal of spent nuclear fuel and/or high-level radioactive waste. Id. at 660. Before the court was the plaintiff's motion to compel the production of five documents, in unredacted form, over which the government had claimed the presidential communications privilege. Id. In its analysis, the court considered three decisions: (1) the United States Supreme Court's ("Supreme Court") decision in Cheney, 542 U.S. at 367, (2) the United States Court of Claims' ("Court of Claims") decision in Sun Oil Co. v. United States, 514 F.2d 1020 (1975), and (3) the United States Court of Appeals for the District of Columbia Circuit's ("D.C. Circuit") decision in In re Sealed Case, 121 F.3d at 729.[5] Dairyland Power II, 79 Fed. Cl. at 663-67.

In Cheney, the plaintiffs—two public interest organizations—filed suit against the National Energy Policy Development Group ("NEPDG")—a group comprised of high-level government officials and nonfederal government employees established by President George W. Bush to develop a national energy policy—claiming that it failed to comply with the Federal

---

[5] Aside from Sun Oil Co., the only reference to the presidential communications privilege by the Federal Circuit or its predecessor, the Court of Claims, appears in Marriott Int'l Resorts, L.P. v. United States, 437 F.3d 1302, 1305 n.3 (Fed. Cir. 2006), wherein the court, in a footnote, quotes a passage from In re Sealed Case that compares the presidential communications privilege to the deliberative process privilege and notes that both are executive privileges.

Advisory Committee Act's procedural and disclosure requirements.  542 U.S. at 372-73.  The district court, recognizing an inherent separation-of-powers issue, nevertheless allowed the plaintiffs to conduct limited discovery to ascertain whether the nonfederal government employees were regular participants at NEPDG meetings, reasoning that if they did not regularly participate, the court could resolve the issue on statutory grounds.  Id. at 375.  The D.C. Circuit denied the government's subsequent motion for a writ of mandamus to vacate the discovery order, holding that the government could instead seek relief through invocation of the presidential communications privilege.  Id. at 376-77.  In doing so, the D.C. Circuit relied upon the Supreme Court's decision in Nixon, wherein the Court held:

> We conclude that when the ground for asserting privilege as to subpoenaed materials sought for use in a criminal trial is based only on the generalized interest in confidentiality, it cannot prevail over the fundamental demands of due process of law in the fair administration of criminal justice.  The generalized assertion of privilege must yield to the demonstrated, specific need for evidence in a pending criminal trial.

418 U.S. at 713.

On appeal, the Cheney Supreme Court vacated the decision of the D.C. Circuit, finding—for a host of reasons—that the D.C. Circuit's reliance on Nixon, a criminal case, was misplaced.  542 U.S. at 383-90.  First, the Court stated that a request for information in a civil suit requires a balancing of the "President's generalized interest in confidentiality and the need for relevant evidence in civil litigation," whereas a request for information in a criminal case requires a balancing of the President's generalized interest in confidentiality and "the constitutional need for relevant evidence in criminal trials."  Id. at 383.  Second, the Court noted that the distinction drawn by the Nixon Court between civil and criminal proceedings was not merely "a matter of formalism," and that, as the Court in Nixon recognized, "the need for information in the criminal context is much weightier because our historic[al] commitment to the rule of law . . . is nowhere more profoundly manifest than in our view that the twofold aim [of criminal justice] is that guilt shall not escape or innocence suffer."  Id. at 384 (internal quotation marks omitted).  Third, the Court observed that withholding information from a court presiding over a criminal case would effectively "hamper another branch's ability to perform its essential functions," where withholding information in the context of civil discovery would not.  Id. at 384-85.  Fourth, the Court noted that courts resolving such discovery disputes must consider the burden imposed on the producing party:

> This Court has held, on more than one occasion, that the high respect that is owed to the office of the Chief Executive . . . is a matter that should inform the conduct of the entire proceeding, including the timing and scope of discovery, and that the Executive's constitutional responsibilities and status [are] factors counseling judicial deference and restraint in the conduct of litigation against it.

Id. at 385 (citation and internal quotation marks omitted).  Fifth, the Court noted that whereas there was an inherent check on the scope of a criminal subpoena because, pursuant to the Federal Rules of Criminal Procedure, it must meet standards of relevancy, admissibility, and specificity, there is no such requirement in the context of a civil discovery request.  Id. at 386-87.  Ultimately, the Cheney Supreme Court concluded that while the D.C. Circuit did not abuse its discretion by failing to issue the writ, it "prematurely terminated its inquiry after the Government refused to assert privilege and did so without even reaching the weighty separation-of-powers objections raised in the case, much less exercised its discretion to determine whether the writ is appropriate under the circumstances."  Id. at 391.

In Sun Oil, the plaintiffs—two oil companies—sought discovery regarding the government's decision to deny their application for permission to erect an oil drilling platform off of the coast of California, pursuant to the terms of their lease.  206 Ct. Cl. at 744-45.   In response to the plaintiffs' request, former President Nixon, a private citizen, asserted the presidential communications privilege over four documents created during his tenure as President.  Id. at 745.  According to President Nixon:

> [A] distinction may be drawn between traditional 'executive privilege,' which could not be asserted by a private person because it relates to military, State, and national security matters, on the one hand, and on the other, absolute 'presidential privilege' which may be asserted by a former President as to other documents generated during his Administration.

Id. at 746.  The United States withdrew its initial claim of privilege but supported President Nixon's claim of "a presumptive privilege for the confidentiality of presidential communications, that is fundamental to the operation of Government and inextricably rooted in logic and the separation of powers under the Constitution, and cannot simply disappear overnight because a President leaves office."  Id. at 747-48.  However, the United States did not claim that the privilege is "inviolate."  Id. at 748.  Instead, the United States noted that the privilege could be overcome by a showing of need and relevance.  Id.  After reviewing the documents in camera, the Court of Claims held that the privilege asserted by former President Nixon, whether termed an executive or presidential privilege, was not absolute and—without needing to decide whether the privilege follows a President after he has left the office—that "where a demonstrated need for documents sought is clearly sufficient, on balance, to override a claim of privilege, the documents must be produced."  Id. at 750.

Finally, in In re Sealed Case, the issue presented was whether the presidential communications privilege protected the release of documents pertaining to the White House Counsel's investigation into whether Agriculture Secretary Mike Espy had unlawfully accepted gifts.  121 F.3d at 734-35.  Id.  Reviewing the district court's decision to uphold the government's assertion of the privilege, the D.C. Circuit ultimately vacated the district court's decision and remanded it with an expanded definition of the privilege:

> Based on our review of the Nixon cases and the purpose of the presidential communications privilege, we conclude that this

> privilege extends to cover communications which do not themselves directly engage the President, provided the communications are either authored or received in response to a solicitation by presidential advisers in the course of gathering information and preparing recommendations on official matters for presentation to the President.  The privilege also extends to communications authored or solicited and received by those members of an immediate White House advisor's staff who have broad and significant responsibility for investigating and formulating the advice to be given to the President on a particular matter.  We also hold that in order to overcome a claim of presidential privilege raised against a grand jury subpoena, it is necessary to specifically demonstrate why it is likely that evidence contained in presidential communications is important . . . and why this evidence is not available from another source.

Id. at 757.

After reviewing and analyzing these three decisions, the court in Dairyland Power II, concluded that the standard articulated in In re Sealed Case for evaluating the presidential communications privilege was nevertheless the most appropriate one.  See 79 Fed. Cl. at 667 ("[T]his Court concludes that the Sealed Case test comes closest to what the Supreme Court was concerned about in Cheney.").  This court is persuaded by that conclusion.  Thus, it adopts the presidential communications privilege standard articulated by the D.C. Circuit in In re Sealed Case, which provides for a shifting burden:  if the government establishes that the communications at issue qualify for the privilege, then the plaintiff must demonstrate why the evidence is important to its case and unavailable from another source.  See 121 F.3d at 757.

## 2.  Deliberative Process Privilege

The deliberative process privilege protects the "decision making processes of government agencies" and therefore applies to "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975) (citations and internal quotation marks omitted); accord Dep't of the Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001) ("Klamath").  In addition to protecting these internal communications from disclosure, the privilege "protect[s] against premature disclosure of proposed policies before they have been finally formulated or adopted; and . . . protect[s] against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action."  Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980), quoted in Dairyland Power Co-op v. United States, 77 Fed. Cl. 330, 336 (2007) ("Dairyland Power I").  Finally, it "is a creation of federal common law and thus is recognized under [Federal Rule of Evidence] 501."[6]  Sikorsky Aircraft Corp., 106 Fed. Cl. at 576; accord Texaco P.R., Inc. v. Dep't of

---

[6]  Rule 501 of the Federal Rules of Evidence ("FRE") provides:

<u>Consumer Affairs</u>, 60 F.3d 867, 883 (1st Cir. 1995) ("Since local law does not supply the rule of decision [as to the appellant's claim], federal common law governs our analysis of the wrangling over privileges."); <u>Scott v. Bd. of Educ. of E. Orange</u>, 219 F.R.D. 333, 336 (D.N.J. 2004) ("When a claim is based on federal law, . . . issues relating to privilege are governed by federal common law.").

The privilege is not, however, blind to the "countervailing public interest in the production of evidence needed to establish truth through litigation." <u>Dairyland Power I</u>, 77 Fed. Cl. at 336. "In the adversary system of establishing truth by litigation, this [interest] is very important, for such a system requires development of all relevant facts to produce real justice through due process." <u>Cetron Elec. Corp. v. United States</u>, 207 Ct. Cl. 985, 989 (1975). Nevertheless, the privilege is ultimately based on the "obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions[ ] by protecting open and frank discussion among those who make them within the Government." <u>Klamath</u>, 532 U.S. at 8-9 (citations and internal quotation marks omitted). This is not to say, however, that the privilege can be used by the government to preclude the disclosure of relevant evidence when the government's intent and subjective motivation are the subject of the litigation—in those instances, the privilege does not apply. <u>See</u> <u>In re Subpoena Duces Tecum Served on Office of Comptroller of Currency</u>, 156 F.3d 1279, 1279 (D.C. Cir. 1998) ("[T]he government's deliberative process privilege does not apply when a cause of action is directed at the government's intent. . . . [T]he privilege . . . applies to circumstances where the government decisionmaking process is 'collateral' to a plaintiff's claim."); <u>Starr Int'l Co. v. United States</u>, No. 11-779C, slip op. at 6 (Fed. Cl. Nov. 6, 2013) ("[T]he deliberative process privilege is unavailable to the Government when a plaintiff's cause of action is directed at an agency's subjective motivation."); <u>Dunnet Bay Constr. Co. v. Hannig</u>, No. 10-3051, 2012 WL 1599893, at *3 (C.D. Ill. May 7, 2012) ("The deliberative process privilege, however, does not apply when the lawsuit puts at issue the intent of the officials making the governmental policy decision. . . . In such circumstances, the deliberative process privilege must yield to the interests of determining the governmental agents' intent."). <u>But see</u> <u>First Heights Bank, FSB v. United States</u>, 46 Fed. Cl. 312, 321 (2000) ("Although the court agrees with the D.C. Circuit's observation in <u>In re Subpoenas</u> [sic] that assertions of the deliberative process privilege present unique problems when the Government's intent is at issue, the court also believes that Federal Circuit precedent on this question favors continued use of a case-by-case analysis to determine

---

The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise:

- the United States Constitution;
- a federal statute; or
- rules prescribed by the Supreme Court.

But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

whether or not a plaintiff's need for particular evidence can overcome the Government's interest in maintaining the confidentiality of internal deliberations.").

In order to assert the deliberative process privilege, the government must first satisfy three procedural requirements. Dairyland Power I, 77 Fed. Cl. at 336-37. First, the government must invoke the privilege. Id. While that authority lies with the head of the relevant federal agency, such authority may also be delegated. Marriott Int'l Resorts, L.P., 437 F.3d at 1308; accord Sikorsky Aircraft Corp., 106 Fed. Cl. at 577. "The government official to whom authority is delegated may assert the privilege only after 'personal consideration' and review of the documents at issue." Sikorsky Aircraft Corp., 106 Fed. Cl. at 577 (quoting Pac. Gas & Elec. Co. v. United States, 70 Fed. Cl. 128, 134 (2006)). Moreover, the delegation should only be "made to a subordinate whose expertise makes him or her well suited to the task of determining whether the privilege is applicable." Id. Second, the government "must state with particularity what information is subject to the privilege." Walsky Constr. Co. v. United States, 20 Cl. Ct. 317, 320 (1990). Finally, the government must justify its invocation of the privilege, Deseret Mgmt. Corp. v. United States, 76 Fed. Cl. 88, 95 (2007), by providing "precise and certain reasons for maintaining the confidentiality of the requested document," Walsky Constr. Co., 20 Cl. Ct. at 320 (internal quotation marks omitted). See also Greenpeace v. Nat'l Marine Fisheries Serv., 198 F.R.D. 540, 543 (W.D. Wash. 2000) ("Like all evidentiary privileges that derogate a court's inherent power to compel the production of relevant evidence, the deliberative process privilege is narrowly construed.") quoted in Deseret Mgmt. Corp., 76 Fed. Cl. at 95.

The government must also satisfy two substantive requirements to assert the deliberative process privilege. Dairyland Power I, 77 Fed. Cl. at 337. Specifically, it must show that each document is both predecisional and deliberative. Walsky Constr. Co., 20 Cl. Ct. at 320. A predecisional document is one that "address[es] activities '[a]ntecedent to the adoption of an agency policy.'" Id. (quoting Jordan v. U.S. Dep't of Justice, 591 F.2d 753, 774 (D.C. Cir. 1978)). In other words, "[a] document is predecisional if it precedes, in temporal sequence, the decision to which it relates. Accordingly, to approve exemption of a document as predecisional, a court must be able to pinpoint an agency decision or policy to which the document contributed." Senate of the Commonwealth of P.R. v. U.S. Dep't of Justice, 823 F.2d 574, 582 (D.C. Cir. 1987) (internal quotation marks omitted), quoted in Walsky Constr. Co., 20 Cl. Ct. at 320; accord Abramson v. United States, 39 Fed. Cl. 290, 294-95 (1997); see also NLRB, 421 U.S. at 151 ("Manifestly, the ultimate purpose of [the deliberative process privilege] is to prevent injury to the quality of agency decisions. The quality of a particular agency decision will clearly be affected by the communications received by the decisionmaker on the subject of the decision prior to the time the decision is made. However, it is difficult to see how the quality of a decision will be affected by communications with respect to the decision occurring after the decision is finally reached; and therefore equally difficult to see how the quality of the decision will be affected by forced disclosure of such communications, as long as prior communications and the ingredients of the decisionmaking process are not disclosed."); Texaco P.R., Inc., 60 F.3d at 884-85 ("Because the deliberative process privilege is restricted to the intra-governmental exchange of thoughts that actively contribute to the agency's decisionmaking process, factual statements or post-decisional documents explaining or justifying a decision already made are not shielded."); cf. Mead Data Cent., Inc. v. U.S. Dep't of the Air Force, 566 F.2d 242, 257 (D.C. Cir. 1977) ("It would exalt form over substance to exempt documents in

which staff recommend certain action or offer their opinions on given issues but require disclosure of documents which only 'report' what those recommendations and opinions are."); Ford Motor Co. v. United States, 94 Fed. Cl. 211, 223 (2010) (applying the deliberative process privilege to documents created after the date of the decision because the documents recount predecisional deliberations). Thus, "[s]ubjective documents which reflect the personal opinion of the writer, rather than the policy of the agency[,] are considered privileged information because they are predecisional." Deseret Mgmt. Corp., 76 Fed. Cl. at 95 (internal quotation marks omitted).

A deliberative document is one that "address[es] 'a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters.'" Walsky Constr. Co., 20 Cl. Ct. at 320 (quoting Vaughn v. Rosen, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975) ("Vaughn II")); accord Confidential Informant 59-05071 v. United States, 108 Fed. Cl. 121, 132 (2012). In other words, deliberative documents are those that are "a part of the agency give-and-take of the deliberative process by which the decision itself is made." Vaughn II, 523 F.2d at 1144, quoted in Walsky Constr. Co., 20 Cl. Ct. at 320. Thus, while confidential intra-agency advisory opinions may be protected as deliberative documents, Kaiser Aluminum & Chem. Corp. v. United States, 157 F. Supp. 939, 946 (Ct. Cl. 1958), "factual or investigative material" is not, "except as necessary to avoid indirect revelation of the decision-making process," Scott Paper Co. v. United States, 943 F. Supp. 489, 496 (E.D. Pa. 1996). Accord Lead Indus. Ass'n v. Occupational Safety & Health Admin., 610 F.2d 70, 85 (2d Cir. 1979) ("If the factual materials are 'inextricably intertwined' with policy making recommendations so that their disclosure would 'compromise the confidentiality of deliberative information that is entitled to protection under [Freedom of Information Act ("FOIA")] Exemption 5[, which protects from disclosure inter or intra-agency memoranda or letters that would not be available by law to a party other than a party in litigation with the agency],' the factual materials themselves fall within the exemption." (quoting EPA v. Mink, 410 U.S. 73, 92 (1973)). Ultimately, when evaluating a claim of deliberative process privilege, "[t]he test is whether the material is 'so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency.'" Exxon Corp. v. Dep't of Energy, 91 F.R.D. 26, 43 (N.D. Tex. 1981) (quoting Coastal States Gas Corp., 617 F.2d at 866).

Finally, the court must balance the parties' competing interests:

> The privilege is a qualified privilege. After the government makes a sufficient showing of entitlement to the privilege, the court should balance the competing interests of the parties. Thus, a claim of executive privilege requires a two-step review by the court. First, the court must decide whether the communications are in fact privileged. The government has the burden of showing privilege at this first step. Second, the court must balance the parties' interests. At this second step, the party seeking discovery

> bears the burden of showing that its need for the documents
> outweighs the government's interests.[7]

Scott Paper Co., 943 F. Supp. at 496 (footnote added) (citation omitted). This requisite balancing of competing interests is, in turn, accomplished by the court's consideration of five factors:[8]

> "(i) the relevance of the evidence sought to be protected; (ii) the
> availability of other evidence; (iii) the 'seriousness' of the
> litigation and the issues involved; (iv) the role of the government
> in the litigation; and (v) the possibility of future timidity by
> government employees who will be forced to recognize that their
> secrets are violable."

In re Subpoena Served Upon the Comptroller of the Currency, 967 F.2d 630, 634 (D.C. Cir. 1992) ("In Re Subpoena") (quoting In re Franklin Nat'l Bank Sec. Litig., 478 F. Supp. 577, 583 (E.D.N.Y. 1979), quoted in Dairyland Power I, 77 Fed. Cl. at 338. "[T]he deliberative process privilege is a discretionary one. In deciding how to exercise its discretion, an inquiring court should consider, among other things, the interests of the litigants, society's interest in the accuracy and integrity of factfinding, and the public's interest in honest, effective government." Texaco P.R., Inc., 60 F.3d at 884 (internal quotation marks omitted); accord In re Franklin Nat'l Bank Sec. Litig., 478 F. Supp. at 582 (noting that "the government's interest in nondisclosure" must be weighed against "the interest of the litigants, and ultimately of society, in accurate judicial fact finding"). Notably, where the disclosure of information is subject to a protective order, the risk that such disclosure will have a chilling effect on future deliberations by government employees is diminished. See Dairyland Power I, 77 Fed. Cl. at 339 ("[I]n a litigation context, where the rules of discovery allow a court 'to protect a party or person from annoyance [or] embarrassment' through a protective order, RCFC 26(c), limited disclosure of deliberative process documents should be less likely to result in significant harm to policy debates within an agency."); accord Pac. Gas & Elec. Co., 70 Fed. Cl. at 142 n.12 (noting that "any need the government might have for confidentiality . . . is diminished by the fact that the court has issued a Protective Order in this case stating that '[c]onfidential [m]aterial shall be used by the receiving party solely for the purpose of conducting litigation in the . . . cases pending in

---

[7] In Marriott Int'l Resorts, L.P., the Federal Circuit stated that "a showing of compelling need can overcome the qualified deliberative process privilege." 437 F.3d at 1307. One year later, in Dairyland Power I, the Court of Federal Claims held that "the use of the phrase 'compelling need' by the Federal Circuit in Marriott did not elevate the standard for overcoming the deliberative process privilege." 77 Fed. Cl. at 338. This court agrees with the holding in Dairyland Power I and notes further that in Marriott Int'l Resorts, L.P., the Federal Circuit stated that "a showing of compelling need can overcome the qualified deliberative process privilege," 437 F.3d at 1307, but did not state that such a showing was required to overcome the privilege.

