# In the United States Court of Federal Claims

No. 13-465C
(Filed: April 28, 2017)

```
*************************************
FAIRHOLME FUNDS, INC. et al.,        *
                                     *
                Plaintiffs,          *
                                     *   Amicus Curiae Brief; Fifth Amendment
v.                                   *   Takings; Separation of Powers Doctrine;
                                     *   Public Rights Doctrine; Constitutional
THE UNITED STATES,                   *   Jurisdiction
                                     *
                Defendant.           *
*************************************
```

Charles J. Cooper, Washington, DC, for plaintiffs.

Kenneth M. Dintzer, United States Department of Justice, Washington, DC, for defendant.

Michael Sammons, San Antonio, TX, pro se.

## OPINION AND ORDER

**SWEENEY**, Judge

      On March 14, 2017, the United States Court of Appeals for the Federal Circuit ("Federal Circuit") affirmed this court's denial of Michael Sammons's motion to intervene in the above-captioned case. Fairholme Funds, Inc. v. United States, No. 2017-1015, 2017 WL 991077 (Fed. Cir. Mar. 14, 2017) (per curiam) (unpublished decision), aff'g No. 13-465C (Fed. Cl. Sept. 30, 2016), ECF No. 338 (unpublished order). Less than one week later, Mr. Sammons, characterizing himself as "an eventual class participant in these consolidated takings cases," moved this court for leave to file an amicus curiae brief in support of the proposition that, as an Article I court, the United States Court of Federal Claims ("Court of Federal Claims") lacks the constitutional authority to adjudicate claims arising under the Just Compensation Clause of the Fifth Amendment to the United States Constitution. Sammons Mot. 1, ECF No. 363. The court denies Mr. Sammons's motion for leave to file his proposed amicus curiae brief because the motion is unpersuasive and the proposed brief will not facilitate the resolution of the underlying case and its related cases. In this opinion, the court will first provide a brief overview of the Federal Circuit's decision affirming this court's order denying intervention, followed by a discussion of Mr. Sammons's litigation in the United States District Court for the Western District of Texas ("Western District of Texas") and subsequent appeal to the United States Court of Appeals for the Fifth Circuit ("Fifth Circuit"). Next, the court will discuss Mr. Sammons's arguments regarding this court's jurisdiction to consider claims brought under the Fifth

Amendment. Lastly, the court will consider the merits of Mr. Sammons's current motion for leave to file an amicus curiae brief.

As a preliminary matter, the court observes that in its decision affirming this court's order denying Mr. Sammons's motion for intervention, the Federal Circuit stated that the "Court of Federal Claims denied Mr. Sammons's motion, determining, among other things, that he can protect his interest through his independent litigation and that the motion was untimely. Finding no error in those determinations, we affirm." Fairholme Funds, 2017 WL 991077, at *1. Thus, the Federal Circuit affirmed this court's conclusion with respect to these two deficiencies in Mr. Sammons's motion.

Significantly, the Federal Circuit also observed that Mr. Sammons is currently litigating the identical issue in the Western District of Texas, an Article III forum.[1] Id. at *2 n.1. Mr. Sammons's complaint in that case was filed three weeks after his motion to intervene in the instant case was filed. See Compl., Sammons v. United States, No. 5:16-cv-01054-FB (W.D. Tex. Oct. 21, 2016), ECF No. 1. In his October 21, 2016 complaint, Mr. Sammons asserted a Fifth Amendment Takings claim. Id. ¶¶ 102-104. According to Mr. Sammons, as a result of the so-called "Net Worth Sweep," by which the federal government denied dividend payments to shareholders of non-cumulative preferred stock issued by the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation, he is owed $900,000. Id. ¶¶ 90-104.

Mr. Sammons's case was assigned to District Court Judge Fred Biery, who then referred the case to Magistrate Judge Elizabeth Chestney. On February 7, 2017, Magistrate Judge Chestney issued a Report and Recommendation ("R. & R.") on, inter alia, Mr. Sammons's motion for a declaratory judgment on the court's jurisdiction. In the R. & R., Magistrate Judge Chestney explicitly considered the extent of the Court of Federal Claims' jurisdiction over Fifth Amendment takings claims, as granted by the Tucker Act:

> Sammons acknowledges that the Tucker Act, by its clear statutory text, deprives this Court of jurisdiction to hear his taking claim. He further acknowledges that countless courts, relying on the Tucker Act's statutory text, have "correctly held" that the Court of Federal Claims is the exclusive forum for claims like that raised by Sammons. Nonetheless, Sammons asks this Court to disregard decades of [United States Supreme Court ("Supreme Court")], circuit, and district court precedent, much of which is binding on this court, to hold that the Tucker Act is unconstitutional as applied to claims arising from the Fifth Amendment.

