# In the United States Court of Federal Claims

No. 13-465C
(Filed Under Seal: October 4, 2017)
(Reissued for Publication: October 23, 2017)[1]

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| FAIRHOLME FUNDS, INC. et al.,    \* | |
|    \* | |
|        Plaintiffs,    \* | FRE 502(d); Quick Peek Procedure; |
|    \* | Clawback Order; RCFC 26; Discovery |
| v.    \* | |
|    \* | |
| THE UNITED STATES,    \* | |
|    \* | |
|        Defendant.    \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Charles J. Cooper, Washington, DC, for plaintiffs.

Kenneth M. Dintzer, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Judge

       Before the court is plaintiffs' second motion to compel the production of approximately 1500 documents defendant is currently withholding pursuant to the deliberative process and bank examination privileges. Plaintiffs seek access to these documents pursuant to the "quick peek" procedure authorized by Rule 502(d) of the Federal Rules of Evidence ("FRE"). The court deems oral argument unnecessary and, for the reasons stated below, grants plaintiffs' motion.

### I.  BACKGROUND[2]

       In their most recent status report, filed on June 30, 2017, the parties indicated that (1) defendant produced an additional 3500 documents in response to the court's March 7, 2017 order; (2) as a result of that production, plaintiffs identified thirty-eight documents they contend should not be withheld for privilege; (3) defendant stated that it was in the process of reviewing

---

     [1]  Pursuant to the parties' joint status report submitted on October 17, 2017, this reissued Opinion and Order contains no redactions.

     [2]  For additional background information on the nature of the case and the parties' positions with respect to the instant discovery dispute, see Fairholme Funds, Inc. v. United States, 128 Fed. Cl. 410 (2016), the redacted version of the court's September 20, 2016 Opinion and Order.

the thirty-eight documents and would respond to plaintiffs by July 12, 2017; and (4) absent any additional motions practice, discovery would be completed by August 3, 2017. June 30, 2017 Joint Status Report 1-2. Following its review of the thirty-eight documents, defendant produced an additional twenty-two documents. Pls.' Mot. 2. In response to the release of these additional documents, plaintiffs proposed that the parties use the quick peek procedure authorized by FRE 502(d). Id. Defendant did not agree to the use of the procedure. Id. at 3. On August 3, 2017, plaintiffs filed a second motion to compel—the motion currently before the court. Briefing on the motion was completed on August 24, 2017.

As they did in the February 24, 2017 joint status report, plaintiffs again seek a court order directing the parties to utilize the quick peek procedure authorized by FRE 502(d) in their second motion to compel. Pls.' Mot. 1. Specifically, plaintiffs seek to review the approximately 1500 documents dated May 2012 and later, which defendant is withholding pursuant to the deliberative process and bank examination privileges. Id. Plaintiffs contend that although the court declined their previous request to use the procedure, its use is now appropriate. Id.

## II. DISCUSSION

### A. The Parties' Positions

In support of their motion, plaintiffs state:

> While we do not suggest that Government counsel has failed to make a good faith effort to comply with this Court's orders, the rate at which another review led the Government to abandon its privilege assertions is troubling and highlights the inherent difficulty of advocates for the Government determining which information Plaintiffs most need in this important and factually complex case.

Pls.' Mot. 3. Plaintiffs further contend that portions of the belatedly produced documents, such as portions of FHFA00070607, were not privileged in the first instance because they contained segregable factual information. Id. at 3-4. In addition, plaintiffs claim that documents such as FHFA00038592 and FHFA00077771 demonstrate that plaintiffs' need for the information "was clearly sufficient to overcome the Government's qualified deliberative process and bank examination privileges." Id. at 4. According to plaintiffs, FHFA00038592, an electronic-mail message sent by an official of the Federal Housing Finance Agency ("FHFA") "three days before the Net Worth Sweep was announced that acknowledged that the Companies' Boards had discussed re-recording certain deferred tax assets that had been written off based on the view that they were going to be profitable going forward," disproves a December 17, 2013 sworn declaration by Mario Ugoletti, Special Advisor to the Office of the Director of the FHFA.[3] Id. (internal quotation marks omitted). In his declaration, Mr. Ugoletti stated: "'At the time of the