[8] No balancing of competing interests is required where the government has waived the deliberative process privilege by either previously producing the requested documents or by previously providing testimony as to the same subject matter covered by the documents. See Alpha I, L.P. v. United States, 83 Fed. Cl. 279, 290 (2008).

the United States Court of Federal Claims and not for any business or other purpose whatsoever.'").

### 3.  Bank Examination Privilege

The bank examination privilege is a common-law privilege derived "out of the practical need for openness and honesty between bank examiners and the banks they regulate, and is intended to protect the integrity of the regulatory process by privileging such communications." Wultz v. Bank of China Ltd., 61 F. Supp. 3d 272, 282 (S.D.N.Y. 2013) (internal quotation marks omitted).  Its purpose is to protect "communications between banks and their examiners in order to preserve absolute candor essential to the effective supervision of banks."  Id. (internal quotation marks omitted); accord In re Subpoena Served Upon the Comptroller of the Currency, 967 F.2d at 634 ("Bank safety and soundness supervision is an iterative process of comment by the regulators and response by the bank.  The success of the supervision therefore depends vitally upon the quality of communication between the regulated banking firm and the bank regulatory agency.").  As with all common-law privileges governed by FRE 501, the bank examination privilege should be "narrowly construed—extended only as far as needed to effectuate [its] utilitarian purpose[]."  Evergreen Trading, LLC v. United States, 80 Fed. Cl. 122, 127 (2007).  Finally, the bank examination privilege is qualified and may be overcome:

> If the documents fall within the privilege, a court can override the privilege if the requesting party demonstrates good cause.  [T]he privilege may be defeated where necessary to promote the paramount interest of the Government in having justice done between litigants, . . . or to shed light on alleged government malfeasance, . . . or in other circumstances when the public's interest in effective government would be furthered by disclosure.  In order to evaluate claims of good cause, courts balance the competing interests of the party seeking the documents and those of the government, taking into account factors such as the following:
>
>   1) the relevance of the evidence sought to be protected;
>
>   2) the availability of other evidence;
>
>   3) the "seriousness" of the litigation and the issues involved;
>
>   4) the role of the government in the litigation; and
>
>   5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

Wultz, 61 F. Supp. 3d at 282 (footnotes and internal quotation marks omitted).

The Federal Circuit has not had the occasion to address the viability of the bank examination privilege.[9]  However, the privilege—and its application to the FHFA—has been thoroughly considered by the United States District Court for the Southern District of New York. In FHFA v. JPMorgan Chase & Co., 978 F. Supp. 2d 267, 273 (S.D.N.Y. 2013), the court examined "whether the distinctive necessity for candid and informal regulation of the banking sector—stemming from both practical necessity of day-to-day bank regulation, as well as from necessity to maintain public confidence in the financial system—which undergirds the bank examination privilege, applies also to FHFA's regulation of the [Enterprises]," and concluded that it did.  First, the court noted that both bank regulators and the FHFA are concerned with "ensuring adequate capitalization and liquid and efficient markets," and ensuring the stability of "the U.S. economy and financial system."  Id. at 274.  Emphasizing the significance of the second factor, the court stated:  "Given that 'in 2008 the [Enterprises] financed about 40% of all American mortgages and owed debt in excess of $5.3 trillion, their failure would [be] catastrophic for the American economy in a way that, with few exceptions, the failure of a single bank or credit union would not be.'"  Id. (quoting FHFA v. UBS Ams., Inc., 858 F. Supp. 2d 306, 340 (S.D.N.Y. 2012)).  Second, the court noted that Congress awarded "FHFA the exact same powers that bank examiners have[,] . . . codified the common law bank examination privilege in the [FOIA], and expressly provided that the privilege would apply to FHFA in the FOIA context."  JPMorgan Chase & Co., 978 F. Supp. 2d at 275 (citation omitted).  Third, the court noted that FRE 501 "requires a court to consider the question of privileges not mechanically but in the light of reason and experience, with the recognition that the common law is not immutable but flexible, and by its own principles adapts itself to varying conditions."  Id. (internal quotation marks omitted).  The court added:

> To decide this motion on the sole ground that a judge at some point in the past named this privilege the "bank" examination privilege, without looking to the principles underlying the privilege and their application to the facts at hand, would run counter to the standard enunciated in Rule 501 and in the caselaw.

Id.  Finally, the court noted the significance of Congress's decision to codify the privilege in the FOIA:

> Congress's explicit extension of the FOIA codified banking examination privilege to FHFA weighs heavily here.  Although a FOIA exemption does not, on its own, create a civil discovery privilege, see Chamber of Commerce of U.S. v. Legal Aid Soc'y of Alameda Cnty., 423 U.S. 1309, 1310 (1975), Congress's express inclusion of FHFA within FOIA's exemption eight demonstrates that it viewed the considerations animating the

---

[9]  To date, the bank examination privilege has been recognized by the D.C. Circuit, see In re Subpoena Served Upon the Comptroller of the Currency, 967 F.2d at 630, the United States Court of Appeals for the Sixth Circuit, see In re Bankers Trust Co., 61 F.3d 465 (6th Cir. 1995), and the United States Court of Appeals for the Tenth Circuit, see Martinez v. Rocky Mountain Bank, 540 F. App'x 846 (10th Cir. 2013).

> extension of that privilege to bank regulators as applying also to
> FHFA in the FOIA context.  Notably, the defendants have
> proffered no justification to distinguish between the rationales for
> granting FHFA the bank examination privilege in the FOIA
> context versus the civil discovery context.

Id. at 276.

Not surprisingly, and contrary to defendant's position,[10] plaintiffs in this case argue that the bank examination privilege should not apply to the FHFA.  First, plaintiffs contend that "there is good reason to doubt that bank examination truly involves the frank and informal exchange of views that proponents of the privilege assume."  Pls.' Mot. 27-28.  Second, plaintiffs contend that it is unlikely "that the availability of such a privilege will succeed in promoting open and honest communications by bank officers to their regulators if the threat of federal criminal prosecution has failed to do so."  Id. at 28.  Third, plaintiffs contend that communications between the FHFA and the Enterprises are not covered by the privilege because the Enterprises are not banks:  "They hold no bank charter of any kind, they do not retain customer deposits, and they do not otherwise conduct banking activities."  Id. at 28-29.  Fourth, plaintiffs contend that other nonbank entities are not protected by the privilege:  "Communications involving insurance companies, broker-dealers, mutual funds, and other regulated non-bank participants in the financial markets are not covered by the bank examination privilege, and there is no reason to treat Fannie [Mae] and Freddie [Mac] differently than other such non-bank entities."  Id. at 29.  Fifth, plaintiffs contend that, unlike bank regulators, the FHFA is required by law to submit to Congress both a general report and a report on enforcement actions,[11] thereby obviating the need to extend the privilege because "the results of

---

[10]  For purposes of claiming the bank examination privilege, defendant argues that the FHFA is a government entity.  See, e.g., Def.'s Reply 16-20 (arguing that the bank examination privilege protects FHFA documents from disclosure).  Simultaneously, for purposes of evading this court's jurisdiction, defendant argues that the FHFA is not a government entity.  See, e.g., Def.'s Mot. to Dismiss 12-16 (arguing that the FHFA, when acting as the Enterprises' conservator, is not the United States for purposes of the Tucker Act).

[11]  The general report must include:

> (1)  a description of the actions taken, and being undertaken, by the
> Director to carry out this chapter;
>
> (2)  a description of the financial safety and soundness of each
> regulated entity, including the results and conclusions of the
> annual examinations of the regulated entities conducted under
> section 4517(a) of this title;
>
> (3)  any recommendations for legislation to enhance the financial
> safety and soundness of the regulated entities;

FHFA's examinations [are] already in the public domain." Id. at 30.  Finally, plaintiffs contend that since the Enterprises were placed in conservatorship, the purpose behind the privilege no longer exists:  "With the companies subject to FHFA's complete control and operating under management chosen by and avowedly beholden as fiduciaries only to FHFA, the concern that

------------------

> (4)  a description of—
>
>> (A)  whether the procedures established by each regulated entity pursuant to section 4012a(b)(3) of Title 42 are adequate and being complied with, and
>>
>> (B)  the results and conclusions of any examination, as determined necessary by the Director, to determine the compliance of the regulated entities with the requirements of section 4012a(b)(3) of Title 42, which shall include a description of the methods used to determine compliance and the types and sources of deficiencies (if any), and identify any corrective measures that have been taken to remedy any such deficiencies, except that the information described in this paragraph shall be included only in each of the first, third, and fifth annual reports under this subsection required to be submitted after the expiration of the 1-year period beginning on September 23, 1994; and
>
> (5)  the assessment of the Board or any of its members with respect to—
>
>> (A)  the safety and soundness of the regulated entities;
>>
>> (B)  any material deficiencies in the conduct of the operations of the regulated entities;
>>
>> (C)  the overall operational status of the regulated entities; and
>>
>> (D)  an evaluation of the performance of the regulated entities in carrying out their respective missions;
>
> (6)  operations, resources, and performance of the Agency; and
>
> (7)  such other matters relating to the Agency and the fulfillment of its mission.

12 U.S.C. § 4521(a) (2012).  The report on enforcement actions must include a description of all the requests, from the previous year, "by the Director to the Attorney General for enforcement actions," as well as a description of each request's disposition.  Id. § 4521(b).

underlies the bank examination privilege—that privately run banks might not be forthcoming with their regulators—plainly does not apply here." Id. at 31.

Ultimately, in recognition of the significance of Congress's explicit decision to codify the bank examination privilege in the FOIA, the court is persuaded by the reasoning of the United States District Court for the Southern District of New York in JPMorgan Chase & Co.. Therefore, the court will extend the privilege's coverage to include communications between the FHFA and the Enterprises.

Having identified the privileges claimed by defendant, the court must now determine whether those privileges apply to the documents at issue and, if so, whether plaintiffs have demonstrated sufficient need to overcome those privileges.

## III. DISCUSSION

### A. Defendant's Declarants

In support of its assertion of the presidential communications, deliberative process, and bank examination privileges, defendant submits sworn declarations from Christopher H. Dickerson, David R. Pearl, and Nicholas L. McQuaid.

#### 1. Mr. Dickerson

On December 15, 2015, Mr. Dickerson executed a declaration in support of defendant's claim of privileges. Def.'s Resp. A58-67. He is Senior Associate Director of the Division of Enterprise Regulation ("DER") at the FHFA. Id. at A58. He has worked at the FHFA since its inception in 2008 and was previously employed by the Office of Federal Housing Enterprise Oversight, the FHFA's predecessor, from July 1997 until 2008. Id.

Mr. Dickerson's authority to assert privileges in this litigation was delegated to him by FHFA Director Melvin L. Watt. Id. As a result of his position as Senior Associate Director of the DER, Mr. Dickerson is "generally familiar with this litigation." Id. He asserts the deliberative process and bank examination privileges over three categories of documents: (1) BlackRock documents, (2) forecasts, and (3) risk assessment memoranda; and two individual documents: (1) the FHFA presentation on DTA and (2) the DeLeo e-mail. Id. at A59-60.

#### 2. Mr. Pearl

On January 20, 2016, Mr. Pearl executed a declaration in support of defendant's claim of privileges. Def.'s Resp. A77. He is the Executive Secretary of the Treasury Department. Id. at A68. In that capacity, he is "responsible for directing the activities and operations of the Executive Secretariat," which includes:

> ensuring that decisions made by the Secretary and the Deputy Secretary, among others, are properly implemented and that their requests receive appropriate responses; ensuring the quality and

> appropriate coordination of materials prepared for these principal officials in connection with formulating and implementing policy, including overseeing collecting, maintaining, controlling, retrieving, and disseminating policy decisions and papers, staff records, and reports, as well as a wide variety of other correspondence and documents relevant to the information and operational needs of principal officials; assisting in identifying policy problems that require coordination, and coordinating policy issues across different components of the Department; and advising principal officials on the best uses of the Department's resources.

Id.  Additionally, he is responsible for "approving responses to [FOIA] requests directed at Secretarial documents, a task which requires [him] to evaluate whether responsive records are covered by various exemptions to FOIA's disclosure requirements, including the deliberative process privilege."  Id.

Mr. Pearl's authority to assert privileges in this litigation was delegated to him by Treasury Secretary Jacob Lew.  Id.  In his capacity as Executive Secretary, Mr. Pearl is "aware of this lawsuit" and has personally reviewed the challenged documents.  Id. at 1-2.  He asserts the deliberative process privilege over six categories of documents:  (1) housing finance reform, (2) housing policies, (3) PSPA modifications, (4) GSE projections, (5) valuation reports, and (6) potential implications of the terms of the PSPAs; and one individual document:  estimates for the President's budget.

### 3.  Mr. McQuaid

On June 10, 2016, Mr. McQuaid executed a declaration in support of defendant's claim of privileges.  McQuaid Decl. 4.  He is Deputy White House Counsel.  Id. at 1.  In that capacity, he is "responsible for, inter alia, providing legal advice to White House staff, including advice on matters involving the invocation of the presidential communications privilege."  Id.

Mr. McQuaid's authority to assert privileges in this litigation was delegated to him by the President.[12]  Id.  In his capacity as Deputy White House Counsel, Mr. McQuaid is "aware of this lawsuit" and has personally reviewed the challenged documents.  Id. at 1-2.  He asserts the presidential communications privilege over four housing finance reform documents.  Id. at 2-3.

The nine categories of documents and three individual documents submitted by defendant for the court's in camera review will now be considered in turn.  Discussion of each begins with

---

[12]  For purposes of the court's analysis, the court will assume that Mr. McQuaid's authority to assert the presidential communications privilege was expressly delegated to him by the President, although his declaration simply states that he asserts the privilege "[o]n behalf of the Office of the President."  McQuaid Decl. 4.

a chart, which reproduces the information contained in defendant's privilege log.[13]   Following
the chart is the court's analysis of the claimed privileges.

## B.  BlackRock Documents

| Doc. No. | Bates No. | From / To / Date / CC | Description of Document / Privilege(s) Asserted |
|---|---|---|---|
| 1 | FHFA 00031960 | C. Dickerson to D. Pearl on 9/7/2008 | "Document prepared by BlackRock to support predecisional deliberations and provided to FHFA in relation to its regulatory supervision regarding analysis of Fannie Mae's loss and capital projections"<br><br>Deliberative Process Privilege ("DPP"), Bank Examination Privilege ("BEP") |
| 2 | FHFA 00031962 | C. Dickerson to D. Pearl on 9/7/2008 | "Document prepared by BlackRock to support predecisional deliberations and provided to FHFA in relation to its regulatory supervision regarding analysis of Freddie Mac's loss and capital projections"<br><br>DPP, BEP |
| 3 | FHFA 00031964 | C. Dickerson to D. Pearl on 9/7/2008 | "Presentation by BlackRock to support predecisional deliberations and provided to FHFA in relation to its regulatory supervision regarding analysis of GSE loss and capital projections"<br><br>DPP, BEP |
| 4 | FHFA 00056237 | C. Eldarrat to C. Dickerson, N.A. Tagoe, S. Smith, J. Spohn, W. DeLeo, T. Clark, and S. Crisp on 8/27/2008<br><br>CC: C. Eldarrat | "Presentation prepared by consultant BlackRock containing predecisional deliberations regarding analysis of Freddie Mac projected losses and implications for capital"<br><br>DPP |

According to Mr. Dickerson, the BlackRock documents "contain loss and capital
projections prepared by consultant BlackRock Solutions before the establishment of
conservatorship for purposes of agency decision-making."  Def.'s Resp. A63.  He further claims
that the documents "were generated in the course of FHFA's continuous supervision of the

---

[13]   The descriptions of the documents are reproduced verbatim from defendant's privilege
log and therefore appear in quotation marks.

Enterprises . . . [and] are inherently predecisional and reflect real-time analyses of the Enterprises['] operations." Id.  Finally, he claims that the documents should not be disclosed:

> The production of these documents would reduce candor and inhibit communications by consultants, and thus would adversely affect the quality of supervision of the GSEs.  If employees and consultants believe that their communications regarding supervision of the GSEs could become public in the event of litigation, they are unlikely to feel at liberty to express their candid opinions.
>
> In particular, the issues addressed in the BlackRock Documents—projections in September 2008 of Enterprise credit and capital losses—are the subject of significant public interest and would likely be the subject of intense publicity and public scrutiny. Disclosure of that information likely would inhibit the willingness of consultants to provide advice in the future as part [of] the agency's decision making processes.  Consultants could reasonably believe that in a case under intense public scrutiny they could be held up for ridicule if their recommendations and/or advice was rejected, especially where the rejection may be in unflattering terms.  Disclosure of such information also could confuse the public by revealing statements about the financial condition of the Enterprises that might be misleading when stripped of context. Further, because the BlackRock Documents reflect the internal deliberations of FHFA prior to the agency's adoption of an official position, disclosure of the views or opinions of consultants could confuse the public by suggesting rationales for FHFA's actions that may or may not have been relied upon as the basis for those actions.

Id. at A63-64.

Mr. Dickerson asserts the deliberative process privilege as to Documents 1-4 and the bank examination privilege as to Documents 1-3.

### 1.  Deliberative Process Privilege

### a.  Procedural Requirements

### i.  The Authority to Invoke the Privilege Was Properly Delegated to Mr. Dickerson

With respect to Mr. Dickerson's authority to invoke the deliberative process privilege, the chain of delegation from FHFA Director Watt to Mr. Dickerson is clear.  See supra Section III.A.1.  In addition, Mr. Dickerson's position as Senior Associate Director of DER and familiarity with this litigation make him well-suited to the task of determining whether or not the

-23-

deliberative process privilege is applicable to the documents at issue.  <u>Id.</u>  Thus, the authority to invoke the deliberative process privilege was properly delegated to Mr. Dickerson.

### ii.  Defendant Has Identified With Particularity the Documents It Claims Are Privileged

Mr. Dickerson's declaration, which provides a general description of the BlackRock documents, coupled with defendant's privilege log, which (1) identifies the documents by their Bates numbers, (2) provides the documents' authors and recipients, (3) provides a description of the documents, and (4) identifies the specific privileges claimed, allows the court to identify with particularity the documents at issue.

### iii.  Defendant Has Provided Precise and Certain Reasons for Maintaining the Confidentiality of the Documents

Based on Mr. Dickerson's declaration, which provides precise and certain reasons for maintaining the confidentiality of the documents at issue, <u>see id.</u> at A63-64, the court can balance the government's interest in maintaining that confidentiality with plaintiffs' evidentiary need for the documents' disclosure.

### b.  Substantive Requirements

### i.  Defendant Has Shown That the Documents Are Predecisional

Although the Net Worth Sweep was jointly announced by the FHFA and the Treasury Department on August 17, 2012, the decision to approve the action was made by Treasury Secretary Timothy F. Geithner on August 16, 2012.  <u>See</u> Pls.' Mot. A178.  Thus, documents are predecisional if they bear a date prior to August 16, 2012.  According to the privilege log, Documents 1-3 were sent by C. Dickerson to D. Pearl on September 7, 2008.  Although the privilege log does not explicitly state that the documents were created on that date, upon its own examination, the court finds that Documents 1-3 are dated September 7, 2008, and thus are predecisional.

The privilege log also indicates that Document 4 was sent by C. Eldarrat to C. Dickerson, N.A. Tagoe, S. Smith, J. Spohn, W. DeLeo, T. Clark, and S. Crisp, with a copy to C. Eldarrat, on August 27, 2008.  Although the privilege log does not explicitly state that the document was created on that date, upon its own examination, the court finds that Document No. 4 is dated August 27, 2008, and thus is predecisional.

### ii.  Defendant Has Not Shown That the Documents Are Deliberative but, for the Purpose of Providing an Alternative Analysis, the Court Will Proceed as if Defendant Has Made Such a Showing

In order to determine whether a document is subject to the deliberative process privilege, the court must be able to discern whether the document reflects the "intra-governmental exchange of thoughts that actively contribute to the agency's decisionmaking process," <u>Texaco P.R., Inc.</u>, 60 F.3d at 884-85.  Thus, as to each document, the court must be able to identify the

affiliations of the individuals on defendant's privilege log and also discern the document's deliberative nature.