---

[1] The Federal Circuit also noted that Mr. Sammons provided the panel with a copy of the law review article he previously supplied to the magistrate judge in the Western District of Texas. Fairholme Funds, 2017 WL 991077, at *2 n.1.

> It is Sammons's position that the Tucker Act violates Article III and the separation-of-powers doctrine by improperly granting exclusive jurisdiction over Fifth Amendment takings claims to a non-Article III court. Sammons argues that his claim is governed by the Supreme Court's decision in <u>Stern v. Marshall</u>, 564 U.S. 462 (2011), which held that an Article I Bankruptcy Court lacked constitutional authority to enter a final judgment on a common law tort claim. According to Sammons, the <u>Stern</u> decision requires this Court to ignore the Tucker Act's explicit statutory jurisdiction directive and to conclude that the act is unconstitutional as applied to his claim.

<u>Sammons v. United States</u>, No. 5:16-cv-01054-FB, slip op. at 7-8 (W.D. Tex. Feb. 7, 2017), ECF No. 30 (citations omitted) (R. & R. of Magistrate Judge Chestney). In rejecting Mr. Sammons's arguments, Magistrate Judge Chestney observed that this precise separation-of-powers argument:

> has been invoked in numerous cases to challenge all manner of adjudication by non-Article III entities, and yet, . . . the Supreme Court has only found a constitutional violation in two cases, both of which involved congressional grants of jurisdiction to bankruptcy courts to hear state law claims between private individuals. The holding in each case was narrow.

<u>Id.</u> at 9 (citations omitted).

Moreover, Magistrate Judge Chestney was unpersuaded by Mr. Sammons's interpretation and application of the Supreme Court's holding in <u>Stern</u>, 564 U.S. at 469:

> In <u>Stern</u>, the Court [] found that an Article I Bankruptcy Court impermissibly exercised the judicial power of the United States by entering final judgment on a common law tort claim that was not resolved in the process of ruling on a creditor's proof of claim.
>
> Outside of these narrow exceptions, the [Supreme] Court has made clear that the Constitution "does not confer on litigants an absolute right to the plenary consideration of every nature of claim by an Article III court." Nor does the Supreme Court require "an absolute construction of Article III," as the Court has "long recognized that Congress is not barred from acting pursuant to its powers under Article I to vest decision-making authority in tribunals that lack the attributes of Article III courts."

<u>Sammons</u>, No. 5:16-cv-01054-FB, slip op. at 9, ECF No. 30 (citations omitted).

In discussing the public-rights doctrine's application to Article III decision making, Magistrate Judge Chestney further explained that the doctrine:

-3-

>recognizes that there is a category of cases involving "public rights" that Congress can constitutionally assign to "legislative" courts for resolution. This doctrine extends "only to matters arising between" individuals and the Government "in connection with the performance of the constitutional functions of the executive or legislative departments . . . that historically could have been determined exclusively by those" branches.

Id. at 10 (citations omitted). Magistrate Judge Chestney noted that the Supreme Court has never deviated from holding that the public-rights doctrine is limited "'to cases in which the claim at issue derives from a federal regulatory scheme, or in which resolution of the claim by an expert government agency is deemed essential to a limited regulatory objective within the agency's authority.'" Id. at 11 (quoting Stern, 564 U.S. at 490).

Recognizing that Mr. Sammons's claim was not a dispute between private parties or one based on a common-law private right of action, but rather was a claim brought by an individual against the United States with the ultimate goal of receiving monetary damages, Magistrate Judge Chestney thus concluded, based upon Supreme Court and Federal Circuit precedent, that "Congress may constitutionally attach conditions to its consent to be sued, such as specifying the forum in which such claims must proceed," and that it did so when it created the Court of Federal Claims and conferred upon it the authority to, inter alia, adjudicate Fifth Amendment takings claims. Id. at 12. Therefore, Magistrate Judge Chestney explained, "Congressional delegation of decision-making to the Court of Federal Claims via the Tucker Act does not violate Article III." Id. at 13.