---

[3] Mr. Ugoletti's sworn declaration was submitted in the case of Perry Capital LLC v. Lew, Civil Action No. 13-cv-1025, which is currently pending in the United States District Court for the District of Columbia. Pl.'s Mot. 4.

negotiation and execution of the Third Amendment, the Conservator and the Enterprises had not yet begun to discuss whether or when the Enterprises would be able to recognize any value to their deferred tax assets.'"  Id. (quoting Declaration of Mario Ugoletti ¶ 20, Appendix ("A") 38). With respect to FHFA00077771, "an internal FHFA [electronic-mail message] summarizing a June 13, 2012 meeting between FHFA officials and [Fannie Mae's Chief Financial Officer ("CFO")], Susan McFarland," plaintiffs argue it should have been produced earlier because it "speaks directly to the Companies' profitability and the anticipated effect of the Net Worth Sweep."  Id. at 4-5.  In the electronic-mail message, Ms. McFarland states: "'[I]t is possible that [Fannie Mae] may take a negative provision of $1 to $2 billion in the reserves (this would increase income) due to lower than expected credit losses.'"  Id. at 4 (quoting A40).

In its response to plaintiffs' motion, defendant argues that the use of the quick peek procedure was not appropriate when plaintiffs first suggested it and is even less appropriate now. Def.'s Resp. 1.  Defendant notes that following its production of the additional twenty-two documents, defendant reconsidered its position "regarding certain documents concerning the Companies' loan loss reserves and/or deferred tax assets" and produced a total of fifteen more documents.  Id. at 4-5.  Defendant further notes its continued objection to the use of the quick peek procedure with respect to the documents currently being withheld on the basis of the deliberative process and bank examination privileges.  Id. at 5.

In support of its opposition to the use of FRE 502's quick peek procedure, defendant contends that the use of the procedure is inappropriate in this case because it does not consent and because it has already conducted a comprehensive review of the privileged materials.  Id. at 6.  According to defendant, the purpose of the procedure is "to lessen the producing party's burden to review voluminous electronically stored information (ESI) for privilege and invest the resources necessary to comply with the strictures of Rule 26(b)(5)" of the Rules of the United States Court of Federal Claims ("RCFC"), id. at 7, the general rule governing a producing party's obligation to identify privileged documents, id. at 6.  When the procedure is used, defendant adds, courts enter a "clawback" order to ensure that the producing party does not waive any privileges by virtue of it allowing its opponent to review the documents.  Id. at 7.  Quoting a note published by The Sedona Conference from its eponymous journal, defendant avers:

> "[FRE] 502(d) does not authorize a court to require parties to engage in 'quick peek' . . . productions and should not be used directly or indirectly to do so. . . . Rule 502 was designed to protect producing parties, not to be used as a weapon impeding a producing parties' right to protect privileged material.  Compelled disclosure of privileged information, even with a right to later claw back the information, forces a producing party to ring a bell that cannot be un-rung."

Id. (quoting The Sedona Conference, Commentary on Protection of Privileged ESI, 17 Sedona Conf. J. 99, 140 (2016)).

Further, defendant argues that it is aware of only one case in which a court ordered the use of the quick peek procedure over a producing party's objections.  Id. at 9.  According to

defendant, in that case—Summerville v. Moran, No. 14-cv-2099, 2016 WL 233627 (S.D. Ind. Jan. 20, 2016)—the court permitted the use of the procedure because the defendant's privilege log was inadequate and because the defendant refused to cooperate with plaintiff during discovery.  Id.  The procedure was used in Summerville, defendant opines, "as an alternative to imposing wholesale privilege waiver as a sanction."  Id.  In this case, defendant notes, no such conduct has been alleged.  Id.  Defendant also suggests that the use of the procedure is unnecessary because defendant has already invested the time and resources required by RCFC 26(f).[4]  Id.