In this case, defendant has not met its burden of showing that the documents are deliberative.[14]  First, upon examination of the privilege log and all of the documents submitted

_____

[14]  Plaintiffs argue that defendant inappropriately claims the deliberative process privilege as to "a significant number of documents that contain non-deliberative, factual material," such as "financial models and other assessments of the [Enterprises'] financial performance."  Pls.' Mot. 20.  Plaintiffs then contend that "numerous cases hold that technical models, data, and projections of this sort are not deliberative and therefore may not be withheld under the deliberative process privilege."  Id. at 21 (citing Lahr v. Nat'l Transp. Safety Bd., 453 F. Supp. 2d 1153, 1189 (C.D. Cal. 2006); Reilly v. EPA, 429 F. Supp. 2d 335 (D. Mass. 2006); Carter v. U.S. Dep't of Commerce, 186 F. Supp. 2d 1147 (D. Or. 2001)).  The three FOIA cases plaintiffs cite, however, do not stand for that proposition; their reasoning is more nuanced.  In Lahr, the court held that the disclosure of various graphs of simulation data, which may or may not have been the outcomes of various simulations run by a government agency, would not reveal the decision-makers' mental processes under FOIA Exemption 5, which covers the deliberative process privilege.  453 F. Supp. 2d at 1176, 1189.  The court stated that the mere fact that the graphs might be inconsistent with the agency's final conclusion does not provide information about the agency's decision-making process.  Id.  Significantly, however, the court did not conclude that such data could never reveal the deliberative process.

In Reilly, the court held that computer runs—"investigative tools that generate raw data or empirical evidence used by the [agency] in its rulemaking"—over which a government agency asserted the deliberative process privilege under FOIA Exemption 5, were neither deliberative nor part of the deliberative process.  429 F. Supp. 2d at 352-53.  It stated that the information input into the computer run "results from [interagency] research and discussion" and that, therefore, "[r]elease of the requested [computer] runs would, a fortiori, reveal the inputs and, consequently, to some extent the agency's thought process."  Id. at 352.  The court added, however, that "this is true of any investigation by which an agency seeks facts—knowing what questions are asked or which witnesses are interviewed reveals aspects of what the investigator deemed important or worthy of consideration," and that "[i]n a larger sense everything could be considered deliberative."  Id.  Furthermore, the court noted that (1) the agency's version of the model, "with its intrinsic assumptions and information," was already "available for use by the public"; (2) "the internal workings of [the model were] not in any way deliberative"; and (3) "the initial modeling runs were" already made public.  Id. at 353.  Significantly, with respect to the deliberative nature of the computer inputs, the court concluded that, when the requested runs were "viewed on the deliberative/fact continuum, . . . the requested [computer] runs fell 'closer to fact and would not reveal the agency's protectable thought processes.'"  Id. at 352 (quoting Assembly of Cal. v. U.S. Dep't of Commerce, 968 F.2d 916, 922 (9th Cir. 1992) ("Assembly II")).  Thus, not only did the court describe the measure of a document's deliberative nature as residing on a continuum, but the court also did not foreclose the possibility that a document could be deemed purely or primarily deliberative as opposed to factual.

for in camera review, which include some individuals' e-mail domains, the court has identified N.A. Tagoe as an FHFA employee.  However—apart from inferring from the declarations of Messrs. Dickerson and Pearl, that C. Dickerson is Christopher Dickerson and D. Pearl is David Pearl, two of defendant's three declarants—the court cannot identify the affiliations of the remaining individuals.[15]  Second, the documents' deliberative nature is not apparent on their face.  This is so despite the fact that Mr. Dickerson's descriptions of each of the documents, provided above, proclaim their deliberative nature.

In any event, the court notes that even if the documents were clearly deliberative, it would not affect the court's ultimate conclusion that, under the balancing test for the deliberative process privilege, plaintiffs' evidentiary need for the documents outweighs defendant's interest in preventing the documents' disclosure.  Thus, for the purpose of providing an alternative analysis, the court deems the documents to be deliberative.

---

Finally, in Carter, the court held that statistically adjusted data from the 2000 census was not protected deliberative material under FOIA Exemption 5:

> The adjusted data was prepared in anticipation of possible public
> dissemination, did not contribute to the deliberations which
> culminated in the Department's decision to use unadjusted data,
> and contain[ed] factual information which reveals nothing about
> the subjective thought processes involved in deciding whether to
> release unadjusted or adjusted data.  The data sought are numbers.
> It may be that a deliberative process led to the methodology which
> generated the numbers, but the numbers are the result of the
> deliberative process.  They are not the process.

186 F. Supp. 2d at 1157.  The court did not, however, conclude that numbers could never be deliberative:  "[In Assembly II, t]he Court of Appeals . . . agreed that numbers could sometimes derive from a complex set of judgments and demonstrate the elasticity of opinions.  . . .  The Department takes the position that Assembly II was wrongly decided or distinguishable on the facts.  I find Assembly II both controlling and compelling, and that it is not distinguishable."  Id. at 1155, 1157.  Thus, in the case at bar, rather than accept plaintiffs' premise that a bright line distinction should be drawn between documents comprised of graphs and charts as opposed to documents comprised of prose, this court will focus on the guiding principles set forth in the case law, which require reviewing courts to examine each document individually in order to segregate and release factual material when possible, yet protect factual material when necessary to avoid revealing an agency's deliberations or deliberative processes.  See supra Section II.B.2.

[15]  Even if the documents were disclosed to third parties—individuals outside those decision-makers and advisors protected by the privilege—it would not affect the court's ultimate conclusion, set forth below, that plaintiffs' evidentiary need for the documents outweighs defendant's interest in preventing the documents' disclosure.

### c. Balancing Test

Although defendant has not met its burden to demonstrate that the BlackRock documents are protected by the deliberative process privilege, the court will perform an alternative analysis. Recognizing that the privilege is qualified, the court will balance plaintiffs' evidentiary need for the documents against defendant's interest in preserving their confidentiality. In order to do so, the court weighs the five factors described in In re Subpoena.

First, with respect to the relevance of the evidence sought to be protected, the documents relate to the Enterprises' future profitability. See supra Section I.B. Document 1, FHFA 00031960, is a two-page document with two captions: "FNM Loss and Capital Projections Overview" and "FNM Estimated Capital Injection Needed." It contains loss and capital projections for Fannie Mae, produced for both base and stress cases. Document 2, FHFA 00031962, is another two-page document with two captions: "FRE Loss and Capital Projections Overview" and "FRE Estimated Capital Injection Needed." It contains loss and capital projections for Freddie Mac, again produced for both base and stress cases. Document 3, FHFA 00031964, is a six-page document captioned "Approach for Agency Loss and Capital Projections." It describes the approach taken by BlackRock in calculating the figures contained in Documents 1-2. Finally, Document 4, FHFA 00056237, is a seven-page document captioned "Freddie Mac Confidential Capital Review[:] Preliminary Results." It appears to be a precursor to the report appearing in Document 2.

Second, with respect to the availability of other evidence, there is no other source of evidence available to plaintiffs that would similarly inform their understanding of the Enterprises' future profitability.

Third, with respect to the seriousness of the litigation and the issues involved, neither party disputes the importance of the case, both in terms of the damages and equitable relief sought, as well as in terms of the case's implication for litigation and "executive and legislative branch policy repercussions." Dairyland Power I, 77 Fed. Cl. at 342.

Fourth, with respect to the government's role in the litigation, because "the Government is a party to this litigation and is the party that seeks to benefit from the invocation of the deliberative process privilege," its assertion of the "privilege must be carefully scrutinized to ensure that the privilege retains its proper narrow scope." Id.

Fifth, with respect to the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable, it is highly unlikely, given the protective order that is already in place in this case, that any type of disclosure would result in a chilling of frank policy discussions between government employees.

Thus, with respect to Documents 1-4, plaintiffs' evidentiary need for the documents outweighs defendant's interest in preventing the documents' disclosure. In other words, the deliberative process privilege cannot shield the disclosure of the documents in this instance because evidence relating to the Enterprises' future profitability implicates both the court's

jurisdiction and the merits of the case and therefore is discoverable.  The documents must be disclosed.

## 2.  Bank Examination Privilege

Having determined that the BlackRock documents are subject to the bank examination privilege, see supra Section II.B.3, but recognizing that the privilege is qualified, the court must now balance plaintiffs' evidentiary need for the documents against defendant's interest in preserving their confidentiality.  To do so, the court weighs the five factors described in Wultz.  Because those factors are identical to the factors used to analyze whether the deliberative process privilege has been overcome, the court concludes, as it did with respect to the deliberative process privilege, that plaintiffs' evidentiary need for the information outweighs defendant's interest in maintaining the confidentiality of the documents at issue.  Thus, the bank examination privilege cannot shield the documents' disclosure.

## C.  FHFA Presentation on DTA

| Doc. No. | Bates No. | From / To / Date / CC | Description of Document / Privilege(s) Asserted |
|---|---|---|---|
| 5 | FHFA 00092209 | P. Bjarnason to N. Satriano on 12/16/2008 | "FHFA presentation containing predecisional deliberations in relation to its regulatory supervision regarding accounting for deferred tax assets"<br><br>DPP, BEP |

According to Mr. Dickerson, the next document at issue, the FHFA presentation on DTA, "contains predecisional and deliberative statements about FHFA's regulatory supervision of how to account for the GSEs['] deferred tax assets."  Def.'s Resp. A64.  He further claims that "[r]eview of GSE accounting policies is part of the supervision process."  Id.  Finally, he claims:

> Among other things, the redacted portion of the document includes deliberations over the measurement and treatment of the GSEs['] deferred tax assets and evaluates arguments for and against the realization of these assets, based on information that FHFA requested and obtained from the GSEs.  The redacted portion of the document reflects opinions of FHFA personnel, including the Office of the Chief Accountant and Risk Analysis, at a time when FHFA's views and opinions were not fully developed and the issues were still being debated.  The preliminary opinions, recommendations, and deliberations in the document may or may not have been considered in developing any of the policy positions that FHFA adopted.  The redacted material neither represents a complete and accurate record of all of the information considered nor reflects any statement of agency policy or a final decision.

Id.

Mr. Dickerson asserts the deliberative process and bank examination privileges as to Document 5.

## 1. Deliberative Process Privilege

### a. Procedural Requirements

#### i. The Authority to Invoke the Privilege Was Properly Delegated to Mr. Dickerson

As noted above, the authority to invoke the deliberative process privilege was properly delegated to Mr. Dickerson.  See supra Section III.B.1.a.i.

#### ii. Defendant Has Identified With Particularity the Document It Claims Is Privileged

Mr. Dickerson's declaration, which provides a description of the FHFA presentation on DTA, coupled with defendant's privilege log, which (1) identifies the document by its Bates number, (2) provides the document's author and recipient, (3) provides a description of the document, and (4) identifies the specific privileges claimed, allows the court to identify with particularity the document at issue.

#### iii. Defendant Has Not Provided Precise and Certain Reasons for Maintaining the Confidentiality of the Document but, for the Purpose of Providing an Alternative Analysis, the Court Will Proceed as if Defendant Has so Provided

In this instance, Mr. Dickerson did not provide precise and certain reasons for maintaining the confidentiality of the document at issue.  Compare supra Section III.C, with supra Section III.D.  However, the court notes that even if Mr. Dickerson had made the requisite statements, it would not affect the court's ultimate conclusion that, under the balancing test for the deliberative process privilege, plaintiffs' evidentiary need for the document outweighs defendant's interest in preventing the document's disclosure.  Thus, the court will, at this stage of its analysis, proceed as if defendant has met this procedural requirement.

### b. Substantive Requirements

#### i. Defendant Has Shown That the Document Is Predecisional

The decision to approve the Net Worth Sweep was made by Secretary Geithner on August 16, 2012.  See Pls.' Mot. A178.  According to the privilege log, Document 5 was sent by P. Bjarnason to N. Satriano on December 16, 2008.  Although the privilege log does not explicitly state that the document was created on that date, upon its own examination, the court finds that Document 5 is dated October 29, 2008, and thus is predecisional.

**ii.  Defendant Has Not Shown That the Document Is Deliberative but, for the Purpose of Providing an Alternative Analysis, the Court Will Proceed as if Defendant Has Made Such a Showing**

In order to determine whether a document is subject to the deliberative process privilege, the court must be able to discern whether the document reflects the "intra-governmental exchange of thoughts that actively contribute to the agency's decisionmaking process," Texaco P.R., Inc., 60 F.3d at 884-85.  Thus, as to each document, the court must be able to identify the affiliations of the individuals on defendant's privilege log and also discern the document's deliberative nature.

In this case, defendant has not met its burden of showing that the document is deliberative.  First, upon examination of the privilege log and all of the documents submitted for in camera review, the court has been unable to identify the affiliation of P. Bjarnason or N. Satriano.[16]  Second, the document's deliberative nature is not apparent on its face.  This is so despite the fact that Mr. Dickerson's description of the document, provided above, proclaims its deliberative nature.

In any event, the court notes that even if the document was clearly deliberative, it would not affect the court's ultimate conclusion that, under the balancing test for the deliberative process privilege, plaintiffs' evidentiary need for the document outweighs defendant's interest in preventing the document's disclosure.  Thus, for the purpose of providing an alternative analysis, the court deems the document to be deliberative.

**c.  Balancing Test**

Although defendant has not met its burden to demonstrate that the FHFA presentation on DTA is protected by the deliberative process privilege, the court will perform an alternative analysis.  Recognizing that the privilege is qualified, the court will balance plaintiffs' evidentiary need for the document against defendant's interest in preserving its confidentiality.  In order to do so, the court weighs the five factors described in In re Subpoena.

First, with respect to the relevance of the evidence sought to be protected, Document 5, FHFA 00092209, relates to the Enterprises' future profitability.  See supra Section I.B.  The partially redacted sixteen-page document was prepared by the FHFA's Office of the Chief Accountant and is captioned "Accounting for Income Taxes[:]  Deferred Tax Assets."  It is a series of presentation slides prepared for the purpose of explaining "the accounting concepts behind deferred tax assets," describing how the DTA "arise at financial institutions and the Enterprises in particular," and assisting in "addressing supervisory questions about deferred tax assets."

---

[16]  Even if the document was disclosed to third parties—individuals outside those decision-makers and advisors protected by the privilege—it would not affect the court's ultimate conclusion, set forth below, that plaintiffs' evidentiary need for the document outweighs defendant's interest in preventing the document's disclosure.

Second, with respect to the availability of other evidence, there is no other source of evidence available to plaintiffs that would similarly inform their understanding of the Enterprises' future profitability.

Third, with respect to the seriousness of the litigation and the issues involved, neither party disputes the importance of the case, both in terms of the damages and equitable relief sought, as well as in terms of the case's implication for litigation and "executive and legislative branch policy repercussions." Dairyland Power I, 77 Fed. Cl. at 342.

Fourth, with respect to the government's role in the litigation, because "the Government is a party to this litigation and is the party that seeks to benefit from the invocation of the deliberative process privilege," its assertion of the "privilege must be carefully scrutinized to ensure that the privilege retains its proper narrow scope." Id.

Fifth, with respect to the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable, it is highly unlikely, given the protective order that is already in place in this case, that any type of disclosure would result in a chilling of frank policy discussions between government employees.

Thus, with respect to Document 5, plaintiffs' evidentiary need for the information outweighs defendant's interest in preventing the document's disclosure.  In other words, the deliberative process privilege cannot shield the disclosure of the document in this instance because evidence relating to the Enterprises' future profitability implicates both the court's jurisdiction and the merits of the case and therefore is discoverable.  The document must be disclosed.

## 2. Bank Examination Privilege

Having determined that the FHFA presentation on DTA is subject to the bank examination privilege, see supra Section II.B.3, but recognizing that the privilege is qualified, the court must now balance plaintiffs' evidentiary need for the document against defendant's interest in preserving its confidentiality.  To do so, the court weighs the five factors described in Wultz. Because those factors are identical to the factors used to analyze whether the deliberative process privilege has been overcome, the court concludes, as it did with respect to the deliberative process privilege, that plaintiffs' evidentiary need for the information outweighs defendant's interest in maintaining the confidentiality of the document at issue.  Thus, the bank examination privilege cannot shield the document's disclosure.

### D.  Forecasts

| Doc. No. | Bates No. | From / To / Date / CC | Description of Document / Privilege(s) Asserted |
|---|---|---|---|
| 6 | FHFA 00093706 | J. Williams to A. Eberhardt on 9/14/2011 | "Presentation of FHFA Forecast Scenarios prepared by Fannie Mae at FHFA's request"<br><br>DPP, BEP |

| | | CC: N.A. Tagoe | |
|---|---|---|---|
| 7 | FHFA 00100594 | N.A. Tagoe to J. Williams on 9/16/2011 | "FHFA projection of remaining GSE Treasury funding commitment under FHFA stress scenarios containing predecisional deliberations" <br><br> DPP, BEP |

According to Mr. Dickerson, the next group of documents at issue, the forecasts, "provide analysis of various scenarios using assumptions provided by FHFA." Def.'s Resp. A64.  He further claims that "[p]eriodically, as part of the examination process, regulators ask regulated entities to prepare stress tests, which are analyses or simulations designed to determine the ability of the regulated entity to deal with an economic crisis." Id. at A64-65.  Finally, he claims that the documents at issue should not be disclosed:

> The Forecasts contain predecisional and deliberative statements about FHFA's supervision of the Enterprises.  The preliminary opinions, recommendations, and deliberations in these documents may or may not have been considered in developing any of the policy positions that FHFA adopted in its capacity as regulator of the Enterprises.  The withheld material neither represents a complete and accurate record of all of the information considered nor reflects any statement of agency policy or a final decision.

Id. at A65.

Mr. Dickerson asserts the deliberative process and bank examination privileges as to Documents 6-7 and provides individual descriptions of the documents.  He describes Document 6, FHFA 00093706, as:  "[P]rojections run on Fannie Mae's models at FHFA's request, using assumptions or scenarios provided by FHFA.  It examines three scenarios provided by FHFA— Base, Optimistic, and Stress—and analyzes Fannie Mae's projected income, solvency, and credit losses under these scenarios."[17]  Id.  He then describes Document 7, FHFA 00100594, as "a

---

[17]  The cover page to this document provides the following disclaimer:

> These projections do not represent expected outcomes.  They were prepared based on key assumptions provided by FHFA, and are based on numerous assumptions, including assumptions about Fannie Mae's operations, loan performance, macroeconomic conditions, financial market conditions, house prices and government policy.  These projections do not reflect (1) the judgment of management as to how the specific assumptions employed might produce other changes in model assumptions or (2) actions that Fannie Mae might undertake in response to the economic conditions specified in the scenarios.  Actual results could vary significantly from these projections as a result of actual

document prepared by FHFA that analyzes both Enterprises' projected remaining Treasury funding commitment under scenarios determined by FHFA." Id.

## 1. Deliberative Process Privilege

### a. Procedural Requirements

#### i. The Authority to Invoke the Privilege Was Properly Delegated to Mr. Dickerson

As noted above, the authority to invoke the deliberative process privilege was properly delegated to Mr. Dickerson.  See supra Section III.B.1.a.i.

#### ii. Defendant Has Identified With Particularity the Documents It Claims Are Privileged

Mr. Dickerson's declaration, which provides a description of the forecasts, coupled with defendant's privilege log, which (1) identifies the documents by their Bates numbers, (2) provides the documents' authors and recipients, (3) provides a description of the documents, and (4) identifies the specific privileges claimed, allows the court to identify with particularity the documents at issue.

#### iii. Defendant Has Provided Precise and Certain Reasons for Maintaining the Confidentiality of the Documents

Based on Mr. Dickerson's declaration, which provides precise and certain reasons for maintaining the confidentiality of the documents at issue, see id. at A63-64, the court can balance the government's interest in maintaining that confidentiality with plaintiffs' evidentiary need for the documents' disclosure.

### b. Substantive Requirements

#### i. Defendant Has Not Shown That All of the Documents Are Predecisional but, for the Purpose of Providing an Alternative Analysis, the Court Will Proceed as if Defendant Has Made Such a Showing

The decision to approve the Net Worth Sweep was made by Secretary Geithner on August 16, 2012.  See Pls.' Mot. A178.  According to the privilege log, Document 6 was sent by J. Williams to A. Eberhardt, with a copy to N.A. Tagoe, on September 14, 2011.  Although the privilege log does not explicitly state that the document was created on that date, upon its own examination, the court finds that Document 6 is dated September 2011 and thus is predecisional.

---

outcomes differing from the assumptions used or other factors.
These projections were not subject to the review and controls
typically associated with the preparation of corporate forecasts as
the projections were intended for a different purpose.

Doc. 6, FHFA 00093706 at 1.

The privilege log also indicates that Document 7 was sent by N.A. Tagoe to J. Williams on September 16, 2011.  The privilege log does not explicitly state that the document was created on that date, and upon its own examination, the court finds that Document 7 is undated.  Therefore, defendant has not established that Document 7 is predecisional.  However, the court notes that even if the document was clearly predecisional, it would not affect the court's ultimate conclusion that, under the balancing test for the deliberative process privilege, plaintiffs' evidentiary need for the document outweighs defendant's interest in preventing the document's disclosure.  Thus, for the purpose of providing an alternative analysis, the court deems all of the documents to be predecisional.