Although Mr. Sammons filed objections to the R. & R., on March 9, 2017, Judge Biery adopted the R. & R. and dismissed Mr. Sammons's complaint for lack of jurisdiction. Sammons v. United States, No. 5:16-cv-01054-FB, slip op. at 3 (W.D. Tex. Mar. 9, 2017), ECF No. 33 (dismissal order). In so doing, Judge Biery held that Congress did not violate Article III of the United States Constitution by delegating to the Court of Federal Claims the authority to adjudicate claims arising under the Just Compensation Clause.[2] Id. at 2. The matter is now pending before the Fifth Circuit.

Despite acknowledging that Mr. Sammons was in the process of litigating the identical legal issue before the Western District of Texas, the Federal Circuit directed this court to consider whether, as an Article I court, the Court of Federal Claims is precluded from adjudicating claims arising under the Just Compensation Clause of the Fifth Amendment. Fairholme Funds, 2017 WL 991077, at *3. Although such analysis will be set forth in its merits decision resolving defendant's motion to dismiss, the court makes the following preliminary observations with respect to the substantive arguments articulated by Mr. Sammons.

---

[2] Judge Biery also noted that Mr. Sammons's "reliance on [the Villanova Law Review] article [was] misplaced" because the author of the article concludes that Congress must rectify the constitutional problem he believes exists, not the courts, whereas Mr. Sammons argues that the obligation falls to the courts. Sammons, No. 5:16-cv-01054-FB, slip op. at 3, ECF No. 33.

In the motion currently before the court, Mr. Sammons seeks leave to file an amicus curiae brief in support of the proposition that only an Article III court may entertain takings claims. As he did in his case in the Western District of Texas, Mr. Sammons relies primarily upon a particular law review article and his own interpretation of the Supreme Court's decision in <u>Stern</u>. Sammons Mot. 2 n.2. First, Mr. Sammons claims that the Federal Circuit's reference to his argument regarding <u>Stern</u> is both an endorsement of his contention that it is constitutionally impermissible for this court to adjudicate takings claims as well as an affirmation of his analysis of the Supreme Court's holding in that case.[3] Sammons Mot. 1. Mr. Sammons is mistaken. As a preliminary matter, the court observes that the Federal Circuit is not constrained to await a ruling from this court if it believed that a constitutional impediment existed that prevented this court from entertaining Fifth Amendment Takings claims. To the contrary, the Federal Circuit could have declared, <u>sua sponte</u>, the constitutional infirmity alleged and remanded the matter to the undersigned with instructions to dismiss the <u>Fairholme</u> case and its related cases for lack of subject matter jurisdiction or directed the transfer of those cases to the appropriate federal district courts for resolution. The Federal Circuit declined to do so. Moreover, this is not the first case to raise this issue before the Federal Circuit. Rather, the same constitutional issue has been pending for over a year before the Federal Circuit in <u>Brott v. United States</u>, No. 16-1852 (Fed. Cir. filed Apr. 14, 2016). Thus, this question comes as no surprise to the Federal Circuit. However, the Federal Circuit stayed resolution of that appeal pending the outcome of another case currently pending before the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") in parallel litigation. See <u>Brott v. United States</u>, No. 16-1466 (6th Cir. filed Apr. 13, 2016). In that case, the constitutional issue has been fully briefed, and the Sixth Circuit held oral argument on February 2, 2017.

Second, Mr. Sammons appears to view the Federal Circuit's statement that his "argument, to the extent that it is a jurisdictional one, must be addressed by the Court of Federal Claims and (if there is an appeal) by this court even if [he] is not a party and even if no party makes the argument he makes," <u>Fairholme Funds</u>, 2017 WL 991077, at *3, as an invitation for him to file similar motions for intervention in other takings cases pending in this court. Those motions have uniformly been unsuccessful. For example, in an order denying Mr. Sammons's motion for leave to file an amicus curiae brief in <u>Trin-Co Inv. Co. v. United States</u>, No. 11-857L (Fed. Cl. Mar. 29, 2017), ECF No. 99 (unpublished order), Senior Judge Lynn J. Bush observed that "Mr. Sammons has recently sought to introduce his general jurisdictional challenge into a