In its response, defendant also addresses plaintiffs' claim that they need two particular documents:  FHFA00077771 and FHFA00038592.  Id. at 10-11.  According to defendant, "substantively similar information" is available from other sources.  Id. at 10.  First, defendant states that although "FHFA00077771 briefly mentions Fannie Mae's expected profitability for the quarter ending June 30, 2012, [its] actual earnings for that quarter are publicly available in its SEC filings."  Id.  Second, defendant states that although "plaintiffs erroneously contend that they need FHFA00038592 because it allegedly contradicts a statement contained in a declaration submitted by a former FHFA official in a separate litigation . . . plaintiffs obtained substantively similar information from [their] deposition of Fannie Mae's former [CFO]."  Id.  Defendant further notes that it provided plaintiffs with a copy of FHFA00038592 during the parties' meet-and-confer.  Id. at 11.  Finally, defendant argues that plaintiffs' suggestion that the use of the quick peek procedure is warranted because defendant failed to produce "three pages of segregable, factual information from a Fannie Mae presentation prepared for FHFA," until after the meet-and-confer is an insufficient reason to allow plaintiffs to review approximately 1500 additional privileged documents.  Id.  Instead, defendant contends that the parties should resume briefing on defendant's motion to dismiss.  Id. at 12.

In their reply, plaintiffs suggest that the quick peek review they propose could be completed in approximately one month and would ensure plaintiffs receive all of the documents to which they are entitled.  Pls.' Reply 1.  First, plaintiffs argue that the court has the authority to order the use of the procedure absent the producing party's consent.  Id. at 1-2.  In support of their argument, plaintiffs reference the advisory committee note to FRE 502(d), which states that "[u]nder the rule, a confidentiality order is enforceable whether or not it memorializes an agreement among the parties to the litigation [and that p]arty agreement should not be a condition of enforceability of a federal court order."  Id. at 1 (quoting FRE 502(d) advisory committee note (internal quotation marks omitted)).  Plaintiffs also reference the Congressional Record, which states that FRE 502(d) "is designed to enable a court to enter an order, whether on motion of one or more parties or on its own motion."  Id. at 1-2 (quoting 154 Cong. Rec. H7818-19 (Sept. 8, 2008) (internal quotation marks omitted)).

---

[4] RCFC 26(f), which is captioned "Conference of the Parties; Planning for Discovery," directs the reader to Appendix A ¶ 3 of the RCFC, which is captioned "Early Meeting of Counsel," and provides a list of topics for counsel to consider prior to filing their Joint Preliminary Status Report.  One topic is "any issues relating to claims of privilege or of protection as trial-preparation material, including—if the parties agree on a procedure to assert such claims after production—whether to ask the court to include their agreement in an order under Federal Rule of Evidence 502."  RCFC App. A ¶ 3(d)(4).

Next, plaintiffs argue that none of the decisions referenced by defendant in its response stands for the proposition that a court cannot order the use of the quick peek procedure absent the producing party's consent. Id. at 2. In addition, plaintiffs discount defendant's reliance on the position taken by The Sedona Conference, arguing instead that The Sedona Conference "fails to reconcile its position with Rule 502's Advisory Committee Note and the legislative history" and that concern over the ramifications of forcing a producing party to "ring a bell that cannot be un-rung" is unwarranted with respect to the qualified deliberative process and bank examination privileges "in a case in which the Court has already determined that Plaintiffs' need for certain materials is sufficient to overcome the Government's interest in concealing them." Id. at 3. Furthermore, plaintiffs counter defendant's argument that the use of the procedure is only appropriate if done at the beginning of the discovery process, noting that in Salem Financial, Inc. v. United States, 102 Fed. Cl. 793, 800 (2012), this court utilized the procedure after the producing party had reviewed and withheld approximately 390 documents as privileged. Id.