**ii.  Defendant Has Not Shown That the Documents Are Deliberative but, for the Purpose of Providing an Alternative Analysis, the Court Will Proceed as if Defendant Has Made Such a Showing**

In order to determine whether a document is subject to the deliberative process privilege, the court must be able to discern whether the document reflects the "intra-governmental exchange of thoughts that actively contribute to the agency's decisionmaking process," Texaco P.R., Inc., 60 F.3d at 884-85.  Thus, as to each document, the court must be able to identify the affiliations of the individuals on defendant's privilege log and also discern the document's deliberative nature.

In this case, defendant has not met its burden of showing that the documents are deliberative.  Upon examination of the privilege log and all of the documents submitted for in camera review, which include some individuals' e-mail domains, the court has identified J. Williams and N.A. Tagoe as FHFA employees, and A. Eberhardt as a Grant Thornton employee.  However, the documents' deliberative nature is not apparent on their face.  This is so despite the fact that Mr. Dickerson's descriptions of each of the documents, provided above, proclaim their deliberative nature.

In any event, the court notes that even if the documents were clearly deliberative, it would not affect the court's ultimate conclusion that, under the balancing test for the deliberative process privilege, plaintiffs' evidentiary need for the documents outweighs defendant's interest in preventing the documents' disclosure.  Thus, for the purpose of providing an alternative analysis, the court deems the documents to be deliberative.

**c.  Balancing Test**

Although defendant has not met its burden to demonstrate that the forecasts are protected by the deliberative process privilege, the court will perform an alternative analysis.  Recognizing that the privilege is qualified, the court will balance plaintiffs' evidentiary need for the documents against defendant's interest in preserving their confidentiality.  In order to do so, the court weighs the five factors described in In re Subpoena.

First, with respect to the relevance of the evidence sought to be protected, the documents relate to the Enterprises' future profitability and future solvency.  See supra Section I.B.

Document 6, FHFA 00093706, is an unnumbered thirty-page document prepared by Fannie Mae, at FHFA's request, captioned "FHFA Forecast Scenarios."  It analyzes Fannie Mae's projected income, solvency, and credit losses under base, optimistic, and stress scenarios.  Document 7, FHFA 00100594, is a one-page document captioned "Remaining Treasury Funding Commitment."  It analyzes both Fannie Mae's and Freddie Mac's projected remaining Treasury Department funding commitment under various scenarios.

Second, with respect to the availability of other evidence, there is no other source of evidence available to plaintiffs that would similarly inform their understanding of the Enterprises' future profitability and future solvency.

Third, with respect to the seriousness of the litigation and the issues involved, neither party disputes the importance of the case, both in terms of the damages and equitable relief sought, as well as in terms of the case's implication for litigation and "executive and legislative branch policy repercussions."  Dairyland Power I, 77 Fed. Cl. at 342.

Fourth, with respect to the government's role in the litigation, because "the Government is a party to this litigation and is the party that seeks to benefit from the invocation of the deliberative process privilege," its assertion of the "privilege must be carefully scrutinized to ensure that the privilege retains its proper narrow scope."  Id.

Fifth, with respect to the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable, it is highly unlikely, given the protective order that is already in place in this case, that any type of disclosure would result in a chilling of frank policy discussions between government employees.

Thus, with respect to Document 6-7, plaintiffs' evidentiary need for the information outweighs defendant's interest in preventing the documents' disclosure.  In other words, the deliberative process privilege cannot shield the disclosure of the documents in this instance because evidence relating to the Enterprises' future profitability and solvency implicates both the court's jurisdiction and the merits of the case and therefore is discoverable.  The documents must be disclosed.

## 2.  Bank Examination Privilege

Having determined that the forecasts are subject to the bank examination privilege, see supra Section II.B.3, but recognizing that the privilege is qualified, the court must now balance plaintiffs' evidentiary need for the documents against defendant's interest in preserving their confidentiality.  To do so, the court weighs the five factors described in Wultz.  Because those factors are identical to the factors used to analyze whether the deliberative process privilege has been overcome, the court concludes, as it did with respect to the deliberative process privilege, that plaintiffs' evidentiary need for the information outweighs defendant's interest in maintaining the confidentiality of the documents at issue.  Thus, the bank examination privilege cannot shield the documents' disclosure.

### E.  Risk Assessment Memoranda

| Doc. No. | Bates No. | From / To / Date / CC | Description of Document / Privilege(s) Asserted |
|---|---|---|---|
| 8 | FHFA 00096631 | J. Williams to N.A. Tagoe on 6/28/2012  CC: P. Calhoun | "FHFA Risk Assessment Memorandum prepared in connection with FHFA's regulatory supervision regarding Fannie Mae's 4Q earnings"  BEP |
| 9 | FHFA 00096634 | J. Williams to N.A. Tagoe on 6/28/2012  CC: P. Calhoun | "FHFA Risk Assessment Memorandum prepared in connection with FHFA's regulatory supervision regarding the solvency of Fannie Mae"  BEP |
| 10 | FHFA 00096636 | J. Williams to N.A. Tagoe on 6/28/2012  CC: P. Calhoun | "FHFA Risk Assessment Memorandum prepared in connection with FHFA's regulatory supervision regarding Freddie Mac's 4Q earnings"  BEP |
| 11 | FHFA 00096638 | J. Williams to N.A. Tagoe on 6/28/2012  CC: P. Calhoun | "FHFA Risk Assessment Memorandum prepared in connection with FHFA's regulatory supervision regarding the solvency of Freddie Mac"  BEP |

According to Mr. Dickerson, the next group of documents at issue, the risk assessment memoranda, "were prepared by the Office of Financial Analysis, Modeling, and Simulations" as "part of the supervisory process to determine the safety and soundness of the GSEs."  Def.'s Resp. A65.  He further claims that the memoranda "contain analyses and opinions regarding the Enterprises' outlook for earnings and solvency as of March 31, 2012."  Id.

Mr. Dickerson asserts the bank examination privilege as to Documents 8-11 and provides individual descriptions of the documents.  Specifically, he states that Document 8, FHFA 00096631, "discusses Fannie Mae's earnings," id.; Document 9, FHFA 00096634 "discusses Fannie Mae's solvency," id. at A65-66; Document 10, FHFA 00096636, "discusses Freddie Mac's earnings," id. at A66; and Document 11, FHFA 00096638, "discusses Freddie Mac's solvency," id.

Having determined that the risk assessment memoranda are protected by the bank examination privilege, see supra Section II.B.3, but recognizing that the privilege is qualified, the court must balance plaintiffs' evidentiary need for the documents against defendant's interest in

preserving their confidentiality.  In order to do so, the court weighs the five factors described in Wultz.

First, with respect to the relevance of the evidence sought to be protected, the documents relate to the Enterprises' future profitability and future solvency.  See supra Section I.B. Document 8, FHFA 00096631, is a three-page document prepared by FHFA employees captioned "Risk Assessment Memorandum."  Document 9, FHFA 00096634, Document 10, FHFA 00096636, and Document 11, FHFA 00096638, are each two-page documents prepared by FHFA employees captioned "Risk Assessment Memorandum."  Documents 8 and 10 address the Enterprises' earnings and Documents 9 and 11 address the Enterprises' solvency.

Second, with respect to the availability of other evidence, there is no other source of evidence available to plaintiffs that would similarly inform their understanding of the Enterprises' future profitability and future solvency.

Third, with respect to the seriousness of the litigation and the issues involved, neither party disputes the importance of the case, both in terms of the damages and equitable relief sought, as well as in terms of the case's implication for litigation and "executive and legislative branch policy repercussions."  Dairyland Power I, 77 Fed. Cl. at 342.

Fourth, with respect to the government's role in the litigation, because "the Government is a party to this litigation and is the party that seeks to benefit from the invocation of the deliberative process privilege," its assertion of the "privilege must be carefully scrutinized to ensure that the privilege retains its proper narrow scope."  Id.

Fifth, with respect to the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable, it is highly unlikely, given the protective order that is already in place in this case, that any type of disclosure would result in a chilling of frank policy discussions between government employees.

Thus, with respect to Documents 8-11, plaintiffs' evidentiary need for the information outweighs defendant's interest in preventing the documents' disclosure.  In other words, the bank examination privilege cannot shield the disclosure of the documents in this instance because evidence relating to the Enterprises' future profitability and future solvency implicates both the court's jurisdiction and the merits of the case and therefore is discoverable.  The documents must be disclosed.

## F. DeLeo E-mail

| Doc. No. | Bates No. | From / To / Date / CC | Description of Document / Privilege(s) Asserted |
|---|---|---|---|
| 12 | FHFA 00031520 | W. DeLeo to J. Lockhart on 10/29/2008 | "RM: Internal communication among senior FHFA staff containing predecisional deliberations regarding response to a media story on deferred tax assets of the GSEs and management delegations by the conservator" |

| | | CC: E. DeMarco<br><br>Also: S. Mullin, C. Dickerson, P. Brereton, C. Russell, A. Pollard, and A. Lakroune | DPP |
|---|---|---|---|

According to Mr. Dickerson, the DeLeo e-mail "contains predecisional and deliberative statements about how FHFA should respond to a press inquiry about the treatment of deferred tax assets in October 2008." Def.'s Resp. A66. He claims that the document at issue should not be disclosed:

> Based on my review of the e-mail, I have determined that the production of the redacted portions of the Email would inhibit the frank and honest discussion of policy matters, and thus would adversely affect the quality of FHFA's decisions and policies. The reluctance of FHFA personnel to share their candid opinions, and the bases for them, would restrict FHFA's ability to formulate sound policy and diminish the benefits of future efforts to help restore confidence in the Enterprises and avoid the systemic risk that can directly destabilize the national housing finance market. This concern is particularly acute as redacted portions of the Email relate to sensitive discussions regarding FHFA's policies with respect to the ongoing and future operations of the Enterprises.

Id.

Mr. Dickerson asserts the deliberative process privilege as to Document 12.

### 1. Procedural Requirements

### a. The Authority to Invoke the Privilege Was Properly Delegated to Mr. Dickerson

As noted above, the authority to invoke the deliberative process privilege was properly delegated to Mr. Dickerson. See supra Section III.B.1.a.i.

### b. Defendant Has Identified With Particularity the Document It Claims Is Privileged

Mr. Dickerson's declaration, which provides a description of the DeLeo e-mail, coupled with defendant's privilege log, which (1) identifies the document by its Bates number, (2) provides the document's authors and recipients, (3) provides a description of the document, and (4) identifies the specific privilege claimed, allows the court to identify with particularity the document at issue.

### c. Defendant Has Provided Precise and Certain Reasons for Maintaining the Confidentiality of the Document

Based on Mr. Dickerson's declaration, which provides precise and certain reasons for maintaining the confidentiality of the document at issue, see Def.'s Resp. A66, the court can balance the government's interest in maintaining that confidentiality with plaintiffs' evidentiary need for the document's disclosure.

### 2. Substantive Requirements

### a. Defendant Has Shown That the Document Is Predecisional

The decision to approve the Net Worth Sweep was made by Secretary Geithner on August 16, 2012.  See Pls.' Mot. A178.  According to the privilege log, Document 12 was sent by W. DeLeo to J. Lockhart, with copies to E. DeMarco, S. Mullin, C. Dickerson, P. Brereton, C. Russell, A. Pollard, and A. Lakroune, on October 29, 2008.  Although the privilege log does not explicitly state that the document was created on that date, upon its own examination, the court finds that Document 12 is dated October 29, 2008, and thus is predecisional.

### b. Defendant Has Not Shown That the Document Is Deliberative but, for the Purpose of Providing an Alternative Analysis, the Court Will Proceed as if Defendant Has Made Such a Showing

In order to determine whether a document is subject to the deliberative process privilege, the court must be able to discern whether the document reflects the "intra-governmental exchange of thoughts that actively contribute to the agency's decisionmaking process," Texaco P.R., Inc., 60 F.3d at 884-85.  Thus, as to each document, the court must be able to identify the affiliations of the individuals on defendant's privilege log and also discern the document's deliberative nature.

In this case, defendant has not met its burden of showing that the documents are deliberative.  Upon examination of the privilege log and all of the documents submitted for in camera review, which include some individuals' e-mail domains, the court has identified J. Lockhart and E. DeMarco as FHFA employees.  However, the document's deliberative nature is not apparent on its face.  This is so despite the fact that Mr. Dickerson's description of the document, provided above, proclaims its deliberative nature.

In any event, the court notes that even if the document was clearly deliberative, it would not affect the court's ultimate conclusion that, under the balancing test for the deliberative process privilege, plaintiffs' evidentiary need for the document outweighs defendant's interest in preventing the document's disclosure.  Thus, for the purpose of providing an alternative analysis, the court deems the document to be deliberative.

### 3. Balancing Test

Although defendant has not met its burden to demonstrate that the De-Leo e-mail document is protected by the deliberative process privilege, the court will perform an alternative analysis.  Recognizing that the privilege is qualified, the court will balance plaintiffs' evidentiary need for the document against defendant's interest in preserving its confidentiality.  In order to do so, the court weighs the five factors described in In re Subpoena.

First, with respect to the relevance of the evidence sought to be protected, the document relates to the Enterprises' future profitability.  See supra Section I.B.  Document 12, FHFA 00031520, is a partially redacted unnumbered three-page e-mail chain among FHFA employees that discusses agency policy with regard to the Enterprises' accounting practices.

Second, with respect to the availability of other evidence, there is no other source of evidence available to plaintiffs that would similarly inform their understanding of the Enterprises' future profitability.

Third, with respect to the seriousness of the litigation and the issues involved, neither party disputes the importance of the case, both in terms of the damages and equitable relief sought, as well as in terms of the case's implication for litigation and "executive and legislative branch policy repercussions."  Dairyland Power I, 77 Fed. Cl. at 342.

Fourth, with respect to the government's role in the litigation, because "the Government is a party to this litigation and is the party that seeks to benefit from the invocation of the deliberative process privilege," its assertion of the "privilege must be carefully scrutinized to ensure that the privilege retains its proper narrow scope."  Id.

Fifth, with respect to the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable, it is highly unlikely, given the protective order that is already in place in this case, that any type of disclosure would result in a chilling of frank policy discussions between government employees.

Thus, with respect to Document 12, plaintiffs' evidentiary need for the information outweighs defendant's interest in preventing the document's disclosure.  In other words, the deliberative process privilege cannot shield the disclosure of the document in this instance because evidence relating to the Enterprises' future profitability implicates both the court's jurisdiction and the merits of the case and therefore is discoverable.  The document must be disclosed.

### G.  Housing Finance Reform

| Doc. No. | Bates No. | From / To / Date / CC | Description of Document / Privilege(s) Asserted |
|---|---|---|---|
| 13 | UST 00389678 | J. Foster to S. Valverde and | "Draft memorandum for Secretary containing predecisional deliberations related to mortgage finance market reform proposals" |

| | | M. Fikre on 1/31/2012 | DPP |
|---|---|---|---|
| 14 | UST 00490551 | S. Miller to B. Mlynarczyk and M. Stegman on 7/30/2012 | "Draft policy paper prepared by Treasury staff containing predecisional deliberations regarding housing finance reform"<br><br>DPP |
| 15 | UST 00500982 | M. Stegman, T. Bowler, J. Parrott, B. Deese, M. Miller, and S. Valverde to M. Stegman, T. Bowler, J. Parrott, B. Deese, M. Miller, J. Eberly, and Exec Sec Staff on 5/2/2012<br><br>CC: M. Patterson, N. Wolin, J. LeCompte, J. Parrott, M. Miller, and M. Stegman | "Memorandum reflecting confidential communication from senior White House advisors to the President regarding housing policy ideas and initiatives"<br><br>DPP, Presidential Communications Privilege ("PCP") |
| 16 | UST 00513480 | J. Foster to J. Foster on 5/21/2012 | "Draft policy document prepared by Treasury staff containing predecisional deliberations regarding housing finance reform"<br><br>DPP |
| 17 | UST 00515290 | J. Parrott and J. Foster to J. Parrot and J. Foster on 7/29/2011 | "Emails reflecting the exchange of information, views, and advice between Treasury officials and White House staff with broad and significant responsibility for investigating and formulating advice for consideration and direction by the President regarding housing finance issues"<br><br>DPP, PCP |

| 18 | UST 00518402 | B. Hester to M. Miller on 2/21/2012  CC: S. Lee and A. Johnson | "Draft memorandum for Secretary containing predecisional deliberations related to policy implications of proposed housing finance legislation"  DPP |
|----|---|---|---|
| 19 | UST 00521902 | M. Stegman on 6/18/2012 | "Memorandum reflecting confidential communication from senior White House advisors to the President regarding housing policy ideas and initiatives"  DPP, PCP |
| 20 | UST 00544897 | J. Foster to J. Foster on 6/5/2012 | "Draft policy paper containing predecisional deliberations concerning housing finance reform"  DPP |
| 21 | UST 00550441 | G. Sperling, T. Geithner, N. Wolin, and M. Miller to T. Geithner, N. Wolin, M. Stegman, S. Gandhi, A. Gerety, B. Hester, M. Miller, C. Gibson, C. Amir-Mokri, and S. Chisolm on 3/12/2012  CC: B. Deese | "Email reflecting the exchange of information, views, and advice between Treasury officials and senior White House advisors for consideration and direction by the President regarding housing finance issues"  PCP |

This next group of documents concerns housing finance reform.  According to Mr. Pearl, since the financial crisis, the Treasury Department has been working with other agencies and congressional staff to develop proposals and draft legislation targeted at reforming the housing finance system.  Def.'s Resp. A71.  He further claims that the documents at issue should not be disclosed:

> Requiring disclosure of these deliberative materials would have a chilling effect on Treasury's housing finance reform work.  If Treasury officials and staff know that their deliberations on housing finance reform will be disclosed to litigation adversaries, they are unlikely to feel at liberty to offer their candid opinions and fully engage in the policy development process.  Disclosure of the

> details of this evolving policymaking process would inhibit
> Treasury's ability to engage in ongoing policy deliberations
> resulting in a profound negative impact on such deliberations. As
> Treasury continues its efforts to help bring about comprehensive
> reform of the housing finance system, it is critical that we preserve
> the ability to have robust discussions in which we are able to
> explore sensitive and important policy decisions from multiple
> angles.

Id. at A72.

Mr. Pearl asserts the deliberative process privilege as to Documents 13-20 and provides individual descriptions of the documents. He describes Document 13, UST 00389678, as: "Draft of memorandum for Secretary of the Treasury Timothy Geithner prepared by Treasury officials and staff regarding proposals for housing finance reform. The document articulates principles to be pursued in working on potential reforms of the mortgage finance system. The documents reflect predecisional deliberations regarding such reforms." Id. Mr. Pearl then describes Document 14, UST 00490551, Document 16, UST 00513480, and Document 20, UST 00544897, as: "Drafts of policy papers prepared by Treasury officials and staff regarding housing finance reform. The documents contain discussions of a potential comprehensive housing finance reform plan. The documents reflect predecisional deliberations regarding the proposed plan." Id. Next, he describes Document 15, UST 00500982, and Document 19, UST 00521902, as: "Drafts of memoranda for the President regarding housing finance reform. Treasury officials and staff participated in preparing the draft memoranda. The documents reflect potential policies to pursue and contain Treasury staff recommendations concerning the options presented. The documents reflect predecisional deliberations regarding such policies." Id. Mr. Pearl then describes Document 17, UST 00515290, as: "Correspondence between Treasury staff and a White House advisor regarding housing finance reform. The email chain reflects discussion of potential policies to pursue. The documents reflect predecisional deliberations regarding such policies." Id. Finally, Mr. Pearl describes Document 18, UST 00518402, as: "Draft of memorandum for the Secretary prepared by Treasury officials and staff regarding policy implications of proposed housing finance legislation. The document contains Treasury staff views on proposed housing finance bills. The documents reflect predecisional deliberations regarding the proposed legislation." Id.

Mr. McQuaid asserts the presidential communications privilege as to Documents 15, 17, 19, and 21. McQuaid Decl. 2. Generally, he describes the documents as "draft memoranda and electronic mail communications that were authored or solicited and received by an immediate presidential advisor or his staff who had broad and significant responsibility for investigating and formulating advice to be given to the President with respect to decisionmaking on the subject of housing reform policy." Id. He also provides individual descriptions of the documents. Document 15, UST 00500982, is described as:

> a draft memorandum concerning housing policy ideas and
> initiatives, which was attached to an email from Brian Deese, the
> Deputy Director of the National Economic Council, to various

senior Treasury staff requesting any final comments from
Treasury, and which was prepared by James Parrott, a senior
advisor to the National Economic Council, and contains input from
Gene Sperling, the Director of the National Economic Council, and
his staff, as well as from various senior housing policy staff at
Treasury.