---

[3] It would appear that Mr. Sammons overstates the Supreme Court's holding in <u>Stern</u>, wherein the Court held, <u>inter alia</u>, that Article III does not authorize bankruptcy court judges to resolve state tort actions that exist "without regard to any bankruptcy proceeding." 564 U.S. at 499. Indeed, in addition to <u>Stern</u>, there has been only one other occasion, in <u>N. Pipeline Const. Co. v. Marathon Pipe Line Co.</u>, 458 U.S. 50 (1982), where the Supreme Court found a constitutional violation by the actions of an Article I tribunal. In both <u>Stern</u> and <u>Northern Pipeline,</u> the court was concerned with the authority exercised by a bankruptcy court adjudicating state common law claims between private individuals. See <u>Stern</u>, 564 U.S. at 487. The Court of Federal Claims, however, does not adjudicate claims between private parties. To the contrary, the United States is the defendant in all actions.

number of this court's takings cases." Id. at 1. Senior Judge Bush concluded that Mr. Sammons's proposed amicus curiae brief "will not facilitate the resolution of the [] case and focuses entirely on [his] own views of this court's jurisdiction." Id. at 2. Mr. Sammons filed the identical motion for leave to file an amicus brief in five other takings cases pending in this court—all of which have been denied. In each motion, Mr. Sammons claims that "[n]one of the parties in [the] case . . . has expressed any interest in arguing that this Court lacks Article III jurisdiction . . . and so the need for this amicus brief is apparent, given the concerns expressed by the Federal Circuit and the importance and complexity of the Article III constitutional issue." Mot. 1, Trin-Co Inv., No. 11-857L, ECF No. 98; see also Carpenter v. United States, No. 15-415L (Fed. Cl. April 11, 2017), ECF No. 48 ("Mr. Sammons's amicus curiae brief will not facilitate the resolution of the above-captioned case and focuses entirely on Mr. Sammons's own views of this court's jurisdiction.") (unpublished order); Mississippi Cty. v. United States, No. 16-477C (Fed. Cl. Mar. 24, 2017), ECF No. 15 (returning motion to Mr. Sammons because case had already been closed) (unpublished order); Brown v. United States, Nos. 14-38L, 14-6L (Fed. Cl. Mar. 24, 2017), ECF No. 72 ("Mr. Sammons' amicus curiae brief will not facilitate the resolution of [this] case and focuses entirely on Mr. Sammons' own views of this court's jurisdiction.") (unpublished order).

Turning to the merits of Mr. Sammons's motion for leave to file an amicus curiae brief, the court notes that "[t]here is no right to file an amicus brief in this court; the decision whether to allow participation by amici curiae is left entirely to the discretion of the court." Fluor Corp. & Affiliates v. United States, 35 Fed. Cl. 284, 285 (1996). In deciding whether to allow such participation, judges consider whether "[m]ovants might have a perspective that would be helpful to the court or otherwise provide information and argument that would illuminate the issues in this case." Land of Lincoln Mutual Health Ins. Co. v. United States, No. 16-744C, 2016 WL 5900196, at *1 (Fed. Cl. Oct. 7, 2016).

In a recent ruling on a motion for leave to file an amicus curiae brief, this court observed:

> The [Rules of the United States Court of Federal Claims], which largely mirror the Federal Rules of Civil Procedure, do not provide for the participation of amici curiae. Nevertheless, the court possesses the inherent authority to allow such participation, and has broad discretion to exercise that authority. Am. Satellite Co. v. United States, 22 Cl. Ct. 547, 549 (1991). When deciding whether to allow the participation of an amicus curiae, the court may consider a number of factors, including (1) "whether the court is persuaded that participation by the amicus will be useful to it, as contrasted with simply strengthening the assertions of one party," id.; (2) whether the parties consent to the participation of the amicus curiae, id.; (3) whether "one of the parties is not interested in or capable of fully presenting one side of the argument," id.; (4) whether "the court's decision would directly affect [the movant's] rights or would set a controlling precedent regarding a claim of [the movant]," [Fluor Corp., 35 Fed. Cl. at 285]; and (5) whether participation by an amicus curiae would unnecessarily delay the

> litigation, id. at 286.  Accord Wolfchild v. United States, 62 Fed.
> Cl. 521, 536 (2004); see also Hage v. United States, 35 Fed. Cl.
> 737, 742 (1996) (allowing the participation of amici curiae who
> possessed "specialized knowledge" that could be "beneficial to the
> court in the resolution of [the] case").