Finally, plaintiffs suggest that the use of the quick peek procedure is the only way to ensure that they receive all of the documents to which they are entitled. Id. at 3-4. In plaintiffs' view, the fact that defendant released additional documents each time plaintiffs challenged its privilege claims remains troubling and can only be remedied through the use of the quick peek procedure, irrespective of whether it is viewed by the court as "an alternative to imposing wholesale privilege waiver as a sanction." Id. at 4.

### B. Analysis

RCFC 26, captioned "Duty to Disclose; General Provisions Governing Discovery," is comprised of six major subsections: subsection (a) addresses "Required Disclosures," subsection (b) addresses "Discovery Scope and Limits," subsection (c) addresses "Protective Orders," subsection (d) addresses the "Timing and Sequence of Discovery," subsection (e) addresses "Supplemental Disclosures and Responses," and subsection (g) addresses "Signing Disclosures and Discovery Requests, Responses, and Objections."[5] Various provisions within the subsections govern the parties' handling of privileged or protected materials. For example, RCFC 26(b)(5)(A) describes the steps that a party must take if seeks to withhold "information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material." Next, RCFC 26(b)(5)(B) identifies the steps that a party must take if it has inadvertently produced such information. Lastly, RCFC 26(c) establishes the parameters of court-ordered protective orders:

> **(1) In General.** A party or any person from whom discovery is sought may move for a protective order. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

---

[5] As noted above, subsection (f) refers the reader to Appendix A ¶ 3 of the RCFC.

>  **(A)** forbidding the disclosure or discovery;
>
>  **(B)** specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;
>
>  **(C)** prescribing a discovery method other than the one selected by the party seeking discovery;
>
>  **(D)** forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
>
>  **(E)** designating the persons who may be present while the discovery is conducted;
>
>  **(F)** requiring that a deposition be sealed and opened only on court order;
>
>  **(G)** requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and
>
>  **(H)** requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

In 2008,[6] the court's general authority to manage discovery and resolve discovery disputes was augmented with an addition, not to the Federal Rules of Civil Procedure ("FRCP")—and therefore by extension to the RCFC—but to the FRE.[7]  According to FRE 502's advisory committee note, the general purpose of the rule, captioned "Attorney-Client Privilege and Work Product; Limitations on Waiver," was twofold.  First, the advisory committee sought to resolve "longstanding disputes in the courts about the effect of certain disclosures of communications or information protected by the attorney-client privilege or as work product—specifically those disputes involving inadvertent disclosure and subject matter waiver."  FRE 502's advisory committee note.  Second, the advisory committee sought to respond "to the widespread complaint that litigation costs necessary to protect against waiver of attorney-client privilege or work product have become prohibitive due to the concern that any disclosure (however innocent or minimal) will operate as a subject matter waiver of all protected

---

[6] FRE 502 was enacted in 2008.  See Pub. L. No. 110-322, § 1(a), 122 Stat. 3537 (2008).

[7] "[T]o the extent permitted by this court's jurisdiction," the RCFC "shall be consistent with the FRCP . . . ."  RCFC 83(a).  Interpretation of the RCFC "will be guided by case law and the Advisory Committee Notes that accompany the [FRCP]."  RCFC rules committee's note (2002); see also Zoltek Corp. v. United States, 71 Fed. Cl. 160, 167 (2006) (noting that interpretation of the FRCP "informs the Court's analysis" of the corresponding RCFC).

communications or information," especially in cases involving ESI. Id. Subsection (d) of the rule provides that "[a] federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court—in which event the disclosure is also not a waiver in any other federal or state proceeding." FRE 502(d). With respect to subsection (d), the advisory committee stated:

> Confidentiality orders are becoming increasingly important in limiting the costs of privilege review and retention, especially in cases involving electronic discovery. But the utility of a confidentiality order in reducing discovery costs is substantially diminished if it provides no protection outside the particular litigation in which the order is entered. Parties are unlikely to be able to reduce the costs of pre-production review for privilege and work product if the consequence of disclosure is that the communications or information could be used by non-parties to the litigation.