Id. at 2-3.  Document 17, UST 00515290, is described as "portions of an electronic mail
conversation between James Parrott, a senior advisor to the National Economic Council, and
Treasury staff discussing advice regarding White House housing policy reform." Id. at 3.
Document 19, UST 00521902, is described as "a draft memorandum assigned a file name
including, in part, 'POTUS_Draft,' bearing the heading 'THE WHITE HOUSE,' and
recommending various near- and long-term housing policy reform initiatives." Id.  Finally,
Document No. 21, UST 00550441, is described as "portions of an email from Gene Sperling, the
Director of the National Economic Council, to Treasury Secretary Timothy Geithner, and
copying Brian Deese, concerning the timing of upcoming housing initiatives."[18] Id.

### 1. Deliberative Process Privilege

### a. Procedural Requirements

### i. The Authority to Invoke the Privilege Was Properly Delegated to Mr. Pearl

With respect to Mr. Pearl's authority to invoke the deliberative process privilege, the
chain of delegation from Treasury Secretary Lew to Mr. Pearl is clear.  See Def.'s Resp. A86.  In
addition, Mr. Pearl's position as Executive Secretary of the Treasury and familiarity with this
litigation make him well-suited to the task of determining whether or not the deliberative process
privilege is applicable to the documents at issue.  Thus, the authority to invoke the deliberative
process privilege was properly delegated to Mr. Pearl.

### ii. Defendant Has Identified With Particularity the Documents It Claims Are Privileged

Mr. Pearl's declaration, which provides a description of the housing finance reform
documents, coupled with defendant's privilege log, which (1) identifies the documents by their
Bates numbers, (2) provides the documents' authors and recipients, (3) provides a description of
the documents, and (4) identifies the specific privileges claimed, allows the court to identify with
particularity the documents at issue.

---

[18]  Apart from being referenced by Mr. McQuaid in his declaration in support of
defendant's assertion of the presidential communications privilege, Document 21 is not
addressed in defendant's response to plaintiffs' motion to compel, save for one reference in a list
of Bates numbers appearing at the bottom of the first of two pages of an October 21, 2015 e-mail
from plaintiffs' counsel to government counsel.  See Def.'s Resp. A6.  Because the document
addresses the issue of housing finance reform, the court has placed it in this category.

### iii.  Defendant Has Provided Precise and Certain Reasons for Maintaining the Confidentiality of the Documents

Based on Mr. Pearl's declaration, which provides precise and certain reasons for maintaining the confidentiality of the documents at issue, see Def.'s Resp. A72, the court can balance the government's interest in maintaining that confidentiality with plaintiffs' evidentiary need for the documents' disclosure.

### b.  Substantive Requirements

### i.  Defendant Has Not Shown That All of the Documents Are Predecisional but, for the Purpose of Providing an Alternative Analysis, the Court Will Proceed as if Defendant Has Made Such a Showing

The decision to approve the Net Worth Sweep was made by Secretary Geithner on August 16, 2012.  See Pls.' Mot. A178.  According to the privilege log, Document 13 was sent by J. Foster to S. Valverde and M. Fikre on January 31, 2012.  Although the privilege log does not explicitly state that the document was created on that date, upon its own examination, the court finds that Document 13 is dated January 25, 2012, and thus is predecisional.

The privilege log also indicates that Document 14 was sent by S. Miller to B. Mlynarczyk and M. Stegman on July 30, 2012.  The privilege log does not explicitly state that the document was created on that date, and upon its own examination, the court finds that Document 14 is undated.  Therefore, defendant has not established that this document is predecisional.  However, the court notes that even if the document was clearly predecisional, it would not affect the court's ultimate conclusion that, under the balancing test for the deliberative process privilege, plaintiffs' evidentiary need for the document outweighs defendant's interest in preventing the document's disclosure.  Thus, for the purpose of providing an alternative analysis, the court deems this document to be predecisional.

The privilege log further provides that Document 15 was sent by M. Stegman, T. Bowler, J. Parrott, B. Deese, M. Miller, and S. Valverde to M. Stegman, T. Bowler, J. Parrott, B. Deese, M. Miller, J. Eberly, and Executive Secretary Staff, with copies to M. Patterson, N. Wolin, J. LeCompte, J. Parrott, M. Miller, and M. Stegman, on May 2, 2012.  The privilege log does not explicitly state that the document was created on that date, and upon its own examination, the court finds that Document 15 is undated.  Therefore, defendant has not established that this document is predecisional.  However, the court notes that even if the document was clearly predecisional, it would not affect the court's ultimate conclusion that, under the balancing test for the deliberative process privilege, plaintiffs' evidentiary need for the document outweighs defendant's interest in preventing the document's disclosure.  Thus, for the purpose of providing an alternative analysis, the court deems this document to be predecisional.

The privilege log next indicates that Document 16 was sent by J. Foster to J. Foster on May 21, 2012.  The privilege log does not explicitly state that the document was created on that date, and upon its own examination, the court finds that Document 16 is undated.  Therefore, defendant has not established that this document is predecisional.  However, the court notes that

even if the document was clearly predecisional, it would not affect the court's ultimate conclusion that, under the balancing test for the deliberative process privilege, plaintiffs' evidentiary need for the document outweighs defendant's interest in preventing the document's disclosure. Thus, for the purpose of providing an alternative analysis, the court deems this document to be predecisional.

The privilege log also states that Document 17 was sent by J. Parrott and J. Foster to J. Parrot and J. Foster on July 29, 2011. Although the privilege log does not explicitly state that the document was created on that date, upon its own examination, the court finds that Document 17 is dated July 29, 2011, and thus is predecisional.

The privilege log then provides that Document 18 was sent by B. Hester to M. Miller, with copies to S. Lee and A. Johnson, on February 21, 2012. Although the privilege log does not explicitly state that the document was created on that date, upon its own examination, the court finds that Document 18 is dated February 20, 2012, and thus is predecisional.

The privilege log further indicates that Document 19 was sent by M. Stegman on June 18, 2012. Although the privilege log does not explicitly state that the document was created on that date, upon its own examination, the court finds that Document 19 is dated June 2012, and thus is predecisional.

Finally, the privilege log states that Document 20 was sent by J. Foster to J. Foster on June 5, 2012. The privilege log does not explicitly state that the document was created on that date, and upon its own examination, the court finds that Document 20 is undated. Therefore, defendant has not established that this document is predecisional. However, the court notes that even if the document was clearly predecisional, it would not affect the court's ultimate conclusion that, under the balancing test for the deliberative process privilege, plaintiffs' evidentiary need for the document outweighs defendant's interest in preventing the document's disclosure. Thus, for the purpose of providing an alternative analysis, the court deems this document to be predecisional.

## ii. Defendant Has Not Shown That the Documents Are Deliberative but, for the Purpose of Providing an Alternative Analysis, the Court Will Proceed as if Defendant Has Made Such a Showing

In order to determine whether a document is subject to the deliberative process privilege, the court must be able to discern whether the document reflects the "intra-governmental exchange of thoughts that actively contribute to the agency's decisionmaking process," Texaco P.R., Inc., 60 F.3d at 884-85. Thus, as to each document, the court must be able to identify the affiliations of the individuals on defendant's privilege log and also discern the document's deliberative nature.

In this case, defendant has not met its burden of showing that the documents are deliberative. Upon examination of the privilege log and all of the documents submitted for in camera review, which include some individuals' e-mail domains, the court has identified the following individuals as Treasury Department employees: J. Foster, S. Valverde, M. Fikre, S.

Miller, B. Mlynarczyk, M. Stegman, T. Bowler, M. Miller, J. Eberly, M. Patterson, N. Wolin, J. LeCompte, and B. Hester.  In addition, the court has identified J. Parrott and B. Deese as employees of the White House Economic Council.  However, the documents' deliberative nature is not apparent on their face.  This is so despite the fact that Mr. Pearl's descriptions of each of the documents, provided above, proclaim their deliberative nature.

In any event, the court notes that even if the documents were clearly deliberative, it would not affect the court's ultimate conclusion that, under the balancing test for the deliberative process privilege, plaintiffs' evidentiary need for the documents outweighs defendant's interest in preventing the documents' disclosure.  Thus, for the purpose of providing an alternative analysis, the court deems the documents to be deliberative.

### c.  Balancing Test

Although defendant has not met its burden to demonstrate that the housing finance reform documents are protected by the deliberative process privilege, the court will perform an alternative analysis.  Recognizing that the privilege is qualified, the court will balance plaintiffs' evidentiary need for the documents against defendant's interest in preserving their confidentiality.  In order to do so, the court weighs the five factors described in In re Subpoena.

First, with respect to the relevance of the evidence sought to be protected, the documents relate to various issues regarding which the court has permitted discovery.  See supra Section I.B.  Document 13, UST 00389678, is a fifteen-page document prepared by the Treasury Department captioned "Information Memorandum for Secretary Geithner."  The document, the [. . .]—it relates to the Enterprises' future profitability and the reasonableness of plaintiffs' expectations regarding the Enterprises' future profitability.  Document 14, UST 00490551, is a fifty-one-page document prepared by the Treasury Department, which [. . .]—it relates to the Enterprises' future profitability, the lifespan of the conservatorships, and the reasonableness of plaintiffs' expectations regarding the Enterprises' future profitability.  Document 15, UST 00500982, is a nine-page document captioned "GSE Reform."  The document was sent by senior White House advisors to the President and consists of advice on reforming the Enterprises—it relates to the Enterprises' future profitability and the lifespan of the conservatorships.  Document 16, UST 00513480, is an unnumbered twelve-page document [. . .][19]  The document was prepared by a Treasury Department employee, [. . .]—it relates to the Enterprises' future profitability and the reasonableness of plaintiffs' expectations regarding the Enterprises' future profitability.  Document 17, UST 00515290, is a partially redacted two-page e-mail chain among Treasury Department and White House employees.  [. . .]—it relates to the lifespan of the conservatorships.  Document 18, UST 00518402, is a seven-page document prepared by the Treasury Department captioned "Information Memorandum for Secretary Geithner."  [. . .]—it relates to the Enterprises' future profitability, the lifespan of the conservatorships, and the reasonableness of plaintiffs' expectations regarding the Enterprises' future profitability.  Document 19, UST 00521902, is an unnumbered eleven-page document that is a draft of a memorandum from the President's senior economic advisors—it relates to the lifespan of the conservatorships and the relationship between the FHFA and the Treasury Department.

---

[19]  The last page of the document is blank.

Document 20, UST 00544897, is an unnumbered three-page document that was prepared by a Treasury Department employee, [. . .]—it relates to the Enterprises' future profitability and to the reasonableness of plaintiffs' expectations regarding the Enterprises' future profitability.

Second, with respect to the availability of other evidence, there is no other source of evidence available to plaintiffs that would similarly inform their understanding of the Enterprises' future profitability, the reasonableness of plaintiffs' expectations regarding the Enterprises' future profitability, the lifespan of the conservatorships, and the relationship between the FHFA and the Treasury Department.

Third, with respect to the seriousness of the litigation and the issues involved, neither party disputes the importance of the case, both in terms of the damages and equitable relief sought, as well as in terms of the case's implication for litigation and "executive and legislative branch policy repercussions." Dairyland Power I, 77 Fed. Cl. at 342.

Fourth, with respect to the government's role in the litigation, because "the Government is a party to this litigation and is the party that seeks to benefit from the invocation of the deliberative process privilege," its assertion of the "privilege must be carefully scrutinized to ensure that the privilege retains its proper narrow scope." Id.

Fifth, with respect to the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable, it is highly unlikely, given the protective order that is already in place in this case, that any type of disclosure would result in a chilling of frank policy discussions between government employees.

Thus, with respect to Documents 13-20, plaintiffs' evidentiary need for the information outweighs defendant's interest in preventing the documents' disclosure. In other words, the deliberative process privilege cannot shield the disclosure of the documents in this instance because evidence relating to the Enterprises' future profitability, the reasonableness of plaintiffs' expectations regarding the Enterprises' future profitability, the lifespan of the conservatorships, and the relationship between the FHFA and the Treasury Department implicates both the court's jurisdiction and the merits of the case and therefore is discoverable. The documents must be disclosed.

## 2. Presidential Communications Privilege

Defendant also asserts the presidential communications privilege with respect to some of the housing finance reform documents. Document 15, UST 00500982, is a draft memorandum regarding housing reform policy, which, according to Mr. McQuaid, was attached to an e-mail from the Deputy Director of the National Economic Council (Brian Deese) to various senior Treasury Department staff requesting final comments. Mr. McQuaid further states that it was prepared by a senior advisor to the National Economic Council (James Parrott) with input from the Director of the National Economic Council (Gene Sperling) and his staff, as well as from various senior housing policy staff at the Treasury Department. The court cannot independently verify either the authors or recipients of the draft document.

The redacted portion of Document 17, UST 00515290, is part of an e-mail exchange between a senior advisor to the National Economic Council (James Parrott) and a Treasury Department employee (Jeff Foster).  The court cannot ascertain Mr. Foster's title.

Document 19, UST 00521902, is a draft memorandum captioned "POTUS Draft."  The document, which discusses housing reform policy, bears the heading "THE WHITE HOUSE."  According to Mr. McQuaid, the document was sent by the Director of the National Economic Council (Gene Sperling).  The court cannot independently verify that the document was sent, let alone drafted by, Mr. Sperling.

The redacted portion of Document 21, UST 00550441, is part of an e-mail from the Director of the National Economic Council (Gene Sperling) to the Treasury Secretary (Timothy Geithner), with a copy to the Deputy Director of the National Economic Council (Brian Deese).  It is subject to the presidential communications privilege because it consists of a deliberative communication between three of the President's senior staff in the course of fulfilling their roles as advisors on the timing of housing reform.

Defendant has not met its burden of establishing that Documents 15, 17, and 19 are protected by the presidential communications privilege.  However, even if the documents were clearly protected by the privilege, it would not affect the court's ultimate conclusion that plaintiffs have established a need for them.  To overcome an assertion of the presidential communications privilege, a plaintiff must show that the evidence at issue is both important and unavailable from another source.  See In re Sealed Case, 121 F.3d at 757.  In this case, that need is overwhelming, especially with respect to this subset of withheld documents.  As noted above, the gravamen of plaintiffs' complaint is that their property—the dividends due on their noncumulative preferred government stock and their right to receive a liquidation upon the Enterprises' dissolution, liquidation, or winding up—was taken without just compensation in violation of the Fifth Amendment to the United States Constitution.  These documents are communications among the President's senior advisors regarding housing reform policy as it specifically relates to the Enterprises.  Collectively, the documents pertain to all of the relevant discovery issues:  (1) the Enterprises' future profitability, (2) the lifespan of the conservatorships, (3) the relationship between the FHFA and the Treasury Department, (4) the Enterprises' future solvency, (5) the reasonableness of plaintiffs' expectations regarding the Enterprises' future profitability, and (6) the reasons why the government allowed the preexisting capital structure and stockholders to remain in place, including whether this decision was based on the partial expectation that the Enterprises would be profitable again in the future.  Because the evidence addresses both the court's jurisdiction and the merits of the case, plaintiffs' need for it is paramount.  In addition, with respect to the availability of other evidence, there is no other source of evidence available to plaintiffs that would similarly inform their understanding of these issues.  Thus, Documents 15, 17, 19, and 21 must be disclosed.

**H.  Housing Policies**

| Doc. No. | Bates No. | From / To / Date / CC | Description of Document / Privilege(s) Asserted |
|---|---|---|---|
| 22 | UST 00492699 | M. Stegman to B. Mlynarczyk on 5/26/2012<br><br>CC: M. Stegman | "Draft speech containing predecisional deliberations regarding housing policies"<br><br>DPP |
| 23 | UST 00504514 | T. Bowler to B. Mlynarczyk and M. Stegman on 7/27/2012 | "Draft memorandum prepared by Treasury staff containing predecisional deliberations related to various FHFA/GSE housing finance initiatives"<br><br>DPP |
| 24 | UST 00536346 | T. Bowler to D. Graves, P. Caldwell, and J. Foster on 9/6/2011 | "Draft memorandum prepared by Treasury staff containing predecisional deliberations regarding housing policy reform, including the future of the GSEs"<br><br>DPP |
| 25 | UST 00548270 | M. Stegman to M. Miller on 2/4/2012<br><br>CC: M. Stegman | "Draft memorandum containing predecisional deliberations related to housing policy and housing finance reform"<br><br>DPP |

The next group of documents at issue pertains to housing policies.  According to Mr. Pearl, since the financial crisis, the Treasury Department has been "actively engaged [with other agencies] in broader housing policy efforts," to include "potential housing-finance reforms, . . . affordable-housing initiatives, foreclosure-prevention measures, loan-modification and refinancing programs, and reforms to the mortgage markets."  Def.'s Resp. A72.  He further claims that the documents at issue should not be disclosed:

> Requiring production of these deliberative materials would have a chilling effect on development of housing policy going forward.  If Treasury officials and staff know that their housing policy deliberations will be disclosed to litigation adversaries, they are unlikely to feel at liberty to offer their opinions and fully engage in the housing policy development process.  It will immediately become difficult to fully develop housing policies and strategies.  Requiring disclosure of the details of these evolving policymaking processes would inhibit Treasury's ability to engage in ongoing housing policy deliberations.

Id.

Mr. Pearl asserts the deliberative process privilege as to Documents 22-25 and provides individual descriptions of the documents.  He describes Document 22, UST 00492699, as:

> Draft of speech to be delivered by Michael Stegman, Counselor to the Treasury Secretary for Housing Finance Policy, regarding housing policy reforms.  The document reflects discussion of ongoing housing policy efforts and potential housing policies to pursue.  The document reflects predecisional deliberations regarding such policies, including standards for short sales, the federal risk retention rule, and housing finance reform.

Id.  Mr. Pearl further indicates that a final copy of the speech will be produced to plaintiffs.  Id. He then describes Document 23, UST 00504514, as:  "Draft of memorandum regarding various FHFA housing policy initiatives including refinancing standards and reform of representations and warranties for consumer mortgages.  The document reflects discussion of FHFA's progress in various housing policy areas and views and opinions of FHFA's progress.  The document reflects predecisional deliberations regarding such policies."  Id. at A73.  Mr. Pearl next describes Document 24, UST 00536346, as:

> Draft of memorandum for Secretary Geithner regarding housing policy ideas.  The document reflects discussion of housing policy efforts and potential housing policies to pursue including how to increase housing affordability, how to assist communities with high foreclosure rates, how to increase mortgage financing, and how to encourage banks to modify existing loans.  The document reflects predecisional deliberations regarding such policies and views and opinions of the proposed policies.

Id.  Finally, he describes Document 25, UST 00548270, as:  "Draft outline of memorandum for Secretary Geithner regarding housing policy efforts including loan programs, housing finance reform, and other mortgage-related reforms.  The document reflects discussion of potential housing policies to pursue.  The document reflects predecisional deliberations regarding such policies and views and opinions of the proposed policies."  Id.

## 1.  Procedural Requirements

### a.  The Authority to Invoke the Privilege Was Properly Delegated to Mr. Pearl

As noted above, the authority to invoke the deliberative process privilege was properly delegated to Mr. Pearl.  See supra Section III.G.1.a.i.

### b.  Defendant Has Identified With Particularity the Documents It Claims Are Privileged

Mr. Pearl's declaration, which provides a description of the housing policy documents, coupled with defendant's privilege log, which (1) identifies the documents by their Bates numbers, (2) provides the documents' authors and recipients, (3) provides a description of the documents, and (4) identifies the specific privilege claimed, allows the court to identify with particularity the documents at issue.

### c.  Defendant Has Provided Precise and Certain Reasons for Maintaining the Confidentiality of the Documents

Based on Mr. Pearl's declaration, which provides precise and certain reasons for maintaining the confidentiality of the documents at issue, Def.'s Resp. A72, the court can balance the government's interest in maintaining that confidentiality with plaintiffs' evidentiary need for the documents' disclosure.