Health Republic Ins. Co. v. United States, 129 Fed. Cl. 115, 116-17 (2016) (second and fourth alterations in original).

Applying these five factors to the instant motion, the court concludes first that Mr. Sammons's proposed amicus curiae brief will not facilitate resolution of the issue raised in this litigation and therefore will not be of any assistance to the court.  The court is aware of several law review articles and cases that address the issue; that authority, coupled with the memoranda of law that will be submitted by counsel of record, is sufficient.  Indeed, Mr. Sammons cannot complain that the Federal Circuit will be deprived of the benefit of the law review article upon which he so vociferously relies because the Federal Circuit acknowledges the law review article in the first footnote to its decision:  "Mr. Sammons furnished to the Magistrate Judge [in the Western District of Texas] a lengthy law review article addressing the issue he raised regarding an entitlement to an Article III court for a takings claim.  He has supplied a prepublication version of that article to this court as well."  Fairholme Funds, 2017 WL 991077, at *2 n.1 (citation omitted).

Second, at least one of the parties, the United States, opposes the motion.  See generally Def.'s Resp., ECF No. 366.  Indeed, the court agrees with the United States that Mr. Sammons's motion is an attempt to intervene in this matter.  See id. at 5-6.

Third, despite Mr. Sammons's suggestion, there is no evidence that the parties are not capable of addressing the constitutional issues presented.  There can be no serious dispute that counsel in this matter are fully capable of addressing all of the issues presented in this litigation, including the constitutional ones.  Mr. Sammons's view appears to be that because the parties to this litigation do not share his legal view of the constitutional issue, that difference of opinion renders counsel of record incapable of addressing the issue.  That argument lacks merit.  Moreover, to the extent that Mr. Sammons asserts that the parties, and perhaps even the court, have an affirmative obligation to refute the arguments set forth in the law review article he presented to the Federal Circuit, he is mistaken.  All that is required is for counsel to address the issue as framed by the Federal Circuit.

Fourth, assuming that this court's future ruling on the constitutional issue is contrary to Mr. Sammons's legal view, he still has a forum within which to adjudicate that precise issue.  This fact is beyond dispute because the constitutional issue is currently pending before the Fifth Circuit.  See Sammons v. United States, No. 17-50201 (5th Cir. filed Mar. 14, 2017).  Specifically, on April 19, 2017, Mr. Sammons indicated in his opening brief his view that "the Tucker Act is unconstitutional as applied to [] takings cases and that therefore the district court had jurisdiction directly under the Takings Clause of the Fifth Amendment to the U.S.

Constitution" to adjudicate the takings claim he filed in the Western District of Texas.  Brief of Appellant at 7, Sammons v. United States, No. 17-50201 (5th Cir. Apr. 19, 2017) (emphasis in original); see also id. at 12-14.

Fifth, although permitting Mr. Sammons's participation will not necessarily delay the litigation, the arguments set forth in his proposed amicus curiae brief cannot be fairly described as providing "specialized knowledge" to the court.  As previously explained, the court is aware of the Federal Circuit's directive that this court address the issue as well as the three fora where the same constitutional issue is, at present, being litigated.

When weighing the five factors recited above in considering whether to grant Mr. Sammons's motion for leave to file an amicus brief, the court finds that it is able to address the constitutional issue without Mr. Sammons's proposed brief.  In addition, the court notes that in light of the procedural posture of this case—discovery remains ongoing—at the point the court addresses the constitutional issue, the court may have the benefit of additional guidance from the appellate courts.  Of course, only the decision by the Federal Circuit in Brott will be binding.  Finally, the court notes that if, prior to the resolution of his appeal by the Fifth Circuit, Mr. Sammons files a takings claim in this court predicated upon the same operative facts as those set forth in the complaint he filed in the Western District of Texas, this court may lack jurisdiction over his claims.  Section 1500 of Title 28 of the United States Code provides:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

Accordingly, the court **DENIES** Mr. Sammons's motion.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney  
MARGARET M. SWEENEY  
Judge