FRE 502(d)'s advisory committee note. The advisory committee further noted that "when a confidentiality order governing the consequences of disclosure in that case is entered in a federal proceeding, its terms are enforceable against non-parties in any federal or state proceeding," thus providing producing parties with "predictable protection from a court order—predictability that is needed to allow the party to plan in advance to limit the prohibitive costs of privilege and work product review and retention." Id. Further, the advisory committee confirmed that, as is the case with all federal court orders, "a confidentiality order is enforceable whether or not it memorializes an agreement among the parties to the litigation." Id. Finally, with respect to subsection (d), the advisory committee cautioned that FRE 502(d) "does not allow the federal court to enter an order determining the waiver effects of a separate disclosure of the same information in other proceedings, state or federal." Id.; see also 6 James Wm. Moore, Moore's Federal Practice § 26.49[5][h][v] (3d ed. 2012) (footnotes omitted) ("Federal courts may enter confidentiality orders providing that disclosure of privileged or protected material in a litigation pending before the court does not constitute waiver in other state or federal proceedings. In suggesting this provision, the Advisory Committee acknowledged that the utility of a confidentiality order in reducing discovery costs is substantially diminished if it provides no protection outside the particular litigation in which the order is entered. Entry of a confidentiality order will prevent nonparties to the litigation from obtaining privileged material produced pursuant to such a confidentiality order. The rule also encompasses situations in which the parties are ordered to provide documents under a 'claw-back' or 'quick peek' arrangement. These types of arrangements allow the parties to produce documents for review and return without engaging in a privilege review, but without waiver of privilege or work product protection, as a way to avoid the excessive costs of full privilege review and disclosure when large numbers of documents are involved. The rule provides the parties with predictable protection from waiver when responding to a court order for production of documents pursuant to such an arrangement.").

As noted above, the narrow issue before the court is whether, absent defendant's consent, the court should grant plaintiffs' request and enter an FRE 502(d) order allowing plaintiffs to

review the 1500 documents being withheld by defendant pursuant to the deliberative process and bank examination privileges. In this case, the answer is yes.

Discovery in this case began on April 7, 2014, see April 4, 2014 Order, and is ongoing. On July 16, 2014, the court entered a protective order, which was subsequently modified on August 8, 2014. See July 16, 2014 Protective Order (modified August 8, 2014). The protective order specifically stated that it was "not intended to address or govern claims of privilege that may otherwise be asserted by any of the parties." Id. at 1. Rather, the express purpose of the protective order was to protect "proprietary, confidential, trade secret, or market-sensitive information, as well as information that is otherwise protected from public disclosure under applicable law." Id. ¶ 2. Further, the protective order provided that such information

> may be used solely for the purposes of Fairholme Funds, Inc. v. United States (No. 13-465, Fed. Cl.), including any appellate proceedings, and may not be given, shown, made available, discussed, or otherwise conveyed in any form, except as otherwise agreed by the parties or as otherwise provided in this Protective Order or in any subsequent orders issued by the court in this action.

Id. ¶ 3. In the case of inadvertently disclosed privileged material, the protective order contained a clawback provision:

> The inadvertent disclosure of any information or document that is subject to privilege will not be deemed to waive a party's claim of privilege for that document or the subject matter of the document, to its privileged or protected nature, or estop that party or the privilege holder from designating the information or document as privileged at a later date.

Id. ¶ 13. Significantly, the protective order further stated that the "clawback provision shall be governed by Federal Rule of Evidence 502(d)." Id. Lastly, the protective order provided that any "[i]nadvertent failure to designate any information pursuant to this Protective Order shall not constitute a waiver of any otherwise valid claim for protection," id. ¶ 14, and "shall survive and remain in full force and effect after termination of this action," id. ¶ 28.