### 2.  Substantive Requirements

### a.  Defendant Has Not Shown That All of the Documents Are Predecisional but, for the Purpose of Providing an Alternative Analysis, the Court Will Proceed as if Defendant Has Made Such a Showing

The decision to approve the Net Worth Sweep was made by Secretary Geithner on August 16, 2012.  See Pls.' Mot. A178.  According to the privilege log, Document 22 was sent by M. Stegman to B. Mlynarczyk, with a copy to M. Stegman, on May 26, 2012.  The privilege log does not explicitly state that the document was created on that date, and upon its own examination, the court finds that Document 22 is undated.  Therefore, defendant has not established that this document is predecisional.  However, the court notes that even if the document was clearly predecisional, it would not affect the court's ultimate conclusion that, under the balancing test for the deliberative process privilege, plaintiffs' evidentiary need for the document outweighs defendant's interest in preventing the document's disclosure.  Thus, for the purpose of providing an alternative analysis, the court deems this document to be predecisional.

The privilege log also indicates that Document 23 was sent by T. Bowler to B. Mlynarczyk and M. Stegman on July 27, 2012.  Although the privilege log does not explicitly state that the document was created on that date, upon its own examination, the court finds that Document 23 is dated July 27, 2012, and thus is predecisional.

The privilege log further states that Document 24 was sent by T. Bowler to D. Graves, P. Caldwell, and J. Foster on September 6, 2011.  Although the privilege log does not explicitly state that the document was created on that date, upon its own examination, the court finds that Document 24 is dated September 6, 2011, and thus is predecisional.

Finally, the privilege log provides that Document 25 was sent by M. Stegman to M. Miller, with a copy to M. Stegman, on February 4, 2012.  The privilege log does not explicitly state that the document was created on that date, and upon its own examination, the court finds

that Document 25 is undated.  Therefore, defendant has not established that this document is predecisional.  However, the court notes that even if the document was clearly predecisional, it would not affect the court's ultimate conclusion that, under the balancing test for the deliberative process privilege, plaintiffs' evidentiary need for the document outweighs defendant's interest in preventing the document's disclosure.  Thus, for the purpose of providing an alternative analysis, the court deems this document to be predecisional.

### b.  Defendant Has Not Shown That the Documents Are Deliberative but, for the Purpose of Providing an Alternative Analysis, the Court Will Proceed as if Defendant Has Made Such a Showing

In order to determine whether a document is subject to the deliberative process privilege, the court must be able to discern whether the document reflects the "intra-governmental exchange of thoughts that actively contribute to the agency's decisionmaking process," Texaco P.R., Inc., 60 F.3d at 884-85.  Thus, as to each document, the court must be able to identify the affiliations of the individuals on defendant's privilege log and also discern the document's deliberative nature.

In this case, defendant has not met its burden of showing that the documents are deliberative.  Upon examination of the privilege log and all of the documents submitted for in camera review, which include some individuals' e-mail domains, the court has identified M. Stegman, B. Mlynarczyk, T. Bowler, D. Graves, P. Caldwell, J. Foster, and M. Miller as Treasury Department employees.  However, the documents' deliberative nature is not apparent on their face.  This is so despite the fact that Mr. Pearl's descriptions of each of the documents, provided above, proclaim their deliberative nature.

In any event, the court notes that even if the documents were clearly deliberative, it would not affect the court's ultimate conclusion that, under the balancing test for the deliberative process privilege, plaintiffs' evidentiary need for the documents outweighs defendant's interest in preventing the documents' disclosure.  Thus, for the purpose of providing an alternative analysis, the court deems the documents to be deliberative.

### 3.  Balancing Test

Although defendant has not met its burden to demonstrate that the housing policy documents are protected by the deliberative process privilege, the court will perform an alternative analysis.  Recognizing that the privilege is qualified, the court will balance plaintiffs' evidentiary need for the documents against defendant's interest in preserving their confidentiality.  In order to do so, the court weighs the five factors described in In re Subpoena.

First, with respect to the relevance of the evidence sought to be protected, the documents relate to various issues regarding which the court has permitted discovery.  See supra Section I.B.  Document 22, UST 00492699, is a seven-page document.  It is a draft of a speech to be given by Michael Stegman, Counselor to the Treasury Secretary for Housing Finance Policy, and describes plans to reform the housing finance market—it relates to the Enterprises' future profitability, the relationship between the FHFA and the Treasury Department, and the

reasonableness of plaintiffs' expectations regarding the Enterprises' future profitability. Document 23, UST 00504514, is a two-page document captioned [. . .]—it relates to the Enterprises' future profitability, the lifespan of the conservatorships, the relationship between the FHFA and the Treasury Department, and the reasonableness of plaintiffs' expectations regarding the Enterprises' future profitability.  Document 24, UST 00536346, is a ten-page document prepared by the Treasury Department captioned "Note to Secretary Geithner."  [. . .]—it relates to the Enterprises' future profitability and the reasonableness of plaintiffs' expectations regarding the Enterprises' future profitability.  Document 25, UST 00548270, is a three-page document [. . .]—it relates to the Enterprises' future profitability and the reasonableness of plaintiffs' expectations regarding the Enterprises' future profitability.

Second, with respect to the availability of other evidence, there is no other source of evidence available to plaintiffs that would similarly inform their understanding of the Enterprises' future profitability, the relationship between the FHFA and the Treasury Department, the reasonableness of plaintiffs' expectations regarding the Enterprises' future profitability, and the lifespan of the conservatorships.

Third, with respect to the seriousness of the litigation and the issues involved, neither party disputes the importance of the case, both in terms of the damages and equitable relief sought, as well as in terms of the case's implication for litigation and "executive and legislative branch policy repercussions."  Dairyland Power I, 77 Fed. Cl. at 342.

Fourth, with respect to the government's role in the litigation, because "the Government is a party to this litigation and is the party that seeks to benefit from the invocation of the deliberative process privilege," its assertion of the "privilege must be carefully scrutinized to ensure that the privilege retains its proper narrow scope."  Id.

Fifth, with respect to the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable, it is highly unlikely, given the protective order that is already in place in this case, that any type of disclosure would result in a chilling of frank policy discussions between government employees.

Thus, with respect to Documents 22-25, plaintiffs' evidentiary need for the information outweighs defendant's interest in preventing the documents' disclosure.  In other words, the deliberative process privilege cannot shield the disclosure of the documents in this instance because evidence relating to the Enterprises' future profitability, the relationship between the FHFA and the Treasury Department, the reasonableness of plaintiffs' expectations regarding the Enterprises' future profitability, and the lifespan of the conservatorships implicates both the court's jurisdiction and the merits of the case and therefore is discoverable.  The documents must be disclosed.

## I. PSPA Modifications

| Doc. No. | Bates No. | From / To / Date / CC | Description of Document / Privilege(s) Asserted |
| --- | --- | --- | --- |
| 26 | UST 00061421 | M. Miller to S. Valverde, A. Adeyemo, T. Massad, M. Stegman, T. Bowler, and B. Deese on 7/20/2012<br><br>CC: A. Woolf | "Draft document prepared by Treasury staff containing predecisional deliberations related to potential modification of PSPAs"<br><br>DPP |
| 27 | UST 00384146 | A. Goldblatt to T. Bowler on 7/3/2012 | "Draft presentation prepared by Treasury staff containing predecisional analysis and information related to financial forecasts for Fannie Mae"<br><br>DPP |
| 28 | UST 00384501 | J. Foster to T. Bowler and M. Stegman on 6/10/2012 | "Draft presentation prepared by Treasury staff containing predecisional deliberations related to PSPA amendment considerations"<br><br>DPP |
| 29 | UST 00389662 | J. Foster to S. Valverde and M. Fikre on 1/31/2012 | "Draft memorandum for Secretary containing predecisional deliberations related to GSE restructuring"<br><br>DPP |
| 30 | UST 00407182 | A. Goldblatt to A. Chepenik and J. Foster on 7/5/2012 | "Predecisional, deliberative, draft analysis of GSE financial projections prepared by Treasury staff"<br><br>DPP |
| 31 | UST 00407342 | A. Goldblatt to A. Chepenik and J. Foster on 6/13/2012 | "Draft analysis reflecting predecisional deliberations concerning GSE financial projections"<br><br>DPP |
| 32 | UST 00472229 | A. Chepenik to T. Bowler, J. Foster and B. Mlynarczyk on 2/26/2012 | "Predecisional deliberative analysis of GSE financial projections prepared by Treasury staff"<br><br>DPP |
| 33 | UST 00472232 | A. Chepenik to T. Bowler, J. Foster and B. | "Predecisional deliberative analysis of GSE financial projections prepared by Treasury staff"<br><br>DPP |

| | | Mlynarczyk on 2/26/2012 | |
|---|---|---|---|
| 34 | UST 00478535 | J. Foster to M. Stegman on 6/7/2012 | "Draft document containing predecisional deliberations concerning potential modifications to PSPAs"<br><br>DPP |
| 35 | UST 00502258 | J. Foster to T. Bowler, B. Mlynarczyk, A. Chepenik, N. Franchot and M. Stegman on 3/5/2012 | "Draft policy document prepared by Treasury staff containing predecisional deliberations regarding proposed PSPA"<br><br>DPP |
| 36 | UST 00536560 | Exec Sec Process Unit to TFG75[20] on 6/1/2012<br><br>CC: Exec Sec Process Unit and Exec Sec Staff | "Draft document containing predecisional deliberations concerning potential modification of the PSPAs"<br><br>DPP |
| 37 | UST 00539251 | A. Chepenik to T. Bowler, J. Foster, and A. Goldblatt on 6/6/2012 | "Draft presentation for [Office of Management and Budget ("OMB")] containing predecisional deliberations concerning Treasury proposals for modifying the terms of the PSPAs"<br><br>DPP |

The next group of documents identified in defendant's privilege log pertains to PSPA modifications. According to Mr. Pearl, "[t]he draft memoranda, draft presentations, and other draft documents in this category relate to the development of the modifications to the PSPAs," and therefore "reflect predecisional deliberations central to the policy-making process and the considerations weighed by Treasury officials and staff in connection with these deliberations." Def.'s Resp. A73. He further claims that the "documents are predecisional because they were created and shared before the Third Amendment was adopted and contain deliberations concerning rationales for entering into it." Id. Finally, he claims that the documents at issue should not be disclosed:

> Requiring production of these deliberative materials would have a chilling effect on Treasury's ability to develop financial policies. The ability to distribute and receive comments and feedback on

---

[20] Although none of the parties' submissions contains a definition of "TFG75," the court infers that "TFG75" refers to Secretary Geithner.

> draft memoranda, draft presentations, and other draft documents is
> an essential function of the policy-making process.  If Treasury
> officials and staff believe that such draft documents will be
> disclosed to litigation adversaries, they are unlikely to feel at
> liberty to offer their opinions and fully engage in the policy
> development process.  As a result, Treasury's ability
> to develop and make policy would be adversely affected.

Id. at A74-75.

Mr. Pearl asserts the deliberative process privilege as to Documents 26-37 and provides individual descriptions of the documents.  He describes Document 26, UST 00061421, Document 28, UST 00384501, Document 34, UST 00478535, Document 35, UST 00502258, and Document 36, UST 00536560, as:

> Draft documents discussing potential modifications to the PSPAs.
> These documents reflect discussions of proposed modifications to
> the PSPAs including discussions of potential rationales for the
> changes under consideration.  The documents also reflect opinions
> and views regarding the proposed modifications.  The documents
> include discussions of proposed modifications that were ultimately
> not made and the considerations that led to the decision not to
> pursue such modifications.  The documents reflect predecisional
> deliberations regarding the proposed changes.

Id. at A73-74.  He then describes Document 27, UST 00384146, as:

> Draft of presentation for Secretary Geithner discussing Fannie Mae
> financial projections.  The document reflects analysis and
> projections regarding Fannie Mae's future financial performance,
> including estimates of future draws and dividend payments.  Such
> analysis was part of Treasury's decision-making process that
> resulted in the execution of the Third Amendment.  The document
> reflects predecisional deliberations regarding the proposed
> modifications.

Id. at A74.  Mr. Pearl further indicates that a final version of Document 27, which was provided to Secretary Geithner, was produced to plaintiffs.  Id.  He next describes Document 29, UST 00389662, as:  "Draft of memorandum for Secretary Geithner discussing potential options for restructuring the GSEs and transitioning to a future housing finance system.  The document reflects discussions of various policy options under consideration.  The document reflects predecisional deliberations regarding such policy options and views and opinions of the proposed policy options."  Id.  Mr. Pearl then describes Document 30, UST 00407182, Document 31, UST 00407342, Document 32, UST 00472229, and Document 33, UST 00472232, as:

> Draft analyses of GSE financial projections prepared by Treasury officials and staff.  These documents reflect draft analyses and projections regarding the GSEs' future financial performance, including estimates of future draws and dividend payments.  The assumptions embedded in the analyses reflect Treasury's subjective judgment.  Such analytical work regarding potential modifications to the PSPAs was part of Treasury's deliberative process that culminated in the execution of the Third Amendment.

Id.  Finally, he describes Document 37, UST 00539251, as:

> Draft of presentation for [OMB] discussing potential modifications to the PSPAs.  The document reflects draft analyses and projections regarding the GSEs' future financial performance, including estimates of future guarantee fees.  Those analyses and projections were part of Treasury's deliberative process that culminated in the execution of the Third Amendment.  Counsel has informed me that the final version of this document, which was provided to OMB, is publicly available.

Id.

### 1.  Procedural Requirements

#### a.  The Authority to Invoke the Privilege Was Properly Delegated to Mr. Pearl

As noted above, the authority to invoke the deliberative process privilege was properly delegated to Mr. Pearl.  See supra Section III.G.1.a.i.

#### b.  Defendant Has Identified With Particularity the Documents It Claims Are Privileged

Mr. Pearl's declaration, which provides a description of the PSPA modifications documents, coupled with defendant's privilege log, which (1) identifies the documents by their Bates numbers, (2) provides the documents' authors and recipients, (3) provides a description of the documents, and (4) identifies the specific privilege claimed, allows the court to identify with particularity the documents at issue.

#### c.  Defendant Has Provided Precise and Certain Reasons for Maintaining the Confidentiality of the Documents

Based on Mr. Pearl's declaration, which provides precise and certain reasons for maintaining the confidentiality of the documents at issue, see Def.'s Resp. A73-75, the court can balance the government's interest in maintaining that confidentiality with plaintiffs' evidentiary need for the documents' disclosure.

## 2.  Substantive Requirements

### a.  Defendant Has Not Shown That All of the Documents Are Predecisional but, for the Purpose of Providing an Alternative Analysis, the Court Will Proceed as if Defendant Has Made Such a Showing

The decision to approve the Net Worth Sweep was made by Secretary Geithner on August 16, 2012.  See Pls.' Mot. A178.  According to the privilege log, Document 26 was sent by M. Miller to S. Valverde, A. Adeyemo, T. Massad, M. Stegman, T. Bowler, and B. Deese, with a copy to A. Woolf, on July 20, 2012.  Although the privilege log does not explicitly state that the document was created on that date, upon its own examination, the court finds that Document 26 is dated July 20, 2012, and thus is predecisional.

The privilege log next indicates that Document 27 was sent by A. Goldblatt to T. Bowler on July 3, 2012.  Although the privilege log does not explicitly state that the document was created on that date, upon its own examination, the court finds that Document 27 is dated July 2012, and thus is predecisional.

The privilege log then reflects that Document 28 was sent by J. Foster to T. Bowler and M. Stegman on June 10, 2012.  The privilege log does not explicitly state that the document was created on that date, and upon its own examination, the court finds that Document 28 is undated.  Therefore, defendant has not established that this document is predecisional.  However, the court notes that even if the document was clearly predecisional, it would not affect the court's ultimate conclusion that, under the balancing test for the deliberative process privilege, plaintiffs' evidentiary need for the document outweighs defendant's interest in preventing the document's disclosure.  Thus, for the purpose of providing an alternative analysis, the court deems this document to be predecisional.

The privilege log further states that Document 29 was sent by J. Foster to S. Valverde and M. Fikre on January 31, 2012.  Although the privilege log does not explicitly state that the document was created on that date, upon its own examination, the court finds that Document 29 is dated December 14, 2011, and thus is predecisional.

The privilege log also indicates that Document 30 was sent by A. Goldblatt to A. Chepenik and J. Foster on July 5, 2012.  The privilege log does not explicitly state that the document was created on that date, and upon its own examination, the court finds that Document 30 is undated.  Therefore, defendant has not established that this document is predecisional.  However, the court notes that even if the document was clearly predecisional, it would not affect the court's ultimate conclusion that, under the balancing test for the deliberative process privilege, plaintiffs' evidentiary need for the document outweighs defendant's interest in preventing the document's disclosure.  Thus, for the purpose of providing an alternative analysis, the court deems this document to be predecisional.

The privilege log then provides that Document 31 was sent by A. Goldblatt to A. Chepenik and J. Foster on June 13, 2012.  The privilege log does not explicitly state that the document was created on that date, and upon its own examination, the court finds that Document

31 is undated.  Therefore, defendant has not established that this document is predecisional.  However, the court notes that even if the document was clearly predecisional, it would not affect the court's ultimate conclusion that, under the balancing test for the deliberative process privilege, plaintiffs' evidentiary need for the document outweighs defendant's interest in preventing the document's disclosure.  Thus, for the purpose of providing an alternative analysis, the court deems this document to be predecisional.

The privilege log next states that Document 32 was sent by A. Chepenik to T. Bowler, J. Foster, and B. Mlynarczyk on February 26, 2012.  The privilege log does not explicitly state that the document was created on that date, and upon its own examination, the court finds that Document 30 is undated.  Therefore, defendant has not established that this document is predecisional.  However, the court notes that even if the document was clearly predecisional, it would not affect the court's ultimate conclusion that, under the balancing test for the deliberative process privilege, plaintiffs' evidentiary need for the document outweighs defendant's interest in preventing the document's disclosure.  Thus, for the purpose of providing an alternative analysis, the court deems this document to be predecisional.

The privilege log further reflects that Document 33 was sent by A. Chepenik to T. Bowler, J. Foster, and B. Mlynarczyk on February 26, 2012.  The privilege log does not explicitly state that the document was created on that date, and upon its own examination, the court finds that Document 33 is undated.  Therefore, defendant has not established that this document is predecisional.  However, the court notes that even if the document was clearly predecisional, it would not affect the court's ultimate conclusion that, under the balancing test for the deliberative process privilege, plaintiffs' evidentiary need for the document outweighs defendant's interest in preventing the document's disclosure.  Thus, for the purpose of providing an alternative analysis, the court deems this document to be predecisional.

The privilege log also indicates that Document 34 was sent by J. Foster to M. Stegman on June 7, 2012.  The privilege log does not explicitly state that the document was created on that date, and upon its own examination, the court finds that Document 34 is undated.  Therefore, defendant has not established that this document is predecisional.  However, the court notes that even if the document was clearly predecisional, it would not affect the court's ultimate conclusion that, under the balancing test for the deliberative process privilege, plaintiffs' evidentiary need for the document outweighs defendant's interest in preventing the document's disclosure.  Thus, for the purpose of providing an alternative analysis, the court deems this document to be predecisional.

The privilege log then provides that Document 35 was sent by J. Foster to T. Bowler, B. Mlynarczyk, A. Chepenik, N. Franchot, and M. Stegman on March 5, 2012.  The privilege log does not explicitly state that the document was created on that date, and upon its own examination, the court finds that Document 35 is undated.  Therefore, defendant has not established that this document is predecisional.  However, the court notes that even if the document was clearly predecisional, it would not affect the court's ultimate conclusion that, under the balancing test for the deliberative process privilege, plaintiffs' evidentiary need for the document outweighs defendant's interest in preventing the document's disclosure.  Thus, for the purpose of providing an alternative analysis, the court deems this document to be predecisional.

The privilege log next states that Document 36 was sent by the Executive Secretary Processing Unit to TFG75 on June 1, 2012.  The privilege log does not explicitly state that the document was created on that date, and upon its own examination, the court finds that Document 36 is undated.  Therefore, defendant has not established that this document is predecisional. However, the court notes that even if the document was clearly predecisional, it would not affect the court's ultimate conclusion that, under the balancing test for the deliberative process privilege, plaintiffs' evidentiary need for the document outweighs defendant's interest in preventing the document's disclosure.  Thus, for the purpose of providing an alternative analysis, the court deems this document to be predecisional.

Finally, the privilege log reflects that Document 37 was sent by A. Chepenik to T. Bowler, J. Foster, and A. Goldblatt on June 6, 2012.  Although the privilege log does not explicitly state that the document was created on that date, upon its own examination, the court finds that Document 37 is dated June 6, 2012, and thus is predecisional.