Although plaintiff does not allege and the court does not find that the government has failed to satisfy its discovery obligations, the court notes that, as plaintiff points out and the government concedes, the government's production of documents in this case has been piecemeal. Therefore, in an effort to facilitate the speedy and efficient conclusion of jurisdictional discovery in this case, the court hereby allows the use of FRE 502(d)'s quick peek procedure for the 1500 documents at issue. Specifically, the court orders defendant to provide plaintiffs with access to, at a location of defendant's choosing, the approximately 1500 documents plaintiffs seek to review. Upon reviewing the documents, plaintiff shall identify those documents it seeks to be produced. Defendant will then be given one last opportunity to review the documents identified by plaintiffs. If defendant still maintains that the documents are

privileged, defendant shall so indicate. If, however, defendant no longer seeks to assert either the deliberative process or bank examination privilege over the documents, it shall produce the documents to plaintiffs. As to those documents over which defendant continues to assert a privilege, plaintiffs may file a motion to compel their production if they believe that those documents are not privileged. Defendant will then provide the documents to the court for an in camera review.

In response to defendant's argument that use of FRE 502(d)'s quick peek procedure is inappropriate because (1) defendant has already conducted a comprehensive review of its documents, (2) once plaintiffs have viewed privileged information, defendant has no way to unring the bell, and (3) defendant does not consent to use of the procedure, the court adds the following.

First and foremost, it is "axiomatic that a trial court has broad discretion to fashion discovery orders[.]" White Mountain Apache Tribe of Ariz. v. United States, 4 Cl. Ct. 575, 583 (1984); accord Schism v. United States, 316 F.3d 1259, 1300 (Fed. Cir. 2002) ("A trial court 'has wide discretion in setting the limits of discovery.'" (quoting Moore v. Armour Pharm. Co., 927 F.2d 1194, 1197 (11th Cir. 1991))); Florsheim Shoe Co., Div. of Interco, Inc. v. United States, 744 F.2d 787, 797 (Fed. Cir. 1984) ("Questions of the scope and conduct of discovery are, of course, committed to the discretion of the trial court."). Although discovery rules "are to be accorded a broad and liberal treatment," Hickman v. Taylor, 329 U.S. 495, 507 (1947), the court must, "[i]n deciding either to compel or quash discovery, . . . balance potentially conflicting goals," Evergreen Trading, LLC ex rel. Nussdorf v. United States, 80 Fed. Cl. 122, 126 (2007).

Second, if the court were to deny plaintiffs' request, the court has every reason to believe that plaintiffs would file another motion seeking the court's in camera review of all of the remaining 1500 documents. Given the court's heavy caseload and limited resources, the use of the quick peek procedure is a much more viable and attractive option. Not only will the court not have to expend its time and resources on a task that should be performed by the parties, but both parties will benefit from the prompt (or at least more prompt) resolution of outstanding discovery disputes. Thus, even though defendant has already reviewed the subject material multiple times, plaintiffs will continue to seek production of these materials, which will, in turn, continue to place a burden on the court—one which could be alleviated through the parties' use of the quick peek procedure.

Third, even though it is clear from the advisory committee note to FRE 502(d) that the purpose of the rule was to address two issues not relevant to the current dispute—the need to provide protection for inadvertently disclosed materials and the need to address the high cost of discovery in cases involving large quantities of ESI—the procedure it sets forth is nevertheless helpful in the instant case. Not only is the procedure useful in this case because it allows both sides to resume briefing on defendant's motion to dismiss so that the court may finally address the viability and merits of plaintiffs' complaint, but a confidentiality order entered in federal court pursuant to FRE 502(d) provides both parties with greater protections than it would necessarily have under an RCFC 26(c) protective order since, as noted above, Rule 502(d)'s terms apply to nonparties in any other federal or state proceeding.

Fourth, although defendant claims that allowing plaintiffs to review the documents would be akin to ringing a bell that cannot be unrung, the court reminds both parties that, pursuant to the protective order that has already been entered in this case, only those individuals who have complied with the process set forth therein will be given access to protected information:

> Persons seeking access to Protected Information must read this Protective Order, complete the appropriate application form (attached to this Protective Order as Attachment A), and file the executed application with the court. The applicant must consult with opposing counsel and set forth in the application whether opposing counsel agrees to or opposes the applicant's admission. If there is no opposition, the applicant will automatically be granted access to Protected Information. If there is opposition, opposing counsel will file a submission describing such opposition within three (3) days of the application being filed. The other party will then have three (3) days to file a response. The obligation to complete and file such an application does not apply to persons identified in Paragraph 5 or to counsel who have entered an appearance in this action.