**b.  Defendant Has Not Shown That the Documents Are Deliberative but, for the Purpose of Providing an Alternative Analysis, the Court Will Proceed as if Defendant Has Made Such a Showing**

In order to determine whether a document is subject to the deliberative process privilege, the court must be able to discern whether the document reflects the "intra-governmental exchange of thoughts that actively contribute to the agency's decisionmaking process," Texaco P.R., Inc., 60 F.3d at 884-85.  Thus, as to each document, the court must be able to identify the affiliations of the individuals on defendant's privilege log and also discern the document's deliberative nature.

In this case, defendant has not met its burden of showing that the documents are deliberative.  Upon examination of the privilege log and all of the documents submitted for in camera review, which include some individuals' e-mail domains, the court has identified the following individuals as Treasury Department employees:  M. Miller, S. Valverde, A. Adeyemo, T. Massad, M. Stegman, T. Bowler, A. Woolf, A. Goldblatt, J. Foster, M. Fikre, A. Chepenik, B. Mlynarczyk, N. Franchot, and T. Geithner.  In addition, the court has identified B. Deese as an employee of the White House Economic Council.  However, the documents' deliberative nature is not apparent on their face.  This is so despite the fact that Mr. Pearl's descriptions of each of the documents, provided above, proclaim their deliberative nature.

In any event, the court notes that even if the documents were clearly deliberative, it would not affect the court's ultimate conclusion that, under the balancing test for the deliberative process privilege, plaintiffs' evidentiary need for the documents outweighs defendant's interest in preventing the documents' disclosure.  Thus, for the purpose of providing an alternative analysis, the court deems the documents to be deliberative.

### 3. Balancing Test

Although defendant has not met its burden to demonstrate that the PSPA modification documents are protected by the deliberative process privilege, the court will perform an alternative analysis.  Recognizing that the privilege is qualified, the court will balance plaintiffs' evidentiary need for the documents against defendant's interest in preserving their confidentiality.  In order to do so, the court weighs the five factors described in In re Subpoena.

First, with respect to the relevance of the evidence sought to be protected, the documents relate to various issues regarding which the court has permitted discovery.  See supra Section I.B.  Document 26, UST 00061421, is a two-page document prepared by the Treasury Department [. . .]—it relates to the Enterprises' future profitability, the lifespan of the conservatorships, the relationship between the FHFA and the Treasury Department, the reasonableness of plaintiffs' expectations regarding the Enterprises' future profitability, and the reasons behind the government's actions.  Document 27, UST 00384146, is a ten-page document prepared by the Treasury Department [. . .]—it relates to Fannie Mae's future profitability and the reasonableness of plaintiffs' expectations regarding the Enterprises' future profitability.  Document 28, UST 00384501, is a three-page document prepared by the Treasury Department [. . .]—it relates to the Enterprises' future profitability.  Document 29, UST 00389662, is a sixteen-page document prepared by the Treasury Department [. . .]—it relates to the Enterprises' future profitability and the reasonableness of plaintiffs' expectations regarding the Enterprises' future profitability.

Document 30, UST 00407182, is an unnumbered fifty-three-page document.[21]  Although it is not clearly labeled a Treasury Department document, Document 30 contains financial projections for the Enterprises—it relates to the Enterprises' future profitability and the reasonableness of plaintiffs' expectations regarding the Enterprises' future profitability.  Document 31, UST 00407342, is an unnumbered forty-four-page document.  [. . .]—it relates to the Enterprises' future profitability.  Document 32, UST 00472229, is an unnumbered three-page document.  Although it is not clearly labeled a Treasury Department document, Document 32 contains financial projections for the Enterprises—it relates to the Enterprises' future profitability, and the reasonableness of plaintiffs' expectations regarding the Enterprises' future profitability.  Document 33, UST 00472232, is a partially numbered three-page document.  Although it is not clearly labeled a Treasury Department document, Document 33 contains financial projections for the Enterprises—it relates to the Enterprises' future profitability and the reasonableness of plaintiffs' expectations regarding the Enterprises' future profitability.

Document 34, UST 00478535, is an unnumbered two-page document captioned "Case for PSPA Action."  [. . .]—it relates to the Enterprises' future profitability, the lifespan of the conservatorships, the relationship between the FHFA and the Treasury Department, the reasonableness of plaintiffs' expectations regarding the Enterprises' future profitability, and the reasons behind the government's actions.  Document 35, UST 00502258, is a two-page document.  The document, the subject of which is [. . .] was prepared by Treasury Department staff—it relates to the Enterprises' future profitability, the lifespan of the conservatorships, the

---

[21]  Pages 28 and 29 of this document are blank.

relationship between the FHFA and the Treasury Department, the reasonableness of plaintiffs' expectations regarding the Enterprises' future profitability, and the reasons behind the government's actions.  Document 36, UST 00536560, is an unnumbered four-page document [. . .]—it relates to the Enterprises' future profitability, the lifespan of the conservatorships, the relationship between the FHFA and the Treasury Department, the reasonableness of plaintiffs' expectations regarding the Enterprises' future profitability, and the reasons behind the government's actions.  Finally, Document 37, UST 00539251, is a nine-page document [. . .]—it relates to the Enterprises' future profitability.

Second, with respect to the availability of other evidence, there is no other source of evidence available to plaintiffs that would similarly inform their understanding of the Enterprises' future profitability, the lifespan of the conservatorships, the relationship between the FHFA and the Treasury Department, the reasonableness of plaintiffs' expectations regarding the Enterprises' future profitability, and the reasons behind the government's actions.

Third, with respect to the seriousness of the litigation and the issues involved, neither party disputes the importance of the case, both in terms of the damages and equitable relief sought, as well as in terms of the case's implication for litigation and "executive and legislative branch policy repercussions." Dairyland Power I, 77 Fed. Cl. at 342.

Fourth, with respect to the government's role in the litigation, because "the Government is a party to this litigation and is the party that seeks to benefit from the invocation of the deliberative process privilege," its assertion of the "privilege must be carefully scrutinized to ensure that the privilege retains its proper narrow scope." Id.

Fifth, with respect to the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable, it is highly unlikely, given the protective order that is already in place in this case, that any type of disclosure would result in a chilling of frank policy discussions between government employees.

Thus, with respect to Documents 26-37, plaintiffs' evidentiary need for the information outweighs defendant's interest in preventing the documents' disclosure.  In other words, the deliberative process privilege cannot shield the disclosure of the documents in this instance because evidence relating to the Enterprises' future profitability, the lifespan of the conservatorships, the relationship between the FHFA and the Treasury Department, the reasonableness of plaintiffs' expectations regarding the Enterprises' future profitability, and the reasons behind the government's actions implicates both the court's jurisdiction and the merits of the case and therefore is discoverable.  The documents must be disclosed.

## J.  GSE Projections

| Doc. No. | Bates No. | From / To / Date / CC | Description of Document / Privilege(s) Asserted |
|---|---|---|---|
| 38 | UST 00409040 | A. Eberhardt to J. Foster on 3/12/2012 | "Draft document prepared for Treasury by consultant containing predecisional deliberations concerning GSE financial projections" |

| | | | DPP |
|---|---|---|---|
| 39 | UST 00473767 | A. Eberhardt to J. Foster on 12/10/2011 | "Predecisional financial analysis prepared by Treasury consultant reflecting Treasury deliberations regarding GSEs"<br><br>DPP |
| 40 | UST 00473770 | A. Eberhardt to J. Foster on 12/10/2011 | "Predecisional financial analysis prepared by Treasury consultant reflecting Treasury deliberations regarding GSEs"<br><br>DPP |
| 41 | UST 00473773 | A. Eberhardt to J. Foster on 12/10/2011 | "Predecisional financial analysis prepared by Treasury consultant reflecting Treasury deliberations regarding GSEs"<br><br>DPP |
| 42 | UST 00473776 | A. Eberhardt to J. Foster on 12/10/2011 | "Predecisional financial analysis prepared by Treasury consultant reflecting Treasury deliberations regarding GSEs"<br><br>DPP |
| 43 | UST 00473779 | A. Eberhardt to J. Foster on 12/10/2011 | "Predecisional financial analysis prepared by Treasury consultant reflecting Treasury deliberations regarding GSEs"<br><br>DPP |
| 44 | UST 00473782 | A. Eberhardt to J. Foster on 12/10/2011 | "Predecisional financial analysis prepared by Treasury consultant reflecting Treasury deliberations regarding GSEs"<br><br>DPP |
| 45 | UST 00481423 | J. Foster to A. Chepenik on 12/13/2011 | "Predecisional deliberative analysis of GSE financial projections prepared by Treasury consultant"<br><br>DPP |
| 46 | UST 00481424 | J. Foster to A. Chepenik on 12/13/2011 | "Predecisional deliberative analysis of GSE financial projections prepared by Treasury consultant"<br><br>DPP |
| 47 | UST 00481425 | J. Foster to A. Chepenik on 12/13/2011 | "Predecisional deliberative analysis of GSE financial projections prepared by Treasury consultant"<br><br>DPP |

| 48 | UST 00556294 | A. Chepenik to J. Foster on 1/6/2012 | "Predecisional deliberative analysis of GSE financial projections prepared by consultant"  DPP |
| 49 | UST 00556295 | A. Chepenik to J. Foster on 1/6/2012 | "Predecisional deliberative analysis of GSE financial projections prepared by consultant"  DPP |
| 50 | UST 00556459 | A. Chepenik to J. Foster on 1/6/2012 | "Predecisional deliberative analysis of GSE financial projections prepared by consultant"  DPP |
| 51 | UST 00556460 | A. Chepenik to J. Foster on 1/6/2012 | "Predecisional deliberative analysis of GSE financial projections prepared by consultant"  DPP |

The next group of documents included in defendant's privilege log concern GSE projections. According to Mr. Pearl, "[t]he draft analyses and draft documents in this category relate to analyses of GSE financial projections provided by Grant Thornton, a Treasury consultant, to Treasury." Def.'s Resp. A75. He further claims that "[e]ach of the documents in this category contains outputs from Grant Thornton's model in spreadsheet form," and that "Treasury used these projections in considering whether to make modifications to the PSPAs." Id. In addition, he notes that "[a]t Treasury's request, Grant Thornton made modifications to certain assumptions in its model and provided Treasury with the results," and that it is these assumptions, which are "embedded in the financial projections," that are deliberative because they "reflect the subjective judgments and choices of the agency." Id. Finally, he claims that the documents at issue should not be disclosed:

> Requiring production of these deliberative materials would have a chilling effect on the ability of Treasury staff to engage with consultants as they develop and execute financial policies. If Treasury officials and staff believe that such draft documents will be disclosed to litigation adversaries, they are unlikely to feel comfortable making use of expert consultants in the policy development process. As a result, Treasury's ability to devise and execute financial policies would be harmed.

Id.

Mr. Pearl asserts the deliberative process privilege as to Documents 38-51.

## 1.  Procedural Requirements

### a.  The Authority to Invoke the Privilege Was Properly Delegated to Mr. Pearl

As noted above, the authority to invoke the deliberative process privilege was properly delegated to Mr. Pearl.  See supra Section III.G.1.a.i.

### b.  Defendant Has Identified With Particularity the Documents It Claims Are Privileged

Mr. Pearl's declaration, which provides a description of the GSE projections documents, coupled with defendant's privilege log, which (1) identifies the documents by their Bates number, (2) provides the documents' authors and recipients, (3) provides a description of the documents, and (4) identifies the specific privilege claimed, allows the court to identify with particularity the documents at issue.

### c.  Defendant Has Provided Precise and Certain Reasons for Maintaining the Confidentiality of the Documents

According to Mr. Pearl, the documents contain deliberations within the Treasury Department that take into account third-party financial projections, which reflect modifications dictated by the Treasury Department.  Def.'s Resp. A75.  Based on Mr. Pearl's declaration, which provides precise and certain reasons for maintaining the confidentiality of the documents at issue, the court can balance the government's interest in maintaining that confidentiality with plaintiffs' evidentiary need for the documents' disclosure.

## 2.  Substantive Requirements

### a.  Defendant Has Not Shown That the Documents Are Predecisional but, for the Purpose of Providing an Alternative Analysis, the Court Will Proceed as if Defendant Has Made Such a Showing

The decision to approve the Net Worth Sweep was made by Secretary Geithner on August 16, 2012.  See Pls.' Mot. A178.  According to the privilege log:  Document 38 was sent by A. Eberhardt to J. Foster on March 12, 2012; Documents 39-44 were sent by A. Eberhardt to J. Foster on December 10, 2011; Documents 45-47 were sent by J. Foster to A. Chepenik on December 13, 2011; and Documents 48-51 were sent by A. Chepenik to J. Foster on January 6, 2012.  The privilege log does not explicitly state that the documents were created on those dates, and upon its own examination, the court finds that the documents are undated.  Therefore, defendant has not established that the documents are predecisional.  However, the court notes that even if the documents were clearly predecisional, it would not affect the court's ultimate conclusion that, under the balancing test for the deliberative process privilege, plaintiffs' evidentiary need for the documents outweighs defendant's interest in preventing the documents' disclosure.  Thus, for the purpose of providing an alternative analysis, the court deems the documents to be predecisional.

**b. Defendant Has Not Shown That All of the Documents Are Deliberative But, for Purposes of Providing an Alternative Analysis, the Court Will Proceed as if Defendant Has**

In order to determine whether a document is subject to the deliberative process privilege, the court must be able to discern whether the document reflects the "intra-governmental exchange of thoughts that actively contribute to the agency's decisionmaking process," Texaco P.R., Inc., 60 F.3d at 884-85.  Thus, as to each document, the court must be able to identify the affiliations of the individuals on defendant's privilege log and also discern the document's deliberative nature.

In this case, defendant has not met its burden of showing that the documents are deliberative.  Upon examination of the privilege log and all of the documents submitted for in camera review, which include some individuals' e-mail domains, the court has identified J. Foster and A. Chepenik as Treasury Department employees and A. Eberhardt as an employee of Grant Thornton.  However, the documents' deliberative nature is not apparent on their face.  This is so despite the fact that Mr. Pearl's descriptions of each of the documents, provided above, proclaim their deliberative nature.

In any event, the court notes that even if the documents were clearly deliberative, it would not affect the court's ultimate conclusion that, under the balancing test for the deliberative process privilege, plaintiffs' evidentiary need for the documents outweighs defendant's interest in preventing the documents' disclosure.  Thus, for the purpose of providing an alternative analysis, the court deems the documents to be deliberative.

**3. Balancing Test**

Although defendant has not met its burden to demonstrate that the GSE projection documents are protected by the deliberative process privilege, the court will perform an alternative analysis.  Recognizing that the privilege is qualified, the court will balance plaintiffs' evidentiary need for the documents against defendant's interest in preserving their confidentiality.  In order to do so, the court weighs the five factors described in In re Subpoena.

First, with respect to the relevance of the evidence sought to be protected, the documents relate to the Enterprises' future profitability, the Enterprises' future solvency, and the reasonableness of plaintiffs' expectations regarding the Enterprises' future profitability.  See supra Section I.B.  Document 38, UST 00409040, is a twenty-six-page document [. . .].  Document 39, UST 00473767, is a partially numbered nine-page document that contains various financial projections for Freddie Mac.  Document 40, UST 00473770, is a partially numbered twelve-page document that contains various financial projections for Freddie Mac.  Document 41, UST 00473773, is a partially numbered eleven-page document that contains various financial projections for Freddie Mac.  Document 42, UST 00473776, is an unnumbered nine-page document that contains various financial projections for Fannie Mae.  Document 43, UST 00473779, is an unnumbered nine-page document that contains various financial projections for Fannie Mae.  Document 44, UST 00473782, is an unnumbered eight-page document that contains various financial projections for Fannie Mae.  Document 45, UST 00481423, is a partially numbered twelve-page document that contains various financial projections for Freddie

Mac.  Document 46, UST 00481424, is a partially numbered twelve-page document that contains various financial projections for Freddie Mac.  Document 47, UST 00481425, is a partially numbered nine-page document that contains various financial projections for Freddie Mac.  Document 48, UST 00556294, is an unnumbered fifteen-page document that contains various financial projections for Fannie Mae.  Document 49, UST 00556295, is an unnumbered twelve-page document that contains various financial projections for Fannie Mae.  Document 50, UST 00556459, is a partially numbered twelve-page document that contains various financial projections for Freddie Mac.  Finally, Document 51, UST 00556460, is a partially numbered thirteen-page document that contains various financial projections for Freddie Mac.  [. . .]

Second, with respect to the availability of other evidence, there is no other source of evidence available to plaintiffs that would similarly inform their understanding of the Enterprises' future profitability, the Enterprises' future solvency, and the reasonableness of plaintiffs' expectations regarding the Enterprises' future profitability.

Third, with respect to the seriousness of the litigation and the issues involved, neither party disputes the importance of the case, both in terms of the damages and equitable relief sought, as well as in terms of the case's implication for litigation and "executive and legislative branch policy repercussions."  Dairyland Power I, 77 Fed. Cl. at 342.

Fourth, with respect to the government's role in the litigation, because "the Government is a party to this litigation and is the party that seeks to benefit from the invocation of the deliberative process privilege," its assertion of the "privilege must be carefully scrutinized to ensure that the privilege retains its proper narrow scope."  Id.

Fifth, with respect to the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable, it is highly unlikely, given the protective order that is already in place in this case, that any type of disclosure would result in a chilling of frank policy discussions between government employees.

Thus, with respect to Documents 38-51, plaintiffs' evidentiary need for the information outweighs defendant's interest in preventing the documents' disclosure.  In other words, the deliberative process privilege cannot shield the disclosure of the documents in this instance because evidence relating to the Enterprises' future profitability, the Enterprises' future solvency, and the reasonableness of plaintiffs' expectations regarding the Enterprises' future profitability implicates both the court's jurisdiction and the merits of the case and therefore is discoverable.  The documents must be disclosed.

## K.  Valuation Reports

| Doc. No. | Bates No. | From / To / Date / CC | Description of Document / Privilege(s) Asserted |
|---|---|---|---|
| 52 | UST 00475757 | R. Rominiecki to A. Eberhardt, C. Banks, K. Taylor, S. | "Draft memorandum prepared containing predecisional deliberative analysis of financial projections for Fannie Mae" |

| | | | |
|---|---|---|---|
| | | Mickey, J. Foster, B. Mlynarczyk, J. Grover, A. Bankole, M. Fitzgerald, R. Cumba, B. Faber, B. Wilson, D. Dufendach, and J. Burchett on 11/1/2011 <br><br> CC: Y. Tchamourliyski and S. Lee | DPP |
| 53 | UST 00506346 | A. Eberhardt to C. Banks, S. Mickey, K. Taylor, J. Foster, M. Fitzgerald, and R. Rominiecki on 6/29/2012 <br><br> CC: J. Short, D. Dufendach, and J. Burchett | "Document prepared by Treasury consultant reflecting predecisional deliberations concerning financial conditions of the GSEs" <br><br> DPP |

The next category of documents identified in defendant's privilege log is valuation reports. According to Mr. Pearl, "[t]he draft documents in this category relate to the valuation services provided by Grant Thornton to Treasury in connection with the preparation of Treasury's annual financial statements," and as such "reflect predecisional deliberations central to the process of preparing and producing Treasury's financial statements and the considerations weighed by Treasury officials and staff in connection with these deliberations." Def.'s Resp. A75. He further claims that the "documents reflect judgment calls and decisions with respect to the preparation of Grant Thornton's reports that are used by Treasury in preparing its annual financial statements," and that Treasury Department "staff involved in housing-finance reform reviewed and provided input on Grant Thornton's valuation reports, and these documents reflect that input." Id.

Mr. Pearl asserts the deliberative process privilege as to Documents 52-53.

### 1. Procedural Requirements

### a. The Authority to Invoke the Privilege Was Properly Delegated to Mr. Pearl

As noted above, the authority to invoke the deliberative process privilege was properly delegated to Mr. Pearl.  See supra Section III.G.1.a.i.

### b. Defendant Has Identified With Particularity the Documents It Claims Are Privileged

Mr. Pearl's declaration, which provides a description of the valuation reports, coupled with defendant's privilege log, which (1) identifies the documents by their Bates numbers, (2) provides the documents' authors and recipients, (3) provides a description of the documents, and (4) identifies the specific privilege claimed, allows the court to identify with particularity the documents at issue.

### c. Defendant Has Provided Precise and Certain Reasons for Maintaining the Confidentiality of the Documents

According to Mr. Pearl, the documents contain deliberations within the Treasury Department that take into account third-party valuations, which reflect input from Treasury Department staff.  Def.'s Resp. A75.  Based on Mr. Pearl's declaration, which provides precise and certain reasons for maintaining the confidentiality of the documents at issue, the court will be able to balance the government's interest in maintaining that confidentiality with plaintiffs' evidentiary need for the documents' disclosure.