July 16, 2014 Protective Order (modified August 8, 2014) ¶ 7. Furthermore, as noted above, with respect to privileged material, the protective order already contains an FRE 502(d) clawback agreement. Id. ¶ 13 ("This clawback provision shall be governed by Federal Rule of Evidence 502(d)."). Thus, although there is no way to unring a bell that has already been rung, both parties can be assured of the fact that pursuant to the protective order already in place, protected information—which includes both confidential and privileged information—is just that.

Finally, the court is not convinced that it lacks the authority to order the use of the quick peek procedure absent defendant's consent. In its response to plaintiffs' motion, defendant identified only one case, Summerville, in which a court "compelled a quick peek over a producing party's objection." Def.'s Resp. 9. In Summerville, as defendant notes, the District Court for the Southern District of Indiana—absent any reference to FRE 502(d)—ordered the use of the quick peek procedure as an alternative to imposing sanctions on the defendant for failing to provide the plaintiff with an adequate privilege log and for refusing to cooperate with plaintiff during discovery. See 2016 WL 233627, at *5-6. In the case at bar, the court has already stated that its use of the quick peek procedure is not intended as a sanction for any behavior on defendant's part but rather as a means of expediting the completion of jurisdictional discovery in this case and conserving the court's limited resources. Thus, not only is Summerville not controlling, it is distinguishable. See also Thermal Sols., Inc. v. Imura Int'l USA, Inc., No. 2:08-cv-2220 (JWL/DJW), 2010 WL 11431562, at *13-14 (D. Kan. Apr. 28, 2010) (allowing the defendants to conduct a quick peek review of certain files belonging to the plaintiff as a sanction for the plaintiff's failure to comply with FRCP 26(g)(1) and noting that the parties previously agreed to the use of the quick peek procedure; no reference made to FRE 502(d)).

Similarly, the court is unpersuaded by defendant's reference to the position taken by The Sedona Conference. As stated above, the court's use of the quick peek procedure in the case at bar is not motivated by a need to (1) protect inadvertently disclosed materials, (2) address the high cost of discovery in cases involving large quantities of ESI, or (3) punish defendant. The court's sole purpose in utilizing the procedure is to bring jurisdictional discovery to an end so that the case may move forward. Given the court's wide discretion to manage discovery pursuant to RCFC 26, and given the mutually agreed-to protective order already entered in this case, the court's use of the quick peek procedure is eminently appropriate.[8]

### III. CONCLUSION

In accordance with the court's conclusions:

(1) Defendant shall provide plaintiffs with the opportunity to review the approximately 1500 documents at issue—which are currently being withheld by defendant as privileged pursuant to the deliberative process and bank examination privileges—at a time and place to be determined by defendant. In so doing, defendant shall not be deemed to have waived any privileges as to these documents.

(2) Plaintiffs shall then identify those documents that they believe are relevant to the case and that they believe should be produced in light of this court's September 20, 2016 Opinion and Order on plaintiffs' motion to compel and the United States Court of Appeals for the Federal Circuit's subsequent ruling on January 30, 2017.

(3) The parties shall then meet and confer in an effort to resolve their differences without further court involvement. If they are unable to do so, plaintiffs may file a renewed motion to compel those documents they contend are both relevant and not privileged. In conjunction with the filing of its response to plaintiffs' motion, defendant shall provide the court with copies of the documents sought by plaintiffs for an in camera review.

**IT IS SO ORDERED.**

                                            s/ Margaret M. Sweeney
                                            MARGARET M. SWEENEY
                                            Judge

---

[8] Because the court is directing the parties to utilize FRE 502(d)'s quick peek procedure, it need not address the arguments made by the parties with respect to FHFA00077771 and FHFA00038592.