### 2. Substantive Requirements

### a. Defendant Has Not Shown That the Documents Are Predecisional but, for the Purpose of Providing an Alternative Analysis, the Court Will Proceed as if Defendant Has Made Such a Showing

The decision to approve the Net Worth Sweep was made by Secretary Geithner on August 16, 2012.  See Pls.' Mot. A178.  According to the privilege log, Document 52 was sent by R. Rominiecki to A. Eberhardt, C. Banks, K. Taylor, S. Mickey, J. Foster, B. Mlynarczyk, J. Grover, A. Bankole, M. Fitzgerald, R. Cumba, B. Faber, B. Wilson, D. Dufendach, and J. Burchett, with copies to Y. Tchamourliyski and S. Lee, on November 1, 2011.  Although the privilege log does not explicitly state that the document was created on that date, upon its own examination, the court finds that Document 52 is undated.  Therefore, defendant has not established that this document is predecisional.  However, the court notes that even if the document was clearly predecisional, it would not affect the court's ultimate conclusion that, under the balancing test for the deliberative process privilege, plaintiffs' evidentiary need for the document outweighs defendant's interest in preventing the document's disclosure.  Thus, for the purpose of providing an alternative analysis, the court deems this document to be predecisional.

According to the privilege log, Document 53 was sent by A. Eberhardt to C. Banks, S. Mickey, K. Taylor, J. Foster, M. Fitzgerald, and R. Rominiecki, with copies to J. Short, D.

Dufendach, and J. Burchett, on June 29, 2012.  Although the privilege log does not explicitly state that the document was created on that date, upon its own examination, the court finds that Document 53 is undated.  Therefore, defendant has not established that this document is predecisional.  However, the court notes that even if the document was clearly predecisional, it would not affect the court's ultimate conclusion that, under the balancing test for the deliberative process privilege, plaintiffs' evidentiary need for the document outweighs defendant's interest in preventing the document's disclosure.  Thus, for the purpose of providing an alternative analysis, the court deems this document to be predecisional.

### b.  Defendant Has Not Shown That the Documents Are Deliberative but, for the Purpose of Providing an Alternative Analysis, the Court Will Proceed as if Defendant Has Made Such a Showing

In order to determine whether a document is subject to the deliberative process privilege, the court must be able to discern whether the document reflects the "intra-governmental exchange of thoughts that actively contribute to the agency's decisionmaking process," Texaco P.R., Inc., 60 F.3d at 884-85.  Thus, as to each document, the court must be able to identify the affiliations of the individuals on defendant's privilege log and also discern the document's deliberative nature.

In this case, defendant has not met its burden of showing that the documents are deliberative.  Upon examination of the privilege log and all of the documents submitted for in camera review, which include some individuals' e-mail domains, the court has identified the following individuals as Treasury Department employees:  C. Banks, K. Taylor, S. Mickey, J. Foster, B. Mlynarczyk, J. Grover, A. Bankole, M. Fitzgerald, R. Cumba, B. Faber, and S. Lee. The court has further identified the following individuals as Grant Thornton employees:  A. Eberhardt, B. Wilson, D. Dufendach, J. Burchett, and J. Short.  In addition, the court has identified R. Rominiecki and Y. Tchamourliyski as KPMG employees.  However, the documents' deliberative nature is not apparent on their face.  This is so despite the fact that Mr. Pearl's descriptions of each of the documents, provided above, proclaim their deliberative nature.

In any event, the court notes that even if the documents were clearly deliberative, it would not affect the court's ultimate conclusion that, under the balancing test for the deliberative process privilege, plaintiffs' evidentiary need for the documents outweighs defendant's interest in preventing the documents' disclosure.  Thus, for the purpose of providing an alternative analysis, the court deems the documents to be deliberative.

### 3.  Balancing Test

Although defendant has not met its burden to demonstrate that the valuation reports are protected by the deliberative process privilege, the court will perform an alternative analysis. Recognizing that the privilege is qualified, the court will balance plaintiffs' evidentiary need for the documents against defendant's interest in preserving their confidentiality.  In order to do so, the court weighs the five factors described in In re Subpoena.

First, with respect to the relevance of the evidence sought to be protected, the documents relate to the Enterprises' future profitability.  See supra Section I.B.  Document 52, UST 00475757, is an unnumbered three-page document [. . .].  Document 53, UST 00506346, is a four-page document [. . .].  Both documents implicate plaintiffs' status as shareholders of the Enterprises.

Second, with respect to the availability of other evidence, there is no other source of evidence available to plaintiffs that would similarly inform their understanding of the Enterprises' future profitability.

Third, with respect to the seriousness of the litigation and the issues involved, neither party disputes the importance of the case, both in terms of the damages and equitable relief sought, as well as in terms of the case's implication for litigation and "executive and legislative branch policy repercussions."  Dairyland Power I, 77 Fed. Cl. at 342.

Fourth, with respect to the government's role in the litigation, because "the Government is a party to this litigation and is the party that seeks to benefit from the invocation of the deliberative process privilege," its assertion of the "privilege must be carefully scrutinized to ensure that the privilege retains its proper narrow scope."  Id.

Fifth, with respect to the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable, it is highly unlikely, given the protective order that is already in place in this case, that any type of disclosure would result in a chilling of frank policy discussions between government employees.

Thus, with respect to Documents 52-53, plaintiffs' evidentiary need for the information outweighs defendant's interest in preventing the documents' disclosure.  In other words, the deliberative process privilege cannot shield the disclosure of the documents in this instance because evidence relating to the Enterprises' future profitability implicates both the court's jurisdiction and the merits of the case and therefore is discoverable.  The documents must be disclosed.

### L.  Estimates for the President's Budget

| Doc. No. | Bates No. | From / To / Date / CC | Description of Document / Privilege(s) Asserted |
|---|---|---|---|
| 54 | UST 00503672 | A. Chepenik to M. Miller on 1/10/2012<br><br>CC: B. Hester, T. Bowler, J. Foster, and A. Johnson | "Draft document prepared by Treasury staff containing predecisional deliberations regarding GSE budget estimates"<br><br>DPP |

The next document included in defendant's privilege log relates to the President's budget. According to Mr. Pearl, "[t]he document. . . contain[s] estimates for the President's budget," and as such "reflects draft analyses and projections regarding estimates of future draws and dividend payments to be made by the GSEs." Def.'s Resp. A76.  He further claims that "[t]hese numbers were prepared for incorporation into the President's budget . . . [and] reflect predecisional deliberations regarding such estimates."  Id.  Finally, he claims that the document at issue should not be disclosed:

> Requiring production of these deliberative materials would have a chilling effect on Treasury's ability to assist in developing the President's budget.  The ability to circulate and receive comments on draft budget documents is an essential aspect of the budget process.  If Treasury officials and staff believe that such draft documents will be disclosed to litigation adversaries, they are unlikely to feel at liberty to offer their opinions and fully engage in the budget process.  As a result, Treasury's ability to provide input into the preparation of the President's budget would be adversely affected.

Id.

Mr. Pearl asserts the deliberative process privilege as to Document 54.

### 1.  Procedural Requirements

#### a.  The Authority to Invoke the Privilege Was Properly Delegated to Mr. Pearl

As noted above, the authority to invoke the deliberative process privilege was properly delegated to Mr. Pearl.  See supra Section III.G.1.a.i.

#### b.  Defendant Has Identified With Particularity the Document It Claims Is Privileged

Mr. Pearl's declaration, which provides a description of the document, coupled with defendant's privilege log, which (1) identifies the document by its Bates number, (2) provides the document's authors and recipients, (3) provides a description of the document, and (4) identifies the specific privilege claimed, allows the court to identify with particularity the document at issue.

#### c.  Defendant Has Provided Precise and Certain Reasons for Maintaining the Confidentiality of the Document

Based on Mr. Pearl's declaration, which provides precise and certain reasons for maintaining the confidentiality of the document at issue, Def.'s Resp. A76, the court will be able to balance the government's interest in maintaining that confidentiality with plaintiffs' evidentiary need for the documents' disclosure.

## 2.  Substantive Requirements

### a.  Defendant Has Not Shown That the Document Is Predecisional but, for the Purpose of Providing an Alternative Analysis, the Court Will Proceed as if Defendant Has Made Such a Showing

The decision to approve the Net Worth Sweep was made by Secretary Geithner on August 16, 2012.  See Pls.' Mot. A178.  According to the privilege log, Document 54 was sent by A. Chepenik to M. Miller, with copies to B. Hester, T. Bowler, J. Foster, and A. Johnson, on January 10, 2012.  Although the privilege log does not explicitly state that the document was created on that date, upon its own examination, the court finds that Document 54 is undated.  Therefore, defendant has not established that this document is predecisional.  However, the court notes that even if the document was clearly predecisional, it would not affect the court's ultimate conclusion that, under the balancing test for the deliberative process privilege, plaintiffs' evidentiary need for the document outweighs defendant's interest in preventing the document's disclosure.  Thus, for the purpose of providing an alternative analysis, the court deems this document to be predecisional.

### b.  Defendant Not Has Shown That the Document Is Deliberative but, for the Purpose of Providing an Alternative Analysis, the Court Will Proceed as if Defendant Has Made Such a Showing

In order to determine whether a document is subject to the deliberative process privilege, the court must be able to discern whether the document reflects the "intra-governmental exchange of thoughts that actively contribute to the agency's decisionmaking process," Texaco P.R., Inc., 60 F.3d at 884-85.  Thus, as to each document, the court must be able to identify the affiliations of the individuals on defendant's privilege log and also discern the document's deliberative nature.

In this case, defendant has not met its burden of showing that the document is deliberative.  Upon examination of the privilege log and all of the documents submitted for in camera review, which include some individuals' e-mail domains, the court has identified A. Chepenik, M. Miller, B. Hester, T. Bowler, J. Foster, and A. Johnson as Treasury Department employees.  However, the document's deliberative nature is not apparent on its face.  This is so despite the fact that Mr. Pearl's description of the document, provided above, proclaims its deliberative nature.

In any event, the court notes that even if the document was clearly deliberative, it would not affect the court's ultimate conclusion that, under the balancing test for the deliberative process privilege, plaintiffs' evidentiary need for the document outweighs defendant's interest in preventing the document's disclosure.  Thus, for the purpose of providing an alternative analysis, the court deems the document to be deliberative.

### 3. Balancing Test

Although defendant has not met its burden to demonstrate that the document relating to the President's budget is protected by the deliberative process privilege, the court will perform an alternative analysis.  Recognizing that the privilege is qualified, the court will balance plaintiffs' evidentiary need for the document against defendant's interest in preserving its confidentiality.  In order to do so, the court weighs the five factors described in In re Subpoena.

First, with respect to the relevance of the evidence sought to be protected, the document relates to the reasonableness of plaintiffs' expectations regarding the Enterprises' future profitability.  See supra Section I.B.  Document 54, UST 00503672, is an unnumbered three-page document [. . .].  The document necessarily implicates plaintiffs' status as shareholders of the Enterprises.

Second, with respect to the availability of other evidence, there is no other source of evidence available to plaintiffs that would similarly inform their understanding of the reasonableness of their expectations regarding the Enterprises' future profitability.

Third, with respect to the seriousness of the litigation and the issues involved, neither party disputes the importance of the case, both in terms of the damages and equitable relief sought, as well as in terms of the case's implication for litigation and "executive and legislative branch policy repercussions." Dairyland Power I, 77 Fed. Cl. at 342.

Fourth, with respect to the government's role in the litigation, because "the Government is a party to this litigation and is the party that seeks to benefit from the invocation of the deliberative process privilege," its assertion of the "privilege must be carefully scrutinized to ensure that the privilege retains its proper narrow scope."  Id.

Fifth, with respect to the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable, it is highly unlikely, given the protective order that is already in place in this case, that any type of disclosure would result in a chilling of frank policy discussions between government employees.

Thus, with respect to Document 54, plaintiffs' evidentiary need for the information outweighs defendant's interest in preventing the document's disclosure.  In other words, the deliberative process privilege cannot shield the disclosure of the document in this instance because evidence relating to the reasonableness of plaintiffs' expectations regarding the Enterprises' future profitability implicates the merits of the case and therefore is discoverable.  The document must be disclosed.

**M.  Potential Implications of the Terms of the PSPAs**

| Doc. No. | Bates No. | From / To / Date / CC | Description of Document / Privilege(s) Asserted |
|---|---|---|---|
| 55 | UST 00061067 | J. Parrott to T. Bowler on 8/18/2012 | "Email communications between Treasury and White House staff containing predecisional deliberations related to the terms of the PSPAs"  DPP |
| 56 | UST 00385562 | T. Bowler to J. Parrott on 8/18/2012 | "Email communications containing predecisional deliberations related to the budget and the amended PSPAs"  DPP |

The next category of documents identified in defendant's privilege log concerns the potential implications of the terms of the PSPAs.  According to Mr. Pearl, "[t]he correspondence in this category [consists of] two emails from the same email chain . . . discussing the effect of the terms of the amended PSPAs on long term housing finance reform plans," and as such "reflect considerations weighed by Treasury and White House officials in connection with these predecisional deliberations."  Def.'s Resp. A76-77.  He further claims that the documents at issue should not be disclosed:

> Requiring production of these deliberative materials would have a chilling effect on the free exchange of ideas between Treasury and White House officials as they develop and execute financial policies.  Treasury's ability to communicate with the White House is an essential function of the policy-making process.  If officials believe that such exchanges will be disclosed to litigation adversaries, they are unlikely to offer their opinions and fully engage in the policy development process.  As a result, Treasury's ability to devise and executive financial policies would be adversely affected.

Id.

Mr. Pearl asserts the deliberative process privilege as to Documents 55-56.

**1.  Procedural Requirements**

**a.  The Authority to Invoke the Privilege Was Properly Delegated to Mr. Pearl**

As noted above, the authority to invoke the deliberative process privilege was properly delegated to Mr. Pearl.  See supra Section III.G.I.A.i.

-76-

### b. Defendant Has Identified With Particularity the Documents It Claims Are Privileged

Mr. Pearl's declaration, which provides a description of the e-mails discussing the potential implications of the terms of the PSPAs, coupled with defendant's privilege log, which (1) identifies the documents by their Bates numbers, (2) provides the documents' authors and recipients, (3) provides a description of the documents, and (4) identifies the specific privilege claimed, allows the court to identify with particularity the documents at issue.

### c. Defendant Has Provided Precise and Certain Reasons for Maintaining the Confidentiality of the Documents

Based on Mr. Pearl's declaration, which provides precise and certain reasons for maintaining the confidentiality of the documents at issue, Def.'s Resp. A76-77, the court will be able to balance the government's interest in maintaining that confidentiality with plaintiffs' evidentiary need for the documents' disclosure.

### 2. Substantive Requirements

### a. Defendant Has Not Shown That the Documents Are Predecisional but, for the Purpose of Providing an Alternative Analysis, the Court Will Proceed as if Defendant Has Made Such a Showing

The decision to approve the Net Worth Sweep was made by Secretary Geithner on August 16, 2012. See Pls.' Mot. A178. According to the privilege log, Document 55 was sent by J. Parrott to T. Bowler on August 18, 2012. Although the privilege log does not explicitly state that the document was created on that date, upon its own examination, the court finds that Document 55, an e-mail chain, is dated from August 17, 2012, to August 18, 2012. Thus, the document is not predecisional.

The privilege log further provides that Document 56 was sent by T. Bowler to J. Parrott on August 18, 2012. Although the privilege log does not explicitly state that the document was created on that date, upon its own examination, the court finds that Document 56—the same e-mail chain as Document 55 with one additional message—is dated from August 17, 2012, to August 18, 2012. Thus, the document is not predecisional.

Since Documents 55-56 are not predecisional, defendant cannot claim that they are protected by the deliberative process privilege. However, the court notes that even if it were to follow the reasoning of the D.C. Circuit in Mead Data Central Inc. and the Court of Federal Claims in Ford Motor Company, discussed supra, wherein documents created after a decision is made are deemed predecisional if they simply report on previous recommendations and opinions, it would not affect the court's ultimate conclusion that, under the balancing test for the deliberative process privilege, plaintiffs' evidentiary need for the documents outweighs defendant's interest in preventing the documents' disclosure. Thus, for the purpose of providing an alternative analysis, the court deems the documents to be predecisional.

**b.  Defendant Has Not Shown That the Documents Are Deliberative but, for the Purpose of Providing an Alternative Analysis, the Court Will Proceed as if Defendant Has Made Such a Showing**

In order to determine whether a document is subject to the deliberative process privilege, the court must be able to discern whether the document reflects the "intra-governmental exchange of thoughts that actively contribute to the agency's decisionmaking process," Texaco P.R., Inc., 60 F.3d at 884-85.  Thus, as to each document, the court must be able to identify the affiliations of the individuals on defendant's privilege log and also discern the document's deliberative nature.

In this case, defendant has not met its burden of showing that the documents are deliberative.  Upon examination of the privilege log and all of the documents submitted for in camera review, which include some individuals' e-mail domains, the court has identified J. Parrott and T. Bowler as Treasury Department employees.  However, the documents' deliberative nature is not apparent on their face.  This is so despite the fact that Mr. Pearl's descriptions of each of the documents, provided above, proclaim their deliberative nature.

In any event, the court notes that even if the documents were clearly deliberative, it would not affect the court's ultimate conclusion that, under the balancing test for the deliberative process privilege, plaintiffs' evidentiary need for the documents outweighs defendant's interest in preventing the documents' disclosure.  Thus, for the purpose of providing an alternative analysis, the court deems the documents to be deliberative.

### 3.  Balancing Test

Although defendant has not met its burden to demonstrate that the documents regarding the potential terms of the PSPAs are protected by the deliberative process privilege, the court will perform an alternative analysis.  Recognizing that the privilege is qualified, the court will balance plaintiffs' evidentiary need for the documents against defendant's interest in preserving their confidentiality.  In order to do so, the court weighs the five factors described in In re Subpoena.

First, with respect to the relevance of the evidence sought to be protected, the documents relate to the lifespan of the conservatorships.  See supra Section I.B.  Document 55, UST 00061067, is a partially redacted two-page e-mail chain between Treasury Department and White House staff dated from August 17, 2012, to August 18, 2012.  Document 56, UST 00385562, as noted above, is the same as Document 55 but has one additional e-mail message and is three pages long.  Both documents contain discussions of the August 17, 2012 Net Worth Sweep.

Second, with respect to the availability of other evidence, there is no other source of evidence available to plaintiffs that would similarly inform their understanding of the lifespan of the conservatorships.

Third, with respect to the seriousness of the litigation and the issues involved, neither party disputes the importance of the case, both in terms of the damages and equitable relief sought, as well as in terms of the case's implication for litigation and "executive and legislative branch policy repercussions." Dairyland Power I, 77 Fed. Cl. at 342.

Fourth, with respect to the government's role in the litigation, because "the Government is a party to this litigation and is the party that seeks to benefit from the invocation of the deliberative process privilege," its assertion of the "privilege must be carefully scrutinized to ensure that the privilege retains its proper narrow scope." Id.

Fifth, with respect to the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable, it is highly unlikely, given the protective order that is already in place in this case, that any type of disclosure would result in a chilling of frank policy discussions between government employees.

Thus, with respect to Documents 55-56, plaintiffs' evidentiary need for the information outweighs defendant's interest in preventing the documents' disclosure. In other words, the deliberative process privilege cannot shield the disclosure of the documents in this instance because evidence relating to the lifespan of the conservatorships implicates the court's jurisdiction and therefore is discoverable. The documents must be disclosed.

## N. Other Documents Listed on the Privilege Log

There are two remaining documents listed on the privilege log and produced to the court for in camera review. However, the court need not consider them because defendant has withdrawn its claim of privilege. The first document is designated UST 00418517. In its response to plaintiffs' motion to compel, defendant states:

> After Fairholme filed its motion to compel, the Government produced Document UST00418517 (Pls. App. A007) in redacted form. Document UST00418517 is a large compilation of briefing materials periodically prepared by Treasury staff for the Secretary, and was produced pursuant to an agreement between the parties stipulating that non-responsive materials would be redacted and that responsive memoranda would be produced in full.

Def.'s Resp. 21 n.8. The second document is designated UST 00061011. According to defendant, "the Government has withdrawn its initial assertion of deliberative process privilege over document UST00061011, and will produce that document in full." Id.

## IV.  CONCLUSION

For the foregoing reasons, the court **GRANTS** plaintiffs' motion to compel in its entirety. Furthermore, pursuant to RCFC 37(a)(5), defendant, **by no later than October 14, 2016,** shall file a memorandum with the court explaining why the court should not require defendant "to pay [plaintiffs'] reasonable expenses incurred in making the motion, including attorney's fees."

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge